**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAMAAL LLOYD, individually and on behalf of all others similarly situated, and on behalf of the W BBQ Holdings, Inc. Employee Stock Ownership Plan,<br><br>               Plaintiff,<br><br>v.<br><br>ARGENT TRUST COMPANY, HERBERT WETANSON, GREGOR WETANSON, and STUART WETANSON,<br><br>               Defendants. | Case No. 1:22-cv-04129-VSB |

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY THE CASE OR, IN THE ALTERNATIVE, TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION</u>

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ........................................................................................... 1

BACKGROUND ............................................................................................ 4

    I.    Background Regarding WBBQ, the Parties, and Plaintiff's Claims. ................. 4

    II.   Relevant Terms in the Plan Document. ............................................... 5

ARGUMENT ............................................................................................... 6

    I.    Plaintiff Should Be Compelled to Pursue All of His Claims Through Arbitration. .......... 6

        A.  The Plan Document Contains a Valid, Enforceable Arbitration Provision
that Binds Plaintiff. ................................................................. 7

        B.  Plaintiff's Claims Fall Within the Scope of the Arbitration Procedure. ................ 9

            1.   Section 10 of the Plan Document Is a "Broad" Arbitration Provision
that "Justifies a Presumption of Arbitrability." .................................. 9

            2.   Plaintiff's Claims Fall Within the Plain Language of the Definition of
"Covered Claim" in the Plan Document. ........................................ 10

        C.  ERISA Claims Are Arbitrable. ...................................................... 10

        D.  Plaintiff Must Arbitrate on an Individual Basis. ...................................... 11

            1.   The Plan Contains a Waiver of Collective Action, and the Court (Rather
Than the Arbitrator) Must Decide Whether to Enforce It. .......................... 11

            2.   The Individual Arbitration Provisions are Enforceable. ............................ 12

               a.   There Is No "Clearly Expressed Congressional Intention" That
the FAA and ERISA Cannot Be Harmonized. ................................ 13

               b.   The "Effective Vindication Doctrine" Is Inapplicable. ...................... 14

        E.  The Case Should Be Stayed While Any Arbitration Proceeds. ......................... 19

        F.  The Court Should Award Defendants Attorneys' Fees and Costs,
as Provided Under the Plan Document. .............................................. 19

    II.   In the Alternative, The Complaint Should Be Dismissed Under Rule 12(b)(1)
For Lack of Article III Standing. .................................................... 20

CONCLUSION ............................................................................................ 24

# TABLE OF AUTHORITIES

**Cases**                                                                                 **Page(s)**

*20/20 Commc'ns, Inc. v. Crawford*,
    930 F.3d 715 (5th Cir. 2019)................................................................................. 12

*Am. Express Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013) ........................................................................... 12, 13, 14, 15

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
    821 F.3d 352 (2d Cir. 2016).............................................................................. 20

*Arciniaga v. Gen. Motors Corp.*,
    460 F.3d 231 (2d Cir. 2006)................................................................................. 6

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) .................................................................................... 6, 12

*Barreto v. Jec II, LLC*,
    No. 16-CV-9729, 2017 WL 3172827 (S.D.N.Y. July 25, 2017) ............................ 19

*Bird v. Shearson Lehman/Am. Exp., Inc.*,
    926 F.2d 116 (2d Cir. 1991)......................................................................... 10, 11

*Cedeno v. Argent Trust Co.*,
    No. 20-CV-9987, 2021 WL 5087898 (S.D.N.Y. Nov. 2, 2021) ............................ 17

*Cent. States, Se. & Sw. Areas Health & Welfare Fund*
    *v. Merck-Medco Managed Care, L.L.C.*,
    433 F.3d 181 (2d Cir. 2005)............................................................................... 20

*Collins & Aikman Prods. Co. v. Building Sys., Inc.*,
    58 F.3d 16 (2d Cir. 1995).................................................................................... 6

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
    No. 17-2805, 2021 WL 821390 (2d Cir. Mar. 4, 2021) ........................................ 16

*Curtiss-Wright Corp. v. Schoonejongen*,
    514 U.S. 73 (1995) ............................................................................... 7, 14, 16

*Dorman v. Charles Schwab Corp.*,
    780 F. App'x 510 (9th Cir. 2019)............................................................. 8, 13, 16

*Dorman v. Charles Schwab Corp.*,
    934 F.3d 1107 (9th Cir. 2019)............................................................................. 9

*Epic Systems Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ............................................................................................. 13

*Euro Pac. Capital Inc. v. Bohai Pharms. Grp., Inc.*,
    No. 15-cv-4410, 2016 WL 297311 (S.D.N.Y. Jan. 21, 2016) ..................................... 2

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ............................................................................................. 12, 18

*Hans v. Tharaldson*,
    No. 3:05-CV-115, 2011 WL 6937598 (D.N.D. Dec. 23, 2011).............................. 24

*Hartford Aircraft Lodge 743, Int'l Ass'n of Machinists*
    *& Aerospace Workers, AFL-CIO v. Hamilton Sundstrand Corp.*,
    213 F. App'x 31 (2d Cir. 2007)................................................................................ 9

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999) ............................................................................................... 15

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
    387 F.3d 163 (2d Cir. 2004)..................................................................................... 7

*John v. Whole Foods Mkt. Grp., Inc.*,
    858 F.3d 732 (2d Cir. 2017) ............................................................................ 20, 24

*Katz v. Cellco P'ship*,
    794 F.3d 341 (2d Cir. 2015) ................................................................................... 19

*Keach v. U.S. Tr. Co., N.A.*,
    313 F. Supp. 2d 818 (C.D. Ill. 2004)...................................................................... 24

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
    552 U.S. 248 (2008) ................................................................................... 15, 16, 18

*Lee v. Argent Trust Co.*,
    No. 5:19-CV-156, 2019 WL 3729721 (E.D.N.C. Aug. 7, 2019) ................. 21, 22, 23

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................... 20

*Martin v. Feilen*,
    965 F.2d 660 (8th Cir. 1992)................................................................................... 1

*Mathews v. Sears Pension Plan*,
    144 F.3d 461 (7th Cir. 1998)............................................................................... 7, 8

*McAllister v. Conn. Renaissance Inc.*,
    496 F. App'x 104 (2d Cir. 2012)........................................................................ 7, 10

*Mehler v. Terminix Int'l Co. L.P.,*
   205 F.3d 44 (2d Cir. 2000) ............................................................................ 9, 10

*Montgomery v. Aetna Plywood, Inc.,*
   39 F. Supp. 2d 915 (N.D. Ill. 1998) ...................................................................... 24

*Murphy v. Canadian Imperial Bank of,*
   *Com.*, 709 F. Supp. 2d 242 (S.D.N.Y. 2010) ......................................................... 2, 11

*Paramedics Electromedicina Comercial, Ltda.*
   *v. GE Med. Sys. Info. Techs., Inc.,*
   369 F.3d 645 (2d Cir. 2004) ............................................................................... 9

