# EXHIBIT A

**W BBQ HOLDINGS, INC.**

**EMPLOYEE STOCK OWNERSHIP PLAN**

Effective January 1, 2016

ARGENT_LLOYD_0000001

# TABLE OF CONTENTS

SECTION I      DEFINITIONS...................................................................................1

    1.1     Account............................................................................................1
    1.2     Acquisition Loan............................................................................2
    1.3     Affiliate..........................................................................................2
    1.4     Annual Compensation...................................................................2
    1.5     Beneficiary.....................................................................................2
    1.6     Board..............................................................................................3
    1.7     Break in Service............................................................................3
    1.8     Cashout Limit................................................................................3
    1.9     Code...............................................................................................3
    1.10    Company........................................................................................3
    1.11    Disability.......................................................................................3
    1.12    Effective Date...............................................................................3
    1.13    Eligibility Service.........................................................................3
    1.14    Eligible Employee.........................................................................3
    1.15    Employee.......................................................................................4
    1.16    Employer........................................................................................4
    1.17    Entry Date......................................................................................4
    1.18    ERISA............................................................................................4
    1.19    Fair Market Value.........................................................................4
    1.20    Fiduciary.......................................................................................5
    1.21    FMLA Leave..................................................................................5
    1.22    Highly Compensated Employee....................................................5
    1.23    Hour of Service............................................................................6
    1.24    Investment Committee..................................................................7
    1.25    Investment Manager.....................................................................7
    1.26    Loan Suspense Account................................................................7
    1.27    Member..........................................................................................7
    1.28    Named Fiduciary..........................................................................8
    1.29    Normal Retirement Age................................................................8
    1.30    Plan Administrator........................................................................8
    1.31    Plan Year.......................................................................................8
    1.32    Publicly Traded............................................................................8
    1.33    Qualifying Employer Securities...................................................8
    1.34    Retirement Date............................................................................8
    1.35    S Corporation...............................................................................8
    1.36    Trust...............................................................................................8
    1.37    Trust Agreement...........................................................................8
    1.38    Trustee..........................................................................................9
    1.39    Valuation Date..............................................................................9
    1.40    Vesting Service.............................................................................9

SECTION II     ELIGIBILITY ...............................................................................10

    2.1     Current and New Employees.......................................................10

ARGENT_LLOYD_0000002

| | | |
|---|---|---|
| 2.2 | Former Members | 10 |
| 2.3 | Limitation of Rights of Membership | 10 |

SECTION III    CONTRIBUTIONS .................................................................. 11

| | | |
|---|---|---|
| 3.1 | Discretionary Contributions | 11 |
| 3.2 | Acquisition Loan Contributions | 11 |
| 3.3 | Restrictions | 11 |

SECTION IV    ALLOCATIONS OF CONTRIBUTIONS, FORFEITURES AND
               EARNINGS ......................................................................... 12

| | | |
|---|---|---|
| 4.1 | Allocation of Employer Contributions and Forfeitures | 12 |
| 4.2 | Allocations from the Loan Suspense Account | 12 |
| 4.3 | Reallocations to Comply with Code Coverage Requirements | 13 |
| 4.4 | Allocations of Other Income or Loss and Certain Purchases of Qualifying Employer Securities | 13 |
| 4.5 | Restrictions on Allocations of 1042 Stock | 15 |
| 4.6 | Limitations on Allocations | 15 |
| 4.7 | Limitations on Allocations When Employer is an S Corporation | 16 |

SECTION V    ACQUISITION AND INVESTMENT OF TRUST ASSETS ...................... 19

| | | |
|---|---|---|
| 5.1 | Acquisition Loans | 19 |
| 5.2 | Release of Qualifying Employer Securities | 19 |
| 5.3 | Loan Payments | 20 |
| 5.4 | Refinancing of Exempt Loan Due to Insufficient Funds | 20 |
| 5.5 | General Provisions | 20 |
| 5.6 | Investment in Qualifying Employer Securities | 20 |

SECTION VI    PAYMENT OF BENEFITS AT RETIREMENT DATE OR DEATH
               DURING EMPLOYMENT ........................................................ 21

| | | |
|---|---|---|
| 6.1 | Payment at Retirement Date or Death | 21 |
| 6.2 | Form of Payment of Employer Contribution Account | 21 |
| 6.3 | Form of Payment of ESOP Account | 22 |
| 6.4 | Consent to Payment | 22 |
| 6.5 | Minimum Payments | 23 |
| 6.6 | Direct Rollover | 23 |

SECTION VII    PAYMENT OF BENEFITS AT TERMINATION OF
                EMPLOYMENT ................................................................. 25

| | | |
|---|---|---|
| 7.1 | Transfer Not Termination of Employment | 25 |
| 7.2 | Amount of Payment | 25 |
| 7.3 | Vested Portion of Member Accounts | 25 |
| 7.4 | Time and Form of Payment of Vested Employer Contribution Account | 25 |
| 7.5 | Time and Form of Payment of Vested ESOP Account | 25 |
| 7.6 | Consent to Payments | 26 |
| 7.7 | Forfeiture and Restoration of Nonvested Amounts | 26 |

ii

ARGENT_LLOYD_0000003

7.8      Rights Upon Change in Vesting Schedule ........................................................ 26

SECTION VIII    DIVERSIFICATION OF INVESTMENTS ...................................................... 27

8.1      Eligibility to Receive Diversification Distribution ...................................... 27
8.2      Timing of Distribution ................................................................................ 27

SECTION IX    ADMINISTRATION OF THE PLAN ............................................................ 28

9.1      Trust Agreement ......................................................................................... 28
9.2      Operation of the Plan Administrator .......................................................... 28
9.3      Fiduciary Responsibility ............................................................................. 28
9.4      Duties of the Plan Administrator ................................................................ 28
9.5      Investment Manager .................................................................................... 29
9.6      Investment Committee ................................................................................ 29
9.7      Action by an Employer ............................................................................... 29
9.8      Voting and Decisions Regarding Qualifying Employer Securities .............. 29

SECTION X    CLAIM REVIEW PROCEDURE ................................................................. 31

10.1     Notice of Denial of Claim ........................................................................... 31
10.2     Request for Review of Denied Claim ......................................................... 32
10.3     Review of Denied Claim ............................................................................. 32
10.4     Decision After Review of Denied Claim .................................................... 32

SECTION XI    LIMITATION OF ASSIGNMENT, QUALIFIED DOMESTIC
RELATIONS ORDERS, PAYMENTS TO LEGALLY
INCOMPETENT DISTRIBUTEE, UNCLAIMED PAYMENTS AND
OFFSET OF BENEFITS ............................................................................. 34

11.1     Anti-Alienation Clause ............................................................................... 34
11.2     Qualified Domestic Relations Orders ......................................................... 34
11.3     Payments to Legal Guardians ..................................................................... 35
11.4     Lost Members and Beneficiaries ................................................................ 35
11.5     Offset of Benefits ....................................................................................... 35

SECTION XII    AMENDMENT TO OR TERMINATION OF THE PLAN AND THE
TRUST ....................................................................................................... 36

12.1     Amendment and Termination by the Company ........................................... 36
12.2     Termination of Participation ....................................................................... 36
12.3     Effect of Plan Termination .......................................................................... 36
12.4     Plan Qualification Determination ............................................................... 36
12.5     Plan Merger ................................................................................................. 36
12.6     Company Merger ........................................................................................ 37

ARGENT_LLOYD_0000004

SECTION XIII    ADOPTION OF THE PLAN AND TRUST AGREEMENT BY
AFFILIATES ................................................................................. 37

SECTION XIV    QUALIFICATION AND RETURN OF CONTRIBUTIONS ...................... 38

14.1   Contributions Conditioned on Qualification .......................................... 38
14.2   Mistake of Fact and Nondeductibility ................................................... 38
14.3   Amount to be Returned ....................................................................... 38
14.4   Insufficiency of Trust to Fund Returns ................................................. 38

SECTION XV    COMPLIANCE WITH UNIFORMED SERVICES AND
REEMPLOYMENT RIGHTS ACT OF 1994 ............................... 39

15.1   Rights During Military Service and Upon Reemployment Thereafter ............... 39

SECTION XVI    INCORPORATION OF SPECIAL LIMITATIONS ..................................... 40

SECTION XVII    GOVERNING LAW ..................................................................... 41

iv

ARGENT_LLOYD_0000005

**W BBQ HOLDINGS, INC.**
**EMPLOYEE STOCK OWNERSHIP PLAN**

THIS INDENTURE is made on the 29th day of July_____, 2016, by W BBQ Holdings, Inc., a corporation duly organized and existing under the laws of the State of Delaware (the "Company").

<u>W I T N E S S E T H</u>:

WHEREAS, the Company desires to recognize and reward the contribution by its employees to its successful operation, and to provide incentive for its employees to increase their productivity, by enabling them to acquire stock ownership interests in the Company; and

WHEREAS, the Company desires to attain these objectives pursuant to a plan designed to invest primarily in stock of the Company, which shall qualify as an "employee stock ownership plan" within the meaning of Section 4975(e)(7) of the Internal Revenue Code of 1986 and Section 407(d)(6) of the Employee Retirement Income Security Act of 1974; and

WHEREAS, the Company has adopted and maintains the W BBQ HOLDINGS, INC. PROFIT SHARING PLAN (the "Profit Sharing Plan"); and

WHEREAS, the Company now wishes to amend and restate the Profit Sharing Plan to become the W BBQ HOLDINGS, INC. EMPLOYEE STOCK OWNERSHIP PLAN (the "Plan"); and

WHEREAS, the Company is entering into a trust agreement as of the date of this Plan, with Argent Trust Company as the successor trustee;

NOW, THEREFORE, the Company hereby adopts the Plan, effective as of January 1, 2016, as follows:

**SECTION I**
**DEFINITIONS**

1.1     <u>Account</u>.  The Plan Administrator shall maintain separate accounts (each of which shall be adjusted pursuant to the Plan to reflect income, gains, losses and other credits or charges attributable thereto), three of which are as follows:

(a)     <u>Employer Contribution Account</u>.  A Member's interest in discretionary contributions that an Employer makes to the Trust under Section 3.1 in a form other than Qualifying Employer Securities, certain cash dividends or distributions paid on Qualifying Employer Securities, forfeitures from the Employer Contribution Accounts of other Members, and Qualifying Employer Securities transferred pursuant to Section 4.7(e) to avoid the occurrence of a "nonallocation year" under Code Section 409(p).

(b)     <u>ESOP Account</u>.  A Member's interest in Qualifying Employer Securities (other than such Qualifying Employer Securities transferred to the Employer

ARGENT_LLOYD_0000006

Contribution Account pursuant to Section 4.7(e)) and forfeitures from the ESOP Accounts of other Members.

(c)   ESOP Suspense Account.  Plan assets that have not been allocated to the Accounts of Members pursuant to Section 4.2.

1.2   Acquisition Loan.  A loan or other extension of credit made to the Plan including a direct loan of cash, a purchase-money transaction, and an assumption of a Plan obligation, the proceeds of any of which the Trustee uses to finance the acquisition of Qualifying Employer Securities or to repay an Acquisition Loan.

1.3   Affiliate.  (a) Any corporation that is a member of the same controlled group of corporations (within the meaning of Code Section 414(b)) as is the Company, (b) any other trade or business (whether or not incorporated) under common control (within the meaning of Code Section 414(c)) with the Company, (c) any other corporation, partnership or other organization that is a member of an affiliated service group (within the meaning of Code Section 414(m)) with the Company, and (d) any other entity required to be aggregated with the Company pursuant to Code Section 414(o).

1.4   Annual Compensation.  The amount an Employer (and any Affiliate) pays to a Member during a Plan Year as wages within the meaning of Code Section 3401(a) for which the Employer must furnish a written statement under Code Sections 6041(d), 6051(a)(3) and 6052 (currently Form W-2 in the box entitled "wages, tips, other compensation").   Annual Compensation shall include any amount an Employer contributes on behalf of an Employee that is not includable in the gross income of the Employee by virtue of Code Sections 125(a), 132(f)(4), 402(e)(3), 402(h)(1)(B), 402(k) or 457.  Annual Compensation shall be determined without regard to any rules that limit the remuneration included in wages based on the nature or location of the employment or the services performed.  For 2016, Annual Compensation shall not exceed $265,000, as adjusted thereafter by the Secretary of the Treasury in accordance with Code Section 401(a)(17)(B).  The cost of living adjustment in effect for a calendar year applies to any period beginning in such calendar year that does not exceed 12 months and over which the Plan Administrator determines Annual Compensation.  If the period over which the Plan Administrator determines Annual Compensation is shorter than 12 months, the Annual Compensation limit, as adjusted, will be multiplied by a fraction, the numerator of which is the number of months in the determination period, and the denominator of which is 12.  For purposes of determining contributions under Article III and allocations under Article IV, Annual Compensation shall include such amounts the Member received during a Plan Year in which he was an Employee but had not yet become a Member.  The term "Annual Compensation" shall also include amounts paid after severance from employment as described in Treasury Regulation 1.415(c)-2(e)(3)(i) through (iii).

