**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAMAAL LLOYD and ANASTASIA JENKINS, individually and on behalf of all others similarly situated, and on behalf of the W BBQ Holdings, Inc. Employee Stock Ownership Plan,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>ARGENT TRUST COMPANY, HERBERT WETANSON, GREGOR WETANSON, and STUART WETANSON,<br><br>　　　　　　Defendants. | Case No. 1:22-cv-04129-DLC |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY THE CASE OR, IN THE ALTERNATIVE, TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 4

  I.   Background Regarding WBBQ, the Parties, and Plaintiffs' Claims. ................................. 4

  II.  Relevant Terms in the Plan Document. ........................................................................ 5

ARGUMENT ..................................................................................................................... 6

  I.   Plaintiffs Should Be Compelled to Pursue All of Their Claims Through Arbitration........ 6

     A.  The Plan Document Contains a Valid, Enforceable Arbitration Provision
         that Binds Plaintiffs............................................................................................. 7

     B.  Plaintiffs' Claims Fall Within the Scope of the Arbitration Procedure. ..................... 9

        1.  Section 10 of the Plan Document Is a "Broad" Arbitration Provision
             that "Justifies a Presumption of Arbitrability.".......................................... 9

        2.  Plaintiffs' Claims Fall Within the Plain Language of the Definition
             of "Covered Claim" in the Plan Document......................................... 10

     C.  ERISA Claims Are Arbitrable. .......................................................................... 11

     D.  Plaintiffs Must Arbitrate on an Individual Basis. ................................................ 11

        1.  The Plan Contains a Waiver of Collective Action, and the Court (Rather
             Than the Arbitrator) Must Decide Whether to Enforce It.................................... 11

        2.  The Individual Arbitration Provisions are Enforceable. ..................................... 13

          a.  There Is No "Clearly Expressed Congressional Intention" That
              the FAA and ERISA Cannot Be Harmonized................................. 14

          b.  The "Effective Vindication" Exception Is Inapplicable. ............................ 15

     E.  The Case Should Be Stayed While Any Arbitration Proceeds. ............................... 19

     F.  The Court Should Award Defendants Attorneys' Fees and Costs, as Provided
         Under the Plan Document. ................................................................................ 19

  II.  In the Alternative, The Amended Complaint Should Be Dismissed Under
      Rule 12(b)(1) For Lack of Article III Standing. ............................................................ 20

CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*20/20 Commc'ns, Inc. v. Crawford*,
   930 F.3d 715 (5th Cir. 2019) ................................................................... 12

*Am. Express Co. v. Italian Colors Restaurant*,
   570 U.S. 228 (2013) ............................................................... 9, 13, 14, 15

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
   821 F.3d 352 (2d Cir. 2016) ................................................................... 20

*Arciniaga v. Gen. Motors Corp.*,
   460 F.3d 231 (2d Cir. 2006) ..................................................................... 6

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ........................................................................... 6, 13

*Barreto v. Jec II, LLC*,
   No. 16-CV-9729, 2017 WL 3172827 (S.D.N.Y. July 25, 2017) ............................ 20

*Bird v. Shearson Lehman/Am. Exp., Inc.*,
   926 F.2d 116 (2d Cir. 1991) ................................................................... 11

*Cedeno v. Argent Trust Co.*,
   No. 20-CV-9987 (JGK), 2021 WL 5087898 (S.D.N.Y. Nov. 2, 2021) .................... 18

*Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
   433 F.3d 181 (2d Cir. 2005) ................................................................... 20

*Collins & Aikman Prods. Co. v. Building Sys., Inc.*,
   58 F.3d 16 (2d Cir. 1995) ......................................................................... 6

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
   990 F.3d 173 (2d Cir. 2021) ................................................................... 16

*Curtiss-Wright Corp. v. Schoonejongen*,
   514 U.S. 73 (1995) ........................................................................ 7, 15, 16

*Dorman v. Charles Schwab Corp.*,
   780 F. App'x 510 (9th Cir. 2019) ...................................................... 9, 13, 17

*Dorman v. Charles Schwab Corp.*,
   934 F.3d 1107 (9th Cir. 2019) ................................................................... 9

*Epic Systems Corp. v. Lewis*,
   138 S. Ct. 1612 (2018) ........................................................................... 13

*Euro Pac. Cap. Inc. v. Bohai Pharms. Grp., Inc.*,
  No. 15-cv-4410, 2016 WL 297311 (S.D.N.Y. Jan. 21, 2016) ................................... 2

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991) ........................................................................ 13, 19

*Hans v. Tharaldson*,
  No. 3:05-CV-115, 2011 WL 6937598 (D.N.D. Dec. 23, 2011) ............................... 25

*Hartford Aircraft Lodge 743, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Hamilton Sundstrand Corp.*,
  213 F. App'x 31 (2d Cir. 2007) ............................................................ 9

*Hughes Aircraft Co. v. Jacobson*,
  525 U.S. 432 (1999) ..................................................................... 8, 16

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
  387 F.3d 163 (2d Cir. 2004) ............................................................... 7

*John v. Whole Foods Mkt. Grp., Inc.*,
  858 F.3d 732 (2d Cir. 2017) ........................................................... 21, 25

*Katz v. Cellco P'ship*,
  794 F.3d 341 (2d Cir. 2015) .............................................................. 19

*Keach v. U.S. Tr. Co., N.A.*,
  313 F. Supp. 2d 818 (C.D. Ill. 2004) ..................................................... 25

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
  552 U.S. 248 (2008) .................................................................... 16, 18

*Lee v. Argent Trust Co.*,
  No. 5:19-CV-156, 2019 WL 3729721 (E.D.N.C. Aug. 7, 2019) ............................. 22, 24

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ...................................................................... 21

*Martin v. Feilen*,
  965 F.2d 660 (8th Cir. 1992) .............................................................. 1

*Mathews v. Sears Pension Plan*,
  144 F.3d 461 (7th Cir. 1998) ............................................................ 7, 9

*McAllister v. Conn. Renaissance Inc.*,
  496 F. App'x 104 (2d Cir. 2012) ....................................................... 7, 11

*Mehler v. Terminix Int'l Co. L.P.*,
  205 F.3d 44 (2d Cir. 2000) ............................................................... 10

*Montgomery v. Aetna Plywood, Inc.*,
   39 F. Supp. 2d 915 (N.D. Ill. 1998) ................................................... 25

*Murphy v. Canadian Imperial Bank of Com.*,
   709 F. Supp. 2d 242 (S.D.N.Y. 2010) ............................................... 2, 11

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
   369 F.3d 645 (2d Cir. 2004) ............................................................... 10

*Placht v. Argent Tr. Co.*,
   No. 21 C 5783, 2022 WL 3226809 (N.D. Ill. Aug. 10, 2022) ............... 24

*Plutzer v. Bankers Tr. Co. of S.D.*,
   No. 1:21-CV-3632 (MKV), 2022 WL 596356 (S.D.N.Y. Feb. 28, 2022) ......... 23, 24

*Robertson v. Argent Tr. Co.*,
   No. 2:21-cv-01711, 2022 WL 2967710 (D. Ariz. July 27, 2022) .................... passim

*Rodriguez v. N.Y. Found. for Senior Citizens Home Attendant Servs., Inc.*,
   No. 15-CV-9817, 2016 WL 11707094 (S.D.N.Y. July 14, 2016) ................. 2, 6

*Smith v. Bd. of Dirs. of Triad Mfg., Inc.*,
   13 F.4th 613 (7th Cir. 2021) ............................................................ 16, 18

