UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| Jamaal Lloyd, individually and on behalf of all others similarly situated, and on behalf of the W BBQ Holdings, Inc. Employee Stock Ownership Plan, | ) ) ) ) ) |  |
| Plaintiff, | ) ) | Case No. 1:22-cv-04129-DLC |
| v. | ) ) |  |
| Argent Trust Company, Herbert Wetanson, Gregor Wetanson, and Stuart Wetanson, | ) ) ) |  |
| Defendants. | ) ) |  |

## MEMORANDUM IN OPPOSITION TO DEFENDANTS' RENEWED MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY THE CASE, OR, IN THE ALTERNATIVE, TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................ 3

    I.     FACTUAL ALLEGATIONS ............................................................... 3

    II.    PLAINTIFFS' PLAN-WIDE CLAIMS UNDER ERISA .................................. 4

    III.   THE PURPORTED ARBITRATION PROVISION .......................................... 5

ARGUMENT ................................................................................................... 7

    I.     THE MOTION TO COMPEL ARBITRATION SHOULD BE DENIED ................. 7

          A.    The Arbitration Provision Impermissibly Limits Statutory
               Remedies ...................................................................... 8

          B.    Strictly Individual Arbitration Is Inconsistent with Representative
               Claims under ERISA § 502(a)(2) .......................................... 15

          C.    Plaintiffs Did Not Receive Proper Notice of the Arbitration
               Provision and Did Not Consent to Arbitrate Their Claims ...................... 16

          D.    Defendants' Request for Attorneys' Fees Is Specious and Further
               Demonstrates Why the Arbitration Provision Is Unenforceable .............. 19

    II.    DEFENDANTS' "ALTERNATIVE" MOTION TO DISMISS SHOULD BE DENIED .......... 19

          A.    Defendants Ignore the Extensive Allegations in the Amended
               Complaint ...................................................................... 20

          B.    Defendants Ignore Applicable Procedural Rules ...................................... 23

CONCLUSION ................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                    **Page(s)**

*Allen v. Gratbanc Tr. Co.*,
    835 F.3d 670 (7th Cir. 2016) ...............................................................22, 23, 24, 25

*Am. Express Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013)...............................................................................8, 12, 14

*Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Murdock*,
    861 F.2d 1406 (9th Cir. 1988) .........................................................................10, 11

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018)....................................................................................14

*Baur v. Veneman*,
    352 F.3d 625 (2d Cir. 2003)..............................................................................23

*Bereket v. Portfolio Recovery Assocs., LLC*,
    2017 WL 4409480 (W.D. Wash. Oct. 4, 2017) .......................................................20

*Bird v. Shearson Lehman/Am. Exp., Inc.*,
    926 F.2d 116 (2d Cir. 1991)..............................................................................14

*Brundle v. Wilmington Tr. N.A.*,
    241 F. Supp. 3d 610 (E.D. Va. 2017) .................................................................23

*Carnival Cruise Lines, Inc. v. Shute*,
    499 U.S. 585 (1991)......................................................................................18

*Cedeno v. Argent Tr. Co.*,
    2021 WL 5087898 (S.D.N.Y. Nov. 2, 2021).................................................... *passim*

*CIGNA Corp. v. Amara*,
    563 U.S. 421 (2011).....................................................................................10

*Coan v. Kaufman*,
    457 F.3d 250 (2d Cir. 2006)..........................................................................1, 15

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
    990 F.3d 173 (2d Cir. 2021)........................................................................1, 8, 15

*Dorman v. Charles Schwab Corp.*,
    780 F. App'x 510 (9th Cir. Aug. 20, 2019) .........................................................14

*Dorman v. Charles Schwab Corp.*,
    934 F.3d 1107 (9th Cir. Aug. 20, 2019)..............................................................14

*Eaves v. Penn*,
    587 F.2d 453 (10th Cir. 1978) ...................................................................................10, 16

*Esden v. Bank of Bos.*,
    229 F.3d 154 (2d Cir. 2000)...................................................................................18

*Falberg v. Goldman Sachs Grp., Inc.*,
    2020 WL 3893285 (S.D.N.Y. July 9, 2020) ..........................................................24

*Ferguson v. Ruane Cuniff & Goldfarb Inc.*,
    2021 WL 3667979 (S.D.N.Y. Aug. 17, 2021) ...................................................2, 15

*Fernandez v. K-M Indus. Holding Co.*,
    585 F. Supp. 2d 1177 (N.D. Cal. 2008) ...............................................................22

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014)............................................................................................8, 9

*Gamino v. KPC Healthcare Holdings, Inc.*,
    2021 WL 162643 (C.D. Cal. Jan. 15, 2021) ...................................................22, 23

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991)................................................................................................14

*Gollust v. Mendell*,
    501 U.S. 115 (1991)..............................................................................................20

*Griggs v. E.I. DuPont de Nemours & Co.*,
    385 F.3d 440 (4th Cir. 2004) ................................................................................10

*Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*,
    2022 WL 909394 (D. Colo. March 24, 2022).........................................2, 7, 13, 14

*Henry v. Wilmington Tr., N.A.*,
    2021 WL 4133622 (D. Del. Sept. 10, 2021) ...........................................2, 8, 17, 18

*Hensiek v. Bd. of Dirs. of Casino Queen Holding Co., Inc.*,
    2022 WL 263321 (S.D. Ill. Jan 28, 2022)........................................................22, 25

*Hensiek v. Bd. of Dirs. of Casino Queen Holding Co., Inc.*,
    514 F. Supp. 3d 1045 (S.D. Ill. 2021)..............................................................2, 8, 17

*Innis v. Bankers Tr. Co. of S. Dakota*,
    2017 WL 4876240 (S.D. Iowa Oct. 13, 2017)......................................................22

*Krohnengold v. New York Life Ins. Co.*,
    2022 WL 3227812 (S.D.N.Y. Aug. 10, 2022) .......................................................25

*Lamps Plus. Inc. v. Varela*,
  139 S. Ct. 1407 (2019) ...................................................................................16

*LaRue v. DeWolff, Boberg and Assocs.*,
  552 U.S. 248 (2008) ..............................................................................11, 12

*Lee v. Argent Tr. Co.*,
  2019 WL 3729721 (E.D.N.C. Aug. 7, 2019) ..........................................23

*Lowen v. Tower Asset Mgmt., Inc.*,
  829 F.2d 1209 (2d Cir. 1987) ..................................................................25

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .................................................................................24

*Lysengen v. Argent Tr. Co.*,
  498 F. Supp. 3d 1011 (C.D. Ill. 2020) ...............................................22, 23

*Mass. Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985) .................................................................................15

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) .........................................................................8, 9, 12

*Pegram v. Herdrich*,
  530 U.S. 211 (2000) .................................................................................18

*Perez v. First Bankers Trust Services, Inc.*,
  2014 WL 521370 (S.D.N.Y. Jan. 13, 2014) ...................................7, 22, 23

*Placht v. Argent Tr. Co.*,
  2022 WL 3226809 (N.D. Ill. Aug. 10, 2022) .....................................22, 23

*Plutzer v. Bankers Tr. Co. of S. Dakota*,
  2022 WL 596356 (S.D.N.Y. Feb. 28, 2022) ............................................23

*Robertson v. Argent Tr. Co.*,
  2022 WL 2967710 (D. Ariz. July 27, 2022) ......................................14, 19

*Sacerdote v. New York Univ.*,
  9 F.4th 95 (2d Cir. 2021) .........................................................................10

*In re Schering Plough Corp. ERISA Litig.*,
  589 F.3d 585 (3d Cir. 2009)......................................................................12

*Sec'y U.S. Dep't of Lab. v. Koresko*,
  646 F. App'x 230 (3d Cir. 2016) ..............................................................10

*SM Kids, LLC v. Google LLC,*
    963 F.3d 206 (2d Cir. 2020)......................................................................23, 24

*Smith v. Bd. of Dirs. of Triad Mfg., Inc.,*
    13 F.4th 613 (7th Cir. 2021) ....................................................... *passim*

*Smith v. Greatbanc Tr. Co.,*
    2020 WL 4926560 (N.D. Ill. Aug. 21, 2020) ...........................................12, 18, 19

