# EXHIBIT 2

# SUMMARY PLAN DESCRIPTION OF THE
# W BBQ HOLDINGS, INC.
# EMPLOYEE STOCK OWNERSHIP PLAN

January 1, 2016

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................. 1

OVERVIEW ......................................................................................................................... 1

MEMBERSHIP IN THE PLAN ........................................................................................... 1

ACCOUNTS FOR MEMBERS ............................................................................................ 1

CONTRIBUTIONS ............................................................................................................... 1

ALLOCATION OF CONTRIBUTIONS AND FORFEITURES ......................................... 2

ALLOCATION OF PLAN INCOME AND LOSSES .......................................................... 2

INVESTMENT OF PLAN ASSETS .................................................................................... 2

PAYMENT OF BENEFITS AT RETIREMENT OR DEATH WHILE AN EMPLOYEE......... 2

PAYMENT OF BENEFITS ON TERMINATION OF EMPLOYMENT FOR REASONS
    OTHER THAN RETIREMENT OR DEATH................................................................... 3

DIVERSIFICATION RIGHTS.............................................................................................. 4

TOP-HEAVY PROVISIONS ................................................................................................ 4

CERTAIN CIRCUMSTANCES THAT MAY LIMIT BENEFITS...................................... 4

CLAIMS PROCEDURES ..................................................................................................... 5

YOUR RIGHTS UNDER ERISA ......................................................................................... 7

BASIC INFORMATION..................................................................................................... 10

GLOSSARY ........................................................................................................................ 11

PLAN PROVISIONS CONTROL....................................................................................... 13

## INTRODUCTION

W BBQ Holdings, Inc. ("BBQ Holdings") sponsors the W BBQ Holdings, Inc. Employee Stock Ownership Plan (the "ESOP" or "Plan") for the benefit of its employees.  The ESOP is designed to provide benefits following your termination of employment.

The Glossary at the end of this booklet defines the capitalized terms used in this Summary Plan Description ("SPD").

## OVERVIEW

The ESOP is an employee stock ownership plan designed to invest primarily in BBQ Holdings Stock.

The ESOP is an amendment and restatement of the W BBQ Holdings, Inc. Profit Sharing Plan (the "Profit Sharing Plan"), effective originally as of January 1, 2015.

## MEMBERSHIP IN THE PLAN

If you were an Eligible Employee and had completed one year of Eligibility Service and attained age 21 as of the date the Profit Sharing Plan was adopted (i.e. October 31, 2015) you became a Member of the ESOP on January 1, 2016.  Otherwise, Eligible Employees become Members of the ESOP on the January 1st nearest the date on which they have completed one year of Eligibility Service and attained age 21.

## ACCOUNTS FOR MEMBERS

The ESOP maintains the following accounts:

The "ESOP Account" holds your interest in BBQ Holdings Stock.

The "Loan Suspense Account" holds BBQ Holdings Stock that the ESOP purchased with borrowed funds.  The BBQ Holdings Stock in the Loan Suspense Account is allocated to Members' ESOP Accounts each Plan Year as the ESOP repays the loan it incurred to buy BBQ Holdings Stock.

The "Employer Contribution Account" holds cash and any Plan assets other than BBQ Holdings Stock.

## CONTRIBUTIONS

For each Plan Year, BBQ Holdings will make a cash contribution to the ESOP to provide the ESOP with funds it will need to repay any loan it incurs to buy BBQ Holdings Stock.  BBQ Holdings may also pay cash dividends on BBQ Holdings Stock held in the ESOP to repay such loan.  Finally, for each Plan Year, BBQ Holdings may in its discretion make an additional contribution in cash or other property to the ESOP in an amount BBQ Holdings determines.

## ALLOCATION OF CONTRIBUTIONS AND FORFEITURES

As of the last day of each Plan Year, the Plan Administrator will allocate to Members' ESOP Accounts any BBQ Holdings Stock that is released from the Loan Suspense Account by reason of payment on a loan the ESOP incurred to buy BBQ Holdings Stock.  You will not receive this (or any other) allocation unless you have completed 1,000 Hours of Service during the Plan Year and are employed on the last day of the Plan Year, or if you die or your Retirement Date occurs during the Plan Year.

Generally, the Plan Administrator will allocate such BBQ Holdings Stock to your ESOP Account in the proportion that your Annual Compensation for that Plan Year bears to the aggregate Annual Compensation of all Members for that same Plan Year.

