IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMAAL LLOYD and ANASTASIA JENKINS, individually and on behalf of all others similarly situated, and on behalf of the W BBQ Holdings, Inc. Employee Stock Ownership Plan,<br><br>        Plaintiffs,<br><br>v.<br><br>ARGENT TRUST COMPANY, HERBERT WETANSON, GREGOR WETANSON, and STUART WETANSON,<br><br>        Defendants. | Case No. 1:22-cv-04129-DLC |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY THE CASE OR, IN THE ALTERNATIVE, TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

**TABLE OF CONTENTS**

ARGUMENT .................................................................................................................................. 1

    A.    The "Effective Vindication" Exception Does Not Apply. ..................................................... 1

        1.    ERISA Provides a Substantive Right to Pursue Monetary Recovery for an Individual Account, but Not a Substantive Right to Pursue Plan-Wide Relief. ........... 1

        2.    The Right to Seek Plan-Wide Monetary Relief Is Procedural in Nature and Thus Can Be Restricted By Individual Arbitration Provisions. ............................................. 2

        3.    *Viking River* Does Not Alter the Conclusion that Plaintiffs' Right to Bring an ERISA Claim for Plan-Wide Monetary Relief Is Procedural. ................................. 3

        4.    The Arbitration Provisions Are Not Invalid on the Grounds that They Restrict Plaintiffs' Right to Pursue Plan-Wide Equitable Relief. ............................................. 5

    B.    Under ERISA, Affirmative Consent and Notice Are Not Required for a Valid Plan Amendment to Bind Participants. ........................................................................................ 6

    C.    The Court Should Stay This Case and Award Defendants' Fees. ....................................... 8

    D.    Alternatively, Plaintiffs Lack Article III Standing. .............................................................. 9

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                           **Page(s)**

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ........................................................................................................... 8

*Coan v. Kaufman*,
  457 F.3d 250 (2d Cir. 2006) ........................................................................................ 3, 4, 5

*Conte v. Ascension Health*,
  No. 11-12074, 2011 WL 4506623 (E.D. Mich. Sep. 28, 2011) ................................................ 8

*Dorman v. Charles Schwab Corp.*,
  780 F. App'x 510 (9th Cir. 2019) ................................................................................... 2, 7

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) ...................................................................................................... 3

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991) ......................................................................................................... 5, 6

*Hughes Aircraft Co. v. Jacobson*,
  525 U.S. 432 (1999) ........................................................................................................... 7

*LaRue v. DeWolff, Boberg & Assocs.*,
  552 U.S. 248 (2008) ........................................................................................................... 2

*Lee v. Argent Tr. Co.*,
  No. 5:19-CV-156, 2019 WL 3729721 (E.D.N.C. Aug. 7, 2019) ........................................... 10

*Mathews v. Sears Pension Plan*,
  144 F.3d 461 (7th Cir. 1998) ......................................................................................... 7, 8

*Ramos v. Banner Health*,
  No. 15-cv-2556, 2019 WL 1777524 (D. Colo. Apr. 23, 2019) ................................................ 3

*Robertson v. Argent Tr. Co.*,
  No. 21-cv-1711, 2022 WL 2967710 (D. Ariz. July 27, 2022) ...................................... 1, 2, 6, 8

*Schoemann v. Excellus Health Plan, Inc.*,
  447 F. Supp. 2d 1000 (D. Minn. 2006) ............................................................................... 7

*Smith v. Aegon Cos. Pension Plan*,
  769 F.3d 922 (6th Cir. 2014) .............................................................................................. 7

*Smith v. Bd. of Dirs. of Triad Mfg., Inc.*,
  13 F.4th 613 (7th Cir. 2021) ................................................................................... 2, 5

*Thole v. U.S. Bank N.A.*,
  140 S. Ct. 1615 (2020) ........................................................................................... 5, 9

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ................................................................................................ 9

*Viking River Cruises, Inc. v. Moriana*,
  142 S. Ct. 1906 (2022) ...................................................................................... 2, 3, 4

**Statutes**

9 U.S.C. § 2 ....................................................................................................................... 6

29 U.S.C. § 1054(g) .......................................................................................................... 7

29 U.S.C. § 1132(a)(2) ...................................................................................................... 5

29 U.S.C. § 1144(a) .......................................................................................................... 8

Defendants' Memorandum of Law supporting their Motion (Dkt. 51) ("Memorandum" or "Mem.") demonstrated that the Court should compel individual arbitration and stay the case, or dismiss the case for lack of Article III standing. Plaintiffs' arguments in opposition are unavailing, *see* Pls.' Mem. in Opp'n (Dkt. 54) ("Opposition" or "Opp'n"), and the Motion should be granted.