*Plutzer v. Bankers Tr. Co. of S.D.,*
   No. 1:21-CV-3632, 2022 WL 596356 (S.D.N.Y. Feb. 28, 2022) ............................... 23

*Robertson v. Argent Trust Co.,*
   No. 2:21-cv-01711, 2022 WL 2967710 (D. Ariz. July 27, 2022) ....................... 7, 15, 17

*Rodriguez v. N.Y. Found. for Senior Citizens Home Attendant Servs., Inc.,*
   No. 15-CV-9817, 2016 WL 11707094 (S.D.N.Y. July 14, 2016) ............................. 2, 6

*Smith v. Bd. of Dirs. of Triad Mfg., Inc.,*
   13 F.4th 613 (7th Cir. 2021) ...................................................................... 16, 17, 18

*Spokeo, Inc. v. Robins,*
   578 U.S. 330 (2016) ....................................................................................... 20

*Thole v. U.S. Bank N.A.,*
   140 S. Ct. 1615 (2020) .................................................................................... 20

*US Airways, Inc. v. McCutchen,*
   569 U.S. 88 (2013) .................................................................................. 7, 14, 16

*Viking River Cruises, Inc. v. Moriana,*
   142 S. Ct. 1906 (2022) .................................................................................... 13

*Williams v. Dearborn Motors 1, LLC,*
   No. 20-1351, 2021 WL 3854805 (6th Cir. Aug. 30, 2021) ...................................... 18

**Statutes**

9 U.S.C. § 3 .................................................................................................... 19
9 U.S.C. § 4 ...................................................................................................... 7
29 U.S.C. § 1102(a)(1) ........................................................................................ 7
29 U.S.C. § 1109(a) ........................................................................................... 14
29 U.S.C. § 1144(a) ............................................................................................ 7

**Rules**

Fed. R. Civ. P. 12(b)(1).............................................................................................. 1, 3

**Other Authorities**

Not. of Appeal,
  *Cedeno v. Argent Tr. Co.*, No. 20-CV-9987 (JGK) (S.D.N.Y. Nov. 19, 2021),
  ECF No. 75....................................................................................................... 17

## INTRODUCTION

Defendants Argent Trust Company ("Argent") and Herbert Wetanson, Gregor Wetanson, and Stuart Wetanson (together, the "Wetansons" and, collectively with Argent, "Defendants") respectfully move to compel arbitration and stay this action under the Federal Arbitration Act ("FAA") or, in the alternative, to dismiss Plaintiff's Class Action Complaint (Dkt. No. 1) ("Complaint" or "Compl.") in its entirety under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

This case involves an employee stock ownership plan ("ESOP"), which is a type of defined contribution retirement plan regulated under the Employee Retirement Income Security Act of 1974, as amended ("ERISA") that allows participating employees to acquire a beneficial interest in the company stock of their employer.  Congress encourages ESOP formation and intended ESOPs to provide a tax-favored way for employers to fund employees' retirement benefits and to foster employee ownership.  *Martin v. Feilen*, 965 F.2d 660, 664 (8th Cir. 1992).

Plaintiff alleges that he is a participant in the W BBQ Holdings, Inc. Employee Stock Ownership Plan (the "Plan").  His Complaint arises out of a stock purchase transaction that closed on July 29, 2016 (the "Transaction"), in which the Plan purchased 400,000 shares of stock of W BBQ Holdings, Inc. ("WBBQ") from the company's individual owners (the Wetansons).  Argent, an institutional trustee whose professionals have decades of expertise in ESOP stock purchase transactions, was engaged to serve as the Plan's independent trustee with discretionary authority to determine whether to purchase shares of WBBQ stock on behalf of the Plan.  Argent fulfilled its fiduciary duties by approving the purchase of shares of WBBQ stock for no more than fair market value and on terms that were fair to the Plan and its participants.

Plaintiff's Complaint alleges that Defendants committed various violations of ERISA in connection with the decision by Argent, acting as trustee, to cause the Plan to purchase shares of WBBQ stock at what Plaintiff claims was more than fair market value.  Plaintiff asserts that, because of Defendants' alleged misconduct, he suffered a diminution in the value of his Plan account, as did other Plan participants.  All his claims are premised on duties arising out of the Plan's governing plan document (the "Plan Document")[1] and/or ERISA.

Effective January 1, 2019, the Plan Document was amended to require that participants like Plaintiff pursue their claims in individual arbitration rather than federal court.  Section 10.01 of the Plan Document states:

> ***Any*** claim, dispute or controversy of any kind asserted by a [Claimant] (i) which ***arises out of, relates to, or concerns*** the Plan or the Trust, including without limitation, any claim for benefits, (ii) asserting a breach of, or failure to follow, the Plan or Trust; or (iii) ***asserting a breach of, or failure to follow, any provisions of ERISA*** or the [Internal Revenue] Code, ***including without limitation claims for breach of fiduciary duty*** . . . shall be resolved pursuant to the . . . binding arbitration procedures set forth in Section 10.04 . . . .

Ex. B § 10.01 (emphasis added).  As a Plan participant, Plaintiff is bound by the express terms of the Plan Document and therefore must comply with the provisions requiring individual arbitration.

---

[1] A true and correct copy of the Plan Document is attached hereto as Exhibit A.  In addition, the Plan Document was amended in relevant part effective January 1, 2019, and a true and correct copy of the amendment is attached as Exhibit B.  A true and correct copy of the Unanimous Written Consent of the WBBQ Board of Directors adopting the Plan amendment is attached as Exhibit C.  Because Plaintiff expressly references the Plan Document in his Complaint, these documents are appropriate to consider on a motion to compel arbitration.  *See* Compl. ¶¶ 88, 116, 141; *see also Euro Pac. Capital Inc. v. Bohai Pharms. Grp., Inc.*, No. 15-cv-4410, 2016 WL 297311, at *3 (S.D.N.Y. Jan. 21, 2016) ("In deciding a motion to stay or dismiss an action pending arbitration, . . . the Court may review and consider documents referenced in the complaint.").  Moreover, for purposes of determining arbitrability, the Court may consider documents that Defendants submit in support of their Motion.  *See, e.g., Murphy v. Canadian Imperial Bank of Com.*, 709 F. Supp. 2d 242, 244 n.2 (S.D.N.Y. 2010) (noting that "a court is permitted to consider documents outside the pleadings for the purposes of determining the arbitrability of a dispute"); *Rodriguez v. N.Y. Found. for Senior Citizens Home Attendant Servs., Inc.*, No. 15-CV-9817, 2016 WL 11707094, at *1 n.1 (S.D.N.Y. July 14, 2016).

As explained below, the Court should compel individual arbitration and stay the case under Sections 4 and 3 of the FAA, respectively, because:

- the arbitration provisions in the Plan Document are valid, and Plaintiff is bound by them by virtue of his participation in the Plan;

- Plaintiff's claims are all "Covered Claims" as that term is defined in the Plan Document, and thus all fall within the scope of its arbitration provisions; and

- Plaintiff's claims arise under ERISA, and ERISA claims are arbitrable.