1.5   Beneficiary.  The person, trust, estate, partnership, corporation or other entity that a Member most recently designated in writing to the Plan Administrator.  However, the spouse of a married Member shall be his Beneficiary unless the spouse has consented in writing to the designation by the Member of some other person and the spouse's consent acknowledges the effect of the designation and a notary public or Plan representative witnesses the acknowledgment.  A Member may change his designation at any time but only with the consent

2

ARGENT_LLOYD_0000007

of his spouse unless the spouse's previous consent permits designation of another person without further spousal consent and acknowledges that the spouse has the right to limit consent to a specific beneficiary and voluntarily relinquishes this right. The spouse's consent shall not be required if the Member establishes to the satisfaction of the Plan Administrator that the spouse cannot be located, if the Member has a court order indicating that he is legally separated or has been abandoned (within the meaning of local law) unless a "qualified domestic relations order" (as defined in Code Section 414(p)) provides otherwise, or if there are other circumstances as the Secretary of the Treasury prescribes. If the spouse is legally incompetent to give consent, consent by the legal guardian of the spouse shall be deemed to be consent by the spouse. Any consent by a spouse, or the establishment that the consent of a spouse cannot be obtained, shall be effective only with respect to such spouse. If a Member dies without a spouse and either has failed to make a designation or the designated person is not alive or the designated entity does not exist, the term "Beneficiary" means (a) the Member's surviving children, or (b) if no children are alive, the Member's surviving grandchildren, or (c) if no grandchildren are alive, the Member's surviving parents, or (d) if no parents are alive, the legal representative of the deceased Member's estate.

     1.6    <u>Board</u>. The board of directors or other governing body of the Company.

     1.7    <u>Break in Service</u>. The failure of an Employee to complete more than 500 Hours of Service in any Plan Year.

     1.8    <u>Cashout Limit</u>. The Cashout Limit is $1,000.

     1.9    <u>Code</u>. The Internal Revenue Code of 1986, as amended.

     1.10    <u>Company</u>. W BBQ Holdings, Inc. or any successor company.

     1.11    <u>Disability</u>. The inability of the Member to engage in any substantial gainful activity by reason of any medically determinable mental or physical impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of 12 months. The Plan Administrator, based on medical evidence that it deems in the exercise of its discretion to be competent and objective, shall determine whether such inability exists.

     1.12    <u>Effective Date</u>. January 1, 2016.

     1.13    <u>Eligibility Service</u>. A 12 consecutive month period during which the Employee completes no fewer than 1,000 Hours of Service beginning on the date on which the Employee first performs an Hour of Service upon his employment or reemployment. If the Employee fails to complete 1,000 Hours of Service in that 12 consecutive month period, the 12 consecutive month period is any Plan Year thereafter, including the Plan Year that includes the first anniversary of the date the Employee first performed an Hour of Service upon his employment or reemployment. However, in the case of an Employee who has no vested right in Employer contributions, Eligibility Service shall not include any service earned before a period of consecutive Breaks in Service if such period equals or exceeds the greater of (a) five, or (b) the aggregate number of years prior to the first Break in Service during which an Employee completed 1,000 Hours of Service.

3

ARGENT_LLOYD_0000008

1.14   Eligible Employee.   An Employee of an Employer other than an Employee (a) whom a collective bargaining agreement between a union and an Employer covers, provided that retirement benefits were the subject of good faith bargaining, unless the collective bargaining agreement provides for participation in the Plan, (b) who is a nonresident alien who receives no earned income within the meaning of Code Section 911(d)(2) from an Employer that constitutes income from sources within the United States within the meaning of Code Section 861(a)(3), (c) who is or was a shareholder of an Employer, or (d) who is employed to provide services exclusively to any entity operating a Tony's Di Napoli restaurant.

1.15   Employee.   A person whom an Employer or an Affiliate employs within the meaning of the Federal Insurance Contributions Act.

1.16   Employer.   The Company and any Affiliate that has adopted in accordance with Section XIII the Plan and the Trust Agreement.

1.17   Entry Date.   Entry date means January 1 of each calendar year.

1.18   ERISA.   The Employee Retirement Income Security Act of 1974, as amended.

1.19   Fair Market Value.

(a)      The closing price of the Qualifying Employer Securities on the principal securities exchange on which they are traded on the day immediately preceding the date as of which Fair Market Value is being determined or, if no Qualifying Employer Securities were traded on the immediately preceding day, on the next preceding trading date.

(b)      If Qualifying Employer Securities are not traded on a securities exchange, but are reported by the National Association of Securities Dealers, Inc. Automated Quotation System and market information is published on a regular basis in *The New York Times* or *The Wall Street Journal,* the average of the published high and low sales price or the published daily bid and asked prices, as so published, on the day immediately preceding the date as of which Fair Market Value is being determined or on the next preceding date on which such prices were published.

(c)      If such market information is not published on a regular basis, the average of the high bid and low asked prices of Qualifying Employer Securities in the over-the-counter market on the date immediately preceding the date as of which Fair Market Value is being determined or on the next preceding date on which such high bid and low asked prices were recorded, as reported by the National Association of Securities Dealers Automated Quotation System, or, if not so reported, by a generally accepted reporting service.

(d)      If Qualifying Employer Securities are not Publicly Traded, Fair Market Value shall be the value the Trustee in good faith determines based upon the advice of an independent appraiser as described in Code Section 401(a)(28).

4

ARGENT_LLOYD_0000009

(e)    As to any asset other than Qualifying Employer Securities, the value of the asset that the Trustee or other Fiduciary who has the responsibility under the Plan or Trust Agreement for valuing such asset in good faith determines.

1.20    <u>Fiduciary</u>.    Each Named Fiduciary and any other person who exercises any discretionary authority or control regarding management of the Plan, any person who has any discretionary authority or responsibility in the administration of the Plan, any other person who renders investment advice for a fee or has any authority or responsibility to do so with respect to any assets of the Plan, or any other person who exercises any authority or control respecting management or disposition of assets of the Plan.

1.21    <u>FMLA Leave</u>.    A leave of absence that an Employer must extend to an Employee under the Family Medical Leave Act of 1993.

1.22    <u>Highly Compensated Employee</u>.

(a)    An Employee who

(1)    during the current or preceding Plan Year was an owner (or was considered an owner within the meaning of Code Section 318) of more than five percent of the Employer or an Affiliate, or

(2)    commencing in 2016, for the preceding Plan Year received Annual Compensation in excess of $120,000, as adjusted thereafter by the Secretary of the Treasury and, if the Employer elects, who was in the group consisting of the most highly compensated 20 percent of Employees.

For purposes of this Subsection (a), Employees who are non-resident aliens and who receive no earned income from the Employer or its Affiliates from sources within the United States shall be excluded, and for purposes of determining whether an Employee was in the group consisting of the most highly compensated 20 percent of Employees under Paragraph (2) of this Subsection (a), the following shall be excluded:

(A)    Employees who have not completed six months of service;

(B)    Employees who normally work less than 17½ hours per week;

(C)    Employees who normally work during not more than six months during any Plan Year;

(D)    Employees who have not attained age 21; and

(E)    Employees who are included in a unit of employees covered by an agreement that the Secretary of Labor finds to be a collective bargaining agreement between employee representatives and the Employer or its Affiliates, provided 90 percent or more of the Employees

5

ARGENT_LLOYD_0000010

are covered under collective bargaining agreements and the Plan only covers Employees who are not covered under the collective bargaining agreements.

(b)     For purposes of this Section, a former Employee shall be treated as a Highly Compensated Employee if (1) he was a Highly Compensated Employee at the time he terminated employment with the Employer or Affiliate or (2) the former Employee was a Highly Compensated Employee at any time after he attained age 55; and

(c)     For purposes of this Section, Annual Compensation shall be determined without regard to the $265,000 limitation, as adjusted, described in Section 1.4.

1.23    Hour of Service.

(a)     Each hour for which an Employee is paid, or entitled to payment, for the performance of duties for an Employer or any Affiliate during the applicable computation period, and such hours shall be credited to the computation period in which the duties are performed;

(b)     Each hour for which an Employee is paid, or entitled to payment, by an Employer or any Affiliate on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence and such hours shall be credited pursuant to Section 2530.200(b)-2(c)(2) of the Department of Labor Regulations;

(c)     Each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by an Employer or any Affiliate, and such hours shall be credited to the computation period or periods to which the award or agreement for back pay pertains rather than to the computation period in which the award, agreement or payment is made; provided, that the crediting of Hours of Service for back pay awarded or agreed to with respect to periods described in Subsection (b) of this Section shall be subject to the limitations set forth in Subsection (d);

(d)     Solely for purposes of determining whether a Break in Service has occurred, each hour during any period that the Employee is absent from work (1) by reason of the pregnancy of the Employee, (2) by reason of the birth of a child of the Employee, (3) by reason of the placement of a child with the Employee in connection with the adoption of the child by the Employee, or (4) for purposes of caring for such child for a period immediately following its birth or placement.  The hours described in this Subsection (d) shall be credited (1) only in the computation period in which the absence from work begins, if the Employee would be prevented from incurring a Break in Service in that year solely because of that credit, or (2) in any other case, in the next following computation period;

(e)     In no event shall an Employee be credited with more than 501 Hours of Service during any single continuous period during which he performs no duties for the Employer or an Affiliate; and

6

ARGENT_LLOYD_0000011

       (f)    In the event that an Employer or an Affiliate acquires substantially all of the assets of another corporation or entity or a controlling interest of the stock of another corporation or merges with another corporation or entity and is the surviving entity, then service of an Employee whom the prior corporation or entity employed and whom the Employer or an Affiliate employed at the time of the acquisition or merger shall be counted in the manner as provided, with the consent of the Company, in resolutions that the Employer adopts.

       (g)    Solely for purposes of determining the effect of a Break in Service on Vesting Service, an Employee who takes unpaid leave under the Family and Medical Leave Act of 1993 shall receive credit for the Hours of Service that normally would have been credited to such Employee but for such leave.  The total number of Hours of Service that can be credited under this Subsection (g) cannot exceed 501, and such Hours of Service shall be credited (1) in the computation period in which the absence began if necessary to prevent the Break in Service in that period, or (2) in all other cases, in the following computation period.  Any Employee who receives credit for Hours of Service for a leave of absence under Subsection (d) shall not receive credit for those same Hours of Service under this Subsection.

    1.24   <u>Investment Committee</u>.  A committee that the Company may designate to direct the Trustee with respect to investments of the Trust.

    1.25   <u>Investment Manager</u>.  An entity that the Company may appoint and:

       (a)    that has the power to manage, acquire or dispose of any assets of the Trust or a portion thereof; and

       (b)    that (1) is registered as an investment adviser under the Investment Advisers Act of 1940, (2) is a bank as defined in that Act, or (3) is an insurance company qualified to perform services described in Subsection (a) above under the laws of more than one state; and

       (c)    that has acknowledged in writing that it is a Fiduciary with respect to the Plan.

    1.26   <u>Loan Suspense Account</u>.  The Plan's interest in Qualifying Employer Securities acquired with the proceeds of an Acquisition Loan that have not been allocated to the ESOP Accounts of Members pursuant to Section 4.2.

    1.27   <u>Member</u>.  Any Eligible Employee or former Eligible Employee who has become a participant in the Plan for so long as his Account has not been fully paid pursuant to the Plan.

    1.28   <u>Named Fiduciary</u>.  The following, each of which shall have only the responsibilities described in the Plan and/or Trust Agreement:

       (a)    the Administrator;

       (b)    the Investment Committee;

ARGENT_LLOYD_0000012

(c)    the Investment Manager; and

(d)    the Trustee.

1.29    <u>Normal Retirement Age</u>.  The latter of age 65 or the fifth anniversary of membership in the Plan.

1.30    <u>Plan Administrator</u>.  A committee that the Company may designate to administer the Plan.

1.31    <u>Plan Year</u>.  The calendar year.

1.32    <u>Publicly Traded</u>.  Qualifying Employer Securities that are traded on a national securities exchange registered under Section 6 of the Securities Exchange Act of 1934 (15 U.S.C. § 78f) or that is traded on a foreign national securities exchange that is officially recognized, sanctioned or supervised by a governmental authority, and the security is deemed by the SEC as having a "ready market" under SEC Rule 15c 3-1 (17 CFR 240-15 c 3-1)

1.33    <u>Qualifying Employer Securities</u>.  Common stock that the Company issues (or that a corporation that is a member of the same controlled group issues) that is Publicly Traded or, if no such common stock is Publicly Traded, common stock that has voting power and dividend rights no less favorable than the voting power and dividend rights of any other common stock the Company issues (or that a corporation that is a member of the controlled group issues), or if the Company is not an S corporation within the meaning of Code Section 1361 shares of noncallable preferred stock that the Company issues (or that a corporation that is a member of the same controlled group issues) that are at all times immediately convertible into the common stock described above (whichever is applicable) at a reasonable conversion price.

1.34    <u>Retirement Date</u>.  The first day of the month coinciding with or next following the date on which the Member retires on or after he (a) reaches Normal Retirement Age or (b) becomes subject to a Disability.

1.35    <u>S Corporation</u>.  The term S corporation means an S corporation as defined in Code Section 1361(a)(1).

1.36    <u>Trust</u>.  The amount of cash and other property that the Trustee holds pursuant to the Plan.

1.37    <u>Trust Agreement</u>.  The agreement or agreements between the Company and the Trustee that establishes the Trust.

1.38    <u>Trustee</u>.  The trustee or trustees of the Trust.

1.39    <u>Valuation Date</u>.  The last day of each Plan Year or any other day that the Plan Administrator declares to be a Valuation Date.

1.40    <u>Vesting Service</u>.  Beginning the date on which the Employee is first credited with an Hour of Service, completion at of least 1,000 Hours of Service in a Plan Year.  If there is a

ARGENT_LLOYD_0000013

Plan Year of less than 12 months, an Employee will receive a year of Vesting Service for the short Plan Year if he performs at least 1,000 Hours of Service during the 12-consecutive month period beginning with the first day of that short Plan Year and ending 12 months after that date. Vesting Service shall be subject to the following exceptions:

      (a)    service before a Break in Service shall be counted as Vesting Service only after an Employee has completed one year of Vesting Service after his return date of his reemployment, except as provided in Subsections (b) and (c) below;

      (b)    Vesting Service shall not include service completed after a period of five consecutive Breaks in Service, for purposes of determining the Member's vested interest in Employer contributions made before such period; and

      (c)    in the case of an Employee or Member who has no vested right in Employer contributions, Vesting Service shall not include any service earned before a period of consecutive Breaks in Service if such period equals or exceeds the greater of (1) five, or (2) the aggregate number of years of Vesting Service earned before such period commenced.