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ......................................................................... 21

*Thole v. U.S. Bank N.A.*,
   140 S. Ct. 1615 (2020) ..................................................................... 21

*US Airways, Inc. v. McCutchen*,
   569 U.S. 88 (2013) ................................................................... 7, 15, 16

*Viking River Cruises, Inc. v. Moriana*,
   142 S. Ct. 1906 (2022) ..................................................................... 13

*Williams v. Dearborn Motors 1, LLC*,
   No. 20-1351, 2021 WL 3854805 (6th Cir. Aug. 30, 2021) ........................ 19

**Statutes**

9 U.S.C. § 3 ....................................................................................... 19

9 U.S.C. § 4 ......................................................................................... 7

29 U.S.C. § 1102(a)(1) .......................................................................... 7

29 U.S.C. § 1109(a) ............................................................................. 14

29 U.S.C. § 1132(g) ............................................................................................ 20

29 U.S.C. § 1144(a) .............................................................................................. 7

**Other Authorities**

Notice of Appeal, *Cedeno v. Argent Tr. Co.*,
  No. 20-CV-9987 (JGK) (S.D.N.Y. Nov. 19, 2021), ECF No. 75 ........................... 18

## INTRODUCTION

Defendants Argent Trust Company ("Argent") and Herbert Wetanson, Gregor Wetanson, and Stuart Wetanson (together, the "Wetansons" and, collectively with Argent, "Defendants") move to compel arbitration and stay this action under the Federal Arbitration Act ("FAA") or, in the alternative, to dismiss Plaintiffs' Amended Class Action Complaint (Dkt. No. 49) ("Amended Complaint" or "Am. Compl.") under Rule 12(b)(1) for lack of subject matter jurisdiction.

Defendants filed a similar motion in response to Plaintiff Jamaal Lloyd's initial Complaint (Dkt. No. 1). Rather than respond to the motion, Plaintiffs filed an Amended Complaint, with the only substantive difference being the addition of Plaintiff Anastasia Jenkins—presumably on the theory that she should be permitted to avoid binding individual arbitration provisions because of the date on which she left employment with W BBQ Holdings, Inc. ("WBBQ"). This attempt should fail, and both Plaintiffs should be compelled to pursue their claims in individual arbitration.

This case involves an employee stock ownership plan ("ESOP"), which is a type of defined contribution retirement plan regulated under the Employee Retirement Income Security Act of 1974, as amended ("ERISA") that allows participating employees to acquire a beneficial interest in the company stock of their employer. Congress encourages ESOP formation and intended ESOPs to provide a tax-favored way for employers to fund employees' retirement benefits and to foster employee ownership. *Martin v. Feilen*, 965 F.2d 660, 664 (8th Cir. 1992).

Plaintiffs allege that they are participants in the W BBQ Holdings, Inc. Employee Stock Ownership Plan (the "Plan"). The Amended Complaint arises out of a stock purchase transaction that closed on July 29, 2016 (the "Transaction"), in which the Plan purchased 400,000 shares of WBBQ stock from the company's individual owners (the Wetansons). Argent, an institutional trustee whose professionals have decades of expertise in ESOP stock purchase transactions, was

engaged to serve as the Plan's independent trustee with discretionary authority to determine whether to purchase shares of WBBQ stock on behalf of the Plan.  Argent fulfilled its fiduciary duties by approving the purchase of shares of WBBQ stock for no more than fair market value and on terms that were fair to the Plan and its participants.

Plaintiffs' Amended Complaint alleges that Defendants committed various violations of ERISA in connection with the decision by Argent, acting as trustee, to cause the Plan to purchase shares of WBBQ stock at what Plaintiffs claim was more than fair market value.  Plaintiffs assert that, because of Defendants' alleged misconduct, Plaintiffs suffered a diminution in the value of their Plan accounts, as did other Plan participants.  All of their claims are premised on duties arising out of the Plan's governing plan document (the "Plan Document")[1] and/or ERISA.

Effective January 1, 2019, the Plan Document was amended to require participants to pursue claims in individual arbitration.  Section 10.01 of the Plan Document states:

> ***Any*** claim, dispute or controversy of any kind asserted by a [Claimant] (i) which ***arises out of, relates to, or concerns*** the Plan or the Trust, including without limitation, any claim for benefits, (ii) asserting a breach of, or failure to follow, the Plan or Trust; or (iii) ***asserting a breach of, or failure to follow, any provisions of ERISA*** or the [Internal Revenue] Code, ***including without limitation claims for***

---

[1] A copy of the Plan Document is attached hereto as Exhibit A.  In addition, the Plan Document was amended in relevant part effective January 1, 2019, and a copy of the amendment is attached as Exhibit B.  A copy of the Unanimous Written Consent of the WBBQ Board of Directors adopting the Plan amendment is attached as Exhibit C.  Because Plaintiffs expressly reference the Plan Document in the Amended Complaint, these documents are appropriate to consider on a motion to compel arbitration.  *See* Am. Compl. ¶¶ 89, 117, 143; *see also Euro Pac. Cap. Inc. v. Bohai Pharms. Grp., Inc.*, No. 15-cv-4410, 2016 WL 297311, at *3 (S.D.N.Y. Jan. 21, 2016) ("In deciding a motion to stay or dismiss an action pending arbitration, . . . the Court may review and consider documents referenced in the complaint.").  Moreover, for purposes of determining arbitrability, the Court may consider documents that Defendants submit in support of their Motion. *See, e.g.*, *Murphy v. Canadian Imperial Bank of Com.*, 709 F. Supp. 2d 242, 244 n.2 (S.D.N.Y. 2010) ("[A] court is permitted to consider documents outside the pleadings for the purposes of determining the arbitrability of a dispute."); *Rodriguez v. N.Y. Found. for Senior Citizens Home Attendant Servs., Inc.*, No. 15-CV-9817, 2016 WL 11707094, at *1 n.1 (S.D.N.Y. July 14, 2016).

>    ***breach of fiduciary duty*** . . . shall be resolved pursuant to the . . . binding arbitration
>    procedures set forth in Section 10.04 . . . .

Ex. B § 10.01 (emphasis added).  As Plan participants, Plaintiffs are bound by the terms of the

Plan Document and therefore must comply with the provisions requiring individual arbitration.

As explained below, the Court should compel individual arbitration as to both Plaintiffs

and stay the case under Sections 4 and 3 of the FAA, respectively, because:

- the arbitration provisions in the Plan Document are valid, and Plaintiffs are bound by them by virtue of their participation in the Plan;

- Plaintiffs' claims are all "Covered Claims" as that term is defined in the Plan Document, and thus all fall within the scope of its arbitration provisions; and

- Plaintiffs' claims arise under ERISA, and ERISA claims are arbitrable.

In addition, the Court should award the following relief, as required under the Plan Document:

- order that any arbitrations be on an individual basis, rather than in a representative capacity or class, collective, or group basis; and

- order Plaintiffs to reimburse Defendants' attorneys' fees, costs, and expenses incurred in moving to compel arbitration.

In the alternative, even if the Court declined to enforce the arbitration provisions in the

Plan Document, all of Plaintiffs' claims must be dismissed under Rule 12(b)(1) because Plaintiffs

lack standing under Article III of the Constitution.  To establish Article III standing, Plaintiffs must

plead plausibly that, among other things, they suffered an injury in fact that was "concrete" and

"particularized."  The only alleged "injury" that Plaintiffs identify in the Amended Complaint

(despite having the opportunity to replead) is that, shortly after the Transaction, the WBBQ stock

that the Plan acquired was worth less than it was at the time of the Transaction.  This fails to qualify

as a plausible injury, however, because the true explanation for the decrease is readily apparent

and based on the simplest of economic principles:  in the Transaction, WBBQ took on debt to finance the Plan's stock purchase, and with such debt, just like anyone who borrows money, WBBQ's equity value became lower because of the debt.  Courts (including this Court) have held that ESOP participants alleging the same injury as Plaintiffs assert here lacked Article III standing, and this Court should reach the same conclusion.