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,*
    559 U.S. 662 (2010).....................................................................................17

*Thole v. U. S. Bank N.A.,*
    140 S. Ct. 1615 (2020)..................................................................................20

*Tibble v. Edison Int'l,*
    575 U.S. 523 (2015)......................................................................................16

*Trustees of Upstate New York Engineers Pension Fund v. Ivy Asset Mgmt.,*
    131 F. Supp. 3d 103 (S.D.N.Y. 2015).........................................................11

*Viking River Cruises, Inc. v. Moriana,*
    142 S. Ct. 1906 (2022).............................................................................8, 15, 16

*Wooden v. Bd. of Regents of Univ. Sys. of Georgia,*
    247 F.3d 1262 (11th Cir. 2001) .................................................................23

*Zavala v. Kruse-W., Inc.,*
    398 F. Supp. 3d 731 (E.D. Cal. 2019)........................................................22, 24

**Statutes**

29 U.S.C. §1001(b) .......................................................................................18

29 U.S.C. § 1024(b)(4) ..................................................................................6, 17

29 U.S.C. § 1104...........................................................................................5, 9, 18

29 U.S.C. § 1105(a) .......................................................................................5

29 U.S.C. § 1106...........................................................................................5, 25

29 U.S.C. § 1108...........................................................................................25

29 U.S.C. § 1109 [ERISA § 409].................................1, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14

29 U.S.C. § 1110(a) .......................................................................................5

29 U.S.C. §§ 1132 [ERISA § 502].................................1, 5, 6, 7, 8, 11, 12, 13, 14, 15, 16, 18, 19

Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*....................................................16

**Other Authorities**

Fed. R. Civ. P. 23.1 ...................................................................................................15

G. Bogert and G. Bogert, *The Law of Trusts and Trustees* § 543 (2d ed. 1978) ..........................11

H.R. Rep. No. 93-533 (1973)........................................................................................18

Opinion No. 93-06A, 1993 WL 97262, at *5 (Mar. 11, 1993).....................................................25

**INTRODUCTION**

In 2016, the owners of a barbecue restaurant chain in New York City sought to cash out their stake in the company. But instead of selling to an arms-length buyer who would drive a hard bargain, the owners instead sought to sell the business to their employees at an inflated price through an employee stock ownership plan ("ESOP"). To safeguard employees in transactions like this, the Employee Retirement Income Security Act ("ERISA") provides that the sellers may not receive more than fair market value for their shares, and the terms must be reviewed and approved by an independent trustee. But in this case, the sellers hand-picked the ESOP trustee, Argent Trust Company ("Argent"), which has a troubled history of approving flawed ESOP transactions. And Argent then approved the sale an inflated price of nearly $100 million based on overly-rosy financial information provided by the sellers, without conducting adequate due diligence.

Plaintiffs bring this suit on behalf of the W BBQ Holdings, Inc. Employee Stock Ownership Plan ("Plan") pursuant to 29 U.S.C. §§ 1132(a)(2) and 1109, which expressly grants them the right to seek plan-wide relief for fiduciary breaches and prohibited transactions such as those at issue here. In contravention of this express statutory right, Defendants seek to compel Plaintiffs to arbitrate their ERISA claims "individually" and forego any such plan-wide relief, based on a vastly overbroad and improper arbitration provision that Defendants belatedly inserted into the Plan document in a naked attempt to shield themselves from ERISA liability and the full scope of remedies provided by the statute.

Defendants cannot nullify Plaintiffs' substantive statutory rights in this manner. Numerous courts, including the Second Circuit and at least two courts in the Southern District of New York, have determined that individual arbitration of plan-wide claims seeking plan-wide remedies is incompatible with ERISA and cannot be compelled. *See, e.g.*, *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 184-85 (2d Cir. 2021) (citing *Coan v. Kaufman*, 457 F.3d 250 (2d

1

Cir. 2006)); *Cedeno v. Argent Tr. Co.*, 2021 WL 5087898, at *4-6 (S.D.N.Y. Nov. 2, 2021); *Ferguson v. Ruane Cuniff & Goldfarb Inc.*, 2021 WL 3667979, at *4 (S.D.N.Y. Aug. 17, 2021); *accord Smith v. Bd. of Dirs. of Triad Mfg., Inc.*, 13 F.4th 613, 620-23 (7th Cir. 2021) ("*Smith II*") (cited in *Cedeno*); *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*, 2022 WL 909394 (D. Colo. March 24, 2022) (citing *Smith II* and declining to enforce substantively identical arbitration provision in similar suit).[1] Moreover, Defendants never gave Plaintiffs notice of the arbitration provision—in fact affirmatively telling them that they had the right to sue in federal court—so Plaintiffs could not have meaningfully consented to the provision. Accordingly, Defendants' motion to compel arbitration should be summarily denied for this reason as well. *See Henry v. Wilmington Tr., N.A.*, 2021 WL 4133622 (D. Del. Sept. 10, 2021); *Hensiek v. Bd. of Dirs. of Casino Queen Holding Co., Inc.*, 514 F. Supp. 3d 1045 (S.D. Ill. 2021). If anyone is entitled to attorneys' fees in connection with that motion, it is Plaintiffs – not Defendants.

Defendants' alternative motion to dismiss the suit is equally meritless. Defendants argue that Plaintiffs allege "nothing more than the [] fact that a leveraged ESOP stock purchase transaction occurred." *See Defs' Memo, ECF No. 51*, at 21. However, this argument ignores over ***40 paragraphs*** of detailed allegations that provide ample support for Plaintiffs' claims.

- The total purchase price was inflated and exceeded the value of the shares purchased. *Amended Complaint ("Am. Compl."), ECF No. 49*, ¶¶ 3, 65.

- The purchase price increased by over $6 million from the originally-negotiated amount, with no additional consideration to the Plan. *Id.* ¶¶ 4, 68.

- A consistent price was not paid for all of the shares purchased even though only one class of equity was made available, resulting in particularly inflated charges with respect to certain shares. *Id.* ¶ 69.

- The purchase price failed to account for several important risk factors, including increasing labor costs and rents, geographic concentration in the high-cost New York City

---

[1] Plaintiffs' counsel brought the foregoing case law to Defendants' attention before they filed their motion. *See Declaration of Kai Richter ("Richter Decl."), Ex. 1.*

2

market, and the Company's low margins and limited ability to pass along underlying costs to customers. *Id.* ¶¶ 6, 73-85.

- The purchase price also failed to account for the fact that (i) the Seller Defendants would continue to retain significant control over the Company; and (ii) the Seller Defendants had the ability to obtain additional shares that had not yet been issued. *Id.* ¶¶ 6, 86-98.

- The value of the company has consistently decreased over time, even while the loans that financed the transaction have been paid down. *Id.* ¶¶ 5, 67.

- The amount of *principal* paid on the loans exceeded the value of the company by year-end 2019. *Id.* ¶ 67 n.4.

- The loan payments that financed the transaction were guaranteed by the company or directly paid by the company, thereby hitting its bottom line. *Id.* ¶¶ 6, 63-64, 99-107.

- At least one of the loans had a disadvantaged interest rate. *Id.* ¶ 64.

- The entities retained to "independently" review the transaction, including Defendant Argent, have a troubled history and conflicts of interest. *Id.* ¶¶ 55-59, 71.

- Argent failed to conduct adequate due diligence in approving the transaction. *Id.* ¶¶ 108-110.

- The Seller Defendants that retained Argent and sold their shares had conflicts of interest and provided overly optimistic financial projections to Argent. *Id.* ¶¶ 72, 111-113.

Moreover, Defendants ignore an overwhelming body of case law denying motions to dismiss similar ERISA claims involving ESOP transactions. *See infra* at 22-23. Accordingly, Plaintiffs respectfully request that the Court deny Defendants' motion in its entirety.