The Plan Administrator will similarly allocate to your ESOP Account any cash contributions or BBQ Holdings Stock contributed to or purchased with cash contributions to the ESOP.

## ALLOCATION OF PLAN INCOME AND LOSSES

Any cash dividends paid on BBQ Holdings Stock allocated to your ESOP Account or held in the Loan Suspense Account that are not used to purchase BBQ Holdings Stock or to repay the loan will be allocated to your Employer Contribution Account based on the methodologies described in the Plan.

Any other earnings or losses will be allocated to your Employer Contribution Account in accordance with the methodology described in the Plan.

## INVESTMENT OF PLAN ASSETS

The purpose of the ESOP is to invest primarily in BBQ Holdings Stock.  Plan assets not invested in BBQ Holdings Stock will be invested in other assets.

## PAYMENT OF BENEFITS AT RETIREMENT OR DEATH WHILE AN EMPLOYEE

You are entitled to the value of your Employer Contribution Account and ESOP Account if you continue to work for BBQ Holdings or its affiliates until your Retirement Date or you die while so employed.  Generally payment will begin to be made to you (or to your Beneficiary in the event of your death) not later than 60 days after the end of the Plan Year in which your Retirement Date or death occurs.

**Form of Payment of Employer Contribution Account**

If the value of all of your Accounts does not exceed $1,000, payment of your Employer Contribution Account will be made to you in a lump sum in cash.  If the value of all of your Accounts exceeds $1,000, payment of your Employer Contribution Account will be made to you or, if applicable your Beneficiary, in equal quarterly installments in cash over a period of 5 years.

2

**Form of Payment of ESOP Account**

If the value of all of your Accounts does not exceed $1,000, payment of your ESOP Account will be made to you in a lump sum in cash equal to the value of the shares of BBQ Holdings Stock allocated to your ESOP Account.  If the value of all of your Accounts exceeds $1,000, payment of your ESOP Account will be made in cash in equal annual installment payments over a period of five years plus one year for each $210,000 or a fraction thereof, by which the value of your ESOP Account exceeds $1,070,000 (each as adjusted under the Code), unless you elect installment payments over a longer period.

## PAYMENT OF BENEFITS ON TERMINATION OF EMPLOYMENT FOR REASONS OTHER THAN RETIREMENT OR DEATH

If you terminate employment for any reason other than attaining a Retirement Date or dying, you are entitled to the vested percentage of the value of your Accounts.  If you die after you terminate employment with BBQ Holdings or its affiliates, your Beneficiary is entitled to the vested percentage of your Accounts.  The portion of your Accounts in which you are vested is the percentage of your Employer Contribution Account and ESOP Account determined according to the following vesting schedule:

| Your Years of Vesting Service | Percentage Vested |
|---|---|
| Less than 2 | 0% |
| 2 | 20% |
| 3 | 40% |
| 4 | 60% |
| 5 | 80% |
| 6 or more | 100% |

**Time and Form of Payment of Employer Contribution Account**

Payment of your vested Employer Contribution Account will begin not later than 60 days after the end of the Plan Year in which your death or termination of employment occurs in the form of payment described above in the section entitled, "Form of Payment of Employer Contribution Account."

**Time and Form of Payment of ESOP Account**

Payment of your vested ESOP Account will be made in the form of payment described above in the section entitled, "Form of Payment of ESOP Account."  This payment will commence one year after the end of the Plan Year that is the fifth Plan Year following the Plan Year in which you terminate employment.  However, since the Trustee incurred a loan to purchase the BBQ Holdings Stock allocated to your ESOP Account, payment will not be made until the loan is repaid in full.

3

**Valuation of Accounts**

Your Accounts will be valued as of the last day of the Plan Year or any other day that the Plan Administrator declares to be a Valuation Date (the "Valuation Date"). The value of your Accounts will be adjusted for any allocations, distributions, income, gains or losses through the last day of the Plan Year that coincides with or precedes the date of payment.

**Forfeitures of Nonvested Accounts**

If you are not 100 percent vested in your Accounts at the time you terminate employment and you incur five consecutive Breaks in Service or you die, you will forfeit the non-vested portion of your Accounts at the end of such five year period or at your death. If BBQ Holdings (or an affiliate) reemploys you before you incur five consecutive Breaks in Service, your Accounts may be restored.