## ARGUMENT

**A.     The "Effective Vindication" Exception Does Not Apply.**

Plaintiffs do not (nor could they) point to a "clearly expressed congressional intention" that ERISA should not be harmonized with the FAA (*i.e.*, that ERISA trumps the FAA's requirement to enforce valid arbitration provisions). Mem. at 13-15. Both ERISA's requirement to enforce Plan terms and the FAA's requirement to enforce valid arbitration provisions would be harmonized and given effect by compelling arbitration under Section 10 of the Plan Document. *Id.* at 14-15.

Plaintiffs instead argue Section 10 is invalid under the "effective vindication" exception, which the Supreme Court has ***never*** applied to invalidate an individualized arbitration provision. But the exception does not apply here anyway—Plaintiffs' substantive ERISA rights are not restricted by Section 10, and equitable remedies are available even if arbitration is enforced.

**1.     ERISA Provides a Substantive Right to Pursue Monetary Recovery for an Individual Account, but Not a Substantive Right to Pursue Plan-Wide Relief.**

Plaintiffs contend that "ERISA expressly authorizes Plan-wide relief," and the right to such relief is substantive and cannot be restricted. *See* Opp'n at 9. But even though ERISA ***permits*** a participant to pursue plan-wide relief, that does ***not*** mean that such permission cannot be restricted. Neither of the two authorities that Plaintiffs cite (the statutory text of ERISA and a concurrence from *LaRue*) changes this conclusion. ERISA section 409(a) refers to "any losses to the plan" and "any profits" to describe the extent of potential ***liability*** to a breaching fiduciary. *See Robertson v. Argent Tr. Co.*, No. 21-cv-1711, 2022 WL 2967710, at *10 (D. Ariz. July 27, 2022). Neither

1

this section (nor 502(a)(2)) provides that *one* participant has an unrestrictable right to seek *all* such recovery in one action.[1] *See id.* The same is true of the *LaRue* concurrence, which states only that these sections "permit" recovery of plan losses, and not whether permission can be restricted. *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 261 (2008) (Thomas, J., concurring).

Despite Plaintiffs' focus on the *LaRue* concurrence, the majority opinion must drive the analysis. The majority recognized that a participant in a defined contribution plan (like the Plan) has the right to sue under section 502(a)(2) for relief as to his or her individual account. *LaRue*, 552 U.S. at 256. In subsequent decisions, courts have invoked *LaRue* to conclude that the substantive right to pursue recovery as to a participant's individual account must be preserved in arbitration, but plan-wide recovery for all participants can be prohibited in arbitration. *See Smith v. Bd. of Dirs. of Triad Mfg., Inc.*, 13 F.4th 613, 622 (7th Cir. 2021) (individual arbitration not "inherently incompatible with ERISA" because, per *LaRue*, "§ 1132(a) 'authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's *individual* account'"); *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 514 (9th Cir. 2019) (individual arbitration is "consistent with *LaRue*"); *Robertson*, 2022 WL 2967710, at *7-10.

### 2. The Right to Seek Plan-Wide Monetary Relief Is Procedural in Nature and Thus Can Be Restricted By Individual Arbitration Provisions.

That ERISA *allows* for plan-wide lawsuits does not mean that it provides a *substantive right* to such lawsuits. Rather, there is a procedural right to bring a plan-wide suit, similar to a

---

[1] Pursuant to Section 10 of the Plan Document, each participant can file his or her own arbitration seeking monetary recovery with respect to his or her individual account, and (as discussed below) the Secretary of Labor can seek plan-wide equitable relief, if necessary. With these avenues taken together, "all losses" and "any profits" can be recovered for the Plan, and all remedies under section 502(a)(2) are available. An arbitration provision specifying the *procedure* by which statutory rights must be pursued (like Section 10) is enforceable. *See Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1919 (2022) (an arbitration provision "is 'a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute'").

class action, which may be restricted in arbitration. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1627-28 (2018). Courts apply procedural safeguards to ERISA representative actions to ensure that a plaintiff adequately represents the interests of absent plan participants, which confirms that the ***right to seek*** plan-wide relief is procedural in nature, not substantive.