In addition, the Court should award the following relief, as required by the terms of the Plan Document:

- order that any arbitration be on an individual basis, rather than in a representative capacity or class, collective, or group basis; and

- order Plaintiff to reimburse Defendants' attorneys' fees, costs, and expenses incurred in moving to compel arbitration.

In the alternative, even if the Court declined to enforce the arbitration provisions in the Plan Document, all of Plaintiff's claims must be dismissed under Rule 12(b)(1) because Plaintiff lacks standing under Article III of the Constitution.  To establish Article III standing, Plaintiff must plead plausibly that, among other things, he suffered an injury in fact that was "concrete" and "particularized."  The only alleged "injury" that Plaintiff identifies in his Complaint is that, shortly after the Transaction, the WBBQ stock that the Plan acquired was worth less than it was at the time of the Transaction.  This fails to qualify as a plausible injury, however, because the true explanation for the decrease is readily apparent:  in the Transaction, WBBQ took on debt to finance the Plan's stock purchase, and with such debt WBBQ's equity value was lower.  Courts have held

that ESOP participants alleging the same injury as Plaintiff asserts here lacked Article III standing, and this Court should reach the same conclusion.

For these reasons, and as discussed further below, the Court should (1) compel Plaintiff to arbitrate all of his claims on an individual basis under the terms of the Plan Document and stay this case pending any arbitration; or (2) dismiss Plaintiff's Complaint for lack of Article III standing.

## **BACKGROUND**

### I.  **Background Regarding WBBQ, the Parties, and Plaintiff's Claims.**[2]

WBBQ operates a chain of restaurants in New York City—primarily, the line of Dallas BBQ restaurants.  Compl. ¶¶ 38, 40.  On January 1, 2015, WBBQ established the W BBQ Holdings, Inc. Profit Sharing Plan.  *Id*. ¶ 44.  That plan was amended and restated on January 1, 2016 to form the Plan at issue here.  *Id*. ¶ 47.

Plaintiff filed this putative ERISA class action against Argent and the Wetansons.  According to Plaintiff, Argent served as trustee to the Plan in evaluating whether it should enter into a transaction to purchase shares of WBBQ stock in July 2016 from the Wetansons for the benefit of Plan participants.  *Id.* ¶¶ 9, 15-18.

The Complaint alleges the following ERISA violations:  (1) that, in approving the Transaction, Argent breached fiduciary duties owed to the Plan under ERISA Section 404(a) (Count I); (2) that the Wetansons breached fiduciary duties under ERISA Section 404(a) in appointing and failing to monitor Argent as the Plan's trustee (Count II); (3) that Argent engaged in prohibited transactions related to the Plan's purchase of shares of WBBQ stock at a price that

---

[2] The following background is drawn solely from the unproven allegations in the Complaint.  At this time, Defendants do not admit that any allegation in the Complaint is true or correct.

was purportedly higher than fair market value (Count III); (4) that the Wetansons also engaged in those prohibited transactions (Count IV); (5) that the Wetansons breached co-fiduciary duties under ERISA Section 405(a) (Count V); and (6) that an indemnification provision in WBBQ's Articles of Incorporation violates ERISA Section 410 (Count VI).  The crux of Plaintiff's claims is that he and other Plan participants suffered a diminution in the value of their individual Plan accounts due to alleged misconduct by Defendants, who are liable to restore such amounts to the accounts.  *See, e.g.*, Compl. ¶¶ 10, 127.

## II.   Relevant Terms in the Plan Document.

Plaintiff alleges that he has been a participant since the Plan was first adopted.  *Id.* ¶ 14. The Plan at all times has been governed by a written Plan Document, as ERISA requires.  The Plan Document provides that WBBQ "may amend . . . the [Plan Document] . . . in whole or in part[.]" Ex. A § 12.1.

On April 24, 2019, the WBBQ Board of Directors, acting on behalf of WBBQ, exercised the company's right under Section 12.1 of the Plan Document to adopt a Plan amendment.  Ex. C. The resulting amendment to Section 10 of the Plan Document (the "Plan Amendment") states that all "Claimants" are bound by certain arbitration provisions set forth in Section 10.04.  Ex. B § 10.01.  The Plan Amendment defines "Claimant" to include any "Participant" and broadly defines the term "Covered Claims."  *Id.* § 10.01.

Section 10.04(e) provides that Covered Claims must be arbitrated "solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis." *Id.* § 10.04(e).  The section provides also that "[e]ach arbitration shall be limited solely to one Claimant's Covered Claims and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any Employee, Participant or Beneficiary other than the Claimant."  *Id.*  In addition, Section 10.04(f) provides:

> [W]ith respect to any claim brought under ERISA section 502(a)(2) to seek relief under ERISA section 409, the Claimant's remedy, if any, shall be limited to (i) the alleged losses to the Claimant's Accounts resulting from the alleged breach of fiduciary duty, (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where such pro-rated amount is intended to provide a remedy solely to Claimant's Accounts, or (iii) such other remedial or equitable relief as the arbitrator deems proper so long as such remedial or equitable relief does not include or result in the provision of additional benefits or monetary relief to any Employee, Participant or Beneficiary other than the Claimant, and is not binding on the Administrator or the Trustee with respect to any Employee, Participant or Beneficiary other than the Claimant.

*Id.* § 10.04(f).

Section 10.04(g) provides that each of Sections 10.04(e) and (f) is a "material and non-severable term" to the arbitration provisions in Section 10, and that "[a]ny dispute or issue as to the applicability or validity" of these sections shall be determined by a court of competent jurisdiction rather than by the arbitrator.  *Id.* § 10.04(g).

## **ARGUMENT**

## I.     **Plaintiff Should Be Compelled to Pursue All of His Claims Through Arbitration.**

The FAA "embod[ies] [a] national policy favoring arbitration[.]"  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (second alteration in original).  As the Second Circuit has noted, "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy [the Second Circuit has] often and emphatically applied."  *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006).  This policy "requires [the Court] to construe arbitration clauses as broadly as possible."  *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995).  To that end, "to the extent there is doubt about the scope of arbitrable issues, the Court must resolve that doubt in favor of arbitration."  *Rodriguez*, 2016 WL 11707094, at *2.

Pursuant Section 4 of the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided

for in such agreement." 9 U.S.C. § 4.  When deciding whether to compel arbitration, courts in the Second Circuit must consider (1) "whether the parties agreed to arbitrate," (2) "the scope of that agreement[,]" and (3) "if federal statutory claims are asserted, . . . whether Congress intended those claims to be nonarbitrable." *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004); *see also, e.g.*, *McAllister v. Conn. Renaissance Inc.*, 496 F. App'x 104, 106 (2d Cir. 2012).  As discussed further below, each of these inquiries compels the conclusion that Plaintiff must arbitrate his claims pursuant to the procedures in the Plan Document.