9

ARGENT_LLOYD_0000014

## SECTION II
## ELIGIBILITY

2.1     <u>Current and New Employees</u>.  Each Eligible Employee who is a Member of the Profit Sharing Plan as of the Effective Date shall be a Member of the ESOP as of the Effective Date.  Each other Eligible Employee shall become a Member on the Entry Date nearest the date on which he has completed one year of Eligibility Service and attained age 21.

2.2     <u>Former Members</u>.  Each former Member shall again become a Member as of the date he becomes an Eligible Employee.

2.3     <u>Limitation of Rights of Membership</u>.  Membership in the Plan shall not give any Employee any right or claim except to the extent that such right is specifically fixed under the terms of the Plan.  The adoption of the Plan and the Trust shall not be construed to give any Employee a right to continued employment with an Employer or an Affiliate or as interfering with the right of an Employer or an Affiliate to terminate the employment of the Employee at any time.

10

ARGENT_LLOYD_0000015

## SECTION III
## CONTRIBUTIONS

3.1    Discretionary Contributions.  An Employer, at its sole discretion, may with the consent of the Company make contributions to the Trust on behalf of each Member entitled to an allocation under Section 4.1 in any amount the Employer determines, in the form of cash, or other property.

3.2    Acquisition Loan Contributions.  An Employer shall contribute to the Trust and pay dividends or distributions on Qualifying Employer Securities the Trust owns in such amounts as the Company determines are needed to make principal and interest payments under an Acquisition Loan.

3.3    Restrictions.  Notwithstanding the provisions of Sections 3.1 and 3.2, Employer contributions to the Trust for any Plan Year under this Section III may not exceed the deductible limits under Code Section 404.

11

ARGENT_LLOYD_0000016

**SECTION IV**
**ALLOCATIONS OF CONTRIBUTIONS, FORFEITURES AND EARNINGS**

4.1    Allocation of Employer Contributions and Forfeitures.

(a)    As of the last day of each Plan Year, Qualifying Employer Securities the Employer contributes pursuant to Section 3.1 for that Plan Year, Qualifying Employer Securities purchased with Employer discretionary cash contributions that are made pursuant to Section 3.1 for that Plan Year, and any forfeitures of Qualifying Employer Securities from ESOP Accounts for that Plan Year, shall be allocated to the ESOP Account of each Member who has completed 1,000 Hours of Service during the Plan Year and whom an Employer employs on the last day of the Plan Year and also to the ESOP Account of each Member whose death or Retirement Date occurred during the Plan Year, in each instance in the proportion that the Member's Annual Compensation bears to the aggregate Annual Compensation of all such Members.  A Member on FMLA Leave on the last day of the Plan Year shall be deemed to be employed on such date.

(b)    As of the last day of each Plan Year, cash that the Employer contributes pursuant to Section 3.1 for that Plan Year that has not been used to purchase Qualifying Employer Securities, and forfeitures from the Employer Contribution Accounts for that Plan Year, shall be allocated to the Employer Contribution Account of each Member who has completed 1,000 Hours of Service during the Plan Year and whom an Employer employs on the last day of the Plan Year and also to the Employer Contribution Account of each Member whose death or Retirement Date occurred during the Plan Year, in each instance in the proportion that the Member's Annual Compensation bears to the aggregate Annual Compensation of all such Members.  A Member on FMLA Leave on the last day of the Plan Year shall be deemed to be employed on such date.

4.2    Allocations from the Loan Suspense Account.

(a)    Qualifying Employer Securities purchased with the proceeds of an Acquisition Loan shall be credited to the Loan Suspense Account.

(b)    Except as provided in Subsections 4.2(c) and 4.2(d) below, any shares of Qualifying Employer Securities that are released from the Loan Suspense Account by reason of the repayment of an Acquisition Loan with Employer contributions shall, as of the last day of the Plan Year in which the repayment of the Acquisition Loan was made, be allocated to the ESOP Account of each Member who has completed 1,000 Hours of Service during the Plan Year and whom an Employer employs on the last day of the Plan Year and also to the ESOP Account of each Member whose death or Retirement Date occurred during the Plan Year, in each instance in the proportion that the Member's Annual Compensation bears to the aggregate Annual Compensation of all such Members. A Member on FMLA Leave on the last day of the Plan Year shall be deemed to be employed on such date.

(c)    Any shares of Qualifying Employer Securities that are released from the Loan Suspense Account by reason of the repayment of an Acquisition Loan with cash

12

dividends or cash distributions paid on Qualifying Employer Securities credited to the Loan Suspense Account shall be allocated to the ESOP Account of each Member in the proportion that the number of shares of Qualifying Employer Securities in the ESOP Account of such Member bears to the aggregate number of shares of Qualifying Employer Securities in the ESOP Accounts of all Members as of the Valuation Date coinciding with or immediately preceding the record date on which the cash dividends or cash distributions accrued, except that if no Qualifying Employer Securities are allocated to the ESOP Accounts of Members as of such record date, such allocation shall be made in the manner provided in Subsection 4.2(b).

(d)    Any shares of Qualifying Employer Securities that are released from the Loan Suspense Account by reason of the repayment of an Acquisition Loan with cash distributions or dividends paid on Qualifying Employer Securities allocated to a Member's ESOP Account shall be allocated to the ESOP Account of each Member in the proportion that the ESOP Account of such Member bears to the aggregate ESOP Accounts of all such Members as of the Valuation Date coinciding with or immediately preceding the record date on which the cash distributions or dividends are paid. However, each such Member's ESOP Account shall be allocated shares having a Fair Market Value at least equal to the cash distribution or dividend that otherwise would have been allocated to the Member's Employer Contribution Account.

(e)    References in Section 4 and elsewhere in the Plan to cash distributions shall mean those distributions paid on Qualifying Employer Securities while the Employer is an S corporation within the meaning of Code Section 1361.

4.3    <u>Reallocations to Comply with Code Coverage Requirements</u>.  If for any Plan Year Members do not receive an allocation of Employer contributions or forfeitures to their Accounts because they completed fewer than 1,000 Hours of Service or an Employer did not employ them on the last day of the Plan Year, and as a result the Plan would fail to comply with Code Section 410(b)(1)(A) or (B), then for such Plan Year the allocation of Employer contributions and forfeitures shall be computed also to include such Members as determined below to the extent necessary to comply with Code Section 410(b)(1)(A) or (B).  The number of such Members shall be the minimum number as are necessary to permit the Plan to comply with Code Section 410(b)(1)(A) or (B), and the specific Members who shall receive an allocation shall be those Members included in the minimum number whose Hours of Service for such Plan Year both exceeded 500 and were the highest.  In the event two or more of such specific Members have the same number of Hours of Service for such Plan Year, then all of such Members with the same number of Hours of Service shall receive an allocation.

4.4    <u>Allocations of Other Income or Loss and Certain Purchases of Qualifying Employer Securities</u>.

(a)    Except as otherwise provided in the Plan and the Trust Agreement, as of each Valuation Date, the Trustee shall determine and allocate to each Account its share of the rest of the net income or net loss of the Trust in the following manner.

13

ARGENT_LLOYD_0000018

(1)    Any cash distributions or cash dividends (except for those cash distributions or cash dividends that are used to repay an Acquisition Loan) paid with respect to, or other consideration received from the sale, exchange or disposition of, Qualifying Employer Securities already allocated to the ESOP Account of a Member on the record date on which such cash distributions or cash dividends are paid or the date the other consideration is received, and any income attributable to such cash distributions, cash dividends or other consideration, shall be allocated to such Member's Employer Contribution Account.  Any such cash distributions or cash dividends paid with respect to, or other consideration received from the sale of Qualifying Employer Securities held in the Loan Suspense Account on the record date on which such cash distributions or cash dividends are paid or the date the other consideration is received and any income attributable to such cash distributions, cash dividends or other consideration shall be allocated, unless the Trustee uses such cash distributions or cash dividends, other consideration and income to repay an Acquisition Loan, to each Member's Employer Contribution Account in the proportion that the number of shares of Qualifying Employer Securities in the ESOP Account of such Member bears to the aggregate number of shares of Qualifying Employer Securities in the ESOP Accounts of all Members as of the Valuation Date coinciding with or immediately preceding the date on which such cash distributions or cash dividends are paid or the date the other consideration is received.

(2)    If the Trustee repays an Acquisition Loan with any consideration received from the sale, exchange or disposition of Qualifying Employer Securities allocated to the Loan Suspense Account on the date the consideration is received, any such consideration that remains after repayment of the Acquisition Loan shall be allocated to each Member's Employer Contribution Account in the ratio that the number of shares of Qualifying Employer Securities in the ESOP Account of such Member bears to the aggregate number of shares of Qualifying Employer Securities in the ESOP Accounts of all Members as of the Valuation Date coinciding with or immediately preceding the date the consideration is received.

(3)    Any stock dividends paid on Qualifying Employer Securities already allocated to or held in an ESOP Account or the Loan Suspense Account shall be allocated to each such ESOP Account or the Loan Suspense Account, as applicable, as of the Valuation Date coinciding with or next following the payment of the stock dividends.

(4)    Except as otherwise provided in this Section 4.4 and the Trust Agreement, the Trustee shall determine and allocate the other net income and loss of each of the Accounts separately as of each Valuation Date as follows.

(A)    To the cash income since the last Valuation Date there shall be added or subtracted any net increase or decrease in the fair market value of the Trust assets, any gain or loss on the sale or exchange of Trust assets, interest received on any interest-bearing security, and any other amount the Trustee determines to be income.

14

ARGENT_LLOYD_0000019

(B)    From the sum thereof there shall be deducted all expenses since the last Valuation Date that the Trustee determines are properly chargeable against income for the period; provided, however, that the Trustee shall disregard interest paid on any Acquisition Loan.

(C)    The Trustee shall allocate the net income or net loss so determined as of the Valuation Date to the Account of each Member in the proportion that the value of such Member's Account as of the preceding Valuation Date, decreased by any distributions and forfeitures from such Account since such Valuation Date, bears to the total value of all Members' Accounts as of the preceding Valuation Date determined in a similar fashion.

(b)    Any shares of Qualifying Employer Securities that the Trustee has purchased since the preceding Valuation Date with cash already allocated to Employer Contribution Accounts that did not constitute the Employer cash contribution for the Plan Year shall be allocated to the ESOP Accounts of each Member in the proportion that the amount the Trustee uses from the Employer Contribution Account of each Member to purchase Qualifying Employer Securities bears to the aggregate amount the Trustee uses from the Employer Contribution Accounts of all Members to purchase Qualifying Employer Securities.

4.5    Restrictions on Allocations of 1042 Stock.  In the event of a sale to the Plan of Qualifying Employer Securities to which Code Section 1042(a) applies, generally no allocation of Plan assets attributable to or allocable in lieu of such Qualifying Employer Securities shall be made under the Plan or under any other plan an Employer maintains, either directly or indirectly, for the benefit of the following persons:

(a)    any seller who makes a nonrecognition election under Code Section 1042(a) or any individual who is related to such seller (within the meaning of Code Section 267(b)); or

(b)    any person who either during the year before the sale or on the date as of which the Qualifying Employer Securities are allocated to ESOP Accounts owns (after application of Code Section 318(a)) more than 25 percent of (1) any class of or (2) the total value of stock of the corporation that issued the Qualifying Employer Securities acquired (or of any member of the same controlled group of corporations, within the meaning of Code Section 409(1)(4)).

The period during which no allocations shall be made begins on the date of sale and ends on the later of ten years from the date of sale or the allocation of Qualifying Employer Securities resulting from the final payment of any Acquisition Loan incurred to purchase such Qualifying Employer Securities.

4.6    Limitations on Allocations.  Amounts to be allocated to the Account of a Member shall not exceed the limits under Appendices A and B.

ARGENT_LLOYD_0000020

4.7    <u>Limitations on Allocations When Employer is an S Corporation</u>.  The following requirements of Code Section 409(p) shall apply as and when the Company is taxed as an S corporation.

(a)    During a "nonallocation year" (as defined in Subsection (b) below) no Qualifying Employer Securities or any Plan assets attributable to or allocable in lieu of such Qualifying Employer Securities may accrue or be allocated, either directly or indirectly, under the Plan or under any other tax-qualified retirement plan of the Employer for the benefit of any "disqualified person" (as defined in Subsection (c) below.)

(b)    A "nonallocation year" is any Plan Year if, at any time during such Plan Year, the Plan holds Qualifying Employer Securities while the Company is an S Corporation and disqualified persons (as defined in Subsection (c) below) own at least 50 percent of either the number of shares of Qualifying Employer Securities issued and outstanding (including deemed-owned shares (as defined in Subsection (d) below)), or the sum of the shares of Qualifying Employer Securities issued and outstanding (including deemed-owned shares and the shares of synthetic equity (as defined in Subsection (f) below) owned by disqualified persons.

(1)    In determining ownership of shares of Qualifying Employer Securities (including deemed-owned shares) and synthetic equity for this purpose, the attribution rules of Code Section 318(a) shall apply, except that Section 318(a)(4) shall be disregarded, and in applying Section 318(a)(1) the members of an individual's family shall include the following:

(A)    the spouse of the individual;

(B)    an ancestor or lineal descendant of the individual or of the individual's spouse;

(C)    a brother or sister of the individual or of the individual's spouse and any lineal descendant of the brother or sister; and

(D)    the spouse of any individual described in (B) or (C) immediately above.

A spouse of an individual who is legally separated from such individual under a decree of divorce or separate maintenance shall not be treated as such individual's spouse for purposes of this Section 4.7(b)(1).

(2)    Notwithstanding the employee trust exception in Code Section 318(a)(2)(B)(i), an individual shall be treated as owning deemed-owned shares in the Plan.