The Court should (1) compel Plaintiffs to arbitrate all of their claims on an individual basis under the terms of the Plan Document and stay this case pending any arbitration; or (2) dismiss Plaintiffs' Amended Complaint for lack of Article III standing.

## **BACKGROUND**

### I.      **Background Regarding WBBQ, the Parties, and Plaintiffs' Claims.**[2]

WBBQ operates the line of Dallas BBQ restaurants in New York City.  Am. Compl. ¶¶ 39, 41.  On January 1, 2015, WBBQ established the W BBQ Holdings, Inc. Profit Sharing Plan, which was amended and restated on January 1, 2016 to form the Plan at issue here.  *Id.* ¶¶ 45, 48.

Plaintiffs have filed this putative ERISA class action against Argent and the Wetansons. According to Plaintiffs, Argent served as trustee to the Plan in evaluating whether it should enter into a transaction to purchase shares of WBBQ stock in July 2016 from the Wetansons for the benefit of Plan participants.  *Id.* ¶¶ 9, 16-19.

The Amended Complaint alleges the following ERISA violations:  (1) that, in approving the Transaction, Argent breached fiduciary duties owed to the Plan under ERISA Section 404(a) (Count I); (2) that the Wetansons breached fiduciary duties under ERISA Section 404(a) in appointing and failing to monitor Argent as the Plan's trustee (Count II); (3) that Argent engaged

---

[2] The following background is drawn solely from the unproven allegations in the Amended Complaint.  At this time, Defendants do not admit any allegation in the Amended Complaint.

in prohibited transactions related to the Plan's purchase of shares of WBBQ stock at a price that was purportedly higher than fair market value (Count III); (4) that the Wetansons also engaged in those prohibited transactions (Count IV); (5) that the Wetansons breached co-fiduciary duties under ERISA Section 405(a) (Count V); and (6) that an indemnification provision in WBBQ's Articles of Incorporation violates ERISA Section 410 (Count VI).  The crux of Plaintiffs' claims is that they and other Plan participants suffered a diminution in the value of their individual Plan accounts due to alleged misconduct by Defendants, who are liable to restore such amounts to the accounts.  *See, e.g.*, Am. Compl. ¶¶ 10, 129.

**II.    Relevant Terms in the Plan Document.**

Plaintiffs allege they have been participants since the Plan was first adopted.  *Id.* ¶¶ 14-15.  The Plan at all times has been governed by a written Plan Document, as ERISA requires, providing that WBBQ "may amend . . . the [Plan Document] . . . in whole or in part[.]"  Ex. A § 12.1.

On April 24, 2019, the WBBQ Board of Directors, acting on behalf of WBBQ, exercised the company's right under Section 12.1 of the Plan Document to adopt a Plan amendment.  Ex. C.  The resulting amendment to Section 10 of the Plan Document (the "Plan Amendment") states that all "Claimants" are bound by certain arbitration provisions set forth in Section 10.04.  Ex. B § 10.01.  The Plan Amendment defines "Claimant" to include any "Participant" and broadly defines the term "Covered Claims."  *Id.* § 10.01.

Section 10.04(e) provides that Covered Claims must be arbitrated "solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis."  *Id.* § 10.04(e).  The section provides also that "[e]ach arbitration shall be limited solely to one Claimant's Covered Claims and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any Employee, Participant or Beneficiary other than the Claimant."  *Id.*  In addition, Section 10.04(f) provides:

> [W]ith respect to any claim brought under ERISA section 502(a)(2) to seek relief under ERISA section 409, the Claimant's remedy, if any, shall be limited to (i) the alleged losses to the Claimant's Accounts resulting from the alleged breach of fiduciary duty, (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where such pro-rated amount is intended to provide a remedy solely to Claimant's Accounts, or (iii) such other remedial or equitable relief as the arbitrator deems proper so long as such remedial or equitable relief does not include or result in the provision of additional benefits or monetary relief to any Employee, Participant or Beneficiary other than the Claimant, and is not binding on the Administrator or the Trustee with respect to any Employee, Participant or Beneficiary other than the Claimant.

*Id.* § 10.04(f).

Section 10.04(g) provides that each of Sections 10.04(e) and (f) is a "material and non-severable term" to the arbitration provisions in Section 10, and that "[a]ny dispute or issue as to the applicability or validity" of these sections shall be determined by a court of competent jurisdiction rather than by the arbitrator. *Id.* § 10.04(g).

## ARGUMENT

### I.      Plaintiffs Should Be Compelled to Pursue All of Their Claims Through Arbitration.

The FAA "embod[ies] [a] national policy favoring arbitration[.]" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345-46 (2011) (second alteration in original).  As the Second Circuit has noted, "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy [the Second Circuit has] often and emphatically applied." *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006).  This policy "requires [the Court] to construe arbitration clauses as broadly as possible." *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995).  To that end, "to the extent there is doubt about the scope of arbitrable issues, the Court must resolve that doubt in favor of arbitration." *Rodriguez*, 2016 WL 11707094, at *2.

Pursuant Section 4 of the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided

for in such agreement." 9 U.S.C. § 4. When deciding whether to compel arbitration, courts in the Second Circuit must consider (1) "whether the parties agreed to arbitrate," (2) "the scope of that agreement[,]" and (3) "if federal statutory claims are asserted, . . . whether Congress intended those claims to be nonarbitrable." *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004); *see also, e.g.*, *McAllister v. Conn. Renaissance Inc.*, 496 F. App'x 104, 106 (2d Cir. 2012). As discussed further below, each of these inquiries compels the conclusion that Plaintiffs must arbitrate their claims pursuant to the procedures in the Plan Document.

### A.   The Plan Document Contains a Valid, Enforceable Arbitration Provision that Binds Plaintiffs.

ERISA requires that ERISA-governed benefit plans be "established and maintained" pursuant to a "written instrument." 29 U.S.C. § 1102(a)(1). These written instruments, known as "plan documents," govern plan participants' rights and obligations. *See, e.g.*, *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) (noting that ERISA has "an elaborate scheme in place for enabling beneficiaries to learn their rights and obligations at any time, [which] is built around reliance on the face of written plan documents"). "Courts construe ERISA plans[] as they do other contracts[.]" *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 102 (2013).[3]

Accordingly, the first question before the Court is whether the arbitration provisions in Section 10.04 of the Plan Document satisfy the FAA's prerequisite for a provision requiring Plaintiffs to arbitrate. They do. Effective January 1, 2019 (at which time both Plaintiffs were Plan

---

[3] In determining whether the Plan arbitration provisions bind Plaintiffs, the Court must apply federal common law because ERISA contains an express and broad provision preempting state law. *See* 29 U.S.C. § 1144(a). When interpreting ERISA plan terms, courts do not apply "any particular state's contract law, but rather [] a body of federal common law tailored to the policies of ERISA." *Mathews v. Sears Pension Plan*, 144 F.3d 461, 465 (7th Cir. 1998). Recently, a court compelled individual arbitration of ERISA claims and noted that "because the arbitration provision is found within an ERISA plan, its interpretation is governed by federal common law." *Robertson v. Argent Tr. Co.*, No. 2:21-cv-01711, 2022 WL 2967710, at *4 (D. Ariz. July 27, 2022).

participants, *see* Am. Compl. ¶¶ 14-15), WBBQ adopted the Plan Amendment to include the arbitration provisions in Section 10.   *See* Exs. B, C.   Specifically, Plaintiff Lloyd was still employed by WBBQ on January 1, 2019, the Plan Amendment's effective date.   *See* Am. Compl. ¶ 14.   And the only apparent reason for why Anastasia Jenkins was added as a Plaintiff in the Amended Complaint is so Plaintiffs' counsel can argue that the Plan Document's arbitration provisions should not apply to her because they were added after she left employment with WBBQ. *See id.* ¶ 18; *id.* at p. 4 n.2.   The date that her employment terminated is irrelevant, however.