## **BACKGROUND**

### I.   FACTUAL ALLEGATIONS

W BBQ Holdings, Inc. ("W BBQ") is a restaurant chain in New York City that was founded by Herbert Wetanson, *Am. Compl.* ¶ 39, and was owned by Defendants Herbert Wetanson, Gregor Wetanson, and Stuart Wetanson (the "Sellers" or "Seller Defendants") prior to the ESOP Transaction that is the subject of this suit, *id.* ¶¶ 20, 25, 32, 40. To effectuate the sale of their shares, the Sellers amended the company's profit-sharing plan to become an ESOP effective January 1, 2016, *id.* ¶ 48, and the Plan then purchased their shares for $98,887,309, *id.* ¶ 60.

The Sellers selected Argent to serve as the Plan's trustee and review the Transaction on behalf of the Plan. *Id.* ¶ 57. The Seller Defendants did so because they believed Argent would approve the Transaction, not because they believed it would conduct a thorough and complete review of the Transaction in participants' best interests. *Id.* ¶ 111. Argent has a history of involvement in questionable ESOP transactions, including the instant Transaction and other transactions that have come under scrutiny by the Department of Labor ("DOL"). *See id.* ¶¶ 55, 58. Further, the Sellers (each of whom serve on the Company's Board, *see id.* ¶¶ 21, 27, 34) maintained the right to remove Argent as trustee if it did not do their bidding. *Id.* ¶ 90.

Argent approved the Transaction without conducting adequate due diligence and without critically evaluating the financial and business information that was provided by the Sellers. *Id.* ¶¶ 108-10, 113. In doing so, Argent overlooked or ignored several problems with the Transaction, including that: (1) the total price exceeded the fair market value of the shares purchased (*id.* ¶ 65); (2) the final sale price was not consistent with the amount that was originally negotiated (*id.* ¶ 68); (3) premiums were paid for certain shares for no good reason (*id.* ¶ 69); (4) the Company was facing numerous business headwinds that threatened its long-term profitability and viability (*id.* ¶¶ 73-85); (5) the Sellers retained managerial control of the company (*id.* ¶¶ 86-93); (6) the Sellers were given warrants to acquire additional shares that diluted the value of the shares held by the Plan (*id.* ¶¶ 94-98); (7) the Transaction was financed through insider loans (rather than arm's length financing) that favored the Sellers and imposed a substantial drag on the Company's working capital (*id.* ¶¶ 99-107); (8) the Sellers had substantial conflicts of interest (*id.* ¶¶ 7, 72); and (9) the valuation advisor engaged by Argent also had a conflict of interest (*id.* ¶¶ 59, 71).

## II.   PLAINTIFFS' PLAN-WIDE CLAIMS UNDER ERISA

Plaintiffs Jamaal Lloyd and Anastasia Jenkins are former employees of W BBQ who worked for the Company at the time of the Transaction and became participants in the Plan. *Id.*

¶¶ 14-15. Plaintiff Lloyd worked for W BBQ from 2013 to 2020, and Plaintiff Jenkins worked there from 2012 to 2018. *Id.* As a result of their lengthy service with the Company, both of them have a vested interest in their Plan accounts. *Id.*

Plaintiffs bring this action derivatively on behalf of the Plan pursuant to ERISA §§ 409(a) and 502(a)(2), 29 U.S.C. §§ 1109(a) and 1132(a)(2). *Am. Compl.* ¶ 10 In their Amended Class Action Complaint, Plaintiffs allege that Argent breached its fiduciary duties of loyalty and prudence under 29 U.S.C. § 1104 as the Plan's trustee (Count 1); the Seller Defendants improperly appointed and retained Argent as the Plan's trustee for self-interested reasons without conducting appropriate due diligence or engaging in appropriate monitoring of Argent (Count 2); Argent and the Seller Defendants engaged in multiple prohibited transactions under 29 U.S.C. § 1106 in connection with the Transaction (Counts 3 and 4); the Seller Defendants are liable as co-fiduciaries under 29 U.S.C. § 1105(a) for Argent's fiduciary breaches and other ERISA violations (Count 5); and any indemnification of Argent by the Company is unlawful under 29 U.S.C. § 1110(a) (Count 6). *Am. Compl.* ¶¶ 130-89. To remedy the foregoing ERISA violations, Plaintiffs seek a number of Plan-wide remedies, including restoration of all losses to the Plan resulting from Defendants' wrongful conduct, disgorgement of the monies that the Seller Defendants unlawfully obtained in connection with the Transaction, removal Argent as the Plan's trustee, and other appropriate equitable relief. *Id.* ¶ 8; *see also id.* at 36-37 (prayer for relief).

## III.   THE PURPORTED ARBITRATION PROVISION

Defendants seek to compel arbitration of this suit pursuant to an arbitration provision that they claim was inserted into the Plan via an amendment that became effective January 1, 2019. *Defs' Memo* at 2. This arbitration provision came as news to Plaintiffs because they never received notice of the provision prior to the time that this suit was filed. *Am. Compl.* ¶ 11 n.2.

5

During his employment with W BBQ, Plaintiff Lloyd never received a copy of the Plan Document that included the arbitration provision and was never informed of the arbitration provision. *Declaration of Jamaal Lloyd ("Lloyd Decl."),* ¶ 2. Nor did the Plan Administrator ever send him a summary plan description ("SPD") reflecting the 2019 amendment. *Id*. This is especially remarkable because, prior to filing this action, Plaintiff Lloyd requested several documents pursuant to 29 U.S.C. § 1024(b)(4) that the Plan Administrator is required to furnish upon request. *Id.* ¶ 3 & *Ex. 1*. That request sought, among other things, a copy of the Plan Document, including all amendments, and copies of every SPD since 2016. *Id*. In response, the Plan Administrator produced a Plan Document that contained no arbitration clause and an SPD that explicitly informed participants that they could seek vindication of their rights in federal court. *Id.* ¶¶ 4-5 & *Ex. 2* at 9.  The Plan Administrator produced no amendments to the Plan Document, or indeed any document that mentioned arbitration at all. *Id.* ¶ 4; *see also id.* ¶ 6.

Like Plaintiff Lloyd, Ms. Jenkins never received a copy of the purported Plan amendment that contained the arbitration provision and was never informed of the arbitration provision. *Declaration of Anastasia Jenkins ("Jenkins Decl."),* ¶¶ 2, 4. In fact, Plaintiff Jenkins had left her employment with W BBQ before the arbitration provision was even added to the Plan Document. *Id.* ¶ 3; *Am. Compl.* ¶ 11 n.2.

Regardless, the arbitration provision is vastly overbroad and unenforceable on its face because it seeks to limit Plaintiffs' statutory rights and remedies under ERISA.  *Am. Compl.* ¶ 11 n.2.  In particular, Section 10.04(f) provides:

> [W]ith respect to any claim brought under ERISA section 502(a)(2) to seek relief under ERISA section 409, the Claimant's remedy, if any, shall be limited to (i) the alleged losses to the Claimant's Accounts resulting from the alleged breach of fiduciary duty, (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where such pro-rated amount is intended to provide a remedy solely to Claimant's Accounts, or (iii) such other remedial or equitable relief as the arbitrator deems proper so long as such remedial or equitable relief

does not include or result in the provision of additional benefits or monetary relief to any Employee, Participant or Beneficiary other than the Claimant, and is not binding on the Administrator or the Trustee with respect to any Employee, Participant or Beneficiary other than the Claimant.

*ECF No. 52-2*, § 10.04(f) (emphasis added). The provision further states that "arbitration shall be limited solely to one Claimant's Covered Claims and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any Employee, Participant or Beneficiary other than Claimant." *Id.* § 10.04(e).