## DIVERSIFICATION RIGHTS

After you reach age 55 and have been a Member of the ESOP for at least ten years (with at least 1000 hours of service in each of those years) you may elect within 90 days after the close of each Plan Year for a period of six years to receive a cash distribution in an amount of up to 25 percent of the value of the total number of shares of BBQ Holdings Stock that have ever been allocated to your ESOP Account on or before the close of the preceding Plan Year reduced by the number of shares of BBQ Holdings Stock with respect to which you made a previous election pursuant to this paragraph. In the last year of the six-year period, you may choose to receive up to 50 percent of the value of the total number of shares of BBQ Holdings Stock that have ever been allocated to your ESOP Account on or before the close of the preceding Plan Year, reduced by the number of shares of BBQ Holdings Stock with respect to which you made a previous election pursuant to this paragraph. To exercise this right, you must notify the Plan Administrator within 90 days after the close of each such Plan Year. This right is only available if the fair market value of the BBQ Holdings Stock in your ESOP Account exceeds $500.

## TOP-HEAVY PROVISIONS

Generally, the ESOP is "top-heavy" if it holds 60 percent or more of its assets for the benefit of "key employees" (as defined in the ESOP). If the ESOP is top-heavy for a Plan Year, BBQ Holdings will likely make a minimum contribution of three percent of Annual Compensation for all Members who are not key employees.

## CERTAIN CIRCUMSTANCES THAT MAY LIMIT BENEFITS

The Code states that the annual addition to your Accounts may not exceed the lesser of $53,000 (for 2015, as adjusted for future years) or 100 percent of your Annual Compensation.

In the event of a qualified domestic relations order ("QDRO") as defined in the Code, all or part of your benefit may become payable to an alternate payee. Generally, this means that your spouse or children may gain a right to all or some part of your benefit through divorce proceedings. You may obtain without charge from the Plan Administrator a copy of the procedures it uses to determine whether a court order is a QDRO.

Because the ESOP is a defined contribution plan, the Pension Benefit Guaranty Corporation ("PBGC") does not insure Plan benefits. The PBGC insures only defined benefit plans.

BBQ Holdings can amend or terminate the ESOP, in whole or in part, at any time for any reason. If the ESOP terminates, you will become fully vested in your Accounts, regardless of your years of Vesting Service. If the ESOP is partially terminated (as that concept is defined in the Code), you will become fully vested if you are affected by the partial termination. After payment of expenses, and as soon as practicable after a complete termination of the ESOP, you will receive payment of your accounts in a lump sum in cash.

## CLAIMS PROCEDURES

If you or your Beneficiary (in each case, a "claimant") believe you are not receiving benefits due under the ESOP, the claimant may file a written claim for benefits with the Plan Administrator. Within 90 days after the Plan Administrator receives the claim (or 45 days for a claim for disability benefits), it will issue a decision with respect to the claim, unless special circumstances require an extension of time for processing the claim. The claimant will be notified of the extension, and the special circumstances requiring the extension, within the original 90-day period (or 45-day period for a claim for disability benefits) and a decision will be made no later than 180 days (or 105 days for a claim for disability benefits) after the Plan Administrator's receipt of the claim. In the case of a claim for disability benefits, the written notice of extension will also explain the standards on which entitlement to a benefit are based, any unresolved issues that prevent a decision on the claim, and any additional information needed to resolve those issues, and the claimant shall be afforded at least 45 days within which to provide the specified information. Additionally, in the case of a claim for disability benefits, if the determination is extended to a day later than 30 days after the termination of the initial 45-day determination period, the Plan Administrator will provide a second written notice to the claimant prior to the termination of the initial 30 day extension period that shall include the same information as described above.

If the Plan Administrator denies the claim (in whole or in part), it will furnish the claimant with a written notice of the denial within the time period described in the paragraph above. The written notice will include:

- the specific reason(s) for the denial;

- reference to the specific Plan provisions on which the denial is based;

- a description of any additional information or material necessary to support the claim and an explanation of why such information or material is necessary;

- in the case of a claim for disability benefits, if an internal guideline, protocol, rule, or other similar criterion was relied upon to deny the claim, either the internal guideline, protocol, rule, or other similar criterion, or an explanation that the claimant may receive the internal guideline, protocol, rule, or other criterion free of charge upon request;

5

- in the case of a claim for disability benefits, the identity of any medical or vocational experts whose advice was obtained in connection with the denial, regardless of whether the Plan Administrator relied upon such advice; and

- an explanation of the Plan's claim review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under Section 502(a) of ERISA following a denial on review.