In *Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006), the Second Circuit dismissed a 502(a)(2) claim brought by a plaintiff seeking plan-wide relief on behalf of all participants in a defined contribution plan, because the plaintiff failed to satisfy requirements similar to those in Rule 23 (governing class actions). *See id.* at 259 (the "***representative*** nature of the section 502(a)(2) right of action implies that plan participants must employ ***procedure*s** to protect effectively the interests they purport to represent") (emphasis added).[2] Other courts have enforced similar requirements. *See, e.g.*, *Ramos v. Banner Health*, No. 15-cv-2556, 2019 WL 1777524, at *14-15 (D. Colo. Apr. 23, 2019) (collecting cases). If a court can deny a participant the right to represent a plan and its participants, such right is not substantive, and an arbitration provision can restrict it.

### 3. *Viking River* Does Not Alter the Conclusion that Plaintiffs' Right to Bring an ERISA Claim for Plan-Wide Monetary Relief Is Procedural.

Plaintiffs' invocation of *Viking River* does not change the equation, *see* Opp'n at 15-16, because they rely on the part of that decision that is irrelevant while ignoring the part that is on point. In *Viking River*, the Supreme Court analyzed whether the FAA preempts a rule of California law prohibiting wholesale waiver of the right to assert representative claims under California's Private Attorneys General Act ("PAGA"). *Viking River*, 142 S. Ct. at 1906. The Supreme Court explained that there are two ways in which PAGA claims might be considered "representative." First, they are "'representative' in that they are brought by employees acting as . . . agents or proxies . . . of the State." *Id.* at 1916. Second, "PAGA claims are also called 'representative'

---

[2] *Dicta* in *Cooper* is distinguishable from the case here. *See* Mem. at p. 16 n.9.

when they are predicated on [statutory] violations sustained by other employees." *Id.* This second understanding of PAGA is analogous to ERISA section 502(a)(2) claims, whereas the first understanding (to which Plaintiffs point) is irrelevant to this case.

The Court described the second understanding of "representative" PAGA claims as "effectively a rule of claim joinder" that would "allow a party to unite multiple claims against an opposing party in a single action." *Id.* at 1915. The Court held that by purporting to create an unwaivable mechanism for this sort of "claim joinder," PAGA conflicted with the FAA. *Id.* at 1923. A representative claim under ERISA section 502(a)(2) is similarly a form of "claim joinder." Reading *LaRue* and *Coan* together, each participant has an individual 502(a)(2) claim with respect to his or her individual account, and one participant can join those claims together in a representative action only after satisfying procedural requirements similar to Rule 23 for class actions. *See Coan*, 457 F.3d at 258-59. Analogizing to *Viking River*, Plaintiffs' request to invalidate Section 10 because it restricts their ability to join all the Plan's participants' claims in one 502(a)(2) action would violate the FAA's requirement to enforce arbitration provisions.

Plaintiffs ignore the section of *Viking River* on "claim joinder" and instead latch onto the Court's statement that PAGA is similar to single agent/single principal actions (in which a plaintiff sues in a representative capacity on behalf of another entity)—for instance, "*qui tam* action[s]," or "shareholder derivative suits, wrongful-death actions, trustee actions, and suits on behalf of infants or incompetent persons." *Viking River*, 142 S. Ct. at 1906, 1914, 1922. But the case here is unlike any of the single agent/single principal action examples in *Viking River*.

First, this case is not a "trustee action"—Plaintiffs are not trustees seeking to assert claims on behalf of a trust that they represent. Rather, as participants they are Plan beneficiaries seeking to assert their own claims ***against the trustee*** and others to recover on behalf of many other

4

participants (not a single principal). Second, Plaintiffs' claims are not like *qui tam* actions or guardian/receiver actions because they "have not been legally or contractually appointed to represent the plan." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1620-21 (2020) (distinguishing such cases). Third, in *Coan*, the Second Circuit observed that section 502(a)(2) claims are **not** like shareholder derivative suits, *see id.*, 457 F.3d at 258-59, which directly contradicts Plaintiffs' assertion, *see* Opp'n at 15 n.8. Thus, because a section 502(a)(2) claim should be analogized to a form of "claim joinder" rather than to a single agent/single principal action, *Viking River* does not call into question but rather confirms that the arbitration provisions here are enforceable.