### A.    The Plan Document Contains a Valid, Enforceable Arbitration Provision that Binds Plaintiff.

In the context of an ERISA-governed plan, the contract that defines the scope of the parties' agreement is the "written instrument" pursuant to which ERISA requires employee benefit plans to "be established and maintained." 29 U.S.C. § 1102(a)(1).  These written instruments, known as "plan documents," govern plan participants' rights and obligations.  *See, e.g.*, *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) (noting that ERISA has "an elaborate scheme in place for enabling beneficiaries to learn their rights and obligations at any time, [which] is built around reliance on the face of written plan documents").  "Courts construe ERISA plans[] as they do other contracts[.]"  *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 102 (2013).[3]

---

[3] In determining whether the Plan arbitration provisions bind Plaintiff, the Court must apply federal common law because ERISA contains an express and broad provision preempting state law.  *See* 29 U.S.C. § 1144(a).  When interpreting ERISA plan terms, courts do not apply "any particular state's contract law, but rather [] a body of federal common law tailored to the policies of ERISA." *Mathews v. Sears Pension Plan*, 144 F.3d 461, 465 (7th Cir. 1998).  In a recent opinion granting a motion to compel individual arbitration of ERISA claims, a court noted that, "because the arbitration provision is found within an ERISA plan, its interpretation is governed by federal common law."  *Robertson v. Argent Trust Co.*, No. 2:21-cv-01711, 2022 WL 2967710, at *4 (D. Ariz. July 27, 2022).

Accordingly, the first question before the Court is whether the arbitration provisions in Section 10.04 of the Plan Document satisfy the FAA's requirement of a contract binding Plaintiff to arbitrate.  They do.  Effective January 1, 2019 (at which time Plaintiff was still employed by WBBQ and a Plan participant, *see* Compl. ¶ 14), WBBQ adopted the Plan Amendment to include the arbitration provisions in Section 10.  *See* Exs. B, C.  By its terms, this section requires Plaintiff to arbitrate "Covered Claims":

> As a condition to (i) any Employee becoming eligible to participate in the Plan, (ii) any Employee, Participant or Beneficiary receiving any contributions to his Accounts, (iii) any Employee, Participant or Beneficiary receiving any benefit under the Plan, or (iv) any Claimant including a former Employee, former Participant or former Beneficiary filing a Covered Claim[,] such Employee, Participant, or Beneficiary . . . shall be subject to the mandatory arbitration procedures described in this Section 10.04.

Ex. B § 10.04(a).

This section expressly conditions participation in the Plan, receipt of contributions under the Plan, receipt of benefits under the Plan, and pursuing claims under the Plan on the participant subjecting himself to mandatory individual arbitration procedures.  Plaintiff has triggered these conditions:  he alleges that he "was a Plan participant at the time of the Transaction" (*i.e.*, in July 2016), Compl. ¶ 14, he had shares of stock allocated to his account, *id.*, and he brings a claim for the purpose of ultimately obtaining the full amount of benefits he believes he is due from the Plan, *id.* ¶¶ 3, 14.

Because Plaintiff seeks the benefit of the Plan, he must be bound by its terms.  The Plan's provision embodies the sensible principle that "[a] plan participant agrees to be bound by a provision in the plan document when he participates in the plan while the provision is in effect." *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 512 (9th Cir. 2019) (*Dorman II*[4]).  The Plan

---

[4] *Dorman II* was the second of two concurrently-issued opinions addressing whether a district court erred in refusing to enforce an arbitration provision contained in an ERISA-regulated

Document that binds Plaintiff has always provided that WBBQ may amend it at any time.  *See* Ex. A § 12.1.  He is thus also bound by the Plan Amendment that added Section 10.04, which was validly adopted by WBBQ by act of its board of directors.  *See* Ex. C.  Section 10 therefore binds Plaintiff with respect to the forum in which he can bring his "Covered Claims."

    **B.**    **Plaintiff's Claims Fall Within the Scope of the Arbitration Procedure.**

        **1.**    **Section 10 of the Plan Document Is a "Broad" Arbitration Provision that "Justifies a Presumption of Arbitrability."**

To determine whether Plaintiff's claims fall within the scope of Section 10 of the Plan Document, the Court must first decide whether the arbitration clause is a "broad clause" or a "narrow clause."  *See Hartford Aircraft Lodge 743, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Hamilton Sundstrand Corp.*, 213 F. App'x 31, 32 (2d Cir. 2007) ("At the outset, we ordinarily decide whether the clause is 'broad' or 'narrow.'").  "[T]he existence of any broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," and "[d]oubts should be resolved in favor of coverage." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 653-54 (2d Cir. 2004).

A clause providing for "arbitration of 'any controversy or claim between [the parties] arising out of or relating to' the Agreement" is "classically broad" and "precisely the kind of broad arbitration clause that justifies a presumption of arbitrability."  *Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 49 (2d Cir. 2000) (alteration in original).  The Plan Document includes just such a

---

retirement plan.  In *Dorman v. Charles Schwab Corp.*, 934 F.3d 1107 (9th Cir. 2019) (*Dorman I*), the Ninth Circuit overruled its prior precedent on the arbitrability of ERISA claims in light of the Supreme Court's decision in *American Express*.

clause.  It describes a "Covered Claim" in an expansive way, as "*[a]ny claim*, dispute or controversy *of any kind* by a [Claimant] . . . asserting a breach of, or failure to follow, *any provisions of ERISA or the [Internal Revenue] Code*, including *without limitation* claims for breach of fiduciary duty[.]" *See* Ex. B § 10.01 (emphasis added).  Moreover, the Plan Document's arbitration provision covers all claims under the two statutes (ERISA and the Code) that could potentially provide for liability with respect to an ERISA-governed plan; therefore, Section 10 is a "classically broad" provision that requires a "presumption of arbitrability."

### 2. Plaintiff's Claims Fall Within the Plain Language of the Definition of "Covered Claim" in the Plan Document.

Plaintiff's claims fall within the plain language of a "Covered Claim" subject to arbitration. The definition of "Covered Claim" includes "any claim asserting a breach of, or failure to follow, any provision of ERISA," and Counts I through VI all allege violations of ERISA provisions.  *See* Compl. ¶¶ 128-87.

Because the Plan Document's arbitration provisions are "broad" (see *Mehler*, 205 F.3d at 49), they are entitled to a presumption that all of Plaintiff's claims are arbitrable; however, even absent a presumption, each of Plaintiff's claims fall within the plain language of the definition of "Covered Claims" in the Plan Document.

### C. ERISA Claims Are Arbitrable.

Under Second Circuit precedent, the Court next should evaluate "whether, if federal statutory claims are asserted, Congress intended those claims to be nonarbitrable."  *McAllister*, 496 F. App'x at 106.  Each of Plaintiff's claim alleges that one or more Defendant violated specified provisions of ERISA.  *See* Compl. ¶¶ 128-87.

The Second Circuit has held that "statutory claims arising under ERISA may be the subject of compulsory arbitration."  *Bird v. Shearson Lehman/Am. Exp., Inc.*, 926 F.2d 116, 122 (2d Cir.