16

ARGENT_LLOYD_0000021

(3)     If applicable, the attribution rules for synthetic equity under Treasury Regulation 1.409(p)-1(f)(1) shall apply prior to (and in addition to) the application of the attribution rules in Section 4.7(b)(1) above.

(4)     This Section 4.7(b)(4) shall apply only if treating individuals as owning Qualifying Employer Securities results in a nonallocation year.  Accordingly, for this purpose, an individual is treated as owning Qualifying Employer Securities if the following are true:

(A)     such individual has an exercisable right to acquire the Qualifying Employer Securities;

(B)     the Qualifying Employer Securities are both issued and outstanding; and

(C)     the Qualifying Employer Securities are held by persons other than the Plan, the Company (as an S corporation), or any entity:

(I) in which the Company (as an S corporation) holds an interest; and

(II) that is a partnership, a trust, an eligible entity that is disregarded as an entity that is separate from its owner under Treasury Regulation 301.7701-3, or a qualified subchapter S subsidiary under Section 1361(b)(3) of the Code.

This Section 4.7(b)(4) will not apply to a right to acquire Qualifying Employer Securities held by a shareholder that is subject to Federal income tax that, under Treasury Regulation 1.1361-1(l)(2)(iii)(A) or 1.1361-1(l)(4)(iii)(C), would not be taken into account in determining if the Company as an S corporation has a second class of stock, provided that a principal purpose of the right is not the avoidance or evasion of Section 409(p) of the Code.

(5)     If, by virtue of the provisions above or of the rules that define synthetic equity under Code Section 409(p)(6)(C) or Section 1.409(p)-1(f) of the Treasury Regulations, more than one person is treated as the owner of a share of Qualifying Employer Securities, then such share is treated as a single share, and if any of the persons who are treated as the owner of such share is a disqualified person, then such share is treated as owned by a disqualified person.

17

ARGENT_LLOYD_0000022

(c)      A "disqualified person" is any person (1) if the "deemed-owned shares" (as defined in Subsection (d) below) of such person and such disqualified person's family is at least 20 percent of the deemed-owned shares of stock in the Company while it is an S Corporation, or (2) if the deemed-owned shares of such person is at least 10 percent of the deemed-owned shares of stock in the Company while it is an S Corporation.

(d)      "Deemed-owned shares" of a person are (1) the shares of Qualifying Employer Securities allocated to such person's ESOP Account, plus (2) the person's share of unallocated Qualifying Employer Securities the Plan holds, plus (3) only if inclusion of the following results in the treatment of a person as a "disqualified person" or in the treatment of any year as a "nonallocation year," unless regulations otherwise provide, shares of stock of the Company issuable under a stock option, warrant, restricted stock, deferred issuance stock right or similar interest or right that gives the person the right to acquire or receive stock of the Company in the future and, unless regulations otherwise provide, a stock appreciation right, phantom stock unit or similar right to a future cash payment based on the value of stock of the Corporation or appreciation in such value.  If a person is treated as a "disqualified person" or a year is treated as a "nonallocation year," this subparagraph (d)(3) should not be construed to result in such person or year not being treated in such manner.

(e)      In the event any allocation under this Plan would otherwise cause the Plan to violate Code Section 409(p), the Plan Administrator, at its discretion, may transfer Qualifying Employer Securities held in the ESOP Account of a "disqualified person" (as defined in Subsection (c) above) to the Employer Contribution Account of such "disqualified person" in the amount necessary to avoid a "nonallocation year" (as defined in Subsection (b) above).  Alternatively, the Plan Administrator, at its discretion, may choose to reduce the "synthetic equity" of such "disqualified person" or take such other action as the Code, regulations and other Internal Revenue Service guidance permits so as to avoid a "nonallocation year."    Qualified Employer Securities transferred to a Member's Employer Contribution Account shall be treated for all purposes under this Plan the same as Qualified Employer Securities maintained in the Member's ESOP Account and shall continue to have the same benefits, rights, and features that such Qualified Employer Securities had immediately prior to the transfer.

(f)      For purposes of this Section 4.7, synthetic equity shall mean any deferred issuance stock right, restricted stock, stock option, a similar interest or right that gives the holder the right to acquire or receive stock of the Company in the future, and except to the extent provided in IRS regulations, includes a stock appreciation right, phantom stock unit or a right to a future cash payment based on the value of such stock or appreciation of such value, and any other rights described in regulations issued under Code Section 409(p)(6)(c).

(g)      This Section 4.7 shall be administered and construed in a manner to comply with the requirements of Code Section 409(p).

ARGENT_LLOYD_0000023

## SECTION V
## ACQUISITION AND INVESTMENT OF TRUST ASSETS

5.1    Acquisition Loans.  The Trustee may obtain Acquisition Loans.  An Acquisition Loan shall meet all requirements necessary to constitute an exempt loan within the meaning of Section 54.4975-7(b)(1)(iii) of the Treasury Regulations.  At the time the Trustee obtains an Acquisition Loan, the interest rate for the Acquisition Loan and the price of Qualifying Employer Securities that the Trustee acquires with the Acquisition Loan may not cause assets of the Plan to be drained off.  The terms of an Acquisition Loan must, at the time the Trustee obtains the Acquisition Loan, be at least as favorable to the Plan as the terms of a comparable loan resulting from arm's length negotiations between independent parties.  The Trustee shall use the proceeds of any Acquisition Loan within a reasonable time to purchase Qualifying Employer Securities, to repay the Acquisition Loan or to repay any prior Acquisition Loan.  An Acquisition Loan shall provide for no more than a reasonable rate of interest.  An Acquisition Loan shall be without recourse against the Plan, shall have a specific term to maturity, and shall not be payable at the demand of any person, except in the case of default.  For purposes of this Section, default shall mean the failure to pay any amount due under the Acquisition Loan, or any other event specified in the agreement memorializing the Acquisition Loan.  The only assets of the Trust that the Trustee may give as collateral for an Acquisition Loan are shares of Qualifying Employer Securities that the Trustee acquired with the Acquisition Loan or used as collateral on a prior Acquisition Loan repaid with the proceeds of the current Acquisition Loan.  The Trustee shall place such pledged Qualifying Employer Securities in the Loan Suspense Account.  No person entitled to payment under an Acquisition Loan shall have recourse against the Trust other than such collateral, Employer contributions in cash that are made to meet obligations under the Acquisition Loan and earnings attributable to that collateral and investment of Employer contributions.  In the event of a default upon an Acquisition Loan, the value of Plan assets transferred in satisfaction thereof shall not exceed the amount of default.  If the lender under an Acquisition Loan is a person that Code Section 4975(e)(2) describes, the Acquisition Loan shall provide for a transfer of Plan assets upon default only upon and to the extent of the failure of the Plan to meet the payment schedule of the Acquisition Loan.  A pledge of Qualifying Employer Securities must provide for the release of shares pledged, as provided in 5.2 below, upon the payment of any portion of the Acquisition Loan.  An amendment of a loan in order to qualify under this Section shall not be a refinancing of the loan or the making of another loan.

5.2    Release of Qualifying Employer Securities.  For each Plan Year, the number of shares of Qualifying Employer Securities released from any pledge and from the Loan Suspense Account shall equal the number of shares acquired with the proceeds of the Acquisition Loan held immediately before release multiplied by a fraction, the numerator of which is the amount of principal and interest paid on the Acquisition Loan for that Plan Year and the denominator of which is the sum of the numerator plus the principal and interest to be paid on the Acquisition Loan for all future Plan Years; provided, at a minimum, that the number of shares of Qualifying Employer Securities to be released in any Plan Year from the Loan Suspense Account shall comply with Section 4.2(c).  In the event the interest on an Acquisition Loan is variable, the interest to be paid in future Plan Years must be computed by using the interest rate applicable as of the end of the Plan Year.  If the Company is not an S corporation within the meaning of Code Section 1361 and if collateral in the Loan Suspense Account includes more than one class of Qualifying Employer Securities, the number of shares of each class to be released for a Plan

19

ARGENT_LLOYD_0000024

Year must be determined by applying the same fraction to each class. Notwithstanding the above, the number of shares of Qualifying Employer Securities released from any pledge and from the Loan Suspense Account for each Plan Year may be determined by reference to principal payments only, if (a) the Acquisition Loan provides for annual payments of principal and interest at a cumulative rate that is not less rapid at any time than level annual payments of those amounts for ten years, (b) interest included in any payment is disregarded only to the extent that it would be determined to be interest under standard loan amortization tables, and (c) by reason of a renewal, extension or refinancing during or prior to the Plan Year, the sum of the expired duration of the Acquisition Loan, the renewal period, the extension period, and the duration of a new Acquisition Loan does not exceed ten years.

5.3     Loan Payments.  The Trustee shall make payments of principal and interest on any Acquisition Loan only from (a) Employer contributions to meet the Plan's obligation under an Acquisition Loan, earnings from such Employer contributions, cash dividends on Qualifying Employer Securities held as collateral for an Acquisition Loan, cash dividends on Qualifying Employer Securities acquired with the proceeds of an Acquisition Loan and allocated to Members' ESOP Accounts, and cash distributions on the same such Qualifying Employer Securities while the Company is an S corporation within the meaning of Code Section 1361, (b) the proceeds of a subsequent Acquisition Loan incurred to repay a prior Acquisition Loan, and (c) the proceeds from the sale, exchange or disposition of any Qualifying Employer Securities held as collateral for an Acquisition Loan if the use of such proceeds is permissible under the Code and Treasury Regulations issued thereunder.  The payments during a Plan Year shall not exceed the sum of such contributions, cash dividends, cash distributions, earnings and proceeds received during or prior to such Plan Year less such payments made in prior Plan Years.  Such contributions, cash dividends, cash distributions, earnings and proceeds must be accounted for separately until the Acquisition Loan is repaid.

5.4     Refinancing of Exempt Loan Due to Insufficient Funds.  If the contributions and proceeds described in Section 5.3(a), (b) and (c) are insufficient to enable the Trustee to pay principal and interest on an Acquisition Loan, the Company may, at its discretion, and upon the Trustee's request, make an Acquisition Loan to the Trust that is sufficient to meet principal and interest payments.  Qualifying Employer Securities shall be released from the pledge relating to the prior Acquisition Loan and the Trustee shall pledge them as collateral to secure the new Acquisition Loan.  Then, Qualifying Employer Securities will be released from the pledge relating to the new Acquisition Loan and allocated to the Accounts of the Members in accordance with the Plan.

5.5     General Provisions.  Qualifying Employer Securities held or distributed by the Trustee may include such legend restrictions on transferability as the Company may reasonably require in order to assure compliance with applicable Federal and state securities laws and provisions of this Section 5.5.

Except as otherwise provided in the Plan, no Qualifying Employer Securities acquired with the proceeds of an Acquisition Loan and held or distributed by the Trustee may be subject to a put, call or other option, or buy-sell or similar arrangement.

ARGENT_LLOYD_0000025

The provisions of this Section 5.5 are nonterminable, and shall continue to be applicable to Qualifying Employer Securities acquired with the proceeds of an Acquisition Loan even if the loan is repaid or the Plan ceases to be an employee stock ownership plan within the meaning of Section 4975(e)(7) of the Code.

     5.6   <u>Investment in Qualifying Employer Securities</u>.  The Trustee shall invest Plan assets primarily in Qualifying Employer Securities if and to the extent available.

21

ARGENT_LLOYD_0000026

## SECTION VI
## PAYMENT OF BENEFITS AT RETIREMENT DATE OR DEATH
## DURING EMPLOYMENT

6.1    Payment at Retirement Date or Death.

(a)    General.  The Account of a Member who has attained Normal Retirement Age while an Employee, attained a Retirement Date or died while an Employee shall be vested fully.  As of a Member's Retirement Date, he shall be entitled to his Account payable in accordance with this Section VI.  As of a Member's death while an Employee, his Beneficiary shall be entitled to his Account payable in accordance with this Section VI.

(b)    Amount of Payment and Time of Payment.  The value of the Member's Employer Contribution Account payable under this Section shall be determined as of the Valuation Date coincident with or next preceding the Member's Retirement Date or death.  The value of a Member's ESOP Account shall be equal to the value of the number of shares of the Qualifying Employer Securities allocated to the ESOP Account as of the Valuation Date coincident with or next preceding the Member's Retirement Date or death.  All such Accounts shall be increased by any amounts allocated to them since the applicable Valuation Date, decreased by any distributions from them since the applicable Valuation Date and adjusted for a pro rata share of any income and gains and losses attributable thereto through the Valuation Date coincident with or preceding the date the Account is paid.  Payment under this Section VI to the Member or to the Beneficiary of a deceased Member of the Member's ESOP Account and Employer Contribution Account, shall begin or be made not later than 60 days after the end of the Plan Year in which the Member's Retirement Date or death while an Employee occurs.  However, a Member may defer payment of his Account (provided the Account exceeds the Cashout Limit) until his required beginning date, as defined in Section 5.5 of Appendix C.

6.2    Form of Payment of Employer Contribution Account.  The payment of a Member's Employer Contribution Account under Section 6.1 shall be made in accordance with the provisions described below.

(a)    If a Member's vested Account does not exceed the Cashout Limit, payment of his vested Employer Contribution Account shall be made in a lump sum in cash.

(b)    If a Member's vested Account exceeds the Cashout Limit, payment of his Employer Contribution Account shall be made in cash payments, in equal quarterly installments over a period of 5 years.

(c)    If a Member who is receiving installment payments dies and his Beneficiary dies while entitled to receive further benefits under the form of payment that the Member elected, such further benefits shall be paid to the personal representative of such Beneficiary's estate.

6.3    Form of Payment of ESOP Account.  The payment of a Member's vested ESOP Account under Section 6.1 shall be made in accordance with the provisions described below.