In *Robertson*, the plaintiff sought to avoid enforcement of an arbitration provision in a plan document by raising similar arguments to what Defendants anticipate Plaintiff Jenkins will raise here—that "the Amendment was adopted after she ceased employment," and that "she never assented to the Amendment or received any consideration[.]"   *See id.*, 2022 WL 2967710, at *6. The court rejected both of these arguments because, under federal common law (which applies when interpreting an ERISA plan document like the Plan Document), "ERISA provides an employer with broad authority to amend a plan" and "federal courts have generally held that ERISA plans go 'beyond take it or leave it'—a plan sponsor may unilaterally amend the plan, and the 'potential beneficiary, though not consulted or consenting, ordinarily is bound nevertheless by the amendment.'"   *Id.* (quoting *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 442 (1999)).   For these same reasons, Plaintiff Jenkins should be compelled to arbitrate on an individual basis just like Plaintiff Lloyd, regardless of when she left employment with WBBQ.

By its terms, Section 10 requires Plaintiffs to arbitrate "Covered Claims":

As a condition to (i) any Employee becoming eligible to participate in the Plan, (ii) any Employee, Participant or Beneficiary receiving any contributions to his Accounts, (iii) any Employee, Participant or Beneficiary receiving any benefit under the Plan, or (iv) any Claimant including a former Employee, former Participant or former Beneficiary filing a Covered Claim[,] such Employee,

Participant, or Beneficiary . . . shall be subject to the mandatory arbitration procedures described in this Section 10.04.

Ex. B § 10.04(a).  This section expressly conditions participation in the Plan, receipt of contributions or benefits under the Plan, and pursuing claims under the Plan on the participant subjecting him or herself to mandatory individual arbitration procedures.  Plaintiffs triggered these conditions:  they each allege they have been Plan participants since 2016, Am. Compl. ¶¶ 14-15, they have had shares of stock allocated to their accounts, *id.*, and they bring claims seeking the full amount of benefits they believe they are due from the Plan, *id.* ¶¶ 3, 14-15.

Because Plaintiffs seek the benefit of the Plan, they must be bound by its terms.  The Plan's provision embodies the sensible principle that "[a] plan participant agrees to be bound by a provision in the plan document when he participates in the plan while the provision is in effect." *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 512 (9th Cir. 2019) (*Dorman II*[4]).  The Plan Document that binds Plaintiffs has always provided that WBBQ may amend it at any time.  *See* Ex. A § 12.1.  Plaintiffs have continued to participate in the Plan and thus are bound by the Plan Amendment that added Section 10.04, which WBBQ's Board validly adopted.  *See* Ex. C.  Section 10 therefore binds Plaintiffs with respect to the forum in which they can bring "Covered Claims."

**B.     Plaintiffs' Claims Fall Within the Scope of the Arbitration Procedure.**

   **1.     Section 10 of the Plan Document Is a "Broad" Arbitration Provision that "Justifies a Presumption of Arbitrability."**

The Court should first decide if the arbitration clause in Section 10 of the Plan Document is "broad" or "narrow."  *See Hartford Aircraft Lodge 743, Int'l Ass'n of Machinists & Aerospace*

---

[4] *Dorman II* was the second of two concurrently-issued opinions addressing whether a district court erred in refusing to enforce an arbitration provision contained in an ERISA plan.  In *Dorman v. Charles Schwab Corp.*, 934 F.3d 1107 (9th Cir. 2019) (*Dorman I*), the Ninth Circuit overruled prior precedent and embraced the arbitrability of ERISA claims after the Supreme Court's decision in *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013).

*Workers, AFL-CIO v. Hamilton Sundstrand Corp.*, 213 F. App'x 31, 32 (2d Cir. 2007) ("At the outset, we ordinarily decide whether the clause is 'broad' or 'narrow.'").  "[T]he existence of any broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute[,]" and "[d]oubts should be resolved in favor of coverage." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 653-54 (2d Cir. 2004).

A clause providing for "arbitration of 'any controversy or claim between [the parties] arising out of or relating to' the Agreement" is "classically broad" and "precisely the kind of broad arbitration clause that justifies a presumption of arbitrability."  *Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 49 (2d Cir. 2000) (alteration in original).  The Plan Document includes just such a clause.  It describes a "Covered Claim" in an expansive way, as "*[a]ny claim*, dispute or controversy *of any kind* by a [Claimant] . . . asserting a breach of, or failure to follow, *any provisions of ERISA or the [Internal Revenue] Code*, including *without limitation* claims for breach of fiduciary duty[.]"  *See* Ex. B § 10.01 (emphasis added).  Moreover, the Plan Document's arbitration provision covers all claims under the two statutes (ERISA and the Code) that form the basis for any claims related to an ERISA-governed plan; therefore, Section 10 is a "classically broad" provision that requires a "presumption of arbitrability."

### 2. Plaintiffs' Claims Fall Within the Plain Language of the Definition of "Covered Claim" in the Plan Document.

Plaintiffs' claims fall within the plain language of a "Covered Claim" subject to arbitration.  "Covered Claim" includes "any claim asserting a breach of, or failure to follow, any provision of ERISA," and Counts I through VI all allege ERISA violations.  *See* Am. Compl. ¶¶ 130-89.  Because the Plan Document's arbitration provisions are "broad" (*see Mehler*, 205 F.3d at 49),

there is a presumption that Plaintiffs' claims are arbitrable; but even absent a presumption, all of Plaintiffs' claims fall within the definition of "Covered Claims" in the Plan Document.

### C.     ERISA Claims Are Arbitrable.

Under Second Circuit precedent, the Court next should evaluate "whether, if federal statutory claims are asserted, Congress intended those claims to be nonarbitrable[.]"  *McAllister*, 496 F. App'x at 106.  This inquiry applies here because all of Plaintiffs' claims are federal statutory claims under ERISA.  *See* Am. Compl. ¶¶ 130-89.  The Second Circuit has recognized that ERISA claims may be arbitrated, holding that "statutory claims arising under ERISA may be the subject of compulsory arbitration."  *Bird v. Shearson Lehman/Am. Exp., Inc.*, 926 F.2d 116, 122 (2d Cir. 1991); *see also Murphy*, 709 F. Supp. 2d at 247 (citing *Bird* and noting that "[t]he Second Circuit has held that Congress has not evinced an intention to preclude a waiver of judicial remedies for ERISA claims").  The third inquiry is thus satisfied.

### D.     Plaintiffs Must Arbitrate on an Individual Basis.

#### 1.     The Plan Contains a Waiver of Collective Action, and the Court (Rather Than the Arbitrator) Must Decide Whether to Enforce It.