These limitations on remedies cannot be separated from the rest of the arbitration provision because they are expressly made "material and non-severable term[s] of the Arbitration Procedure." *Id.* § 10.04(g). "If the court … finds these requirements to be unenforceable or invalid, then the entire Arbitration Procedure shall be rendered null and void in all respects." *Id.*[2]

## **ARGUMENT**

### I.   **THE MOTION TO COMPEL ARBITRATION SHOULD BE DENIED**

Defendants' motion to compel arbitration should be denied for three principal reasons. <u>*First*</u>, the arbitration provision is unenforceable on its face because it impermissibly seeks to limit statutory remedies for claims under ERISA §§ 409 and 502(a)(2), and this invalid limitation on remedies is non-severable from the rest of the arbitration provision. Three recent ESOP cases (including the *Cedeno* case in this District dealing with Defendant Argent) have dealt with materially identical arbitration provisions, and in all three cases, courts have stuck them down. *See Cedeno*, 2021 WL 5087898, at *4-6; *Smith II,* 13 F.4th at 620-23; *Harrison*, 2022 WL 909394, at *2-7. <u>*Second*</u>, the Second Circuit has indicated that individualized arbitration of such claims (as required by the Plan terms here) would effectively be impossible because those claims must be

---

[2] The United States District Court for the Southern District of New York is designated as the court that shall resolve any challenge to the legal enforceability of the arbitration provision. *Id.* § 10.04(q).

brought on behalf of the Plan in a representative capacity, with adequate procedural safeguards to protect other plan stakeholders. *See Cooper*, 990 F.3d at 184-85. <u>*Third*</u>, even ignoring these fundamental problems, Plaintiffs never received notice of the arbitration provision and never consented to it. Accordingly, there never was any agreement to arbitrate in the first instance. *See Henry*, 2021 WL 4133622, at *5-6; *Hensiek*, 514 F. Supp. 3d at 1051-55.

### A.    The Arbitration Provision Impermissibly Limits Statutory Remedies

The Supreme Court has repeatedly held that an arbitration provision is invalid if it acts as a "prospective waiver of a party's *right to pursue* statutory remedies." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)). "That would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights." *Italian Colors Rest.*, 570 U.S. at 236. Indeed, Defendants themselves concede that "a court could decline to enforce an arbitration provision if it were to conclude that the provision prohibited a plaintiff from effectively vindicating his or her statutory rights." *Defs' Memo* at 15.[3]

That is precisely the situation here. The arbitration provision expressly states that "with respect to any claim brought under ERISA section 502(a)(2) to seek relief under ERISA section 409, the Claimant's remedy, if any, shall be limited …" *ECF No. 52-2*, § 10.04(f). Indeed, all three forms of relief available under ERISA § 409 are limited by the terms of the arbitration clause:

- ERISA § 409 allows for recovery of "<u>*any*</u> losses to the plan" resulting from a breach of fiduciary duty. 29 U.S.C. § 1109 (emphasis added). However, the arbitration provision would restrict relief to "the alleged losses to the Claimant's Accounts resulting from the alleged breach of fiduciary duty." *ECF No. 52-2*, § 10.04(f).

---

[3] Defendants' suggestion that the "effective vindication" doctrine "may rest on shaky footing (*Defs' Memo* at 15 n.8) is wishful thinking. The Supreme Court recently reaffirmed that "the FAA does not require courts to enforce contractual waivers of substantive rights and remedies." *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1919 (2022).

- ERISA § 409 calls for a breaching fiduciary to "restore to such plan *any* profits of such fiduciary which have been made through use of assets of the **plan** by the fiduciary". 29 U.S.C. § 1109 (emphasis added). However, the arbitration provision would restrict relief to "a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where such pro-rated amount is intended to provide a remedy solely to Claimant's Accounts." *ECF No. 52-2*, § 10.04(f).

- Last – but not least – ERISA § 409 provides for "such other equitable or remedial relief as the court may deem appropriate, including removal of [a breaching] fiduciary." 29 U.S.C. § 1109. However, the arbitration provision only allows for other remedial or equitable relief "so long as such remedial or equitable relief does not include or result in the provision of additional benefits or monetary relief to any Employee, Participant or Beneficiary other than the Claimant, and is not binding on the Administrator or the Trustee with respect to any Employee, Participant or Beneficiary other than the Claimant." *ECF No. 52-2*, § 10.04(f).

In short, a "Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any Employee, Participant or Beneficiary other than the Claimant," *id.* § 10.04(e), even though ERISA expressly authorizes Plan-wide relief.

Although it may be true that agreements to arbitrate are favored under the law, *see Defs' Memo* at 6, this is a bridge too far. *See Smith II*, 13 F.4th at 621 ("[T]he plain text of § 1109(a) and the terms of the arbitration provision cannot be reconciled: what the statute permits, the plan precludes."). Provisions in a Plan document, such as the arbitration provision here, are only effective and enforceable "insofar as [they] are consistent with the provisions of [ERISA]." 29 U.S.C. § 1104(a)(1)(D); *see also Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421-23 (2014) (reiterating this principle in an ESOP case).  That is not the situation here.[4]

To take one example, the arbitration provision does not permit a plan participant to obtain removal of a fiduciary. That is because removal of a fiduciary "would go beyond

---

[4] It is no defense that the Secretary of Labor can seek plan-wide relief. *See Defs' Memo* at 18. The effective vindication doctrine does not ask whether *other* persons may pursue statutory remedies; it asks whether the *plaintiff in the lawsuit* can obtain statutory remedies in arbitration. *See Mitsubishi*, 473 U.S. at 637 ("so long as the *prospective litigant* effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function") (emphasis added).

just [Plaintiffs] and extend to the entire plan." *Smith II*, 13 F.4th at 621. Yet, as noted above, ERISA expressly allows a plan participant to seek removal of a plan fiduciary. 29 U.S.C. § 1109; *see also Sacerdote v. New York Univ.*, 9 F.4th 95, 116 n.86 (2d Cir. 2021) (explaining that fiduciary removal is "equitable relief … available under 29 U.S.C. § 1109(a)").

Similarly, an arbitrator may not order reformation or rescission of the Transaction, or enjoin dissipation of assets that belong to the Plan, which are also remedies available under ERISA. *See, e.g., CIGNA Corp. v. Amara,* 563 U.S. 421, 440 (2011) (approving equitable reformation as ERISA remedy); *Eaves v. Penn,* 587 F.2d 453, 462-63 (10th Cir. 1978) (holding that ERISA affords "broad and flexible equitable remedies in cases involving breaches of fiduciary duty" and affirming district court's rescission of  an ESOP purchase-sale agreement as "the remedy most likely to protect the plan participants"); *Griggs v. E.I. DuPont de Nemours & Co.,* 385 F.3d 440, 446 & n.3 (4th Cir. 2004) (equitable rescission); *Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Murdock*, 861 F.2d 1406, 1414 (9th Cir. 1988) ("[T]he imposition of a constructive trust on a fiduciary's ill-gotten profits in favor of all plan participants and beneficiaries is an important, appropriate, and available form of relief under ERISA § 409(a), particularly when it is the only means of denying a fiduciary ill-gotten profits that flow from the breach of his duty of loyalty to the entire ERISA plan."). Any equitable or injunctive relief of this kind would necessarily bind Defendants beyond an individual claimant and provide "relief" that extends to both the claimant and other plan participants.

Likewise, ERISA's disgorgement remedy would be undermined by allowing a breaching fiduciary to retain all wrongfully obtained profits except for a small pro-rated portion that could somehow be allocated to a single Plan participant. *See Sec'y U.S. Dep't of Lab. v. Koresko*, 646 F. App'x 230, 245 (3d Cir. 2016) ("The purpose of disgorgement of profits is deterrence, which is

undermined if the fiduciary is able to retain proceeds from his own wrongdoing."). The purpose of disgorgement is not to compensate individual plan participants, but to prevent and punish wrongful fiduciary conduct. *See Trustees of Upstate New York Engineers Pension Fund v. Ivy Asset Mgmt.*, 131 F. Supp. 3d 103, 128 (S.D.N.Y. 2015) ("[W]hether beneficiaries have been financially damaged by the breach is immaterial. Rather, the objective is to make 'disobedience of the trustee to the [duty of loyalty] so prejudicial to him that he and all other trustees will be induced to avoid disloyal transactions in the future.'") (quoting *Murdock*, 861 F.2d at 1412 (citing G. Bogert and G. Bogert, *The Law of Trusts and Trustees* § 543, at 217-18 (2d ed. 1978)).