If the claimant is satisfied with the decision on the claim, or if the claimant is dissatisfied but takes no action within 60 days (or 180 days for a claim for disability benefits) after receiving written notice of the denial, the Plan Administrator's decision will become final.  However, if the claim has been denied and the claimant wishes to appeal the denial, the claimant must follow the ESOP's appeal procedure.

If the claimant wishes to appeal a denied claim, the claimant or an authorized representative must file a written request for a review to the ESOP's Appeals Committee no later than 60 days (or 180 days for a claim for disability benefits) after the claimant receives written notification of the denial of the claim.

The claimant or an authorized representative may, upon request and free of charge, have reasonable access to and obtain copies of all documents, records, or other information relevant to the claim and may submit to the Appeals Committee in writing any comments, documents, records, and other information the claimant may have relating to the claim.

After receiving the written application for review, the Appeals Committee may schedule a hearing to review the claimant's claim for benefits.  The hearing will take place not more than 30 days from the date on which the Appeals Committee received the written application for review.  At least ten days prior to the scheduled hearing, the claimant and any authorized representative will receive written notice of the date, place, and time of the scheduled hearing. The Appeals Committee will consider all comments, documents, records and other information the claimant submitted relating to the claim, including information that the claimant or authorized representative submitted after the initial benefit determination.

In the case of a claim for disability benefits, the review shall not afford deference to the initial claim denial, and no Appeals Committee member who previously denied the claim nor a subordinate of such Appeals Committee member will conduct the review.  Additionally, if the denial of the claim for disability benefits was based in whole or in part on a medical judgment, the Appeals Committee shall consult with a health care professional who has appropriate experience and training in the field of medicine involved in the medical judgment and who was neither consulted, nor is a subordinate of any individual who was consulted, in connection with the initial claim denial.

The Appeals Committee must provide the claimant with its written decision within 60 days (or 45 days for a claim for disability benefits) after its receipt of the written request for review.  There may be times when this 60-day period (or 45-day period for a claim for disability benefits) may be extended.  An extension may be made only if there are special circumstances (such as the need to hold a hearing) that are communicated to the claimant, along with the date

by which the Appeals Committee expects to make its decision, within the 60-day period (or 45-day period for a claim for disability benefits). If there is an extension, a decision will be made no later than 120 days (or 90 days for a claim for disability benefits) after the Appeals Committee's receipt of the request for review.

The Appeals Committee will communicate to the claimant in writing its final decision on the claim. In the case of an adverse benefit determination on review, the notification will include:

- the specific reason(s) for the adverse determination;

- reference to the specific Plan provisions on which the determination is based;

- a statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the claimant's claim for benefits;

- in the case of a claim for disability benefits, if an internal guideline, protocol, rule, or other similar criterion was relied upon for the adverse determination, either the internal guideline, protocol, rule, or other similar criterion, or an explanation that the claimant may receive the internal guideline, protocol, rule, or other criterion free of charge upon request; and

- a statement of the claimant's right to bring an action under Section 502(a) of ERISA.

The Appeals Committee has the discretionary and final authority under the ESOP to determine the validity of a denied claim. Accordingly, any decision the Appeals Committee makes on an appeal will be final.

If the claimant disagrees with the final decision, the claimant may sue. However, the claimant may not sue until an appeal under the ESOP has been denied, unless the Plan Administrator or the Appeals Committee did not comply with the ESOP's claims procedures, in which case the claimant may pursue any available remedies under Section 502(a) of ERISA. Any lawsuit must be filed within 90 days of receipt of the Appeals Committee's final written denial of a claim, or within 90 days of the date the claimant has otherwise exhausted the administrative remedies available under the ESOP, or it shall be forever barred.

Benefits under the ESOP will be paid only if the Plan Administrator and/or the Appeals Committee or their respective delegates decide in their discretion that the claimant is entitled to them.

## **YOUR RIGHTS UNDER ERISA**

As a Member of the ESOP, you are entitled to receive certain information and are also afforded certain rights and protections under ERISA.

**Receive Information About Your ESOP and Its Benefits**

You may examine, without charge, at the Plan Administrator's office and at other specified locations (such as worksites) plan documents and a copy of the latest annual report (Form 5500 Series) the Plan Administrator filed with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

You may obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the ESOP, and copies of the latest annual report (Form 5500 Series). The Plan Administrator may make a reasonable charge for the copies.

You may receive a summary of the ESOP's annual financial report. The Plan Administrator is required by law to furnish each Member with a copy of this summary annual report.