> **4.    The Arbitration Provisions Are Not Invalid on the Grounds that They Restrict Plaintiffs' Right to Pursue Plan-Wide Equitable Relief.**

Plaintiffs argue, incorrectly, that Section 10 is invalid because it restricts Plaintiffs from pursuing equitable relief that inures to the benefit of the Plan as a whole, such as fiduciary removal or invalidation of an indemnification provision. Opp'n at 9-13. A similar argument was the basis for the Seventh Circuit's narrow and erroneous holding in *Smith*. 13 F.4th at 622.

*Smith* and cases that rely on it to invalidate individual arbitration provisions (like *Cedeno* and *Harrison*, which are both currently on appeal before the Second and Tenth Circuits, respectively) overlook Supreme Court precedent because they ignore that, even if an ERISA plan document prevents individual participants from seeking plan-wide equitable relief, such relief is available in suits brought by the Secretary of Labor. *See* 29 U.S.C. § 1132(a)(2). In *Gilmer*, the Court addressed this issue with respect to an ADEA claim, and its reasoning in that case should control here. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 23 (1991).[3]

---

[3] Plaintiffs make a passing attempt to distinguish *Gilmer*, arguing that the arbitration provision in that case did not "foreclose specific statutory remedies." Opp'n at 14 n.7. While the Supreme Court noted that the ADEA provided a right to bring collective actions and seek equitable relief, the right to pursue such relief could be restricted in arbitration. *See Gilmer*, 500 U.S. at 32.

Like here, the plaintiff in *Gilmer* argued that an arbitration provision was invalid because it prohibited claimants from obtaining class-wide equitable relief. *Id.* at 32. The Court enforced the provision, finding the effective vindication exception inapplicable and noting that a government agency could obtain equitable relief where individual arbitration foreclosed it. *Id.* at 32 ("[A]rbitration agreements will not preclude *the EEOC* from bringing actions seeking class-wide and equitable relief."). The Court thus blessed the same approach as in Section 10: individualized remedies are arbitrated while the agency (there the EEOC, and here the DOL) can sue for broader equitable remedies. This reasoning clarifies that statutory rights to class-wide equitable relief can be restricted in arbitration, and this Court should follow *Gilmer* here.

**B.  Under ERISA, Affirmative Consent and Notice Are Not Required for a Valid Plan Amendment to Bind Participants.**

Plaintiffs do not dispute that the amendment adding the arbitration provisions to the Plan Document was valid. Nevertheless, they argue that the provisions are unenforceable because Plaintiffs did not affirmatively consent to or receive notice of the amendment. They are wrong.

The FAA does not expressly require consent; rather, an arbitration provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation" of such provision. *See* 9 U.S.C. § 2. The provisions at issue here were included in an amendment governed by ERISA, meaning that ERISA and federal common law (rather than any state's law) are the "law" that this Court should apply to determine whether the arbitration provision is "valid." *See Robertson*, 2022 WL 2967710, at *4 ("[B]ecause the arbitration provision is found within an ERISA plan, its interpretation is governed by federal common law.").

An ERISA plan sponsor may amend a plan at any time without advance notice to or consent from plan participants, as long as participants' accrued benefits are not reduced:

> [A] common reservation in [ERISA] plans, [] the right *unilaterally* to amend the plan[,] underscores the degree to which this particular kind of contract goes beyond

6

> even "take it or leave it." The potential beneficiary, though not consulted or consenting, ordinarily is bound nevertheless by the amendment unless it violates a provision of ERISA, as by cutting down on his accrued rights under the plan.

*Mathews v. Sears Pension Plan*, 144 F.3d 461, 465-66 (7th Cir. 1998); *see also Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 442 (1999) ("ERISA provides an employer with broad authority to amend a plan."); *Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922, 930 (6th Cir. 2014) (same).