1991); *see also Murphy*, 709 F. Supp. 2d at 247 (citing *Bird* and noting that "[t]he Second Circuit has held that Congress has not evinced an intention to preclude a waiver of judicial remedies for ERISA claims").  The third inquiry is thus satisfied.

### D.      Plaintiff Must Arbitrate on an Individual Basis.

#### 1.      The Plan Contains a Waiver of Collective Action, and the Court (Rather Than the Arbitrator) Must Decide Whether to Enforce It.

Section 10.04(e) of the Plan Document as amended provides:

> ***All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis***.  Each arbitration shall be limited solely to one Claimant's Covered Claims and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any Employee, Participant or Beneficiary other than the Claimant.

Ex. B § 10.04(e).  Further, Section 10.04(f) provides:

> The requirements of Section 10.04(e) include, but are not limited to, that with respect to any claim brought under ERISA section 502(a)(2) to seek relief under ERISA section 409, the Claimant's remedy, if any, shall be limited to (i) the alleged losses to the Claimant's Accounts resulting from the alleged breach of fiduciary duty, (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where such pro-rated amount is intended to provide a remedy solely to Claimant's Accounts, or (iii) such other remedial or equitable relief as the arbitrator deems proper so long as such remedial or equitable relief does not include or result in the provision of additional benefits or monetary relief to any Employee, Participant or Beneficiary other than the Claimant, and is not binding on the Administrator or the Trustee with respect to any Employee, Participant or Beneficiary other than the Claimant.

Ex. B § 10.04(f).

If Plaintiff were to contest that either of these provisions applied to any arbitration proceeding he might bring, the Plan Document specifies that this Court (rather than the arbitrator) should resolve that issue.  With a notable exception, the Plan Document establishes the scope of the arbitrator's authority as follows:

> [T]he arbitrator shall have exclusive authority to resolve any dispute or issue of arbitrability with respect to [Section 10], including as to the jurisdiction of the

11

arbitrator or relating to the existence, scope, validity, enforceability or performance of [Section 10] or any of its provisions.

Ex. B at § 10.04(g).  The Plan Document expressly carves out from the arbitrator's authority questions related to "the applicability or validity of the requirements of Sections 10.04(e) and 10.04(f)," which instead must be "determined solely" by this Court.[5]  *See id.*

The Plan Document also provides that Sections 10.04(e) and (f) are "material and non-severable" from the arbitration provisions in Section 10, and that, "[i]f the Court . . . finds these requirements to be unenforceable or invalid, then the entire [Section 10] shall be rendered null and void in all respects."  Ex. B at § 10.04(g).

The Plan Document leaves for the Court to decide any dispute related to the applicability or validity of the individualized arbitration provisions—and, for reasons provided below, the Court should conclude that the provisions must be enforced.

### 2.     The Individual Arbitration Provisions are Enforceable.

The Supreme Court has held repeatedly that individual arbitration provisions are enforceable even as to claimants who seek to vindicate important statutory rights.  *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (upholding individual arbitration of antitrust claims); *AT&T Mobility LLC*, 563 U.S. at 344 (invalidating state law that required availability of class-wide arbitration and enforcing class waiver); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991) (upholding individual arbitration of age discrimination claims brought under the ADEA).  These decisions reflect that arbitration provisions constitute contracts that courts

---

[5] Even if Section 10.04(g) did not include clear language authorizing this Court to determine questions of the validity and applicability of the individualized arbitration provisions in Sections 10.04(e) and (f), courts commonly hold that class arbitrability is a "gateway" issue for the Court rather than an arbitrator.  *See, e.g.*, *20/20 Commc'ns, Inc. v. Crawford*, 930 F.3d 715, 718-19 (5th Cir. 2019) (collecting cases and holding that "class arbitrability is a gateway issue for courts, not arbitrators, to decide, absent clear and unmistakable language to the contrary").

"must 'rigorously enforce' . . . according to their terms[.]"  *Am. Express*, 570 U.S. at 233; *Dorman II*, 780 F. App'x at 514 ("Because 'arbitration is a matter of contract,' the Provision's waiver of class-wide and collective arbitration must be enforced according to its terms, and the arbitration must be conducted on an individualized basis.").

Further, in *Epic Systems Corp. v. Lewis*, the Supreme Court held that individualized arbitration provisions are valid and enforceable because, "[i]n the [FAA], Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings."  138 S. Ct. 1612, 1619 (2018).  The Supreme Court added that "[a] party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing 'a clearly expressed congressional intention' that such a result should follow[,]" and Congress's intention "must be 'clear and manifest.'"[6]  *Id.* at 1624.

### a. There Is No "Clearly Expressed Congressional Intention" That the FAA and ERISA Cannot Be Harmonized.

To avoiding arbitrating his claims on an individual basis, Plaintiff would have to convince the Court that ERISA—specifically, ERISA Sections 502(a)(2) and 409—and the FAA cannot be harmonized.  Those sections enumerate, respectively, the parties who may bring a civil action for breach of fiduciary duty and the scope of the liability that may be imposed on a breaching

---

[6] Recently, the Supreme Court underscored the point that courts must give effect to arbitration provisions that select individual arbitration proceedings over class or collective proceedings.  In *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022), the Court emphasized that declining to enforce an individual arbitration provision sets up an untenable choice between either arbitrating on a class or collective basis (in frustration of the underlying agreement to arbitrate individually) or foregoing arbitration altogether.  *Id.* at 1918.  The Supreme Court made clear that "[p]utting parties to that choice is inconsistent with the FAA."  *Id.*  Any argument from Plaintiff against individualized arbitration would run afoul of the Supreme Court's rule and impermissibly force Defendants to choose between arbitrating on a class basis (contrary to Section 10.04 of the Plan Document) and foregoing arbitration altogether.

fiduciary.[7]   Plaintiff cannot satisfy his "heavy burden" of showing a "clearly expressed congressional intention" that ERISA cannot be harmonized with the FAA's requirement that courts enforce the plain terms of arbitration provisions.

The FAA does not contain any reference to ERISA.   Moreover, nothing in the plain language of ERISA Sections 502 or 409 expressly prohibits (or even references) arbitration, individual or otherwise.   Unless Plaintiff can point to explicit language in ERISA prohibiting individual arbitration of claims under Sections 502 or 409, the Court is bound under the FAA to grant Defendants' motion to compel arbitration.   Plaintiff can point to no such language.

Not only are the statutes devoid of any "clearly expressed congressional intention" that ERISA and the FAA cannot be harmonized, but in fact they operate in perfect harmony.   The core principle of the FAA is that "courts must 'rigorously enforce' arbitration agreements according to their terms[.]"   *Am. Express*, 570 U.S. at 233.   An equally fundamental precept of ERISA is that ERISA's statutory scheme is "built around reliance on the face of written plan documents." *Curtiss-Wright*, 514 U.S. at 83.   For this reason, courts must enforce plan documents as written. *See US Airways*, 569 U.S. at 101.   Enforcing the ERISA plan document containing the arbitration provision thus furthers the most fundamental congressional goals of each statute.