22

ARGENT_LLOYD_0000027

(a)    If a Member's vested Account does not exceed the Cashout Limit, payment of a Member's vested ESOP Account shall be made in a lump sum of cash equal to the value of the shares of Qualifying Employer Securities allocated to the ESOP Account.  If a Member's vested Account exceeds the Cashout Limit, payment of the Member's vested ESOP Account shall be made in cash in substantially equal annual installments over a period of five years plus one year for each $210,000 or a fraction thereof, by which the value of the Member's ESOP Account exceeds $1,070,000 (as adjusted for changes in the cost-of-living adjustment under Code Section 415(d)), provided that the Member may elect installment payments over a longer period.

(b)    If a Member who is receiving installments dies, his Beneficiary shall be entitled to receive the balance of the installments, and if his Beneficiary dies while entitled to receive the balance of the installments, the balance of the installments shall be paid to the personal representative of such Beneficiary's estate.

6.4    Consent to Payment.  If a Member's vested Account does not exceed the Cashout Limit, it shall be paid without his consent, and if applicable, the consent of his spouse.  If the Member's vested Account exceeds the Cashout Limit, it shall not be paid without his consent, and if applicable, the consent of his spouse, unless otherwise required under the Plan or applicable law.

(a)    The Plan Administrator shall provide each Member with an explanation of the optional form of payment available under Sections 6.2 and 6.3.  The Plan Administrator shall provide the explanation no less than 30 days and no more than 180 days before the first day of the first period for which a payment is to be made.

(b)    A payment may commence at any time following seven days after the Plan Administrator provides the explanation described in Subsection (a), provided that:

(1)    the Plan Administrator informs the Member that the Member has at least 30 days after receiving the explanation to consider the optional form of payment and the Member elects payment;

(2)    if the Member is married, his spouse consents; and

(3)    the Plan Administrator permits the Member to revoke the election the Member makes any time prior to the expiration of the seven-day period.

6.5    Minimum Payments.  For minimum distribution requirements, the rules set forth in Appendix C, which is hereby incorporated by reference, shall apply.  The payments to be made to a Member shall satisfy the incidental death benefit requirements under Code Section 401(a)(9)(G) and the regulations thereunder.

6.6    Direct Rollover.  A "Distributee" who is otherwise entitled to a Plan payment may elect in writing to the Plan Administrator to have the payment rolled over directly to (a) an individual retirement account described in Code Section 408(a) or an individual retirement annuity described in Code Section 408(b) (other than an endowment contract), (b) a qualified defined contribution plan described in Code Section 401(a), the terms of which permit the acceptance of rollover distributions, (c) an annuity plan described in Code Section 403(a), (d) an

23

ARGENT_LLOYD_0000028

eligible deferred compensation plan described in Code Section 457(b) that an eligible employer described in Code Section 457(e)(1)(A) maintains so long as such plan agrees to account separately for amounts transferred to it from this Plan, or (e) an annuity contract described in Code Section 403(b). The election must specify the account, annuity, or plan to which the rollover shall be made. The Distributee may make such election with respect to payment of any portion of his Account that is not one of the following:

(a)     one of a series of substantially equal periodic payments made at least annually for the life (or life expectancy) of the Distributee or the joint lives (or joint life expectancies) of the Distributee and the Distributee's designated Beneficiary or for a specified period of 10 years or more;

(b)     required under Code Section 401(a)(9) and Section 6.5;

(c)     less than $200 in a year; or

(d)     a payment that is made upon hardship of the Member.

An election under this Section with respect to a payment that is one of a series of periodic payments shall apply to all subsequent payments in the series. For purposes of this Section, the term Distributee means a Member or former Member, a Member's surviving spouse, a Member's former spouse, and a Member's former spouse who is an alternate payee under a qualified domestic relations order.

The term Distributee also includes a person who is an Employee's or former Employee's Beneficiary who is not the Employee's or former Employee's spouse. A Distributee who is a nonspouse Beneficiary may elect in writing to the Plan Administrator to have the eligible rollover distribution rolled over, in the form of a direct trustee-to-trustee transfer, to an individual retirement account described in Code Section 408(a) or an individual retirement annuity described in Code Section 408(b) (other than an endowment contract).

ARGENT_LLOYD_0000029

## SECTION VII
## PAYMENT OF BENEFITS AT TERMINATION OF EMPLOYMENT

7.1   <u>Transfer Not Termination of Employment</u>.   Transfer of a Member from one Employer to another Employer or to an Affiliate shall not be deemed under the Plan to be a termination of employment of the Member.

7.2   <u>Amount of Payment</u>.   If the employment of a Member terminates for reasons other than attainment of a Retirement Date or death while an Employee, he shall be entitled to his vested Account as provided in Section 7.4 and 7.5.   The value of a Member's vested Employer Contribution Account shall be determined as of the Valuation Date coinciding with or next preceding the Member's termination of employment or death.   The value of a Member's vested ESOP Account shall be equal to the value of the number of shares of the Qualifying Employer Securities held in his ESOP Account as of the Valuation Date coinciding with or next preceding the Member's termination of employment or death.   All such vested Accounts shall be increased by any amounts allocated to them since the applicable Valuation Date, decreased by any distributions from them since the applicable Valuation Date, and adjusted for a pro rata share of any income and gains and losses attributable thereto through the applicable Valuation Date coincident with or preceding the date the Account is paid.

7.3   <u>Vested Portion of Member Accounts</u>.   The portion of a Member's Account in which he is vested shall be that percentage of his Employer Contribution Account and ESOP Account according to the following vesting schedule:

| Years of Vesting Service | Percentage Vested |
|---|---|
| Less than 2 | 0% |
| 2 | 20% |
| 3 | 40% |
| 4 | 60% |
| 5 | 80% |
| 6 | 100% |

7.4   <u>Time and Form of Payment of Vested Employer Contribution Account</u>.   Payment under Section 7.2 of a Member's vested Employer Contribution Account shall begin or be made in a form of payment that Section 6.2 provides not later than 60 days after the end of the Plan Year in which such death or termination of employment occurs.   Additionally, a Member may defer payment of his vested Employer Contribution Account until his required beginning date as defined in Section 5.5 of Appendix C.

7.5   <u>Time and Form of Payment of Vested ESOP Account</u>.   Payment under Section 7.2 of a Member's vested ESOP Account under this Section VII shall begin or be made in a form described under Section 6.3 one year after the close of the Plan Year that is the fifth Plan Year following the Plan Year in which the Member terminates employment for reasons other than a Retirement Date or dies while an Employee.   Notwithstanding the above, payment of the portion of a Member's ESOP Account consisting of Qualifying Employer Securities that was acquired

25

ARGENT_LLOYD_0000030

with an Acquisition Loan that has not been fully repaid shall not begin or be made until the end of the Plan Year following the Plan Year in which the Acquisition Loan (and any Acquisition Loan that repaid any portion of the original Acquisition Loan) is fully paid; provided however, that payment under Section VI and VII of all of a Member's vested ESOP Account shall begin or be made no later than 60 days after the end of the Plan Year in which the later of the Member's termination of employment or attainment of Normal Retirement Age occurs. However, a Member may defer payment of his vested ESOP Account (provided the Account exceeds the Cashout Limit) until his required beginning date, as defined in Section 5.5 of Appendix C.

7.6    Consent to Payments. If a Member's Account does not exceed the Cashout Limit, such Account shall be paid in a lump sum without the Member's consent as soon as practicable after the date the Member becomes eligible for payment of such Account, but payment must occur no later than the date the Account would otherwise be payable under the terms of the Plan. If a Member's Account exceeds the Cashout Limit, such Account shall not be paid without the Member's consent, and, if applicable, the consent of his spouse, except in the event applicable law requires such payment.

7.7    Forfeiture and Restoration of Nonvested Amounts. If a Member who is not vested terminates employment, his Account shall be held in the Trust until the earliest of when (a) the Member resumes employment with an Employer or an Affiliate, (b) the Member incurs five consecutive Breaks in Service, or (c) the Member dies. If the Member dies or incurs a period of five consecutive Breaks in Service, his entire Account shall be forfeited as of the last day of the Plan Year in which his death occurred or such period ends. If a Member resumes employment with an Employer or an Affiliate before he incurs five consecutive Breaks in Service, his Account shall be treated as the Account of a Member who has not terminated employment (other than in regard to allocations that have not been made to the Member's Account at any intervening Valuation Date). If a Member's Account is forfeited, Qualifying Employer Securities shall be forfeited only after all other assets in the Member's Account are forfeited.

7.8    Rights Upon Change in Vesting Schedule. In the event that a Plan amendment directly or indirectly changes the vesting schedule, the vested percentage for each Member in his Account accrued to the date when the amendment is adopted shall not be reduced as a result of the amendment. In addition, any Member with at least three years of Vesting Service may irrevocably elect to remain under the pre-amendment vesting schedule with respect to his Account both before and after the amendment.

26

ARGENT_LLOYD_0000031

## SECTION VIII
## DIVERSIFICATION OF INVESTMENTS

8.1     <u>Eligibility to Receive Diversification Distribution</u>.  Each Member who has been a Member for at least ten years, is credited with at least 1000 Hours of Service in each such year of membership, and has attained age 55 may elect, within 90 days after the close of each Plan Year during the six Plan Year period beginning with the Plan Year in which the Member has met such requirements, to direct the Trustee to distribute to the Member in cash the Fair Market Value of up to (a) 25 percent of the total number of shares of Qualifying Employer Securities that have ever been allocated to his ESOP Account on or before the Valuation Date preceding the date of distribution, reduced by (b) the number of shares of Qualifying Employer Securities with respect to which the Member previously made a diversification election pursuant to this Section.  The number of shares of Qualifying Employer Securities may be rounded to the nearest whole integer.  For the last year in which a Member may make an election, this Section shall be applied by substituting 50 percent for 25 percent.  However, if the Fair Market Value of Qualifying Employer Securities allocated to a Member's ESOP Account is $500 or less on the Valuation Date immediately preceding the first day on which a Member is eligible to make the foregoing election, then that Member shall not be eligible to make such an election.

8.2     <u>Timing of Distribution</u>.  Payments made under Section 8.1 shall be made no later than 90 days after the period during which the election may be made.

27

ARGENT_LLOYD_0000032

## SECTION IX
## ADMINISTRATION OF THE PLAN

9.1     Trust Agreement.  The Company shall appoint the Trustee and establish a Trust Agreement with the Trustee for the management of the Trust.  The Trust Agreement shall form a part of the Plan and is incorporated herein by reference.

9.2     Operation of the Plan Administrator.  The Plan Administrator may in writing designate persons who may act on behalf of the Plan Administrator.  The Trustee is entitled to rely upon that writing until amended or superseded by a subsequent writing.

9.3     Fiduciary Responsibility.

(a)     The Plan Administrator may in writing designate Fiduciaries or other persons to carry out its fiduciary responsibilities.  The Plan Administrator may remove any Fiduciary or other person designated to carry out its fiduciary responsibilities by giving notice in writing to such person.

(b)     The Company may allocate the fiduciary duties of the Trustee, other than the duty to hold the assets of the Plan in trust, to an Investment Manager, an Investment Committee or any other Fiduciary.  Unless the Trust Agreement provides otherwise, such allocation shall be effective upon delivery by the Company of written notice to the Trustee and all affected Fiduciaries.

(c)     Each Fiduciary may employ persons to perform services and to render advice with regard to any of the Fiduciary's responsibilities under the Plan.

(d)     Each Employer shall indemnify and hold harmless each person constituting the Plan Administrator and the Investment Committee from and against any and all actions, causes of action, claims, expenses (including, without limitation, attorney's fees and court costs), damages, and losses arising from the performance by such person of his duties in such capacity, other than such of the foregoing arising from the breach by such person of his duties under the Plan, Trust Agreement or the breach of his fiduciary duties under ERISA.

9.4     Duties of the Plan Administrator.

(a)     The Plan Administrator shall advise the Trustee with respect to all payments under the Plan and shall direct the Trustee in writing to make such payments from the Trust.  In no event shall the Trustee be required to make such payments if the Trustee has actual knowledge that they are contrary to the terms of the Plan and the Trust Agreement.

(b)     The Plan Administrator shall establish rules, not contrary to the provisions of the Plan and the Trust Agreement, for the administration of the Plan and the transaction of its business.  All elections and designations under the Plan by a Member or Beneficiary shall be made on forms the Plan Administrator prescribes.  The Plan Administrator shall have discretionary authority to construe the terms of the Plan and

28

ARGENT_LLOYD_0000033

shall determine all questions arising in the administration, application and interpretation of the Plan, including, but not limited to, those concerning eligibility for benefits. All determinations of the Plan Administrator shall be binding and conclusive on all Employees, Members, Beneficiaries, Fiduciaries, or other persons claiming to have an interest in the Plan.

(c)     The statement of specific duties for the Plan Administrator in this Section is not in derogation of any other duties that a Plan Administrator has under the provisions of the Plan, the Trust Agreement or under applicable law.

9.5     Investment Manager.   The Company may appoint and remove an Investment Manager.  In the event of any removal, the Investment Manager shall, as soon as possible, but in no event more than 30 days after notice of removal, turn over all assets it managed to the Trustee or to any successor Investment Manager, and shall make a full accounting to the Company with respect to all assets it managed since its appointment as an Investment Manager.

9.6     Investment Committee.   The Company may appoint an Investment Committee. The Company may select and remove any person on the Investment Committee at any time by giving notice in writing to such person.  A person on the Investment Committee may resign at any time by giving written notice to the Company.  Upon such removal or resignation, or in the event of the death of a person on the Investment Committee, the Company may appoint a successor.  Until a successor has been appointed, the remaining persons on the Investment Committee may continue to act as the Investment Committee.