Section 10.04(e) of the Plan Document as amended provides:

> ***All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis***.  Each arbitration shall be limited solely to one Claimant's Covered Claims and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any Employee, Participant or Beneficiary other than the Claimant.

Ex. B § 10.04(e).  Further, Section 10.04(f) provides:

> The requirements of Section 10.04(e) include, but are not limited to, that with respect to any claim brought under ERISA section 502(a)(2) to seek relief under ERISA section 409, the Claimant's remedy, if any, shall be limited to (i) the alleged losses to the Claimant's Accounts resulting from the alleged breach of fiduciary duty, (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where such pro-rated amount is intended to provide a remedy solely to Claimant's Accounts, or (iii) such other remedial or equitable relief as the

11

> arbitrator deems proper so long as such remedial or equitable relief does not include
> or result in the provision of additional benefits or monetary relief to any Employee,
> Participant or Beneficiary other than the Claimant, and is not binding on the
> Administrator or the Trustee with respect to any Employee, Participant or
> Beneficiary other than the Claimant.

Ex. B § 10.04(f).

If Plaintiffs were to contest that either of these quoted provisions applied to any arbitration proceeding they might bring, the Plan Document specifies that this Court (rather than the arbitrator) should resolve that issue. With a notable exception, the Plan Document establishes the scope of the arbitrator's authority as follows:

> [T]he arbitrator shall have exclusive authority to resolve any dispute or issue of
> arbitrability with respect to [Section 10], including as to the jurisdiction of the
> arbitrator or relating to the existence, scope, validity, enforceability or performance
> of [Section 10] or any of its provisions.

Ex. B at § 10.04(g). The Plan Document expressly carves out from the arbitrator's authority questions related to "the applicability or validity of the requirements of Sections 10.04(e) and 10.04(f)," which must be "determined solely" by this Court.[5] *See id.* The Plan also provides that Sections 10.04(e) and (f) are "material and non-severable" from the arbitration provisions in Section 10, and that, "[i]f the Court . . . finds these requirements to be unenforceable or invalid, then the entire [Section 10] shall be rendered null and void in all respects." *Id.* at § 10.04(g).

In sum, the Plan Document leaves for the Court to decide any dispute related to the applicability or validity of the individualized arbitration provisions—and, for reasons provided below, the Court should conclude that the provisions must be enforced.

---

[5] Even if Section 10.04(g) did not include clear language authorizing this Court to determine questions of the validity and applicability of the individualized arbitration provisions in Sections 10.04(e) and (f), courts commonly hold that class arbitrability is a "gateway" issue for the Court rather than an arbitrator. *See, e.g.*, *20/20 Commc'ns, Inc. v. Crawford*, 930 F.3d 715, 718-19 (5th Cir. 2019) (collecting cases and holding that "class arbitrability is a gateway issue for courts, not arbitrators, to decide, absent clear and unmistakable language to the contrary").

### 2. The Individual Arbitration Provisions are Enforceable.

The Supreme Court has held repeatedly that individual arbitration provisions are enforceable even as to claimants who seek to vindicate important statutory rights. *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (upholding individual arbitration of antitrust claims); *AT&T Mobility LLC*, 563 U.S. at 344 (invalidating state law that required availability of class-wide arbitration and enforcing class waiver); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991) (upholding individual arbitration of age discrimination claims brought under the ADEA). These decisions reflect that arbitration provisions constitute contracts that courts "must 'rigorously enforce' . . . according to their terms[.]" *Am. Express*, 570 U.S. at 233; *Dorman II*, 780 F. App'x at 514 ("Because 'arbitration is a matter of contract,' the Provision's waiver of class-wide and collective arbitration must be enforced according to its terms, and the arbitration must be conducted on an individualized basis.").

In *Epic Systems Corp. v. Lewis*, the Supreme Court held that individualized arbitration provisions are valid and enforceable because, "[i]n the [FAA], Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings." 138 S. Ct. 1612, 1619 (2018). The Supreme Court added that "[a] party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing 'a clearly expressed congressional intention' that such a result should follow[,]" and Congress's intention "must be 'clear and manifest.'"[6] *Id.* at 1624.

---

[6] The Supreme Court underscored the point that courts must give effect to arbitration provisions that select individual arbitration over class or collective proceedings. In *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022), the Court emphasized that declining to enforce individual arbitration sets up an untenable choice between either arbitrating on a class or collective basis (in frustration of the underlying agreement to arbitrate individually) or foregoing arbitration altogether. *Id.* at 1918. The Court made clear that "[p]utting parties to that choice is inconsistent with the FAA." *Id.* Any argument from Plaintiffs against individualized arbitration would run

### a.    There Is No "Clearly Expressed Congressional Intention" That the FAA and ERISA Cannot Be Harmonized.

To avoiding arbitrating their claims on an individual basis, Plaintiffs would have to convince the Court that ERISA—specifically, ERISA Sections 502(a)(2) and 409—and the FAA cannot be harmonized.  Those sections enumerate, respectively, the parties who may bring a civil action for breach of fiduciary duty and the scope of the liability that may be imposed on a breaching fiduciary.[7]  Plaintiffs cannot satisfy their "heavy burden" of showing a "clearly expressed congressional intention" that ERISA cannot be harmonized with the FAA's requirement that courts enforce the plain terms of arbitration provisions.

The FAA does not contain any reference to ERISA.  Moreover, nothing in the plain language of ERISA Sections 502 or 409 expressly prohibits (or even references) arbitration, individual or otherwise.  Unless Plaintiffs can point to explicit language in ERISA prohibiting individual arbitration of claims under Sections 502 or 409, the Court is bound under the FAA to grant Defendants' motion to compel arbitration.  Plaintiffs can point to no such language.

Not only are the statutes devoid of any "clearly expressed congressional intention" that ERISA and the FAA cannot be harmonized, but in fact they operate in perfect harmony.  The core principle of the FAA is that "courts must 'rigorously enforce' arbitration agreements according to their terms[.]"  *Am. Express*, 570 U.S. at 233.  An equally fundamental precept of ERISA is that

---

afoul of the Court's rule and impermissibly force Defendants to choose between arbitrating on a class basis (contrary to Section 10.04 of the Plan Document) and foregoing arbitration altogether.

[7] Plaintiffs are bringing suit for alleged ERISA violations under ERISA Sections 502(a)(2) and 409, which read together provide that a plan participant may sue for a fiduciary alleged to have breached duties under ERISA to be held "personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary," and to be "subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."  29 U.S.C. § 1109(a).

ERISA's statutory scheme is "built around reliance on the face of written plan documents." *Curtiss-Wright*, 514 U.S. at 83.  For this reason, courts must enforce plan documents as written. *See US Airways*, 569 U.S. at 101.  Enforcing the ERISA plan document containing the arbitration provision thus furthers the most fundamental congressional goals of each statute.

**b.      The "Effective Vindication" Exception Is Inapplicable.**

In the absence of a clearly expressed congressional intention, the only way for Plaintiffs to avoid the Plan's arbitration provision would be for them to demonstrate that their claims fall within the "effective vindication" exception, which the Supreme Court has recognized in theory but never applied.  *Am. Express*, 570 U.S. at 235.  Under that theoretical doctrine,[8] a court could decline to enforce an arbitration provision if it were to conclude that the provision prohibited a plaintiff from effectively vindicating his or her statutory rights.  *Id.*

Plaintiffs cannot make such a showing here.  Enforcing the valid and binding arbitration provisions in Section 10.04 would not affect the individual recovery that Plaintiffs (or any other Plan participant) could obtain under ERISA Section 502(a)(2).  The individualized arbitration provisions in Sections 10.04(e) and (f) describe remedies available in arbitration for claims under ERISA Section 502(a)(2).  *See* Ex. B §§ 10.04(e), (f).