Finally, the damages remedy in ERISA § 409 would also be handicapped because it provides a right to recover all Plan losses, not just the losses sustained by an individual participant. *See LaRue v. DeWolff, Boberg and Assocs.*, 552 U.S. 248, 261 (2008) (Thomas, J., concurring) ("On their face, §§ 409(a) and 502(a)(2) permit recovery of *all* plan losses caused by a fiduciary breach."). Although the Supreme Court's decision in *LaRue* "authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account," *id.* at 256, that decision in no way restricts a participant's right to pursue monetary relief on behalf of the entire Plan.[5] *See Cedeno*, 2021 WL 5087898, at *4 ("Far from constraining relief under § 409(a) in a defined contribution plan, *LaRue* makes clear that relief is available wherever it would advance the protection of the entire plan."); Br. of Sec'y of Labor, *Cedeno*, No. 21-2891 Dkt. 100 at 10 (2d Cir. June 10, 2022) (*LaRue* "simply clarified that a claim under section 502(a)(2) does not lose its plan-based character merely because the fiduciary breach diminishes only some (but not all) participant accounts, as was the case in *LaRue*. In that way, *LaRue* broadens, rather than limits,

---

[5] *LaRue* addressed a claim that the fiduciaries failed to obey the participant's directions about how to invest his account. Even though that fiduciary breach affected only the participant's account, the Supreme Court held that the plaintiff could recover under ERISA § 409.

the relief available under §502(a)(2) ...."); *accord In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 595 n.9 (3d Cir. 2009) (noting that *LaRue* "broadens, rather than limits, the relief available under" ERISA). Because the arbitration provision here purports to do what *LaRue* did not, and eliminates Plaintiffs' "right to pursue" such relief on behalf of the Plan, it is invalid. *See Italian Colors Rest.*, 570 U.S. at 235.

Multiple ESOP cases construing materially identical arbitration provisions bear this out. In *Smith*, the Seventh Circuit was presented with an arbitration provision that also sought to limit the "remedy" available with respect to claims under ERISA §§ 409 and 502(a)(2):

> Each arbitration shall be limited solely to one Claimant's Covered Claims, and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any Eligible Employee, Participant or Beneficiary [ ("Participant"] ) other than the Claimant. For instance, with respect to any claim brought under ERISA § 502(a)(2) to seek appropriate relief under ERISA § 409, the Claimant's remedy, if any, shall be limited to (i) the alleged losses to the Claimant's individual Account resulting from the alleged breach of fiduciary duty, (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where such pro-rated amount is intended to provide a remedy solely to Claimant's individual Account, and/or (iii) such other remedial or equitable relief as the arbitrator(s) deems proper so long as such remedial or equitable relief does not include or result in the provision of additional benefits or monetary relief to any [Participant] other than the Claimant, and is not binding on the Plan Administrator or Trustee with respect to any [Participant] other than the Claimant.

*Smith v. Greatbanc Tr. Co.*, 2020 WL 4926560, at *2 (N.D. Ill. Aug. 21, 2020) ("*Smith I*"); *see also Smith II*, 13 F.4th at 616. Because "the plain text of § 1109(a) and the terms of the arbitration provision [could not] be reconciled," the court held that the arbitration provision "acts as a 'prospective waiver of a party's right to pursue statutory remedies'" and was invalid. *Id.* at 621 (quoting *Mitsubishi*, 473 U.S. at 637 n.19).

The *Cedeno* decision from this District (which involved Argent as a defendant) is another ESOP case that is directly on point. Once again, the arbitration provision included materially identical language:

> If a ... Claim is brought under ERISA section 502(a)(2) to seek relief under ERISA
> section 409, the Claimant's remedy, if any, shall be limited to (i) the alleged losses
> to the Claimant's Accounts resulting from the alleged breach of fiduciary duty, (ii)
> a pro-rated portion of any profits allegedly made by a fiduciary through the use of
> Plan assets where such pro-rated amount is intended to provide a remedy solely for
> the benefit of the Claimant's Accounts, or (iii) such other remedial or equitable
> relief as the arbitrator deems proper, so long as such remedial or equitable relief
> does not include or result in the provision of additional benefits or monetary relief
> to any Employee, Participant or Beneficiary other than the Claimant.

*Cedeno*, 2021 WL 5087898, at *2. In reviewing this provision, the court found *Smith II*

"persuasive" and held that the provision was "invalid because it seeks to waive prospectively the

statutory remedies in ERISA § 409(a) that a Plan participant is entitled to seek under ERISA §

502(a)(2)." *Id.* at *5.

The *Harrison* case (which also involved Argent as a Defendant) is the third strike. Like

this case and the other cases cited above, the arbitration provision in *Harrison* sought to limit

statutory remedies under ERISA §§ 409 and 502(a)(2):

> Each arbitration shall be limited solely to only Claimant's Covered Claims, and that
> Claimant may not seek or receive any remedy which has the purpose or effect of
> providing additional benefits or monetary or other relief to any Eligible Employee,
> Participant, or Beneficiary other than the Claimant. For instance, with respect to
> any claim brought under ERISA § 502(a)(2) to seek appropriate relief under ERISA
> § 409, the Claimant's remedy, if any, shall be limited to (i) the alleged losses to the
> Claimant's individual Account resulting from the alleged breach of fiduciary duty,
> (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use
> of Plan assets where such pro-rated amount is intended to provide a remedy solely
> to Claimant's individual Account, and/or (iii) such other remedial or equitable relief
> as the arbitrator(s) deems proper so long as such remedial or equitable relief does
> not include or result in the provision of additional benefits or monetary relief to any
> Eligible Employee, Participant or Beneficiary other than the Claimant.

*Harrison*, 2022 WL 909394, at *3. Once again, the court struck this provision down. The court

held that the arbitration provision "prohibit[ed] remedies that are explicitly provided for by

ERISA," namely the "right to pursue plan-wide remedies," and thus rendered the plaintiff "unable

to effectively vindicate his statutory cause of action in the arbitral forum." *Id.* at *6 (citing *Smith*).

Defendants fail to cite any contrary authority. Although they cite the Ninth Circuit's unpublished opinion in *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510 (9th Cir. Aug. 20, 2019) ("*Dorman II*"), that case is not on point because the provision at issue was a more typical arbitration provision that did *not* purport to limit the relief available under ERISA. As the Seventh Circuit explained in *Smith*, there is "no conflict with *Dorman II*" because "[t]he arbitration provision in that case … lacked the problematic language present here." *Smith II*, 13 F.4th at 623; *see also Cedeno*, 2021 WL 5087898, at *5 n.5 ("*Smith* is more persuasive than *Dorman*").[6] Likewise, the decision in *Robertson v. Argent Tr. Co.*, 2022 WL 2967710 (D. Ariz. July 27, 2022) – the only ESOP case cited by Defendants – is distinguishable for the same reason. The arbitration provision in that case expressly stated that "nothing in this provision shall be construed to preclude a Claimant from seeking injunctive relief, including, for example, seeking an injunction to remove or replace a Plan fiduciary even if such injunctive relief has an incidental impact on other Employees, Participants, or Beneficiaries." *Id.* at *2. No such caveat is included in the arbitration provision here.  Finally, the other cases cited by Defendants are even further off point because they did not involve Plan-wide claims under ERISA §§ 409 and 502(a)(2).[7]

Because the arbitration provision here eliminates Plaintiffs' "right to pursue statutory remedies," *Italian Colors Rest.*, 570 U.S. at 235, the entire provision, including the so-called class

---

[6] Moreover, the Ninth Circuit went out of its way to make its opinion in *Dorman II* non-precedential, severing this unpublished opinion from its published opinion in the same case on the same day. *See Dorman v. Charles Schwab Corp.*, 934 F.3d 1107 (9th Cir. Aug. 20, 2019) ("*Dorman I*"). There is certainly nothing in *Dorman I* that is inconsistent with *Smith*, *Cedeno*, or *Harrison*. It simply stands for the proposition that ERISA claims, like other claims, are arbitrable – a proposition that the Seventh Circuit expressly recognized in *Smith*. *See Smith II*, 13 F.4th at 620 ("Joining every other circuit to consider the issue, we recognize that ERISA claims are generally arbitrable.") (citing, *inter alia*, *Dorman I*, 934 F.3d at 1112).