You may obtain a statement telling you whether you have a right to receive a benefit at Normal Retirement Age (the latter of age 65 or the fifth anniversary of your membership in the ESOP) and if so, what your benefits would be at Normal Retirement Age if you stop working under the ESOP now. If you do not have a right to a benefit, the statement will tell you how many more years you have to work to get a right to a benefit. You must request this statement in writing and the Plan Administrator is not required to give you one more than once a year. The Plan Administrator must provide the statement free of charge.

**Prudent Actions by ESOP Fiduciaries**

In addition to creating rights for Members, ERISA imposes duties upon the people who are responsible for the operation of the ESOP. The people who operate your ESOP, called "fiduciaries" of the ESOP, have a duty to do so prudently and in the interest of you and other Members and Beneficiaries.

No one, including your employer, or any other person, may fire you or otherwise discriminate against you to prevent you from obtaining a benefit or exercising your rights under ERISA.

**Enforce Your Rights**

If your claim for a benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from the ESOP and do not receive them within 30 days, you may file suit in a federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator.

If you have a claim for benefits which is denied on appeal or ignored, in whole or in part, you may file suit in a state or federal court. In addition, if you disagree with the ESOP's decision or lack thereof concerning the qualified status of a domestic relations order, you may

file suit in a federal court. If it should happen that ESOP fiduciaries misuse the ESOP's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay the costs and fees. If you lose, the court may order you to pay the costs and fees, for example, if it finds your claim is frivolous.

### Assistance with Your Questions

If you have any questions about the ESOP, you should contact the Plan Administrator.

If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory, or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

## BASIC INFORMATION

| | |
|---|---|
| **Name of Plan:** | W BBQ Holdings, Inc. Employee Stock Ownership Plan |
| **Plan Sponsor:** | W BBQ Holdings, Inc.<br>1265 Third Avenue<br>New York, NY  10021<br>(212) 772-9393 |
| **Other employers who have adopted the Plan:** | Broadway & 166th, LLC.; Three and Seventy-Three Gourmet, LLC; 180 Blkyn Livingston, LLC; 23rd & 8th, LLC; 49th Broadway, LLC; West Fordham BBQ, LLC; Rego Enterprises, LLC; Bay Plaza Enterprises, LLC; Nostrand Enterprises, LLC; Tri State Management Associates, LLC. |
| **Plan Sponsor Identification Number:** | 47-5557300 |
| **Plan Number:** | 001 |
| **Type of Plan:** | Employee Stock Ownership Plan |
| **Type of Administration:** | The Plan Sponsor appoints the Plan Administrator that administers the Plan.  The Trustee holds ESOP assets.  BBQ Holdings may appoint an investment manager to invest the Plan's assets. |
| **Plan Administrator:** | W BBQ Holdings, Inc.<br>ESOP Committee<br>1265 Third Avenue<br>New York, NY  10021<br>(212) 772-9393 |
| **Trustee:** | Argent Trust Company<br>1100 Abernathy Road<br>500 Northpark, Suite 550<br>Atlanta, GA 30328<br>Phone:  (855) 504-1376 |
| **Agent for Service of Legal Process** | Gregor Wetanson<br>1265 Third Avenue<br>New York, NY  10021 |

10

In addition, service of legal process may be made upon the Trustee or the Plan Administrator.

# GLOSSARY

The following defined terms are used in this summary:

**"Annual Compensation"** generally means the compensation you receive from BBQ Holdings or its affiliates during that portion of the Plan Year in which you are a Member of the Plan and that is reported on your Form W-2, up to a maximum of $265,000 per Plan Year (as adjusted for changes in the cost of living).

**"Beneficiary"** means, if you are not married, the person you have designated on the form the Plan Administrator has furnished to you. If you are married, your spouse will be your Beneficiary unless he or she consents in writing in the presence of a notary public or the Plan Administrator to your designation of some other person. If you are without a spouse and have not properly designated a Beneficiary, any death benefits will be paid to your children, your grandchildren, your parents, or to your estate, in that order.

**"Board"** means the board of directors of W BBQ Holdings, Inc. or any successor company.

**"Break in Service"** generally means a Plan Year in which you are not credited with more than 500 Hours of Service for W BBQ Holdings or its affiliates.