Plaintiffs admit they were both Plan participants as of April 2019 when the Plan Document was amended to include the arbitration provisions. *See* Am. Compl. ¶¶ 14-15. In addition, they do not attempt to argue that the amendment violates any provision of ERISA—for instance, by "cutting back" or reducing accrued benefits. *See* 29 U.S.C. § 1054(g). Accordingly, the Plan amendment is valid and binding on Plaintiffs, regardless of whether they consented to or received advance notice of the amendment. *See, e.g.*, *Schoemann v. Excellus Health Plan, Inc.*, 447 F. Supp. 2d 1000, 1007 (D. Minn. 2006) (ERISA plan terms (like forum-selection clauses) bind participants, even when participants do not negotiate or affirmatively consent to terms).[4]

Plaintiffs' cited caselaw does not alter this conclusion. First, none of the Supreme Court cases requiring consent or notice (*Lamps Plus*, *Viking River*, *Stolt-Nielsen*, and *Carnival Cruise Lines*) involved an arbitration provision in a plan document, meaning that the Court was not called on to apply ERISA or its interpretive federal common law. Consent was required there because those cases involved arbitration provisions in bi-lateral agreements or adhesion contracts. Such contexts are inapposite to an ERISA-governed plan, where lack of consent does not constitute

---

[4] In the alternative, to the extent a participant's affirmative consent were required in the context of ERISA, such consent is conveyed when an individual qualifies as a participant and then continues as a participant. At this point, the individual manifests consent to the plan document as a whole, including sections providing that the plan document can be amended at any time (in ways not prohibited by ERISA). *See Mathews*, 144 F.3d at 465; *Dorman*, 780 F. App'x at 512 ("A plan participant agrees to be bound by a provision in the plan document when he participates in the plan while the provision is in effect.").

7

grounds for revoking an ERISA plan document. *See, e.g.*, *Mathews*, 144 F.3d at 465 (an ERISA plan is unlike an adhesion contract and "goes beyond even 'take it or leave it'"); *Conte v. Ascension Health*, No. 11-12074, 2011 WL 4506623, at *2 (E.D. Mich. Sep. 28, 2011) (an ERISA plan is not a bi-lateral contract "negotiated between the plaintiff and the defendant").

Second, Plaintiffs cite three cases (*Smith*, *Henry*, and *Hensiek*) in which district courts applied state law to the question of whether an ERISA-governed plan amendment was valid. The application of state law was erroneous and should not be followed here because ERISA contains a broad preemption clause, and "[t]he general rule is that state common-law rules related to employee benefit plans are preempted." *Robertson*, 2022 WL 2967710, at *4.

At bottom, applying concepts of notice and consent from outside ERISA and its interpretive federal common law would inject the very sort of state-specific governance of plans that Congress sought to avoid in enacting ERISA and its broad preemption provision. *See* 29 U.S.C. § 1144(a). Further, requiring consent and notice with respect to Section 10, but not any other sections of the Plan Document, would result in arbitration provisions being analyzed under different statutory requirements than the rest of the Plan Document, in contravention of the FAA. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (under the FAA "courts must place arbitration agreements on an equal footing with other contracts"). To place Section 10 on "equal footing" with other sections of the Plan Document would mean applying ERISA and concluding that the amendment adding Section 10 is valid.

**C.   The Court Should Stay This Case and Award Defendants' Fees.**

Because Plaintiffs' arguments in opposition fail, the Court should compel individual arbitration and stay this case, *see* Mem. at 19, a request Plaintiffs do not contest. And Defendants' request for fees is not "specious," as Plaintiffs claim; rather, Defendants' entitlement to fees is clear from Section 10.04(q). Plaintiffs argue Section 10.04(q) gives them an "express right" to

8

challenge the Plan Document's arbitration provisions in federal court, while ignoring that the *same section* provides further that, if such challenge is unsuccessful, defendants should be reimbursed for their fees. Plaintiffs cannot choose which parts of 10.04(q) to accept and which to reject.

### D. Alternatively, Plaintiffs Lack Article III Standing.

To argue that they have plausibly alleged Article III standing, Plaintiffs wave at "over 40 paragraphs of allegations in the Amended Complaint" that purportedly "plausibly demonstrate that Defendants received more than fair market value" for stock purchased by the ESOP in the Transaction. *See* Opp'n at 20-21. Notably, the plaintiff in *Lee* alleged similarly that the ESOP transaction at issue was for more than fair market value, but the court still dismissed the plaintiff's complaint for failure to plead Article III standing. *See* Class Action Complaint, *Lee v. Argent*, No. 5:19-cv-156 (E.D.N.C. Apr. 17, 2019), ECF No. 1 ¶¶ 48, 55, 121-23.