### b.     The "Effective Vindication Doctrine" Is Inapplicable.

In the absence of a clearly expressed congressional intention, the only way for Plaintiff to avoid the Plan's arbitration provision would be for him to demonstrate that his claims fall within

---

[7] Plaintiff is bringing suit for alleged ERISA violations under ERISA Sections 502(a)(2) and 409, which read together provide that a plan participant may sue for a fiduciary alleged to have breached duties under ERISA to be held "personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary," and to be "subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."   29 U.S.C. § 1109(a).

the "effective vindication" doctrine—a doctrine that the Supreme Court has recognized in theory but never applied. *Am. Express*, 570 U.S. at 235. Under that theoretical doctrine,[8] a court could decline to enforce an arbitration provision if it were to conclude that the provision prohibited a plaintiff from effectively vindicating his statutory rights. *Id.*

Plaintiff cannot make such a showing here. Enforcing the valid and binding arbitration provisions in Section 10.04 would not affect the individual recovery that Plaintiff (or any other Plan participant) could obtain under ERISA Section 502(a)(2). The individualized arbitration provisions in Sections 10.04(e) and (f) describe remedies available in arbitration for claims under ERISA Section 502(a)(2). *See* Ex. B § 10.04(e), (f).

Plaintiff has no right to anything more than remedies for individual recovery, such as those that Sections 10.04(e) and (f) provide. This is because, as an ESOP, the Plan is a defined contribution plan—a form of retirement plan that "provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999). The Supreme Court has recognized that Section 502(a)(2) in the context of defined contribution plans "authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008).

If he were able to proceed with his claims in federal court, Plaintiff personally would recover a pro rata share of any proven monetary damages attributable to his individual account. He would be able to receive ***the identical*** recovery in individual arbitration (and each Plan

---

[8] As the court observed in *Robertson*, "[r]ecent Supreme Court decisions suggest the effective vindication doctrine may rest on shaky footing." *Robertson*, 2022 WL 2967710, at *7 n.6. The *Robertson* court noted that *American Express* "described the doctrine as stemming from 'dictum,'" and in dissent Justice Ginsburg wrote that *American Express* "suggests that [the effective vindication doctrine] will no longer apply in any case." *See id.*

participant could seek a similar recovery with respect to their own individual Plan accounts).  *See Smith v. Bd. of Dirs. of Triad Mfg., Inc.*, 13 F.4th 613 (7th Cir. 2021).

In *Smith*, the Seventh Circuit reviewed a lower court decision denying a motion to compel individualized arbitration of ERISA claims based on provisions in an ESOP plan document.  *Id.* at 616-17.  The Seventh Circuit acknowledged that individual arbitration is not "inherently incompatible with ERISA":  "Because Smith participated in a defined contribution plan, *LaRue* . . . governs, and the Court made clear in *LaRue* that § 1132(a) 'authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's *individual* account.'"  *Id.* at 622.[9]

This view of individual arbitration as fully compatible with ERISA aligns with *Dorman II*, in which the Ninth Circuit also enforced an individual arbitration provision in an ERISA plan document, holding that "the Plan expressly agreed in the Plan document that all ERISA claims should be arbitrated," and "[a] plan participant agrees to be bound by a provision in the plan document when he participates in the plan while the provision is in effect."  780 F. App'x at 512-13.  This reasoning from the Seventh and Ninth Circuits support enforcing Section 10.04 here.

Recently, a court faced with a motion to compel individual arbitration under an ERISA plan document considered *LaRue*, *Smith*, and *Dorman II* and held that an ESOP plan participant

---

[9] The Second Circuit's decision in *Cooper v. Ruane Cunniff & Goldfarb Inc.*, No. 17-2805, 2021 WL 821390 (2d Cir. Mar. 4, 2021), is not to the contrary.  There the Court reversed a district court decision compelling arbitration because it concluded that ERISA claims fell outside the scope of an arbitration provision contained in a separate employment agreement signed by the plaintiff.  The Court speculated in *dicta* that there could potentially be tension between a class action waiver in an employment agreement and ERISA's remedial provisions.  Both the Court's holding and its observation in *dicta* are distinguishable from this case because, among other things, the arbitration provisions here are contained within the Plan Document rather than in an employment agreement between Plaintiff and WBBQ.  This distinction is critical because a plan document governed by ERISA (which, here, would include the arbitration provisions in Section 10) must be enforced according to its terms.  *See, e.g.*, *US Airways*, 569 U.S. at 101 (courts must enforce plan documents as written); *Curtiss-Wright Corp.*, 514 U.S. at 83 (ERISA's statutory scheme is "built around reliance on the face of written plan documents").

must arbitrate her ERISA claims on an individual basis.  *See Robertson*, 2022 WL 2967710, at *7-

10.  The court in *Robertson* observed that "none of the cited cases suggests that an ERISA §

502(a)(2) plaintiff has an unqualified right to bring a collective action to recoup all of a fiduciary's

losses and gains at once."  *Id.* at *10.  The court explained further that "Section 502(a)(2) only

grants Plaintiff a right to sue for 'appropriate relief under section 409[,]'" and Section 409 in turn

"describes consequences to the errant fiduciary, not the right of the plan participant."  *Id.*  In other

words, while it is true that Section 409 provides that a breaching fiduciary can be ***liable*** for "any

losses to the plan" and "any profits" gained as a result of a breach, the section does ***not*** provide

that ***one*** participant has an unwaivable right to seek that ***entire*** recovery on behalf of all plan

participants.

        These cases—*Smith*, *Dorman II*, and *Robertson*—each read *LaRue* as confirming that the

right a participant in a defined contribution plan (like Plaintiff here) has to pursue remedies under

Sections 502(a)(2) and 409 is for losses or improper fiduciary profits with respect to the

participant's individual plan account (rather than with respect to ***all*** participants' plan accounts).

Plaintiff's right to pursue such remedies is indisputably preserved by the individualized arbitration

provisions in Section 10 of the amended Plan Document.  Accordingly, Plaintiff can "effectively

vindicate" his statutory ERISA rights in individual arbitration, and the effective vindication

doctrine does not prevent the Court from compelling arbitration.

        Plaintiff may argue that the Court should follow the Seventh Circuit's ultimate holding in

*Smith*, but such an argument is unavailing because the *Smith* holding is erroneous and at odds with

Supreme Court precedent.[10]  In *Smith*, the Seventh Circuit held that an individualized arbitration

---

[10] Defendants acknowledge that this Court denied a motion to compel arbitration of ERISA claims
in *Cedeno v. Argent Trust Co.*, No. 20-CV-9987, 2021 WL 5087898, at *1 (S.D.N.Y. Nov. 2,
2021).  That decision is currently on appeal.  *See* Not. of Appeal, *Cedeno v. Argent Tr. Co.*, No.

provision was invalid because it purportedly prevented a participant from seeking a plan-wide equitable remedy—removal of a fiduciary. *Smith*, 13 F.4th at 616-17. Even if the Seventh Circuit were correct that the arbitration provision at issue prohibited an individual from seeking certain plan-wide equitable remedies in arbitration, that alone would not support invalidating an arbitration provision because plan-wide remedies remain available.