9.7     Action by an Employer.   Any action an Employer takes shall be by resolution or written direction its governing body duly adopts; provided, however, that by such resolution or written direction, the governing body may delegate to any officer or other appropriate person of an Employer the authority to take any such actions as may be specified in such resolution or written direction, other than the power to amend or terminate the Plan or the Trust or to determine the basis of any Employer contributions.

9.8     Voting and Decisions Regarding Qualifying Employer Securities.

(a)     Except as provided below, the Trustee in its sole discretion shall vote shares of Qualifying Employer Securities held in the Trust.  If the Company designates an Investment Manager or an Investment Committee with voting powers, then the Investment Manager or Investment Committee shall vote such shares.  Notwithstanding the preceding two sentences, (1) as to any corporate matter that involves the voting of shares of Qualifying Employer Securities with respect to the approval or disapproval of any merger or consolidation, recapitalization, reclassification, liquidation, dissolution, sale of substantially all of the assets or any similar transaction as provided in regulations the Secretary of the Treasury issues or, (2) if Qualifying Employer Securities must be registered under section 12 of the Securities Exchange Act of 1934 or would be required to be registered except for the exemption from registration provided in section 12(g)(2)(H) of such Act, the Trustee or, if applicable, the Investment Manager or Investment Committee, shall vote shares of Qualifying Employer Securities as follows:

29

ARGENT_LLOYD_0000034

     (1)     shares of Qualifying Employer Securities held in ESOP Accounts for which it has received instructions from Members shall be voted in accordance with those instructions.  In the absence of voting instructions by a Member, the Trustee or, if applicable, the Investment Manager or Investment Committee at its sole discretion shall vote shares of Qualifying Employer Securities held in a Member's ESOP Account; and

     (2)     the Trustee or, if applicable, the Investment Manager or Investment Committee at its sole discretion shall vote shares of Qualifying Employer Securities held in the ESOP Suspense Account and Loan Suspense Account.

     (b)     The Trustee or, if applicable, the Investment Manager or Investment Committee shall make all decisions affecting Qualifying Employer Securities held in the Trust that do not involve voting of such Qualifying Employer Securities, including, without limitation, decisions to consent to or reject exchange or tender offers and similar decisions in the same manner as voting decisions described in Paragraphs (a)(1) and (2) above.

     (c)     The Company shall furnish the Trustee, the Investment Manager or Investment Committee Members and Beneficiaries with information statements and notices when they are to exercise voting or other rights as to Qualifying Employer Securities.

30

ARGENT_LLOYD_0000035

**SECTION X**
**CLAIM REVIEW PROCEDURE**

10.1    Notice of Denial of Claim.  In the event that a Member's or Beneficiary's claim for benefits under the Plan is wholly or partially denied, the Plan Administrator shall provide to such Member written notice of the denial that shall set forth the following:

(a)    the specific reason or reasons for the denial;

(b)    references to the specific Plan provisions on which the denial is based;

(c)    a description of any additional information or material necessary for the claimant to perfect the claim and an explanation of why the material or information is necessary;

(d)    in the case of a claim for disability benefits, if an internal guideline, protocol, rule, or other similar criterion was relied upon to deny the claim, either the internal guideline, protocol, rule, or other similar criterion, or an explanation that the claimant may receive the internal guideline, protocol, rule, or other criterion free of charge upon request;

(e)    in the case of a claim for disability benefits, the identity of any medical or vocational experts whose advice was obtained in connection with the denial, regardless of whether the Plan Administrator relied upon such advice; and

(f)    an explanation of the Plan's claim review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under Section 502(a) of ERISA following a denial on review.

The Plan Administrator shall provide this written notice within a reasonable period of time, but no later than 90 days after receipt of the claim for benefits (or 45 days for a claim for disability benefits), unless the Plan Administrator determines special circumstances require an extension of time in which case the determination may be extended to a day no later than 180 days (or 105 days for a claim for disability benefits) after the date of receipt of the claim for benefits.  The Plan Administrator shall provide a written notice to the claimant prior to the termination of the initial 90 day period (or 45 day period for a claim for disability benefits) indicating the special circumstances requiring an extension of time and the date by which the Plan Administrator expects to render a determination.  In the case of a claim for disability benefits, the written notice shall also explain the standards on which entitlement to a benefit is based, the unresolved issues that prevent a decision on the claim, and the additional information needed to resolve those issues, and the claimant shall be afforded at least 45 days within which to provide the specified information.  Additionally, in the case of a claim for disability benefits, if the determination is extended to a day later than 30 days after the termination of the initial 45 day determination period, the Plan Administrator shall provide a second written notice to the claimant prior to the termination of the initial extension period that shall include the same information described in the preceding two sentences.

31

ARGENT_LLOYD_0000036

10.2    Request for Review of Denied Claim.  After receiving written notice of the denial of a claim, a claimant may do the following:

(a)    request a review of the denial by submitting the written application for the review to the Appeals Committee appointed by the Board (the "Appeals Committee") within 60 days (or 180 days, for a claim for disability benefits) after receiving written notice of the denial;

(b)    upon request and free of charge, obtain reasonable access to, and copies of, all documents, records and other information relevant to the claimant's claim for benefits; and

(c)    submit to the Appeals Committee written comments, documents, records and other information relating to the claim for benefits.

10.3    Review of Denied Claim.  Upon receiving the written application for review, the Appeals Committee may schedule a hearing for the purpose of reviewing the claimant's claim for benefits, which hearing shall take place not more than 30 days from the date on which the Plan Administrator received the written application for review.  At least ten days prior to the scheduled hearing, the claimant and any designated representative shall receive written notice of the date, place, and time of the scheduled hearing.  The Appeals Committee shall take into account all comments, documents, records and other information the claimant submitted relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

In the case of a claim for disability benefits, the review shall not afford deference to the initial claim denial and no Appeals Committee member who previously denied the claim nor the subordinate of such Appeals Committee member shall conduct the review.  Additionally, if the denial of the claim for disability benefits was based in whole or in part on a medical judgment, the Appeals Committee shall consult with a health care professional who has appropriate experience and training in the field of medicine involved in the medical judgment and who was neither consulted, nor is the subordinate of any individual who was consulted, in connection with the initial claim denial.

10.4    Decision After Review of Denied Claim.  No later than 60 days (or 45 days, for a claim for disability benefits) following the receipt of the written application for review, the Appeals Committee shall notify the claimant and his representative, if any, in writing of the determination on review, unless the Appeals Committee determines that special circumstances such as the need to hold a hearing require an extension of time to a day no later than 120 days (or 90 days for a claim for disability benefits) after the date of receipt of the written application for review.  The Appeals Committee shall provide a written notice to the claimant prior to the termination of the initial 60 day period indicating the special circumstances requiring an extension of time and the date by which the Appeals Committee expects to make a determination. The Appeals Committee shall provide a written notice to the claimant prior to the termination of the initial 60 day period (or 45 day period, for a claim for disability benefits) indicating the special circumstances requiring an extension of time and the date by which the

ARGENT_LLOYD_0000037

Appeals Committee expects to render a determination.   In the case of an adverse benefit determination on review, the notification shall set forth the following:

        (a)      the specific reasons for the adverse determination;

        (b)      references to the specific Plan provisions on which the determination is based;

        (c)      a statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the claimant's claim for benefits;

        (d)      in the case of a claim for disability benefits only, if an internal guideline, protocol, rule, or other similar criterion was relied upon for the adverse determination, either the internal guideline, protocol, rule, or other similar criterion, or an explanation that the claimant may receive such internal guideline, protocol, rule, or other criterion free of charge upon request; and

        (e)      a statement of the claimant's right to bring an action under Section 502(a) of ERISA.

The Appeals Committee shall have discretionary authority to determine all questions concerning eligibility for benefits upon review of a denied claim.

33

ARGENT_LLOYD_0000038

**SECTION XI**
**LIMITATION OF ASSIGNMENT, QUALIFIED DOMESTIC RELATIONS**
**ORDERS, PAYMENTS TO LEGALLY INCOMPETENT DISTRIBUTEE,**
**UNCLAIMED PAYMENTS AND OFFSET OF BENEFITS**

11.1    Anti-Alienation Clause.  No benefit payable under the Plan to any person shall be subject in any manner to alienation, anticipation, assignment, charge, encumbrance, pledge, sale, or transfer, and any attempt to alienate, anticipate, assign, charge, encumber, pledge, sell, or transfer the same shall be void.  No such benefit shall in any manner be liable for, or subject to, the debts, contracts, liabilities or torts of any person, nor shall it be subject to attachment or legal process for, or against, such person, and the same shall not be recognized under the Plan, except as may be required by law or as otherwise provided in this Section XI.

11.2    Qualified Domestic Relations Orders.  Notwithstanding anything contained in Section 11.1 to the contrary, the Plan shall pay benefits in accordance with the terms of any qualified domestic relations order.  A qualified domestic relations order is a domestic relations order that creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a Member under the Plan and that clearly specifies (a) the name and the last known mailing address of the Member and each alternate payee covered by the order, (b) the amount or percentage of the Member's benefits to be paid by the Plan to each alternate payee, or the manner in which such amount or percentage is to be determined, (c) the number of payments or period to that the order applies, and (d) each plan to which the order applies.  The order must (a) not require the Plan to provide any type or form of benefits, or any option, that is not otherwise provided hereunder, (b) not require the Plan to provide increased benefits, and (c) not require the payment to an alternate payee of benefits that already are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order.  For purposes of this Section, a domestic relations order shall mean any judgment, decree or order (including approval of a property settlement agreement) that relates to the provision of alimony payments, child support, or marital property rights to a spouse, former spouse, child or other dependent of a Member and is made pursuant to a state domestic relations law.  In the event that any portion of the Employer Contribution Account of a Member is required to be paid to an alternate payee in accordance with the terms of any qualified domestic relations order, the Plan Administrator shall instruct the Trustee to pay such alternate payee all amounts required under the qualified domestic relations order in the form and at the time described in such order following the Plan Administrator's determination that a court order is a qualified domestic relations order and that such times and forms are in accord with the requirements of the Plan.  In the event that any portion of the ESOP Account of a Member is required to be paid to an alternate payee in accordance with the terms of any qualified domestic relations order, the Plan Administrator shall instruct the Trustee to pay such alternate payee all amounts required under the qualified domestic relations order at the times and in the forms of payment described in such order provided such times and forms are in accord with the requirements of the Plan.  The Plan Administrator shall adopt reasonable procedures to determine the qualified status of a domestic relations order and to administer payments under a qualified domestic relations order.  The Plan shall not be liable in any manner for, or subject to, the contracts, debts, engagements, liabilities or torts of any person entitled to benefits under a qualified domestic relations order.

34

ARGENT_LLOYD_0000039

11.3    <u>Payments to Legal Guardians</u>.  Whenever any benefit payable under the Plan is to be paid to or for the benefit of any person who is then a minor or determined to be incompetent, the Plan Administrator need not require the appointment of a custodian or guardian, but shall be authorized to cause the same to be paid over to the person having custody of such minor or incompetent, or to cause the same to be paid to such minor or incompetent without the intervention of a guardian or custodian, or to cause the same to be paid to a legal custodian or guardian of such minor or incompetent if one has been appointed, or to cause the same to be used for the benefit of such minor or incompetent.

11.4    <u>Lost Members and Beneficiaries</u>.  If the Plan Administrator cannot ascertain the whereabouts of any Member or Beneficiary to whom a payment is due under the Plan, the Plan Administrator may direct that the payments otherwise due to the Member or Beneficiary be canceled on the records of the Plan and the amount thereof applied as a forfeiture except that, in the event the Member or Beneficiary later notifies the Plan Administrator of his whereabouts and requests the payments due to him under the Plan, the Employer shall contribute to the Plan an amount equal to the payment to be paid to him as soon as administratively feasible.

11.5    <u>Offset of Benefits</u>.  Benefits payable under the Plan may be offset against an amount to satisfy an obligation to the Plan if Member is ordered or required to pay the Plan and the order or requirement to pay arises from the following:

(a)    under a judgment of conviction for a crime involving the Plan;

(b)    under a civil judgment (including a consent order or decree) that a court enters in an action brought in connection with a violation (or alleged violation) of Part 4 of Subtitle B of Title I of ERISA; or

(c)    pursuant to a settlement agreement between the Secretary of Labor and the Member in connection with a violation or alleged violation of Part 4 of Subtitle B of Title I of ERISA by a fiduciary or any other person.

ARGENT_LLOYD_0000040

## SECTION XII
## AMENDMENT TO OR TERMINATION OF THE
## PLAN AND THE TRUST

12.1   Amendment and Termination by the Company.   The Company, in compliance with applicable corporate law, may amend or terminate the Plan or the Trust, in whole or in part; provided, however, that the duties or liabilities of the Trustee shall not be increased without its written consent.   No Employer other than the Company shall have the right to amend or terminate the Plan or the Trust.

12.2   Termination of Participation.   Each Employer other than the Company shall have the right with the Company's consent to terminate its participation in the Plan and Trust by delivery of written notice to the Company and the Trustee, and the Company shall have the right to terminate the participation in the Plan and Trust of an Employer by delivery of written notice to the Employer and the Trustee, unless in each instance such termination would result in the disqualification of the Plan or the exempt status of the Trust.   Any termination by an Employer shall not be a termination as to any other Employer.

12.3   Effect of Plan Termination.   If the Company terminates the entire Plan, it shall terminate as to each Employer, and the Account of each affected Member shall be fully vested. In the event of the partial termination of the Plan, the Account of each affected Member shall be fully vested.   After payment of expenses and taxes, and subject to Section 12.4, each Member's Account shall be paid in cash as soon as practicable after termination of the Plan.

12.4   Plan Qualification Determination.   In the event of the termination of the Plan, the Accounts of the Members shall be held subject to the instructions of the Plan Administrator.   The Trustee shall not be required to make any distribution until it receives a copy of an Internal Revenue Service determination letter to the effect that the termination does not affect the qualified status of the Plan or the exempt status of the Trust or, in the event that such letter is not sought or issued, until the Trustee is reasonably satisfied that adequate provision has been made for the payment of all taxes that may be due and owing by the Trust.