Plaintiffs have no right to anything more than remedies for individual recovery, such as those that Sections 10.04(e) and (f) provide.  This is because, as an ESOP, the Plan is a defined contribution plan—a form of retirement plan that "provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account."

---

[8] As the court observed in *Robertson*, "[r]ecent Supreme Court decisions suggest the effective vindication doctrine may rest on shaky footing."  *Robertson*, 2022 WL 2967710, at *7 n.6.  The *Robertson* court noted that *American Express* "described the doctrine as stemming from 'dictum,'" and in dissent Justice Ginsburg wrote that *American Express* "suggests that [the effective vindication exception] will no longer apply in any case."  *See id.*

*Hughes Aircraft Co.*, 525 U.S. at 439.  The Supreme Court has recognized that Section 502(a)(2) in the context of defined contribution plans "authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account."  *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008).

If they were able to proceed with their claims in federal court, Plaintiffs personally would recover a pro rata share of any proven monetary damages attributable to their individual accounts.  They would be able to receive ***an identical*** recovery in individual arbitration (and each other Plan participant could seek a similar recovery with respect to their own individual Plan accounts).  *See Smith v. Bd. of Dirs. of Triad Mfg., Inc.*, 13 F.4th 613 (7th Cir. 2021).

In *Smith*, the Seventh Circuit reviewed a lower court decision denying a motion to compel individualized arbitration of ERISA claims based on provisions in an ESOP plan document.  *Id.* at 616-17.   The Seventh Circuit acknowledged that individual arbitration is not "inherently incompatible with ERISA":  "Because Smith participated in a defined contribution plan, *LaRue* . . . governs, and the Court made clear in *LaRue* that § 1132(a) 'authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's *individual* account.'"  *Id.* at 622.[9]

---

[9] The Second Circuit's decision in *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173 (2d Cir. 2021), is not to the contrary.  There the Court reversed a district court decision compelling arbitration because it concluded that ERISA claims fell outside the scope of an arbitration provision contained in a separate employment agreement signed by the plaintiff.  The Court speculated in *dicta* that there could potentially be tension between a class action waiver in an employment agreement and ERISA's remedial provisions.  Both the Court's holding and its observation in *dicta* are distinguishable from this case because, among other things, the arbitration provisions here are contained within the Plan Document rather than in employment agreements between Plaintiffs and WBBQ.  This distinction is critical because a plan document governed by ERISA (which, here, would include the arbitration provisions in Section 10) must be enforced according to its terms.  *See, e.g.*, *US Airways*, 569 U.S. at 101 (courts must enforce plan documents as written); *Curtiss-Wright Corp.*, 514 U.S. at 83 (ERISA's statutory scheme is "built around reliance on the face of written plan documents").

This view of individual arbitration as fully compatible with ERISA aligns with *Dorman II*, in which the Ninth Circuit also enforced an individual arbitration provision in an ERISA plan document, holding that "the Plan expressly agreed in the Plan document that all ERISA claims should be arbitrated[,]" and "[a] plan participant agrees to be bound by a provision in the plan document when he participates in the plan while the provision is in effect."  780 F. App'x at 512-13.  This reasoning from the Seventh and Ninth Circuits support enforcing Section 10.04 here.

Recently, a court faced with a motion to compel individual arbitration under an ERISA plan document considered *LaRue*, *Smith*, and *Dorman II* and held that an ESOP participant must arbitrate her ERISA claims on an individual basis.  *See Robertson*, 2022 WL 2967710, at *7-10. The court in *Robertson* observed that "none of the cited cases suggests that an ERISA § 502(a)(2) plaintiff has an unqualified right to bring a collective action to recoup all of a fiduciary's losses and gains at once."  *Id.* at *10.  The court explained that "Section 502(a)(2) only grants Plaintiff a right to sue for 'appropriate relief under section 409[,]'" and Section 409 in turn "describes consequences to the errant fiduciary, not the right of the plan participant."  *Id.*  In other words, while it is true that Section 409 provides that a breaching fiduciary can be ***liable*** for "any losses to the plan" and "any profits" gained as a result of a breach, the section does ***not*** provide that ***one*** participant has an unwaivable right to seek that ***entire*** recovery on behalf of all plan participants.

These cases—*Smith*, *Dorman II*, and *Robertson*—each read *LaRue* as confirming that the right a participant in a defined contribution plan (like Plaintiffs here) has to pursue remedies under Sections 502(a)(2) and 409 is for losses or improper fiduciary profits with respect to the participant's individual plan account (rather than with respect to ***all*** participants' plan accounts). Plaintiffs' right to pursue such remedies is indisputably preserved by the individualized arbitration provisions in Section 10 of the amended Plan Document.  Accordingly, Plaintiffs can "effectively

vindicate" their statutory ERISA rights in individual arbitration, and the effective vindication exception does not prevent the Court from compelling arbitration.

Plaintiffs may argue that the Court should follow the Seventh Circuit's ultimate holding in *Smith*, but such an argument is unavailing because the *Smith* holding is erroneous and at odds with Supreme Court precedent.[10]  In *Smith*, the Seventh Circuit held that an individualized arbitration provision was invalid because it purportedly prevented a participant from seeking a plan-wide equitable remedy—removal of a fiduciary.  *Smith*, 13 F.4th at 616-17.  Even if the Seventh Circuit were correct that the arbitration provision at issue prohibited an individual from seeking certain plan-wide equitable remedies in arbitration, that alone would not support invalidating an arbitration provision because plan-wide remedies remain available.

Separate from participants' statutory right to pursue their claims, ERISA Section 502(a)(2) authorizes the Secretary of Labor to bring actions on behalf of a plan, in which the Secretary can seek plan-wide relief under Section 409(a) (such as removal of a breaching fiduciary).  *See LaRue*, 552 U.S. at 253.  The U.S. Department of Labor can investigate and seek to remedy any breach, should it determine one has occurred.  Nothing about the arbitration provision at issue curtails those suits or the relief that would be available through them.  The Supreme Court has noted an administrative agency's ability to pursue broader relief as another reason for enforcing individual

---

[10] Defendants acknowledge that this Court denied a motion to compel arbitration of ERISA claims in *Cedeno v. Argent Trust Co.*, No. 20-CV-9987 (JGK), 2021 WL 5087898, at *1 (S.D.N.Y. Nov. 2, 2021).  That decision is currently on appeal.  *See* Not. of Appeal, *Cedeno v. Argent Tr. Co.*, No. 20-CV-9987 (JGK) (S.D.N.Y. Nov. 19, 2021), ECF No. 75.  Respectfully, *Cedeno* was wrongly decided and subject to reversal.  First, *Cedeno* held that a "plaintiff has the right under §§ 409(a) and 502(a)(2) to recover for the Plan as a whole[,]" 2021 WL 5087898, at *6, relying on *Smith*, even though *Smith*'s reasoning is not consistent with such a holding; rather than recognizing such a broad right, the Seventh Circuit oppositely concluded that individualized arbitration is not "inherently incompatible" with Section 502(a)(2) claims.  *Smith*, 13 F.4th at 622.  Second, *Cedeno* should not have followed *Smith*'s holding because it conflicts with Supreme Court precedent in *Gilmer* (see below).

arbitration provisions for federal statutory claims. *See Gilmer*, 500 U.S. at 32 (enforcing individual arbitration of age discrimination claims under the Age Discrimination in Employment Act because "arbitration agreements will not preclude the *EEOC* from bringing actions seeking class-wide and equitable relief"); *see also Williams v. Dearborn Motors 1, LLC*, No. 20-1351, 2021 WL 3854805, at *5-6 (6th Cir. Aug. 30, 2021) (even if the arbitrator could not "award the exact injunctive remedy plaintiffs desire[d], the arbitration agreement with its class waiver policy '[would] not preclude the EEOC from bringing actions seeking class-wide and equitable relief'").