[7] *Bird v. Shearson Lehman/Am. Exp., Inc.*, 926 F.2d 116 (2d Cir. 1991) dealt with the question of whether *individual* claims could be individually arbitrated, not claims on behalf of a Plan under ERISA §§ 409 and 502(a)(2).  The Supreme Court's decisions in *American Express*, *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018), and *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), did not even involve ERISA claims, much less representative claims on behalf of a plan under §§ 409 and 502(a)(2). Moreover, in none of these cases did the arbitration provisions foreclose specific statutory remedies.

action waiver, is invalid. By the arbitration provision's own terms, the invalidity of any of its requirements means that "the entire Arbitration Procedure [*i.e.*, all of §10.04] … shall be rendered null and void in all respects." *ECF No. 52-2*, § 10.04(g). Moreover, the terms that seek to eliminate Plaintiffs' right to proceed under § 1132(a)(2) and seek Plan-wide relief are expressly identified as "material and non-severable." *Id*. The Court need not go any further to deny the motion to compel arbitration.

### B.   Strictly Individual Arbitration Is Inconsistent with Representative Claims under ERISA § 502(a)(2)

Even if the arbitration provision did not include impermissible remedies-limiting language, it would still be unenforceable under Second Circuit precedent. In *Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006)*,* the Second Circuit held that a plaintiff in an action under ERISA § 502(a)(2) must "take adequate steps under the circumstances properly to act in a 'representative capacity on behalf of the plan.'" *Id.* at 261 (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985)).[8] Following *Coan*, the Second Circuit declined to enforce an arbitration agreement that required individualized litigation of a § 502(a)(2) action on a "single associate basis." *Cooper*, 990 F.3d at 184. The court found that the terms of the agreement "appear[ed] to make it impossible to bring an ERISA fiduciary action that satisfie[d] both the [arbitration] [a]greement and the *Coan* representative adequacy requirement" because it foreclosed proceeding in a representative capacity as contemplated by ERISA § 502(a)(2). *Id*. at 184; *accord Ferguson*, 2021 WL 3667979, at \*4. This Court should reach the same result, particularly since the arbitration clause precludes not just plan-wide representation but plan-wide *relief*.

---

[8] This is not unlike the "shareholder-derivative suits" that the Supreme Court characterized as "[n]on-class representative actions" in *Viking River*, 142 S. Ct. at 1922. In those cases, it is similarly true that "[t]he derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." Fed. R. Civ. P. 23.1.

The Supreme Court's recent decision in *Viking River* is fully consistent with this Second Circuit precedent. In *Viking River*, the Court drew a distinction between class action waivers and waivers of non-class representative actions like "trustee actions." *Viking River*, 142 S. Ct. at 1922. The Court explained that "[n]on-class representative actions in which a single agent litigates on behalf of a single principal are part of the basic architecture of much of *substantive* law." *Id.* (emphasis added). These include both "trustee actions" and "shareholder-derivative suits", and the Court held that the Federal Arbitration Act does not "mandat[e] enforcement of waivers of standing to assert claims on behalf of absent principals." *Id.* A plan participant's action on behalf of a plan under ERISA § 502(a)(2) is exactly this kind of "single-agent, single principal" action. Indeed, it is effectively a "trustee action." *See, e.g., Tibble v. Edison Int'l*, 575 U.S. 523, 528-30 (2015); *Eaves*, 587 F.2d at 463. Thus, the FAA does not require courts to enforce a prospective waiver of a participant's right to bring a representative claim on behalf of an ERISA plan.

### C.   Plaintiffs Did Not Receive Proper Notice of the Arbitration Provision and Did Not Consent to Arbitrate Their Claims

Because the arbitration provision eliminates plan-wide remedies and representation provided by ERISA, it is unenforceable and this Court need not go any further. But beyond this, a lack of notice and consent provide additional grounds to deny the motion to compel arbitration.

"The first principle that underscores all of [the Supreme Court's] arbitration decisions is that arbitration is strictly a matter of consent." *Lamps Plus. Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019) (cleaned up). Such mutual assent is a "foundational FAA principle." *Id.*; *see also Viking River*, 142 S. Ct. at 1923 ("parties cannot be coerced into arbitrating a claim, issue, or dispute absent an affirmative contractual basis for concluding that the party *agreed* to do so") (cleaned up). The Supreme Court has been clear on this point, emphasizing that "the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration is a matter of consent,

not coercion." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010).

The required consent is entirely lacking here. Prior to the filing of the present lawsuit, Plaintiffs did not even have notice of the purported arbitration provision in the Plan Document, much less consent to it. *See Am. Compl.* ¶ 11 n.2, subparts (2), (4); *Lloyd Decl.* ¶¶ 2, 6; *Jenkins Decl.* ¶¶ 2, 4. No notice of the arbitration provision was provided in the normal course of business, *id.*, and even when Plaintiff Lloyd exercised his statutory right to request Plan documents pursuant to 29 U.S.C. § 1024(b)(4) prior to bringing this action, Defendants failed to produce the purported amendment to the Plan Document containing the arbitration provision, *see Am. Compl.* ¶ 11 n.2, subpart (3); *Lloyd Decl.* ¶¶ 3-5. To the contrary, Defendants produced an SPD stating that Plan participants "may file suit in a federal court" if ESOP fiduciaries misuse the Plan's money. *Am. Compl.* ¶ 11; *Lloyd Decl.* ¶ 5 & *Ex. 2* at 8-9. As for Plaintiff Jenkins, she had already left the Company by the time the purported Plan amendment with the arbitration provision was adopted. *Am. Compl.* ¶ 11 n.2, subpart (6); *Jenkins Decl.* ¶ 3; *see also Am. Compl.* ¶ 15 (noting that Plaintiff Jenkins left the company in 2018); *Defs' Memo* at 2 (admitting that arbitration provision did not go into effect until 2019). Under these circumstances, there is a complete failure of notice and consent (as well as consideration), rendering the arbitration provision unenforceable. *See Henry*, 2021 WL 4133622, at *5-6 (declining to enforce arbitration provision in ESOP agreement for failure of proof of notice to plan participants); *Hensiek*, 514 F. Supp. 3d at 1054 ("[A]n amendment … implemented by the Board unilaterally and solely for its benefit is, at best, without necessary consideration, or at worst, illusory, and, in either case, unenforceable.").[9]

---

[9] It is no defense that Plaintiffs are bringing claims on behalf of the Plan. "Plaintiffs do not seek to repudiate the Plan; rather they contest the enforceability of the Amendment. There is nothing 'manifestly inequitable' in refusing to enforce the Amendment under the circumstances presented here." *Hensiek*, 514 F. Supp. 3d at 1055.

Defendants acknowledge that they never gave notice of the arbitration provision to Plaintiffs prior to the commencement of this action. Defendants state only that "Plaintiffs have been aware of the binding arbitration provisions in the Plan Amendment since at least when Defendants' counsel provided a copy to their counsel on July 27, 2022," *Defs' Memo* at 19-20, *after* the present suit was filed on May 20, 2022, *see ECF No. 1*. Given this lack of notice, Defendants cannot argue that Plaintiffs consented to bringing their claims in arbitration.

Even in a "take-it-or-leave-it" adhesive contract, the counterparty must at least have notice of the terms. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991) (consent may be inferred only where party to be bound was "given notice of the… provision" and "retained the option of rejecting the contract with impunity."). Thus, Plaintiffs' mere participation in the Plan, without notice of the arbitration provision, is insufficient to establish an agreement to arbitrate. *See Smith I*, 2020 WL 4926560, at *3 (rejecting argument that ESOP participant consented to arbitrate through participation in the plan where plaintiff had no notice of the arbitration provision).