**"Code"** means the Internal Revenue Code of 1986, as amended.

**"Disabled"** means a disability you suffer while you are an employee of BBQ Holdings or its affiliates that prevents you from engaging in any substantial gainful activity by reason of any medically determinable mental or physical impairment that can be expected to result in your death or that has lasted or can be expected to last for a continuous period of 12 months. The Plan Administrator, based on medical evidence that it deems in the exercise of its discretion to be competent and objective, makes the determination as to whether you have such a disability.

**"BBQ Holdings Stock"** means the common or noncallable preferred convertible stock of W BBQ Holdings, Inc.

"**Eligibility Service**" generally means a 12 consecutive month period during which the employee completes no less than 1,000 Hours beginning on the date on which the employee first performs an Hour of Service. If the employee fails to complete 1,000 Hours of Service in that 12 consecutive month period, the 12 consecutive month period is any Plan Year thereafter, including the Plan Year that includes the first anniversary of the date the employee first performed an Hour of Service.

**"Eligible Employee"** generally means an employee of BBQ Holdings or an affiliate which has adopted the Plan other than an employee who is (i) covered by a collective bargaining

agreement, (ii) a nonresident alien who receives no earned income from sources within the United States, (iii) a shareholder of BBQ Holdings or its affiliates, or (iv) a person employed to provide services exclusively to any entity operating a Tony's Di Napoli restaurant.

**"Employer Contribution Account"** means the account in the ESOP that holds your interest in any assets of the ESOP other than BBQ Holdings Stock.

**"ERISA"** means the Employee Retirement Income Security Act of 1974, as amended.

**"ESOP"** means the W BBQ Holdings, Inc. Employee Stock Ownership Plan.

**"ESOP Account"** means the account in the ESOP that holds your interest in BBQ Holdings Stock.

**"Hour of Service"** is generally each hour for which BBQ Holdings and its affiliates directly or indirectly compensate you.

**"Loan Suspense Account"** means the account in the ESOP that holds BBQ Holdings Stock that the ESOP purchased with borrowed funds.

**"Member"** means a participant whose Accounts have not been paid in full.

**"Normal Retirement Age"** means the latter of age 65 or the fifth anniversary of membership in the Plan.

**"Plan Administrator"** means the W BBQ Holdings, Inc. ESOP Committee.

**"Plan Year"** means the calendar year.

**"Retirement Date"** means the first day of the month coinciding with or next following the date on which you retire on or after attaining Normal Retirement Age or becoming Disabled.

**"Trust"** means the amount of cash and other property that the Trustee holds pursuant to the Plan.

**"Trustee"** means the trustee or trustees of the Trust.

**"Vesting Service"** generally means each calendar year during which you are credited with at least 1,000 hours for BBQ Holdings or its affiliates.

1) If you have a Break in Service, service before the Break in Service shall be counted as Vesting Service only after you complete one year of Vesting Service following reemployment, except as provided in (2) and (3) below.

2) If you have a period of five consecutive Breaks in Service, Vesting Service shall not include service after such period began, for purposes of determining your vested portion of BBQ Holdings' (or affiliates) contributions made before such period.

3)     If you are not vested in any BBQ Holdings (or affiliates) contributions when you terminate employment, you will lose credit for years of Vesting Service prior to a period of consecutive Breaks in Service if such period equals or exceeds the greater of (i) five or (ii) the years of Vesting Service completed before such period began.

## **PLAN PROVISIONS CONTROL**

**THIS BOOKLET IS ONLY A SUMMARY OF THE ESOP. IN THE CASE OF ANY CONFLICT BETWEEN THE CONTENT OF THIS BOOKLET AND THE CONTENT OF THE ESOP AND THE RELATED TRUST AGREEMENT, THE TERMS OF THE ESOP AND THE TRUST AGREEMENT WILL CONTROL. THE PLAN ADMINISTRATOR SHALL HAVE THE DISCRETIONARY AUTHORITY TO DETERMINE ELIGIBILITY FOR BENEFITS AND TO CONSTRUE ALL TERMS OF THE ESOP, AND ANY DETERMINATION OR CONSTRUCTION MADE THEREUNDER BY THE PLAN ADMINISTRATOR SHALL BE FINAL AND BINDING. IF YOU HAVE ANY QUESTIONS ABOUT THE ESOP AFTER READING THIS BOOKLET, OR IF YOU CARE TO REVIEW THE PLAN ITSELF, CONTACT THE PLAN ADMINISTRATOR. COPIES OF THE ESOP AND THE TRUST AGREEMENT ARE ON FILE WITH THE PLAN ADMINISTRATOR.**

NY\52754438.2