These allegations (which Defendants strongly dispute), if taken as true, might arguably state a claim under ERISA at the pleading stage. But that is not the pleading defect that Defendants highlighted in their Memorandum. Rather, and as in *Lee*, Plaintiffs failed to plead plausible facts that they suffered a ***concrete, particularized injury in fact***, such as is required for Article III standing. *See* Mem. at 20-25. To survive the pleading stage, Plaintiffs must plead both a plausible statutory violation, **as well as** Article III standing. *See, e.g.*, *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) ("[U]nder Article III, an injury in law [*i.e.*, a statutory violation] is not an injury in fact," and "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court."); *Thole*, 140 S. Ct. at 1619 (no "concrete" harm because even if plaintiffs "were to *win* . . . they would still receive the exact same monthly benefits that they were already slated to receive . . .").

The alleged facts to which Plaintiffs point as supporting a claim that the Transaction was for more than fair market value have nothing to do with any individual injury in fact that Plaintiffs

allegedly suffered.[5]  *See Lee v. Argent Tr. Co.*, No. 5:19-CV-156, 2019 WL 3729721, at *4 (E.D.N.C. Aug. 7, 2019) (plaintiff lacked Article III standing because "[her] claims are all premised on the alleged unfairness of that transaction, and . . . [she] has not otherwise pleaded that she suffered any injury").  As discussed in the Memorandum, the only financial injury alleged is that the equity value of WBBQ was lower post-Transaction, and such allegation has been debunked by *Lee* and *Plutzer*.[6]  *See* Mem. at 22-25.  Plaintiffs do not dispute that WBBQ's post-Transaction equity value was positive, as occurred in *Lee*, which shows that the Transaction "did not injure" Plaintiffs but instead "benefited" them.  *See Lee*, 2019 WL 3729721, at *4; *see also* Mem. at 24.

Finally, the case law at pages 22-23 of the Opposition is readily distinguishable.  A majority of this case law (*Perez*, *Hensiek*, *Gamino*, *Lysengen*, *Zavala*, *Allen*, *Fernandez*, and *Brundle*) did not involve the question of whether plaintiffs had Article III standing.  And of the two remaining cases, *Placht* is distinguishable for reasons stated in the Memorandum, *see id.* at 24 n.12, and *Innis* is not persuasive because the district court relied on allegations of a post-transaction decrease in equity value to find Article III standing, which was deemed insufficient in *Lee* and *Plutzer*.

## CONCLUSION

For reasons stated above and in their Memorandum, Defendants request that the Court compel individual arbitration, stay this case, and award fees to Defendants.  In the alternative, Defendants request that the Court dismiss the Amended Complaint for lack of Article III standing.

---

[5] Plaintiffs argue that decreases in the WBBQ stock price in post-Transaction years "indicat[e] that the Company was never worth what the Plan paid."  *See* Opp'n at 22.  Defendants did not "ignore" these decreases, but anticipated the argument and responded they are irrelevant because ERISA mandates determining fair market value as of the Transaction, not in hindsight.  Mem. at 25 n.13.

[6] Plaintiffs contend, incorrectly, that Defendants are "conflating the standing inquiry with the ultimate question of whether the Company was sold for more than fair market value."  *See* Opp'n at 24-25.  Not so.  Plaintiffs must plead plausibly that the Transaction violated ERISA, ***and*** that they have Article III standing.  Although Defendants do not concede the former, Plaintiffs have failed as to the latter because they have not alleged that they suffered a concrete injury in fact.

| | |
|---|---|
| Dated: November 16, 2022 | /s/ *Lars C. Golumbic* |
| | Lars C. Golumbic* |
| | Mark C. Nielsen |
| | Sarah M. Adams* |
| | Paul J. Rinefierd* |
| | Larry M. Blocho Jr.* |
| | GROOM LAW GROUP, CHARTERED |
| | 1701 Pennsylvania Ave., NW |
| | Washington, D.C., 20006 |
| | (T) 202-857-0620 |
| | (F) 202-659-4503 |
| | lgolumbic@groom.com |
| | mnielsen@groom.com |
| | sadams@groom.com |
| | prinefierd@groom.com |
| | lblocho@groom.com |

*appearing pro hac vice*