Separate from participants' statutory right to pursue their claims, ERISA Section 502(a)(2) authorizes the Secretary of Labor to bring actions on behalf of a plan, in which the Secretary can seek plan-wide relief under Section 409(a) (such as removal of a breaching fiduciary). *See LaRue*, 552 U.S. at 253. The U.S. Department of Labor can investigate and seek to remedy any breach, should it determine one has occurred. Nothing about the arbitration provision at issue curtails those suits or the relief that would be available through them. The Supreme Court has noted an administrative agency's ability to pursue broader relief as another reason for enforcing individual arbitration provisions for federal statutory claims. *See Gilmer*, 500 U.S. at 32 (enforcing individual arbitration of age discrimination claims under the Age Discrimination in Employment Act because "arbitration agreements will not preclude the *EEOC* from bringing actions seeking class-wide and equitable relief"); *see also Williams v. Dearborn Motors 1, LLC*, No. 20-1351, 2021 WL 3854805, at *5-6 (6th Cir. Aug. 30, 2021) (even if the arbitrator could not "award the exact injunctive remedy

---

20-CV-9987 (JGK) (S.D.N.Y. Nov. 19, 2021), ECF No. 75. Respectfully, *Cedeno* was wrongly decided and subject to reversal. First, *Cedeno* held that a "plaintiff has the right under §§ 409(a) and 502(a)(2) to recover for the Plan as a whole," 2021 WL 5087898, at *6, relying on *Smith*, even though *Smith*'s reasoning is not consistent with such a holding; rather than recognizing such a broad right, the Seventh Circuit oppositely concluded that individualized arbitration is not "inherently incompatible" with Section 502(a)(2) claims. *Smith*, 13 F.4th at 622. Second, *Cedeno* should not have followed *Smith*'s holding because it conflicts with Supreme Court precedent in *Gilmer* (see below).

plaintiffs desire[d], the arbitration agreement with its class waiver policy '[would] not preclude the EEOC from bringing actions seeking class-wide and equitable relief'").

For these reasons, this Court should order Plaintiff to arbitrate on an individual basis.

### E. The Case Should Be Stayed While Any Arbitration Proceeds.

Section 3 of the FAA mandates that courts stay proceedings where, as here, alleged claims are arbitrable and a party has asked for a stay. *See* 9 U.S.C. § 3 (providing that, where an issue is to be referred to arbitration, courts "*shall* on application of one of the parties stay the trial of the action") (emphasis added). Because, as discussed above, the Plan Document dictates arbitration of all claims asserted here, the Court must stay the case as Defendants request. *See, e.g.*, *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) (concluding that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested").

### F. The Court Should Award Defendants Attorneys' Fees and Costs, as Provided Under the Plan Document.

The Plan Document provides for an award of attorneys' fees if a Claimant "makes an unsuccessful challenge to the validity, enforceability or scope of the Arbitration Procedure in any court." *See* Ex. B § 10.04(q). Plaintiff has participated in the Plan since its establishment, and he has been aware of the binding arbitration provisions in the Plan Amendment since at least when Defendants' counsel provided a copy to his counsel on July 27, 2022. *See* Compl. ¶ 14; Ex. D. Plaintiff's refusal to dismiss his Complaint necessitated this Motion. Defendants thus are entitled under the Plan Document to reimbursement of attorneys' fees, costs, and any other expenses incurred with respect to moving to compel arbitration. *See, e.g.*, *Barreto v. Jec II, LLC*, No. 16-CV-9729, 2017 WL 3172827, at *6 (S.D.N.Y. July 25, 2017) (awarding attorneys' fees to

defendants who successfully moved to compel arbitration because "the plain text of the arbitration agreements provide for attorneys' fees").

## II.   In the Alternative, The Complaint Should Be Dismissed Under Rule 12(b)(1) For Lack of Article III Standing.

If the Court declines to enforce the arbitration provisions in Section 10 of the amended Plan Document, Defendants also move for dismissal under Rule 12(b)(1) because the Court lacks subject matter jurisdiction.   The Second Circuit has held that, "[i]f plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005); *see also Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (a plaintiff must have both statutory and Article III standing to bring an ERISA action).

To establish standing under Article III, a plaintiff must show "(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020).   An "injury in fact" is "an invasion of a legally protected interest which is . . . concrete and particularized." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).   To be "concrete" an injury "must actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-40 (2016).   Additionally, a plaintiff must "allege[] ***facts*** that affirmatively and plausibly suggest that the plaintiff has standing to sue." *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (emphasis added).

Here, Plaintiff's allegations evince nothing more than the unremarkable fact that a leveraged ESOP stock purchase transaction occurred.   Specifically, Argent (on behalf of the ESOP) and the Wetansons agreed to a transaction in which the ESOP would purchase 80% of the

outstanding stock of WBBQ for $98,887,309 total, which was financed by a loan from the Wetansons for $73,887,309 and a loan from WBBQ for $20,200,000. *See* Compl. ¶¶ 4, 6, 59-63.

Beyond the bare details of the Transaction, Plaintiff alleges ***no relevant facts*** to plead plausibly that he suffered an actual, concrete injury in fact as a result of the Transaction. Rather, he alleges in conclusory fashion that he "suffered a financial injury as a result of Defendants' unlawful conduct." *See id.* ¶ 14. The basis for his purported "financial injury" appears to be that the price that the ESOP paid in the Transaction "far exceeded the fair market value of the purchased shares." *See id.* ¶ 64. That may be the ***theory***, but the only ***fact*** that he offers in support of that claim is irrelevant to establishing that Plaintiff suffered an injury in fact under Article III.

Specifically, Plaintiff feigns shock at the following: "According to the ESOP's 2016 financial statements filed with the DOL, the reported value of the acquired WBBQ stock on December 31, 2016 – just five months after the Transaction – was $72.20 per share, or $28,880,000.00 million in the aggregate, which equals 29.2% of the value that the ESOP paid for WBBQ stock." *See id.* ¶ 65. As courts have recognized, however, a post-ESOP transaction decrease in equity value—such as occurred with the Plan here, Plaintiff alleges—happens naturally (and by operation of simple mathematics) in a leveraged ESOP transaction and thus says nothing whatsoever about whether that transaction was for fair market value.

A decision out of the Eastern District of North Carolina also brought by this Plaintiff's counsel—*Lee v. Argent Trust Co.*, No. 5:19-CV-156, 2019 WL 3729721 (E.D.N.C. Aug. 7, 2019)—is on all fours with and dispositive of Plaintiff's claims here. Indeed, the underlying allegations in *Lee* so closely parallel the relevant facts in this case that one could merely swap in details of the WBBQ transaction and no meaning would be lost. In *Lee*, the ESOP at issue purchased 80% of the outstanding stock of the Choate Construction Company (8 million shares)

21

for $198 million.  *Id.* at *1.  The stock purchase was 100% financed between loans from the selling

shareholders and the company.  *Id.*

        The plaintiff alleged that the defendants violated ERISA in the completing the transaction.