12.5   Plan Merger.   In the case of any merger or consolidation of the Plan with, or any transfer of the assets or liabilities of the Plan to, any other plan qualified under Code Section 401, the terms of the merger, consolidation or transfer shall be such that each Member would receive (in the event of termination of the Plan or its successor immediately thereafter) a benefit that is no less than the benefit that the Member would have received in the event of termination of the Plan immediately before the merger, consolidation or transfer.

12.6   Company Merger.   Any entity into which the Company merges shall automatically become the sponsor of the Plan.   At the time of the merger the name of the Plan will change to reflect the name of the corporate entity that sponsors the Plan.

ARGENT_LLOYD_0000041

## SECTION XIII
## ADOPTION OF THE PLAN AND TRUST AGREEMENT BY AFFILIATES

Any Affiliate, if authorized to do so by the Company, may adopt the Plan and the Trust Agreement by action of the board of directors or other appropriate governing body of such Affiliate. Such action shall state the effective date of the adoption of the Plan and the limitation year for purposes of Code Section 415.

37

ARGENT_LLOYD_0000042

## SECTION XIV
## QUALIFICATION AND RETURN OF CONTRIBUTIONS

14.1   Contributions Conditioned on Qualification.  If the Plan and Trust fail to receive the initial approval of the Internal Revenue Service as a qualified plan and trust and if the application for determination to obtain the initial approval was submitted to the Internal Revenue Service by the time prescribed by law for filing the Company's tax return for the taxable year in which the Company adopted the Plan, then within one year after the date of denial of qualification, the contributions of Employers after payment of all expenses will be returned to the Employers free of the Plan and Trust and the Plan and Trust shall thereupon terminate.

14.2   Mistake of Fact and Nondeductibility.  If and to the extent the Code and other applicable laws and rulings permit, upon an Employer's request, a contribution made by reason of a mistake of fact or conditioned upon the deductibility of the contribution under Code Section 404, shall be returned to an Employer within one year after the payment of the contribution, or the disallowance of the deduction (to the extent disallowed), whichever is applicable.

14.3   Amount to be Returned.  In the event of a contribution that was made by reason of a mistake of fact or that was conditioned upon the deductibility of the contribution, the amount returned to the Employer shall be the excess of the contribution above the amount that would have been contributed had the mistake of fact or loss of the deduction not occurred, less any net loss attributable to the excess.  The Trustee shall not return to the Employer any net income attributable to the excess.  The Trustee has no responsibility as to the sufficiency of the Trust to provide any distribution to an Employer under Section 14.1, 14.2 or 14.3.

14.4   Insufficiency of Trust to Fund Returns.  The Trustee shall not return to the Employer any portion of the excess if the return would cause the balance in a Member's Account to be less than the balance would have been had the Employer not made the mistaken contribution.

38

ARGENT_LLOYD_0000043

## SECTION XV
## COMPLIANCE WITH UNIFORMED SERVICES AND
## REEMPLOYMENT RIGHTS ACT OF 1994

15.1    <u>Rights During Military Service and Upon Reemployment Thereafter</u>.

(a)    <u>Reemployment Rights</u>.  An Employee who (1) enters Qualified Military Service (as defined below), (2) is reemployed by an Employer within such period of time as his or her reemployment rights are guaranteed under Chapter 43 of Title 38 of the United States Code, and (3) already was or became a Member in the Plan at the time of reemployment (an Employee meeting all three criteria is hereinafter referred to as a "Veteran Member"):

(A)    shall not be treated as having incurred a Break in Service by reason of the Qualified Military Service, and

(B)    each period of Qualified Military Service shall be counted in determining his or her vested percentage under the Plan.

(b)    "<u>Qualified Military Service</u>" means any service in the uniformed services by an individual if he or she is entitled to reemployment rights under federal law with respect to such service.

(c)    <u>Contributions Upon Reemployment</u>.  The Company shall make any contributions on behalf of a Veteran Member in an amount equal to what such contributions would have been had the Company made such contributions while the Veteran Member was performing Qualified Military Service.  The amount of any such contribution that shall be allocated to the Account of the Veteran Member for any Plan Year (A) shall be determined as if the Veteran Member had been employed by the Employer during the period he or she performed Qualified Military Service and, for any Plan Year or portion thereof during such period, received the Annual Compensation defined under Subsection (h) below, and (B) if the Employer has elected to pay Differential Wage Payments (as defined in Subsection (d) below) to Members who are performing Qualified Military Service and has also elected to use Differential Wage Payments in allocating the contribution of the Company to the Accounts of Members, shall include the amount of such Differential Wage Payments.  The Company must make its contribution for the period beginning with the date of reemployment and whose duration is three (3) times the period of the Qualified Military Service but not greater than five (5) years.

(d)    "<u>Differential Wage Payments</u>" mean any payments the Employer makes for any period the Member is performing service in the uniformed services while on active duty for a period of more than 30 days and represents all or a portion of the wages the Member would have received from the Employer if the Member were performing services for the Employer.

(e)    <u>Additional Uses of Differential Wage Payments</u>.  If the Employer pays a Member a Differential Wage Payment after December 31, 2008, while the Member is

39

ARGENT_LLOYD_0000044

performing Qualified Military Service, the Member shall be treated as if he or she were still an Employee of the Employer.  The Differential Wage Payments shall be treated as Annual Compensation for all purposes under the Plan, including but not limited to, determining the limit on annual additions under Code Section 415(c)(3).

(f)    Death During Qualified Military Service.  If a Member dies while performing Qualified Military Service but prior to becoming a Veteran Member, the Member's Beneficiaries shall be entitled to any additional benefits (other than benefit accruals related to the period of Qualified Military Service) provided under the Plan as if the deceased Member had resumed employment with the Employer and then severed employment on account of death.  Moreover, the Plan will credit such Member's Qualified Military Service as service for vesting purposes, as though the Member had resumed employment immediately prior to the Member's death.  For example, if the Plan provides for full vesting of a Member's Account upon death, the same full vesting shall result if the Member dies while performing Qualified Military Service.

(g)    Discretionary Benefit Accrual on Death or Disability Prior to Reemployment.  For benefit accrual purposes, the Company can, if it chooses, treat every Member who dies or becomes subject to a Disability while performing Qualified Military Service as if the Member had resumed employment in accordance with his or her reemployment rights under USERRA on the day preceding death or Disability (as the case may be) and severed from employment on the actual date of death or Disability.

(h)    "Annual Compensation" means, for purposes of determining the limit on annual additions under Code Section 415(c)(3), the Annual Compensation of a Veteran Member shall be deemed to be the compensation the Veteran Member would have received during the period of Qualified Military Service, based on the rate of pay the Veteran Member would have received from the Employer but for his or her absence during Qualified Military Service.  If the compensation the Veteran Member would have received during such period is not reasonably certain, such compensation shall be the average compensation the Veteran Member received from the Employer during the 12 month period immediately preceding the Qualified Military Service.

40

ARGENT_LLOYD_0000045

## SECTION XVI
## <u>INCORPORATION OF SPECIAL LIMITATIONS</u>

Appendices A, B, and C to the Plan, attached hereto, are incorporated by reference and apply notwithstanding anything to the contrary contained herein.

41

ARGENT_LLOYD_0000046

## SECTION XVII
## GOVERNING LAW

      To the extent not preempted by the laws of the United States of America, the laws of the State of Delaware shall apply to the Plan.

42

ARGENT_LLOYD_0000047

IN WITNESS WHEREOF, the Company has caused this indenture to be executed as of the date first above written.

> **W BBQ HOLDINGS, INC.**
>
> By: _____
>
> Name:   Gregor Wetanson
>
> Title:    Vice President

43

ARGENT_LLOYD_0000048

## APPENDIX A
## LIMITATION ON ALLOCATIONS

### SECTION 1.

The annual addition for any Member for any one limitation year may not exceed the lesser of:

        (a)    For 2016, $53,000, as adjusted thereafter for changes in the cost of living under Code Section 415(d), or

        (b)    100% of the Member's Annual Compensation.

### SECTION 2.

For the purposes of this Appendix, the annual addition for any Member for any limitation year means the sum of the following amounts credited to a Member's Account for the limitation year: (a) Employer contributions; (b) Member contributions; and (c) forfeitures.  Annual Additions do not include a Member's loan repayments, repayments of prior Plan payments, or rollovers.  If an Employer is not an S corporation within the meaning of Code Section 1361 and no more than one-third of the Employer contributions for any Plan Year that are used to repay an Acquisition Loan are allocated to the Accounts of Highly Compensated Employees, an annual addition shall not include forfeitures of Qualifying Employer Securities acquired with the proceeds of the Acquisition Loan or Employer contributions used to pay interest on the Acquisition Loan.  Notwithstanding the foregoing, however, in the event the Fair Market Value of any shares of Qualifying Employer Securities that are released from the Loan Suspense Account for any limitation year by reason of the repayment of an Acquisition Loan is less than the amount of the Employer contributions that are used to repay an Acquisition Loan and that are to be included for that limitation year, annual addition shall not mean any of such Employer contributions used to repay the Acquisition Loan but in lieu thereof shall include the Fair Market Value of such shares of Qualifying Employer Securities that are released from the Loan Suspense Account by reason of the repayment of the Acquisition Loan and that are allocated to the ESOP Account of the Member.

### SECTION 3.

For purposes of this Appendix, the term "limitation year" will mean a Plan Year unless an Employer elects to use any other 12-month period adopted in accordance with Treasury Regulations.  For purposes of applying the limitations set forth in this Appendix, the term "Employer" will mean an Employer and any other corporations that are members of the same controlled group of corporations (as described in Code Section 414(b), as modified by Code Section 415(h)) as is an Employer, any other trades or businesses (whether or not incorporated) under common control (as described in Code Section 414(c), as modified by Code Section 415(h)) with an Employer, any other corporations, partnerships, or other organizations that are members of an affiliated service group (as described in Code Section 414(m)) with an Employer, and any other entity required to be aggregated with an Employer pursuant to regulations under Code Section 414(o).

A-1

ARGENT_LLOYD_0000049

## SECTION 4.

For purposes of applying the limitations of this Appendix, all defined contribution plans that an Employer maintains will be treated as one defined contribution plan.  If the Employer maintains more than one defined contribution plan and the limitations of this Appendix would otherwise be exceeded for both this Plan and the other defined contribution plans, this Appendix will be applied first to reduce allocations of contributions to the other plans.

ARGENT_LLOYD_0000050

## APPENDIX B
## TOP-HEAVY PROVISIONS

### SECTION 1.

As used in this Appendix, the following words shall have the following meanings:

(a)    "Determination Date" means, with respect to any Plan Year, the last day of the preceding Plan Year, or, in the case of the first Plan Year, means the last day of the first Plan Year.

(b)    "Key Employee" means an Employee or former Employee (including a Beneficiary of a Key Employee or former Key Employee) who at any time during the Plan Year containing the Determination Date is one of the following:

(1)    an officer of the Employer whose Annual Compensation exceeds $170,000, as adjusted under Code Section 416(i)(1);

(2)    an owner, direct or indirect, of more than five percent of the outstanding stock of an Employer or more than five percent of the total combined voting power of all stock of an Employer; or

(3)    an owner, direct or indirect, of more than one percent of the outstanding stock of an Employer or more than one percent of the total combined voting power of all stock of an Employer, and who in such Plan Year had Annual Compensation from the Employer of more than $150,000.

Employees other than Key Employees are referred to in this Appendix as "Non key Employees."

(c)    "Required Aggregation Group" means the following:

(1)    each plan of the Employer (including any plan that the Employer maintained within the one-year period ending on the determination date) that qualifies under Code Section 401(a) and in which a Key Employee is a participant; and

(2)    each other plan of an Employer that qualifies under Code Section 401(a) and that enables any plan described in Subsection (a) of this Section to meet the requirements of Code Section 401(a)(4) or 410.

(d)    (1)    "Top-Heavy" means the following:

(A)    if the Plan is not included in a Required Aggregation Group, the Plan's condition in a Plan Year for which, as of the Determination Date,

(i)    the present value of the cumulative Accounts under the Plan for all Key Employees exceeds 60 percent of the present

1

ARGENT_LLOYD_0000051

value of the cumulative Accounts under the Plan for all Members, and

    (ii)    the Plan, when included in every potential combination with any or all of

        (a)    any Required Aggregation Group; and

        (b)    any plan of the Employer that is not part of any Required Aggregation Group and that qualifies under Code Section 401(a)

is part of a Top-Heavy Group (as defined in Paragraph (2) of this Subsection); and

    (B)    if the Plan is included in a Required Aggregation Group, the Plan's condition in a Plan Year for which, as of the Determination Date,

        (i)    the Required Aggregation Group is a Top-Heavy Group (as defined in Paragraph (2) of this Subsection), and

        (ii)    the Required Aggregation Group, when included in every potential combination with any or all of the plans of the Employer and its Affiliates that are not part of the Required Aggregation Group and that qualify under Code Section 401(a), is part of a Top-Heavy Group (as defined in Paragraph (2) of this Subsection).

    (C)    For purposes of Subparagraphs (A)(ii) and (B)(ii) of this Paragraph (1), any combination of plans must satisfy the requirements of Code Sections 401(a)(4) and 410.

    (2)    A group shall be deemed to be a Top-Heavy Group if the sum, as of the Determination Date, of the present value of the cumulative accrued benefits for all Key Employees under all plans included in such group exceeds 60 percent of a similar sum determined for all participants in such plans.

    (3)    (A)    For purposes of this Section, the present value of the accrued benefit for any participant in a defined contribution plan as of any Determination Date shall be determined under Code Section 416 and the applicable Treasury Regulations.