For these reasons, this Court should order Plaintiffs to arbitrate on an individual basis.

### E.     The Case Should Be Stayed While Any Arbitration Proceeds.

Section 3 of the FAA mandates that courts stay proceedings where, as here, alleged claims are arbitrable and a party has asked for a stay. *See* 9 U.S.C. § 3 (providing that, where an issue is to be referred to arbitration, courts "*shall* on application of one of the parties stay the trial of the action") (emphasis added).  Because, as discussed above, the Plan Document dictates arbitration of all claims asserted here, the Court must stay the case as Defendants request. *See, e.g.*, *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) (concluding that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested").

### F.     The Court Should Award Defendants Attorneys' Fees and Costs, as Provided Under the Plan Document.

The Plan Document provides for an award of attorneys' fees if a Claimant "makes an unsuccessful challenge to the validity, enforceability or scope of the Arbitration Procedure in any court[.]"  *See* Ex. B § 10.04(q).  Plaintiffs have participated in the Plan since its establishment. *See* Am. Compl. ¶¶ 14-15.  Both Plaintiffs have been aware of the binding arbitration provisions in the Plan Amendment since at least when Defendants' counsel provided a copy to their counsel

on July 27, 2022—indeed, Plaintiff Jenkins should have learned about the arbitration provisions through her counsel at the time she agreed to add her name to this lawsuit. *See* Am. Compl. ¶¶ 14-15; Ex. D.  The only reason that Defendants filed this Motion is because Plaintiffs persisted in flouting the Plan Document by filing an Amended Complaint in this Court, which is the wrong forum.  Defendants thus are entitled under the Plan Document to reimbursement of attorneys' fees, costs, and any other expenses incurred with respect to moving to compel arbitration. *See, e.g.*, *Barreto v. Jec II, LLC*, No. 16-CV-9729, 2017 WL 3172827, at *6 (S.D.N.Y. July 25, 2017) (awarding attorneys' fees to defendants who successfully compelled arbitration because "the plain text of the arbitration agreements provide for attorneys' fees").[11]

## II.    In the Alternative, The Amended Complaint Should Be Dismissed Under Rule 12(b)(1) For Lack of Article III Standing.

If the Court declines to enforce the arbitration provisions in Section 10 of the amended Plan Document, Defendants also move for dismissal under Rule 12(b)(1) because the Court lacks subject matter jurisdiction.  The Second Circuit has held that, "[i]f plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005); *see also Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (a plaintiff must have both statutory and Article III standing to bring an ERISA action).

---

[11] Plaintiffs may point to *Robertson*, in which the court declined to award attorneys' fees under a similar provision in a plan document, but Defendants respectfully submit that this aspect of the decision should not be followed.  Section 10.04(q) does not purport to affect or supplant the fee-shifting regime under ERISA, which allows for a discretionary award of fees to a party that prevails on the merits. *See* 29 U.S.C. § 1132(g).  Section 10.04(q) has no impact on the merits, but rather would be triggered only where a participant files suit in the wrong forum and wrongfully resists requests to arbitrate.  In addition, Section 10.04(q) would not "dissuade litigants from bringing colorable claims[,]" as the court in *Robertson* feared, *see* 2022 WL 2967710, at *11, because a participant is free to bring any and all ERISA claims in arbitration.

To establish standing under Article III, a plaintiff must show "(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020).  An "injury in fact" is "an invasion of a legally protected interest which is . . . concrete and particularized." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  To be "concrete," an injury "must actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-40 (2016).   Additionally, a plaintiff must "allege[] ***facts*** that affirmatively and plausibly suggest that the plaintiff has standing to sue." *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (emphasis added).

Plaintiffs' allegations evince nothing more than the unremarkable fact that a leveraged ESOP stock purchase transaction occurred.  Specifically, Argent (on behalf of the ESOP) and the Wetansons agreed to a transaction in which the ESOP would purchase 80% of the outstanding stock of WBBQ for $98,887,309 total, which was financed by a loan from the Wetansons for $73,887,309 and a loan from WBBQ for $20,200,000.  *See* Am. Compl. ¶¶ 4, 6, 60-64.

Beyond the bare details of the Transaction, Plaintiffs allege ***no relevant facts*** to plead plausibly that they suffered an actual, concrete injury in fact as a result of the Transaction.  Rather, they allege in conclusory fashion that they "suffered a financial injury as a result of Defendants' unlawful conduct."  *See id.* ¶¶ 14-15.  The basis for their purported "financial injury" appears to be that the price that the ESOP paid in the Transaction "far exceeded the fair market value of the purchased shares."  *See id.* ¶ 65.  That may be the ***theory***, but the only ***fact*** that Plaintiffs offer in support of that claim is irrelevant to show that they suffered an injury in fact under Article III.

Specifically, Plaintiffs feign shock at the following:  "According to the ESOP's 2016 financial statements filed with the DOL, the reported value of the acquired WBBQ stock on

December 31, 2016 – just five months after the Transaction – was $72.20 per share, or $28,880,000.00 million in the aggregate, which equals 29.2% of the value that the ESOP paid for WBBQ stock." *See id.* ¶ 66.  As courts have recognized, however, a post-ESOP transaction decrease in equity value—such as occurred with the Plan here, Plaintiffs allege—happens naturally (and by operation of simple arithmetic) in a leveraged ESOP transaction and thus says nothing whatsoever about whether that transaction was for fair market value.

A decision out of the Eastern District of North Carolina also brought by these Plaintiffs' counsel—*Lee v. Argent Trust Co.*, No. 5:19-CV-156, 2019 WL 3729721 (E.D.N.C. Aug. 7, 2019), *recons. denied*, No. 5:19-CV-156, 2019 WL 6331333 (E.D.N.C. Nov. 25, 2019)—is on all fours with and dispositive of Plaintiffs' claims here.  Indeed, the allegations in *Lee* so closely parallel the relevant facts in this case that one could merely swap in details of the WBBQ transaction and no meaning would be lost.  In *Lee*, the ESOP at issue purchased 80% of the outstanding stock of the Choate Construction Company (8 million shares) for $198 million.  *Id.* at *1.  The stock purchase was 100% financed between loans from the selling shareholders and the company.  *Id.*

The plaintiff alleged that the defendants violated ERISA in the completing the transaction.  The plaintiff "reason[ed] that, on the basis of the $64.8 million valuation a few weeks later, the per-share value dropped to $8.10 [from $25.75 per share at the time of the transaction] in such a short period of time that the first purchase could not have been at fair-market value."  *Id.* at *3.  The court rejected the plaintiff's reasoning and concluded that the plaintiff "has not demonstrated that she has suffered a concrete and particularized injury."  *Id.*

In rejecting the plaintiff's alleged injury, the court explained:

[I]t is better to conceive of this transaction, as defendants have argued, as being comparable to the purchase of a mortgage-financed house.  Suppose that a buyer finds a house that is listed at $198,000.  The buyer has no money for a down payment, however, so she obtains a $198,000 mortgage loan in order to buy the

house.  The buyer has taken on a $198,000 debt (the mortgage) and, in return, obtained a $198,000 asset (the home).  As a result, she has experienced ***no change in equity***; her asset and her corresponding obligation result in $0 in new equity.  But now suppose that the $198,000 house is actually worth $262,800, and our buyer was able to purchase the house at a discount.  She still has her $198,000 mortgage, but ***now she also has $64,800 in equity***; if she were to turn around and sell the house at its $262,800 value, after paying off her mortgage, ***she would be left with a tidy profit of $64,800***.