There is no "exception to this [notice] requirement in the context of arbitration of ERISA claims." *Henry*, 2021 WL 4133622, at *5. To the contrary, the Congressional findings and statement of policy for ERISA expressly state that the act was adopted to "protect" participants' interests by securing "ready access to the Federal courts." 29 U.S.C. §1001(b); *see also* 29 U.S.C. §1132(e); H.R. Rep. No. 93-533, at 17 (1973) (recognizing that "jurisdictional and procedural obstacles" had "hampered effective enforcement of fiduciary responsibilities"). And Congress forbade plans to "contract around the statute." *Esden v. Bank of Bos.*, 229 F.3d 154, 173 (2d Cir. 2000) (citing 29 U.S.C. § 1104(a)(1)(D)).[10]

---

[10] Dispensing with participant notice and consent would clash with the purpose behind empowering participants to sue to protect the plan. As the Supreme Court has acknowledged, ERISA fiduciaries "may have financial interests adverse to beneficiaries." *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000). "Allowing

### D.    Defendants' Request for Attorneys' Fees Is Specious and Further Demonstrates Why the Arbitration Provision Is Unenforceable

Given the numerous defects with respect to the arbitration provision here, and the abundant case law in this District and elsewhere striking down nearly identical arbitration provisions, Defendants' request for attorneys' fees in connection with their motion is specious. Plaintiffs have the express right under the arbitration provision to "challenge its legal enforceability … in the United States District Court for the Southern District of New York," *ECF No. 52-2*, § 10.04(q), and have ample grounds for doing so here. If anything, Plaintiffs should be permitted to recover their own attorneys' fees for being put to the trouble. The fact that the arbitration provision only purports to allow *Defendants* to recover their attorneys' fees in connection with an unsuccessful challenge, and does not reciprocally allow Plaintiffs to recover their fees in connection with a meritorious challenge such as this, is contrary to ERISA. *See* 29 U.S.C. § 1132(g) ("In any action under this subchapter … by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to *either* party.") (emphasis added).[11] This is yet another reason why the arbitration provision is unenforceable.

## II.    DEFENDANTS' "ALTERNATIVE" MOTION TO DISMISS SHOULD BE DENIED

Defendants alternatively argue that the Court should dismiss Plaintiffs' Amended Complaint for lack of standing. *See Defs' Memo* at 21-25. This argument is perplexing at best. As Defendants concede: (1) "Plaintiffs have participated in the Plan since its establishment," *Defs' Memo* at 19 (citing *Am. Compl.* ¶¶ 14-15); (2) "they have had shares of stock allocated to their accounts," *id.* at 9 (citing *Am. Compl.* ¶¶ 14-15); and (3) "Plaintiffs assert that, because of

---

the fiduciary to unilaterally require plan participants to arbitrate claims for breach of fiduciary duty would, in a sense, be allowing the fox to guard the henhouse." *Smith I*, 2020 WL 4926560, at *3 (citation omitted).

[11] Even Defendants' own case law does not support their request for attorneys' fees. *See Robertson*, 2022 WL 2967710, at *11 ("The Court…concludes that the Plan's contractual fee-shifting arrangement is preempted by § 1132(g)(1) of ERISA.").

Defendants' alleged misconduct, Plaintiffs suffered a diminution in the value of their Plan accounts," *id.* at 2. This is precisely the sort of "financial stake in the litigation" that has long been held sufficient to satisfy Article III. *See Thole v. U. S. Bank N.A.*, 140 S. Ct. 1615, 1620 (2020) (quoting *Gollust v. Mendell*, 501 U.S. 115, 125–126 (1991)).

### A.     Defendants Ignore the Extensive Allegations in the Amended Complaint

Defendants suggest that "Plaintiffs allege ***no relevant facts*** to plead plausibly that they suffered an … injury." *Defs' Memo* at 21. However, this ignores over 40 paragraphs of allegations in the Amended Complaint which plausibly demonstrate that Defendants received more than fair market value from the Plan (and ultimately its participants) for the stock that was purchased in connection with the ESOP Transaction. *See supra* at 2-3. "Had Defendant[s] actually read the Complaint, … the facts supporting the Complaint would have been clear." *See Bereket v. Portfolio Recovery Assocs., LLC*, 2017 WL 4409480, at *4 (W.D. Wash. Oct. 4, 2017).

Paragraph 3 explicitly alleges that the purchase price for the company "far exceeded its fair market value." *Am. Compl.* ¶ 3. Paragraph 4 also alleges that the final sale price was $6 million more than the price that was originally negotiated for the same amount of stock. *Id.* ¶ 4; *see also id.* ¶ 68.  Further, paragraph 69 alleges Plan paid three different prices for the same class of stock, resulting in an overpayment of at least $24.6 million on this basis alone. *Id.* ¶ 69.

In paragraph 6, Plaintiffs allege that the purchase price did not properly account for several risk factors that made the company less valuable, such as increasing labor costs and rents, geographic concentration in the high-cost New York City market, and the Company's slim margins. *Id.* ¶ 6; *see also id.* ¶¶ 73-85. In the same paragraph, Plaintiffs also allege that a proper valuation would have taken into account the manner in which the Transaction was structured, such that (1) the Seller Defendants would continue to retain significant control over the Company; (2) the Seller Defendants had the ability to obtain additional shares that had not yet been issued and

thereby dilute the value of existing shares; (3) almost the entire purchase prices was financed through loans which were either guaranteed by the Company or issued directly by the Company to the ESOP; and (4) the Company being purchased was financially burdened with the obligation to make contributions to the ESOP sufficient to make the necessary loan payments, including principal and interest payments to the Seller Defendants. *Id.* ¶ 6; *see also id.* ¶¶ 86-107.

With respect to the loans that were taken out, paragraph 64 alleges that different interest rates were charged on those loans, and the notes to the Seller Defendants carried a higher interest rate than the notes that were paid to the Company. *Id.* ¶ 64. Further, Plaintiffs allege that the *principal* paid on those notes standing alone exceeded the value of the Company, *id.* ¶ 67 n.4, due to the Company's bleak financial prospects which continued to fade over time, *id.* ¶ 5.

Moreover, the Amended Complaint contains several paragraphs of additional allegations regarding the flawed process that resulted in the inflated Transaction price, including using unrealistic and inflated projections of the Company's future cash flow and earnings, *id.* ¶¶ 70, 72; the Sellers' appointment of a so-called "independent" trustee (Argent) with a troubled history to review the Transaction, *id.* ¶¶ 57-58; the trustee's engagement of a valuation advisor who operated under a conflict of interest and was known for issuing inflated appraisals, *id.* ¶¶ 59, 71; an overall lack of due diligence in connection with the Transaction, *id.* ¶¶ 108-10; and unquestioned (and unwarranted) reliance on financial and business information provided by the Seller Defendants, who stood to profit handsomely from the Transaction and provided overly rosy financial projections and forward-looking statements, *id.* ¶¶ 72, 113.

Defendants do not address these numerous, detailed, and concrete allegations in their motion.  Instead, they pretend that Plaintiffs allege "nothing more than the unremarkable fact that a leveraged ESOP stock purchase transaction occurred." *Defs' Memo* at 21. This either ignores or

distorts the myriad of allegations in the Amended Complaint. Contrary to Defendants' assertions, it is simply not true that "[t]he post-Transaction reduction in the equity value of WBBQ stock is Plaintiff's *only* factual allegation … supporting the conclusion that the Transaction was for more than fair market value." *Defs' Memo* at 24 (emphasis added).

Moreover, Defendants' rationalization for the reduction in value also fails to hold water. Defendants assert that "a post-ESOP transaction decrease in equity value… happens naturally (and by operation of simple arithmetic) in a leveraged ESOP transaction and thus says nothing whatsoever about whether that transaction was for fair market value." *Defs' Memo* at 22. But Defendants ignore that the value of W BBQ stock *continued* to drop each year after the Transaction, indicating that the Company was never worth what the Plan paid and the reduction in value cannot be attributed solely, if at all, to the leveraged nature of the Transaction:

- Initial purchase price, July 2016: $98,887,309
- Year-end 2017: $18,800,000 (-81%)
- Year-end 2019: $11,246,418 (-40.2%)
- Year-end 2020: $7,406,449 (-34.1%)

*Am. Compl.* ¶ 67.