The plaintiff "reason[ed] that, on the basis of the $64.8 million valuation a few weeks later, the

per-share value dropped to $8.10 [from $25.75 per share at the time of the transaction] in such a

short period of time that the first purchase could not have been at fair-market value."  *Id.* at *3.

The court rejected the plaintiff's reasoning and concluded that the plaintiff "has not demonstrated

that she has suffered a concrete and particularized injury."  *Id.*

        In rejecting the plaintiff's alleged injury, the court explained:

> [I]t is better to conceive of this transaction, as defendants have argued, as being comparable to the purchase of a mortgage-financed house.  Suppose that a buyer finds a house that is listed at $198,000.  The buyer has no money for a down payment, however, so she obtains a $198,000 mortgage loan in order to buy the house.  The buyer has taken on a $198,000 debt (the mortgage) and, in return, obtained a $198,000 asset (the home).  As a result, she has experienced ***no change in equity***; her asset and her corresponding obligation result in $0 in new equity.  But now suppose that the $198,000 house is actually worth $262,800, and our buyer was able to purchase the house at a discount.  She still has her $198,000 mortgage, but ***now she also has $64,800 in equity***; if she were to turn around and sell the house at its $262,800 value, after paying off her mortgage, ***she would be left with a tidy profit of $64,800***.

*Id.* (emphasis added).  Applying its mortgage hypothetical to the facts of *Lee*, the court noted that,

because the ESOP purchased shares for $198 million and took out the same amount in loans, "[t]he

expected value of the Choate ESOP's shares—at least in the short term—would be $0."  *Id.* at *4.

"Instead, the $64.8 million valuation at the end of December 2016 reflects the fact that the Choate

ESOP, like the hypothetical buyer, realized an ***immediate equitable benefit***."  *Id.* (emphasis

added).  The court held that "Plaintiff's mere allegation, contradicted by her own complaint, that

the Choate ESOP overpaid for Choate shares is insufficient to support Article III standing in this

case."  *Id.*

Indeed, this Court was recently presented with similar facts in a leveraged ESOP stock purchase transaction and reached the same conclusion.  *See Plutzer v. Bankers Tr. Co. of S.D.*, No. 1:21-CV-3632, 2022 WL 596356 (S.D.N.Y. Feb. 28, 2022) (following *Lee*).  In *Plutzer*, an ESOP purchased 100% of the outstanding stock of Tharanco Group Inc. for $133,430,000, the amount of which was 100% financed by loans from the selling shareholders and company.  *Id.* at *2.  After the transaction, the shares that the ESOP had purchased "were 're-valued at $13,250,000.'"  *Id.*

The court noted that "[t]he gravamen of Plaintiff's Complaint is that the Defendants 'caused the Plan to buy shares of Tharanco for more than fair market value in 2015,' resulting in losses to the Plan participants."  *Id.* at *4.  The court explained further that "Plaintiff appears to plead that the 2015 ESOP transaction was for 'more than fair market value' because, following the transaction, the Tharanco shares were 're-valued at $13,250,000' from the '$133,430,000 paid by the Plan.'"  *Id.*  The court favorably cited the home mortgage analogy from *Lee* and, given that the ESOP's stock was 100% leveraged but still had over $13 million in equity after the transaction, held that the plaintiff failed to allege an injury in fact.  *See id.* at *5-6.

Plaintiff here similarly lacks Article III standing.  As he alleges, the Transaction was nearly 100% leveraged (just like the transactions in *Lee* and *Plutzer*)—the ESOP purchased WBBQ stock for $98,887,309, which was financed with loans totaling $94,087,309 (*i.e.*, a $20,200,000 loan from WBBQ and a $73,887,309 loan from the Wetansons).  *See* Compl. ¶¶ 59, 61-63.  Subtracting the total amount of financing from the total purchase price, one would expect the equity value of the ESOP's stock post-Transaction to be $4,800,000.  But as Plaintiff alleges, the total stock value was actually $28,880,000.  The post-Transaction increase of over $24 million represents the same "tidy profit" that the courts in *Lee* and *Plutzer* held defeats a participant's claim that they suffered an injury in fact.  *See Lee*, 2019 WL 3729721, at *3-4.

23

The post-Transaction reduction in the equity value of WBBQ stock is Plaintiff's only factual allegation supposedly supporting the conclusion that the Transaction was for more than fair market value.  *See* Compl. ¶¶ 64-65.  With this allegation debunked, Plaintiff's barebones claim that he "suffered a financial injury," *see id.* ¶ 14, is utterly conclusory and lacking in plausible factual support.[11]  Accordingly, the Court should conclude that Plaintiff has failed to plead ***facts*** to show he suffered in injury in fact and should dismiss all his claims.  *See John*, 858 F.3d at 736.

## CONCLUSION

For reasons stated above, Defendants respectfully request that the Court compel Plaintiff to follow the plain terms of the Plan Document and arbitrate his claims on an individual basis, and that the Court stay the case while he does so.  Defendants further request that the Court award Defendants their attorneys' fees and costs incurred in seeking this relief.  In the alternative, if the Court were to decline to compel individual arbitration, Defendants request that the Court dismiss the Complaint in its entirety because Plaintiff lacks Article III standing.


Dated: August 1, 2022                    */s/ Lars C. Golumbic*
                                         Lars C. Golumbic*
                                         Mark C. Nielsen
                                         Sarah M. Adams*
                                         Paul J. Rinefierd*
                                         Larry M. Blocho, Jr.*
                                         GROOM LAW GROUP, CHARTERED

---

[11] Plaintiff's Article III standing is not salvaged by his allegation that the WBBQ stock price allegedly "continued to decline" in several years after the Transaction.  Multiple courts have recognized that, under ERISA, the fair market value of shares acquired by an ESOP must be determined at the time of the purchase transaction.  *See, e.g.*, *Hans v. Tharaldson*, No. 3:05-CV-115, 2011 WL 6937598, at *13 (D.N.D. Dec. 23, 2011) ("Post-transaction performance is irrelevant to a valuation analysis."); *Keach v. U.S. Tr. Co., N.A.*, 313 F. Supp. 2d 818, 867 (C.D. Ill. 2004) ("[T]he appropriateness of an investment is to be determined from the perspective of the time the investment was made, not from hindsight."); *Montgomery v. Aetna Plywood, Inc.*, 39 F. Supp. 2d 915, 937 (N.D. Ill. 1998) (finding that "[t]he fair market value" of shares in privately-held company acquired by ESOP "is to be determined as of the date of the transaction").

1701 Pennsylvania Ave., NW
Washington, D.C., 20006
(T) 202-857-0620
(F) 202-659-4503
lgolumbic@groom.com
mnielsen@groom.com
sadams@groom.com
prinefierd@groom.com
lblocho@groom.com

*appearing pro hac vice*