    (B)    The present value of the accrued benefit for any participant as of any Determination Date shall be increased by the following:

B-2

ARGENT_LLOYD_0000052

(i)      distributions made to the participant under the Plan or any other plan in the Required Aggregation Group during the one year period ending on the Determination Date; and

(ii)      distributions under a terminated plan that, had it not terminated, would have been part of the Required Aggregation Group.  For purposes of this Subparagraph (B) if a distribution is made for a reason other than death, disability or severance from employment, "five-year period" shall be substituted for "one-year period."

(C)      For purposes of this Paragraph (3), participant contributions that are deductible as "qualified retirement contributions" within the meaning of Code Section 219 or any successor, as adjusted to reflect income, gains, losses, and other credits or charges attributable thereto, shall not be considered to be part of the accrued benefits under any plan.

(D)      For purposes of this Paragraph (3), if any employee is a Non-key Employee with respect to any plan for any plan year, but such employee was a Key Employee with respect to such plan for any prior plan year, any accrued benefit for such employee shall not be taken into account.

(E)      For purposes of this Paragraph (3), if any Employee has not performed any service for any Employer or Affiliate maintaining the plan during the one-year period ending on the Determination Date, any accrued benefit for that Employee shall not be taken into account.

(F)      (i)      In the case of an "unrelated rollover" (as defined below) between plans that qualify under Code Section 401(a), (a) the plan providing the distribution. shall count the distribution as a distribution under Subparagraph (C) of this Paragraph (3), and (b) the plan accepting the distribution shall not consider the distribution part of the accrued benefit under this Section; and (ii) in the case of a "related rollover" (as defined below) between plans that qualify under Code Section 401(a), (a) the plan providing the distribution shall not count the distribution as a distribution under Subparagraph (C) of this Paragraph (3), and (b) the plan accepting the distribution shall consider the distribution part of the accrued benefit under this Section.

For purposes of this Subparagraph (F), an "unrelated rollover" is a rollover as defined in Code Section 402(c)(4) or 408(d)(3) or a plan-to-plan transfer that both the participant initiates and is from a plan to another plan where the sponsors are not Affiliates.  For purposes of this Subparagraph (F), a "related rollover" is a rollover as defined in Code Section 402(c)(4) or 408(d)(3) or a plan-to-plan transfer that either the participant does not

B-3

ARGENT_LLOYD_0000053

initiate or is made to a plan that the same employer or an Affiliate sponsors.

## SECTION 2.

(a)     Except as otherwise provided in Subsection (b) of this Section, in any Plan Year during which the Plan is Top-Heavy, aggregate allocations of Employer contributions and forfeitures for the Plan Year for the Account of each Member who is a Non-key Employee and who has not separated from service with the Employer prior to the end of the Plan Year, under this Plan and any other defined contribution an Employer maintains, shall not be less than three percent of the Member's Annual Compensation.  For purposes of this Subsection, an allocation to a Member's Account resulting from any Employer contribution attributable to a salary reduction or similar arrangement shall not be taken into account.

(b)     (1)     The percentage referred to in Subsection (a) of this Section for any Plan Year shall not exceed the percentage at which allocations are made or required to be made for the Plan Year for the Key Employee for whom the percentage is highest for the Plan Year. For purposes of this Paragraph, an allocation to the Account of a Key Employee resulting from any Employer contribution attributable to a salary reduction or similar agreement and to any matching contribution shall be taken into account.

(2)     For purposes of this Subsection (b), all defined contribution plans that are members of a Required Aggregation Group shall be treated as part of the Plan, so that the minimum contribution described in Subsection (a) may be made under any one or more of such plans.

(3)     This Subsection (b) shall not apply to any plan that is a member of a Required Aggregation Group if the plan enables a defined benefit plan that is a member of the Required Aggregation Group to meet the requirements of Code Section 401(a)(4) or 410.

## SECTION 3.

Notwithstanding anything contained in the Plan to the contrary, in any Plan Year during which the Plan is Top-Heavy, a Member's interest in his Account shall not vest at any rate that is slower than the following schedule, effective after the Determination Date:

| Full Years of Vesting Service | Percentage Vested |
|---|---|
| Less than 2 | 0% |
| 2 | 20% |
| 3 | 40% |
| 4 | 60% |
| 5 | 80% |
| 6 or more | 100% |

B-4

ARGENT_LLOYD_0000054

The schedule set forth above in this Section 3 shall be inapplicable to a Member who has failed to perform an Hour of Service after the Determination Date on which the Plan has become Top-Heavy.  When the Plan ceases to be Top-Heavy, the schedule set forth above in this Section 3 shall cease to apply; provided, however, that the provisions of the Section dealing with changes in the vesting schedule shall apply.

B-5

ARGENT_LLOYD_0000055

**APPENDIX C**
**MINIMUM DISTRIBUTION REQUIREMENTS**

**SECTION 1.  GENERAL RULES**

     1.1   <u>Precedence</u>.  The requirements of this Appendix will take precedence over any inconsistent provisions of the Plan.

     1.2   <u>Requirements of Treasury Regulations Incorporated</u>.  All payments this Appendix requires will be made in accordance with the Treasury Regulations under Code Section 401(a)(9), including without limitation the incidental death benefit requirement in Section 401(a)(9)(G) of the Code.  Distributions shall be made in accordance with Treasury Regulations Sections 1.401(a)(9)-1 through 1.401(a)(9)-9.  Code Section 401(a)(9) and Treasury Regulations thereunder are hereby incorporated by reference and hereby override any distribution options in the Plan inconsistent therewith.

**SECTION 2.  TIME AND MANNER OF PAYMENT.**

     2.1   <u>Required Beginning Date</u>.  The Member's vested Account will be paid, or begin to be paid, to the Member no later than the Member's required beginning date (as defined in Section 5.5 of this Appendix).

     2.2   <u>Death of Member Before Payments Begin</u>.  If the Member dies before payments begin, the Member's vested Account will be paid, or begin to be paid, no later than as follows:

          (a)   If the Member's surviving spouse is the Member's sole designated beneficiary (as defined in Section 5.1 of this Appendix), then payments to the surviving spouse will begin by December 31 of the calendar year immediately following the calendar year in which the Member died, or by December 31 of the calendar year in which the Member would have attained age 70½, if later.

          (b)   If the Member's surviving spouse is not the Member's sole designated beneficiary, then, payments to the designated beneficiary will begin by December 31 of the calendar year immediately following the calendar year in which the Member died.

          (c)   If there is no designated beneficiary as of September 30 of the year following the year of the Member's death, the Member's vested Account will be paid by December 31 of the calendar year containing the fifth anniversary of the Member's death.

          (d)   If the Member's surviving spouse is the Member's sole designated beneficiary and the surviving spouse dies after the Member but before payments to the surviving spouse begin, this Section 2.2, other than Section 2.2(a), will apply as if the surviving spouse were the Member.

For purposes of this Section 2.2 and Section 4, unless Section 2.2(d) applies, payments are considered to begin on the Member's required beginning date.  If Section 2.2(d) applies, payments are considered to begin on the date payments are required to begin to the surviving spouse under Section 2.2(a).  If payments under an annuity purchased from an insurance

C-1

ARGENT_LLOYD_0000056

company irrevocably commence to the Member before the Member's required beginning date (or to the Member's surviving spouse before the date payments are required to begin to the surviving spouse under Section 2.2(a)), the date payments are considered to begin is the date payments actually commence.

2.3     Forms of Payment.  Unless the Member's vested Account is paid in the form of an annuity purchased from an insurance company or in a single sum on or before the required beginning date, as of the first payment calendar year (as defined in Section 5.2 of this Appendix) payments will be made in accordance with sections 3 and 4.  If the Member's vested Account is paid in the form of an annuity purchased from an insurance company, payments thereunder will be made in accordance with the requirements of Code Section 401(a)(9) and the Treasury Regulations.

**SECTION 3.  REQUIRED MINIMUM PAYMENTS DURING MEMBER'S LIFETIME.**

3.1     Amount of Required Minimum Payment For Each Payment Calendar Year. During the Member's lifetime, the minimum amount that will be paid for each payment calendar year is the lesser of:

(a)     the quotient obtained by dividing the Member's vested Account balance (as defined in Section 5.4 of this Appendix) by the payment period in the Uniform Lifetime Table set forth in Section 1.401(a)(9)-9 of the Treasury Regulations, using the Member's age as of the Member's birthday in the payment calendar year; or

(b)     if the Member's sole designated beneficiary for the payment calendar year is the Member's spouse, the quotient obtained by dividing the Member's vested Account balance by the number in the Joint and Last Survivor Table set forth in Section 1.401(a)(9)-9 of the Treasury Regulations, using the Member's and spouse's attained ages as of the Member's and spouse's birthdays in the payment calendar year.

3.2     Lifetime Required Minimum Payments Continue Through Year of Member's Death.  Required minimum payments will be determined under this Section 3 beginning with the first payment calendar year and up to and including the payment calendar year that includes the Member's date of death.

**SECTION 4.  REQUIRED MINIMUM PAYMENTS AFTER MEMBER'S DEATH.**

4.1     Death On or After Date Payments Begin.

(a)     Member Survived by Designated Beneficiary.  If the Member dies on or after the date payments begin and there is a designated beneficiary, the  minimum amount that will be paid for each payment calendar year after the year of the Member's death is the quotient obtained by dividing the Member's vested Account balance by the longer of the remaining life expectancy (as defined in Section 5.3 of this Appendix) of the Member or the remaining life expectancy of the Member's designated beneficiary, determined as follows:

(1)     The Member's remaining life expectancy is calculated using the age of the Member in the year of death, reduced by one for each subsequent year.

ARGENT_LLOYD_0000057

(2)      If the Member's surviving spouse is the Member's sole designated beneficiary, the remaining life expectancy of the surviving spouse is calculated for each payment calendar year after the year of the Member's death using the surviving spouse's age as of the spouse's birthday in that year.  For payment calendar years after the year of the surviving spouse's death, the remaining life expectancy of the surviving spouse is calculated using the age of the surviving spouse as of the spouse's birthday in the calendar year of the spouse's death, reduced by one for each subsequent calendar year.

(3)      If the Member's surviving spouse is not the Member's sole designated beneficiary, the designated beneficiary's remaining life expectancy is calculated using the age of the beneficiary in the year following the year of the Member's death, reduced by one for each subsequent year.

(b)      <u>No Designated Beneficiary</u>.  If the Member dies on or after the date payments begin and there is no designated beneficiary as of September 30 of the year after the year of the Member's death, the minimum amount that will be paid for each payment calendar year after the year of the Member's death is the quotient obtained by dividing the Member's vested Account balance by the Member's remaining life expectancy calculated using the age of the Member in the year of death, reduced by one for each subsequent year.

4.2      <u>Death Before Date Payments Begin</u>.

(a)      <u>Member Survived by Designated Beneficiary</u>.  If the Member dies before the date payments begin and there is a designated beneficiary, the minimum amount that will be paid for each payment calendar year after the year of the Member's death is the quotient obtained by dividing the Member's vested Account balance by the remaining life expectancy of the Member's designated beneficiary, determined as provided in Section 4.1.

(b)      <u>No Designated Beneficiary</u>.  If the Member dies before the date payments begin and there is no designated beneficiary as of September 30 of the year following the year of the Member's death, payment of the Member's entire interest will be completed by December 31 of the calendar year containing the fifth anniversary of the Member's death.

(c)      <u>Death of Surviving Spouse Before Payments to Surviving Spouse Are Required to Begin</u>.  If the Member dies before the date payments begin, the Member's surviving spouse is the Member's sole designated beneficiary, and the surviving spouse dies before payments are required to begin to the surviving spouse under Section 2.2(a), this Section 4.2 will apply as if the surviving spouse were the Member.

### SECTION 5.  DEFINITIONS.

5.1      <u>Designated Beneficiary</u>.  The individual. who is designated as the beneficiary under Section 1.5 of the Plan and is the designated beneficiary under Code Section 401(a)(9) and Section 1.401(a)(9)-4 of the Treasury Regulations.

5.2      <u>Payment Calendar Year</u>.  A calendar year for which a minimum payment is required.  For payments beginning before the Member's death, the first payment calendar year is the calendar year immediately preceding the calendar year that contains the Member's required

C-3

ARGENT_LLOYD_0000058

beginning date.  For payments beginning after the Member's death, the first payment calendar year is the calendar year in which payments are required to begin under Section 2.2.  The required minimum payment for the Member's first payment calendar year will be made on or before the Member's required beginning date.  The required minimum payment for other payment calendar years, including the required minimum payment for the payment calendar year in which the Member's required beginning date occurs, will be made on or before December 31 of that payment calendar year.

5.3     Life Expectancy.  Life expectancy as computed by use of the Single Life Table in Section 1.401(a)(9)-9 of the Treasury Regulations.

5.4     Member's Vested Account Balance.  The vested Account balance as of the last valuation date in the calendar year immediately preceding the payment calendar year (valuation calendar year) increased by the amount of any contributions made and allocated or forfeitures allocated to the Account balance as of dates in the valuation calendar year after the valuation date and decreased by payments made in the valuation calendar year after the valuation date. The vested Account balance for the valuation calendar year includes any amounts rolled over or transferred to the Plan either in the valuation calendar year or in the payment calendar year if paid or transferred in the valuation calendar year.

5.5     Required Beginning Date.  April 1 of the calendar year after the later of the calendar year in which the Member retires or attains age 70½  unless the Member is a five percent owner (as defined in Code Section 416(i)) of an Employer or an Affiliate with respect to the Plan Year ending in the calendar year in which such Member attains age 70½, in which case the term "required beginning date" means not later than April 1 of the calendar year following the calendar year in which the Member attains age 70½.

NY\52734055.5

C-4

ARGENT_LLOYD_0000059

ARGENT_LLOYD_0000060