*Id.* (emphasis added).  Applying its hypothetical to the facts of *Lee*, the court noted that, because the ESOP purchased shares for $198 million and took out the same amount in loans, "[t]he expected value of the Choate ESOP's shares—at least in the short term—would be $0."  *Id.* at *4.  "Instead, the $64.8 million valuation at the end of December 2016 reflects the fact that the Choate ESOP, like the hypothetical buyer, realized an ***immediate equitable benefit***."  *Id.* (emphasis added).  The court held "Plaintiff's mere allegation . . . that the Choate ESOP overpaid for Choate shares is insufficient to support Article III standing in this case."  *Id.*

Indeed, this Court was recently presented with similar facts in a leveraged ESOP stock purchase transaction and reached the same conclusion.  *See Plutzer v. Bankers Tr. Co. of S.D.*, No. 1:21-CV-3632 (MKV), 2022 WL 596356 (S.D.N.Y. Feb. 28, 2022) (following *Lee*), *appeal filed* Mar. 15, 2022.  In *Plutzer*, an ESOP purchased 100% of the outstanding stock of Tharanco Group Inc. for $133,430,000, the amount of which was 100% financed by loans from the selling shareholders and company.  *Id.* at *2.  After the transaction, the shares that the ESOP had purchased "were 're-valued at $13,250,000.'"  *Id.*

The court noted that "[t]he gravamen of Plaintiff's Complaint is that the Defendants 'caused the Plan to buy shares of Tharanco for more than fair market value in 2015,' resulting in losses to the Plan participants."  *Id.* at *4.  The court explained further that "Plaintiff appears to plead that the 2015 ESOP transaction was for 'more than fair market value' because, following the transaction, the Tharanco shares were 're-valued at $13,250,000' from the '$133,430,000 paid by

23

the Plan.'"  *Id.*  The court favorably cited the home mortgage analogy from *Lee* and, given that the ESOP's stock was 100% leveraged but still had over $13 million in equity after the transaction, held that the plaintiff failed to allege an injury in fact.  *See id.* at *5-6.[12]

Plaintiffs here similarly lacks Article III standing.  As they allege, the Transaction was nearly 100% leveraged (just like the transactions in *Lee* and *Plutzer*)—the ESOP purchased WBBQ stock for $98,887,309, which was financed with loans totaling $94,087,309 (*i.e.*, a $20,200,000 loan from WBBQ and a $73,887,309 loan from the Wetansons).  *See* Compl. ¶¶ 60, 62-64.  Subtracting the total amount of financing from the total purchase price, one would expect the equity value of the ESOP's stock post-Transaction to be $4,800,000.  But as Plaintiffs allege, the total stock value was actually $28,880,000.  The post-Transaction increase of over $24 million represents the same "tidy profit" that the courts in *Lee* and *Plutzer* held defeats a participant's claim that they suffered an injury in fact.  *See Lee*, 2019 WL 3729721, at *3-4.

The post-Transaction reduction in the equity value of WBBQ stock is Plaintiffs' only factual allegation supposedly supporting the conclusion that the Transaction was for more than fair market value.  *See* Am. Compl. ¶¶ 66-67.  With this allegation debunked, Plaintiffs' barebones claim that they "suffered a financial injury," *see id.* ¶¶ 14-15, is utterly conclusory and lacking in

---

[12] Another district court recently disagreed with *Lee* but, respectfully, that decision misunderstood *Lee* and thus should not be followed.  *See Placht v. Argent Trust Co.*, No. 21 C 5783, 2022 WL 3226809 (N.D. Ill. Aug. 10, 2022).  In *Placht*, the plaintiff alleged that an ESOP purchased a company's stock for $66.5 million, which was valued at significantly less (between $7.8 and $11 million) several months later.  The court in *Placht* reasoned that the allegations before it differed from *Lee* because Placht "does not include allegations regarding the ESOP's equitable positions before and after the transaction," but rather the plaintiff "alleges that the asset purchased . . . was significantly devalued . . . following the purchase."  *Id.* at *3.  This attempted distinction between changes in "equitable positions" and stock being "devalued" is not a difference.  In *Placht*, as in *Lee* and in this case, the ***reason*** company stock was allegedly "significantly devalued" was ***because*** an ESOP took on debt to finance a purchase of company stock.  The court in *Placht* should have applied *Lee* and reached the same conclusion (that the plaintiff in *Placht* failed to plead an injury-in-fact and lacked Article III standing).

plausible factual support.[13]  Tellingly, Defendants raised this same argument (*i.e.*, that Plaintiffs' alleged injury lacks any plausible factual support) as a basis for dismissal in their first Motion, and Plaintiffs added **no facts** in their Amended Complaint to address the deficiency that Defendants raised.  Accordingly, the Court should conclude that Plaintiffs have failed to plead **facts** to show they suffered in injury in fact and should dismiss all their claims.  *See John*, 858 F.3d at 736.

## CONCLUSION

For reasons stated above, Defendants request that the Court compel Plaintiffs to arbitrate their claims on an individual basis, and that the Court stay the case while they do so.  Defendants further request that the Court award Defendants their attorneys' fees and costs incurred in seeking this relief.  In the alternative, if the Court were to decline to compel individual arbitration, Defendants request that the Court dismiss the Amended Complaint for lack of Article III standing.

Dated: October 3, 2022                    */s/ Lars C. Golumbic*
                                          Lars C. Golumbic*
                                          Mark C. Nielsen
                                          Sarah M. Adams*
                                          Paul J. Rinefierd*
                                          Larry M. Blocho, Jr.*
                                          GROOM LAW GROUP, CHARTERED
                                          1701 Pennsylvania Ave., NW
                                          Washington, D.C., 20006
                                          (T) 202-857-0620

---

[13] Plaintiffs' Article III standing is not salvaged by their allegation that the WBBQ stock price allegedly "continued to decline" in several years after the Transaction.  Multiple courts have recognized that, under ERISA, the fair market value of shares acquired by an ESOP must be determined at the time of the purchase transaction.  *See, e.g.*, *Hans v. Tharaldson*, No. 3:05-CV-115, 2011 WL 6937598, at *13 (D.N.D. Dec. 23, 2011) ("Post-transaction performance is irrelevant to a valuation analysis."); *Keach v. U.S. Tr. Co., N.A.*, 313 F. Supp. 2d 818, 867 (C.D. Ill. 2004) ("[T]he appropriateness of an investment is to be determined from the perspective of the time the investment was made, not from hindsight."), *aff'd*, 419 F.3d 626 (7th Cir. 2005); *Montgomery v. Aetna Plywood, Inc.*, 39 F. Supp. 2d 915, 937 (N.D. Ill. 1998) (finding that "[t]he fair market value" of shares in privately-held company acquired by ESOP "is to be determined as of the date of the transaction").

(F) 202-659-4503
lgolumbic@groom.com
mnielsen@groom.com
sadams@groom.com
prinefierd@groom.com
lblocho@groom.com

*appearing pro hac vice*