Courts routinely deny motions to dismiss complaints in ESOP cases such as this, where the plaintiffs allege that the transaction proceeded on unfavorable terms. *See, e.g.*, *Perez v. First Bankers Trust Services, Inc.*, 2014 WL 521370 (S.D.N.Y. Jan. 13, 2014); *Placht v. Argent Tr. Co.*, 2022 WL 3226809 (N.D. Ill. Aug. 10, 2022); *Hensiek v. Bd. of Dirs. of Casino Queen Holding Co., Inc.*, 2022 WL 263321 (S.D. Ill. Jan 28, 2022); *Gamino v. KPC Healthcare Holdings, Inc.*, 2021 WL 162643 (C.D. Cal. Jan. 15, 2021); *Lysengen v. Argent Tr. Co.*, 498 F. Supp. 3d 1011 (C.D. Ill. 2020); *Zavala v. Kruse-W., Inc.*, 398 F. Supp. 3d 731 (E.D. Cal. 2019); *Innis v. Bankers Tr. Co. of S. Dakota*, 2017 WL 4876240, at *3 (S.D. Iowa Oct. 13, 2017); *Fernandez v. K-M Indus. Holding Co.*, 585 F. Supp. 2d 1177 (N.D. Cal. 2008); *accord Allen v. Gratbanc Tr. Co.*, 835 F.3d

670 (7th Cir. 2016) (reversing district court order granting motion to dismiss); *Brundle v. Wilmington Tr. N.A.*, 241 F. Supp. 3d 610, 649 (E.D. Va. 2017) (finding in favor of plaintiffs who alleged an ESOP overpayment after bench trial), *aff'd* 919 F.3d 763 (4th Cir. 2019). There is no reason to reach a different result here. Plaintiffs' detailed allegations distinguish this case from the two cases cited by Defendants (*Lee* and *Plutzer*).[12] *See Placht*, 2022 WL 3226809, at *4 (distinguishing *Lee* and *Plutzer*, and finding that "Plaintiff has sufficiently alleged an injury at this stage of the case"); *Gamino*, 2021 WL 162643, at *3 ("*Lee* did not involve the additional allegations here").[13]

## B.      Defendants Ignore Applicable Procedural Rules

Aside from the fact that Defendants ignore the allegations in the Amended Complaint, their motion to dismiss suffers from a "number of problems" from a procedural standpoint as well. *See Allen*, 835 F.3d at 675.

<u>*First*</u>, the Second Circuit has "cautioned against arguments that would essentially collapse the standing inquiry into the merits." *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 212 (2d Cir. 2020) (internal quotation marks omitted); *see also Baur v. Veneman*, 352 F.3d 625, 642 (2d Cir. 2003) (citing *Wooden v. Bd. of Regents of Univ. Sys. of Georgia*, 247 F.3d 1262, 1280 (11th Cir. 2001) ("Defendants' argument that Green suffered no 'injury-in-fact' is unconvincing because, at

---

[12] *See Defs' Memo* at 22-24 (citing *Lee v. Argent Tr. Co.*, 2019 WL 3729721 (E.D.N.C. Aug. 7, 2019); *Plutzer v. Bankers Tr. Co. of S. Dakota*, 2022 WL 596356 (S.D.N.Y. Feb. 28, 2022) (appeal pending, *Plutzer v. Bankers Tr. Co. of S. Dakota*, Case No. 22-0561 (2nd Cir.)).

[13] *Accord Allen*, 835 F.3d at 678-79 ("The plaintiffs met th[eir] burden: they alleged that the stock value dropped dramatically after the sale (implying that the sale price was inflated), that the loan came from the employer-seller rather than from an outside entity (indicating that outside funding was not available), and that the interest rate was uncommonly high (implying that the sale was risky, or that the shareholders executed the deal in order to siphon money from the Plan to themselves). These facts support an inference that [the trustee] breached its fiduciary duty, either by failing to conduct an adequate inquiry into the proper valuation of the shares or by intentionally facilitating an improper transaction."); *Lysengen*, 498 F. Supp. 3d at 1022 (C.D. Ill. 2020) ("[T]he Court is satisfied that Plaintiff's assertion that the loan came from the employer and seller, that the valuation had flaws, and that the subsequent price drop reflects a lack of due diligence is enough to nudge her claim 'across the line from conceivable to plausible.'").

bottom, it conceives of the standing inquiry as duplicating an inquiry into the merits.")). That is exactly what Defendants attempt to do here by improperly conflating the standing inquiry with the ultimate question of whether the Company was sold for more than fair market value. For purposes of Article III standing, it is sufficient that the plaintiff "alleges harm" from the conduct at issue. *SM Kids*, 963 F.3d at 212; *see also Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992) ("[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" to establish standing). Whether the plaintiff was ultimately harmed is a merits issue to be decided in the course of the litigation.

    *Second*, even if it were appropriate for Defendants to present merits arguments in support of their standing challenge, the question of whether the sale price exceeded the fair market value of the Company is a fact-intensive issue that is not properly resolved on a motion to dismiss. *See, e.g., Falberg v. Goldman Sachs Grp., Inc.*, 2020 WL 3893285, at *9 (S.D.N.Y. July 9, 2020) ("Whether … fees are reasonable is a question of fact not determinable on a motion to dismiss."); *Allen*, 835 F.3d at 680 ("[Defendant] argues that the post-transaction decline in stock value is precisely what economists predict should happen after an ESOP transaction, and therefore it is not evidence of fiduciary breach. But whether the 22% decline in value—a decline that lasted not months but years and ballooned to nearly 50%—was the result of normal economic forces or something more sinister is a matter for a later stage of litigation."); *Zavala*, 398 F. Supp. 3d at 746 ("Defendants will be free to argue that the amount paid was in fact an accurate reflection of the value of Kruse-Western's stock, and that they are therefore entitled to summary judgment. Such a factual dispute, however, cannot be resolved at the motion to dismiss stage of this litigation."). Indeed, the DOL has expressly stated that the issue of whether compensation is reasonable or adequate is "inherently factual in nature." *See* Office of Pension & Welfare Benefit Programs,

24

Opinion No. 93-06A, 1993 WL 97262, at *5 (Mar. 11, 1993).

Finally, for purposes of Plaintiffs' prohibited transactions claims, it is *Defendants* who bear the burden of proof on whether the consideration paid was "adequate." *See Allen*, 835 F.3d at 674-76. To be clear, "[t]he complaint alleges a purchase of employer stock by the Plan and a loan by the employer to the Plan, both of which are indisputably prohibited transactions within the meaning of section 406" of ERISA [codified at 29 U.S.C. § 1106]. *Id.* at 675. Defendants can prevail on this claim "only if [they] can take advantage of one of section 408's exemptions" [codified at 29 U.S.C. § 1108]. *Id.* One such exemption is that the stock was acquired for "adequate consideration." *Id.* (citing 29 U.S.C. § 1108(e)(1)). This prohibited transaction exemption under ERISA § 408 is an affirmative defense on which the defendants bear the burden of proof. *Id.* at 676 (citing numerous circuit cases); *accord Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1215 (2d Cir. 1987); *Krohnengold v. New York Life Ins. Co.*, 2022 WL 3227812, at *9 (S.D.N.Y. Aug. 10, 2022) (citing additional cases). Therefore, Plaintiffs need not plead that the consideration was more than adequate to proceed with their prohibited transactions claims. *See Allen*, 835 F.3d at 676; *Hensiek*, 2022 WL 263321, at *5 (citing *Allen*).

## CONCLUSION

For the above reasons, the Court should deny Defendants' motion in its entirety.

Dated: November 2, 2022.                    Respectfully submitted,

                                              */s/ Kai H. Richter*
                                             Michelle C. Yau (*pro hac vice*)
                                             Kai H. Richter (*pro hac vice*)
                                             Daniel R. Sutter (*pro hac vice*)
                                             Ryan A. Wheeler (*pro hac vice*)
                                             Cohen Milstein Sellers & Toll PLLC
                                             1100 New York Ave. NW
                                             Fifth Floor
                                             Washington, DC 20005

Tel: (202) 408-4600 Fax: (202) 408-4699
myau@cohenmilstein.com
krichter@cohenmilstein.com
dsutter@cohenmilstein.com
rwheeler@cohenmilstein.com

Michael Eisenkraft (ME-6974)
Cohen Milstein Sellers & Toll PLLC
88 Pine Street
14th Floor
New York, New York 10005
Tel: (212) 838-7797
Fax: (212) 838-7745
meisenkraft@cohenmilstein.com