```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                        :
JAMAAL LLOYD and ANASTASIA JENKINS,     :    22cv4129 (DLC)
                                        :
                    Plaintiffs,         :    OPINION AND
                                        :        ORDER
          -v-                           :
                                        :
ARGENT TRUST COMPANY et al.,            :
                                        :
                    Defendants.         :
                                        :
--------------------------------------- X
```

APPEARANCES:

For plaintiffs:

Michelle C. Yau
Daniel R. Sutter
Ryan A. Wheeler
Caroline E. Bressman
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW, Suite 800
Washington, DC 20005

Michael Eisenkraft
Cohen Milstein Sellers & Toll PLLC
88 Pine Street, 14th Floor
New York, New York 10005

For defendants:

Lars C. Golumbic
Mark C. Nielsen
Sarah M. Adams
Andrew D. Salek-Raham
Paul J. Rinefierd
Benjamin J. Koenigsfeld
Theodore A. Van Beek
Groom Law Group, Chartered
1701 Pennsylvania Ave., NW
Washington, D.C., 20006

DENISE COTE, District Judge:

Former employees of W BBQ Holdings, Inc. ("WBBQ") allege that fiduciaries of the WBBQ Employee Stock Ownership Plan ("ESOP") caused the ESOP to overpay for WBBQ stock.  The plaintiffs learned during discovery that two of the defendants, Herbert and Gregor Wetanson, transferred their proceeds from that transaction to trusts under their control.  The plaintiffs have moved for leave to file a Second Amended Complaint ("SAC") that seeks recovery from those trusts.  The plaintiffs' motion is granted.

## Background

The following facts are taken from the SAC.  Most are repeated from the current operative pleading, the First Amended Complaint ("FAC").  Because much of the discussion below depends on the standard applicable to motions to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., facts in the SAC are assumed true for purposes of this motion.  This section begins by reviewing facts that were already alleged in the FAC and are repeated in the SAC.  The new allegations in the SAC are described next, followed by a summary of relevant procedural history.

I.    Existing Allegations

The following facts are alleged in both the FAC and the SAC.[1]  Plaintiffs Jamaal Lloyd and Anastasia Jenkins are former employees of WBBQ, a chain of low-priced barbeque restaurants in New York City.  The defendants include Herbert Wetanson, WBBQ's founder and President; Gregor Wetanson, Herbert's son and WBBQ's CEO; and Stuart Wetanson, Gregor's son and a manager at WBBQ (the "Seller Defendants").  Another defendant is Argent Trust Company ("Argent"), which WBBQ appointed as trustee of the ESOP.

The Seller Defendants established the WBBQ ESOP on January 1, 2016.  In July of 2016, the ESOP purchased 400,000 shares of WBBQ common stock, representing 80% of WBBQ's outstanding shares.  The ESOP originally agreed to purchase the shares for a total of $92,000,000, but ultimately purchased the shares for a total of $98,887,309.  To finance the purchase, the ESOP entered into a $20,000,000 loan from WBBQ (the "WBBQ Loan"), and a $73,887,309 loan from the Seller Defendants (the "Seller Loan").  The Seller Loan carried a higher rate of interest than the WBBQ Loan.

---

[1] These facts were described in the December 6, 2022 Opinion denying the defendants' motion to send this case to arbitration or, in the alternative, to dismiss the FAC.  Lloyd v. Argent Tr. Co., No. 22cv4129, 2022 WL 17542071 (S.D.N.Y. Dec. 6, 2022).

The ESOP acquired WBBQ stock for approximately $247.22 per share.  By December of 2016, WBBQ stock had declined to $72.20 per share.  WBBQ shares were valued at $47 per share by December of 2017, at $28.12 per share by December of 2019, and at $18.52 per share by December of 2020.

The plaintiffs allege that Argent's valuation process was flawed.  In particular, they allege that Argent inappropriately relied on financial projections from the Seller Defendants, who had a personal stake in inflating them, and that Argent failed to anticipate foreseeable financial headwinds in the form of rising labor and property costs.  The plaintiffs also allege that WBBQ shares were overvalued because the Seller Defendants had warrants allowing them to generate more shares, thereby diluting the value of existing ones.  The plaintiffs further allege that the Seller Loan's higher interest rate made no sense, as those loans were guaranteed by WBBQ.

II.  New Allegations

The SAC adds allegations that Herbert and Gregor Wetanson transferred nearly $70 million in their personal gains from the sale of WBBQ stock to the ESOP to two trusts: the BBQ Trust, which was severed from a predecessor trust called the Herbert Wetanson 2015 Gift Trust, and the Gregor Wetanson 2015 Gift Trust (the "Wetanson Trusts").  No consideration was given for

these transfers.  At relevant times, the trustee of the Wetanson Trusts was Joseph Shpigel, who was WBBQ's CFO and who the plaintiffs allege was involved in the inflated valuation of WBBQ stock.  Shpigel died in September 2022.

On January 1, 2022, Herbert and Gregor Wetanson, acting through intermediary entities under their control, transferred Herbert Wetanson's seller note to the BBQ Trust.  On January 3 and 4, $22,287,724.54 of the Herbert Wetanson seller note was transferred from the BBQ Trust to Herbert Wetanson, and then from Herbert Wetanson to the Gregor Wetanson 2015 Gift Trust. The BBQ Trust still holds $12,398,728.11 of Herbert Wetanson's seller note.

The Gregor Wetanson 2015 Gift Trust still holds the $22,287,724.54 that it was gifted of Herbert Wetanson's seller note.  In addition, it holds the entire balance of Gregor Wetanson's seller note, which is $34,686,452.65.

The SAC adds the Wetanson Trusts and their trustees and beneficiaries as defendants.  It claims that they are liable as non-fiduciary parties in interest for restitution, disgorgement, and other equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

The SAC also brings a claim against the Gregor Wetanson 2015 Gift Trust under New York's Uniform Voidable Transaction

5

Act, N.Y. Debt. and Cred. Law §§ 270-81 ("UVTA").  This claim seeks to void the transfer of $22,287,724.54 of Herbert Wetanson's seller note to the Gregor Wetanson 2015 Gift Trust, asserting that Herbert Wetanson made the transfer without receiving anything in exchange and that he became insolvent as a result, no longer having sufficient assets to cover his share of liability in this action.

III. Procedural History

    This action was filed on May 20, 2022.  On August 1, 2022, the defendants moved to send this case to arbitration or dismiss it for lack of subject matter jurisdiction.  An Order of August 17, 2022 instructed that any amended complaint should be filed by September 1, 2022, and that "[i]t is unlikely that the plaintiff will have a further opportunity to amend."  The FAC was filed on September 1, 2022.

    On October 3, 2022, the defendants renewed their motion to send this case to arbitration or dismiss it for lack of subject matter jurisdiction.  An Opinion of December 6, 2022 denied that motion.  Lloyd, 2022 WL 17542071.  An Order of December 14, 2022 set a deadline of January 20, 2023 for the plaintiffs to further amend the pleading.

    The defendants appealed the December 6, 2022 Opinion and, on December 13, 2022, filed a motion to stay this action pending

the appeal.  A stipulated Order entered on January 4, 2023 resolved the defendants' motion to stay, allowing the plaintiffs to seek only limited categories of discovery pending the appeal. Broader discovery was permitted by an Order of April 3, 2023, which set a discovery deadline of June 9, 2023.

On April 6, 2023, the plaintiffs served on the Seller Defendants a new set of requests for production of documents, including documents related to "asset tracing."  For example, the plaintiffs requested documents related to financial accounts containing ESOP proceeds, any comingling of ESOP proceeds with other assets, and any transfers of ESOP proceeds to other parties.  In responses served on May 8, 2023, the defendants refused to produce documents related to asset tracing.  Their responses stated, among other things, that these requests were "premature" and "overbroad, unduly burdensome, and disproportionate to the needs of the case."  The plaintiffs also served an interrogatory requesting that the defendants "[i]dentify all Person(s) to whom [each] Selling Shareholder transferred money, funds, assets, property, or things of value after July 29, 2016."  The defendants refused to respond to this interrogatory and, on June 5, 2023, they objected to it "to the extent it seeks information only for the purpose of tracing amounts in the event Plaintiffs were to prevail in this Action,

on the ground that such discovery is premature and not proportional to Plaintiffs' needs in the case at this time."

After the parties reached impasse, this dispute over asset tracing discovery was addressed at a conference on June 13, 2023. The Court instructed that asset tracing discovery should move forward, but should be targeted and non-burdensome. The Court directed the parties to meet and confer based on that guidance. At the request of the defendants, the document discovery deadline was extended to July 10, 2023. According to the plaintiffs, the parties then began to negotiate a stipulation regarding asset tracing.

On June 23, 2023, before the parties' dispute over asset tracing discovery was further resolved, the Supreme Court decided Coinbase, Inc. v. Bielski, 599 U.S. 736 (2023), the holding of which required staying this action while the defendants' appeal of the issue of arbitrability was ongoing. Id. at 738. This action was therefore stayed by an Order issued that day. A year and a half later, the Second Circuit summarily affirmed the Opinion of December 6, 2022. Lloyd v. Argent Tr. Co., No. 22-3116, 2025 WL 1546509, at *1 (2d Cir. Jan. 3, 2025). An Order of January 28, 2025 lifted the stay.

The plaintiffs represent that, soon after the stay was lifted, they asked the defendants to agree to the stipulation

regarding asset tracing discovery that the parties had begun
negotiating in 2023.  The plaintiffs then renewed their motion
to compel tracing discovery on April 4, 2025.  In a letter filed
on April 11, the plaintiffs stated that the parties had agreed
to enter a stipulation that would identify the location of at
least 70% of each Wetanson defendant's proceeds of the ESOP
transaction.  In the following weeks, the parties negotiated the
stipulation.  The final, verified version was provided on May
23.  It reflects that, as described above, nearly $70 million of
Herbert and Gregor Wetanson's proceeds from the ESOP transaction
are payable to the BBQ Trust or the Gregor Wetanson 2015 Gift
Trust.

On June 2, the plaintiffs moved for leave to amend their
pleading, attaching the proposed SAC to the motion.  The motion
became fully submitted on June 20.

## Discussion

Generally, when a party seeks the court's leave to amend
its pleading, "[t]he court should freely give leave when justice
so requires."  Fed. R. Civ. P. 15(a)(2).  A court applying this
standard may "deny leave to amend for good reason, including
futility, bad faith, undue delay, or undue prejudice to the
opposing party."  MSP Recovery Claims, Series LLC v. Hereford
Ins. Co., 66 F.4th 77, 90 (2d Cir. 2023) (citation omitted).

When a scheduling order has specified a deadline for amending the pleading, however, it "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Where, as here, a scheduling order governs amendments to the complaint, the lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause." Holmes v. Grubman, 568 F.3d 329, 334-35 (2d Cir. 2009) (citation omitted). "Whether good cause exists turns on the diligence of the moving party." Callahan v. Cnty. of Suffolk, 96 F.4th 362, 370 (2d Cir. 2024) (citation omitted).

As explained below, the plaintiffs have made the showing of good cause to modify the schedule that is required by Rule 16(b). They are therefore entitled to amend their pleading.

I.   Good Cause

The plaintiffs were diligent in seeking the asset tracing discovery that revealed that proceeds from the sale of WBBQ stock had been transferred to the Wetanson Trusts. At first, the plaintiffs could not obtain such discovery because the stipulated Order entered on January 4, 2023 only allowed limited categories of discovery. When broader discovery was permitted by the Order of April 3, 2023, the plaintiffs promptly served requests for asset tracing discovery. The subsequent two-year

delay in obtaining that discovery is attributable to the
defendants' resistance to providing it, as well as the extended
stay of this action in light of Coinbase.  The plaintiffs only
obtained a final version of the parties' stipulation regarding
asset tracing discovery on May 23, 2025.  They were then
diligent in moving to amend the pleading, filing this motion
slightly more than a week later.  The plaintiffs' diligence
establishes good cause under Rule 16(b).

In arguing otherwise, the defendants claim that good cause
requires a showing of "excusable neglect," citing to Rule
6(b)(1), Fed. R. Civ. P.  That is not correct.  As noted, the
"good cause" standard of Rule 16(b) governs this motion, and it
"turns on the diligence of the moving party."  Callahan, 96
F.4th at 370 (citation omitted).  Regardless, the plaintiffs did
not neglect to request this discovery and the delay in receiving
it is excusable.

The defendants next point out that the plaintiffs requested
a 60-day extension of time to amend the pleadings on January 20,
2023, which the Court denied on the same day.  The defendants
claim this request was "identical" to the current motion, but
that is far from true.  In particular, the January 20, 2023
request did not refer to the transfer of proceeds from the ESOP

11

transaction, which is unremarkable since the plaintiffs had not obtained any asset tracing discovery at the time.

The defendants argue that the plaintiffs "possessed documents disclosing each trust (or its predecessor)" as of January 20, 2023.  But nothing in those documents indicates that Herbert and Gregor Wetanson transferred their proceeds of the ESOP transaction to the Wetanson Trusts, the key information that underlies the plaintiffs' request to amend.

II.  Futility

The defendants challenge the SAC as futile on several grounds.  These arguments fail.

A.   Wetanson Trust Defendants

As noted, the SAC names the Wetanson Trusts as defendants, bringing a claim against them for equitable relief under ERISA and a UVTA claim solely against the Gregor Wetanson 2015 Gift Trust.  The defendants argue that claims against the Wetanson Trusts would be subject to immediate dismissal because trusts are non-juridical entities.

The Second Circuit has distinguished between "traditional" trusts, which establish only fiduciary relationships, and "trusts recognized in law as distinct juridical entities." Raymond Loubier Irrevocable Tr. v. Loubier, 858 F.3d 719, 729 (2d Cir. 2017).  The determination of whether a trust is a

distinct juridical person is not always easy.  It is informed by
the terms of the trust and the law of the state where the trust
was formed.  See id. at 722, 729-31.

The present record does not permit a final determination as
to whether the Wetanson Trusts are distinct juridical entities.
This uncertainty would not warrant dismissal since, on a motion
to dismiss, courts "draw all reasonable inferences in favor of
the non-moving party."  Doe v. Franklin Square Union Free Sch.
Dist., 100 F.4th 86, 94 (2d Cir. 2024) (citation omitted).  It
should also be noted that there appears to be no dispute that
the Wetanson Trusts' trustees and beneficiaries can be named as
defendants, and thus this issue is largely a matter of form.

B.    Trustee and Beneficiary Defendants

The SAC also brings a claim for equitable relief under
ERISA against trustees and beneficiaries of the Wetanson Trusts.
The defendants argue that there are eleven trustees and
beneficiaries who are included as new defendants, and the SAC
does not plausibly allege that each of those individuals
participated in the ESOP transaction.  The SAC adequately
alleges a claim against each of these individuals by tracing the
ESOP funds into the Wetanson Trusts for which they are the
trustees and beneficiaries.

C.    The UVTA Claim

The defendants argue that the UVTA claim is futile because it does not apply to the transaction at issue, since it took effect on April 4, 2020 and does not apply retroactively.  This argument relies on the following provision:

> This act . . . shall apply to a transfer made or obligation incurred on or after such effective date [of April 4, 2020], but shall not apply to a transfer made or obligation incurred before such effective date, <u>nor shall it apply to a right of action that has accrued before such effective date</u>.

2019 N.Y. Sess. Laws Ch. 580 § 7 (emphasis supplied).

As the defendants concede, the UVTA claim seeks to void a transfer that occurred in 2022 -- namely, the transfer of a portion of Herbert Wetanson's seller note to the Gregor Wetanson 2015 Gift Trust.  It follows that the UVTA claim could not have accrued prior to the UVTA taking effect on April 4, 2020.  The defendants' argument that the plaintiffs' right of action accrued when the ESOP transaction closed in 2016 conflates two separate rights of action.  Even if a right of action under ERISA accrued in 2016, the separate UVTA right of action seeking to void a transfer that occurred in 2022 could not have accrued in 2016.

Next, the defendants argue that the UVTA claim is futile since the SAC fails to plausibly allege that Herbert Wetanson became insolvent as a result of the transfer.  But, as detailed

14

above, the SAC includes specific allegations that he transferred his seller note to the Wetanson Trusts.  The SAC alleges that, as a result, Herbert Wetanson's remaining assets were insufficient to satisfy his liability in this action.  These allegations provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Doe, 100 F.4th at 94.  The defendants point out that the SAC does not specify the amount of debt Herbert Wetanson would incur from an adverse judgment in this case or the amount of his current assets, but that level of specificity is not necessary to state a claim.

The defendants also argue that the UVTA claim is futile because the SAC does not adequately allege that, at the time of the transfer, Herbert Wetanson "believed or reasonably should have believed he would incur debts in connection with the ESOP Transaction liability."  But the SAC explains, for example, that Herbert Wetanson is the founder, President, and former co-owner of WBBQ; that he was involved in appointment of Argent as ESOP trustee and the sale of WBBQ stock to the ESOP; and that he received a subpoena related to the Department of Labor's investigation into whether the ESOP had overpaid for WBBQ stock and whether the ESOP transaction violated ERISA.  The SAC thus

15

adequately alleges that Herbert Wetanson was on notice of his
potential liability by the time of the transfer in 2022.

III. Prejudice

Finally, the defendants assert that they will be prejudiced
if amendment of the pleading is permitted at this late stage of
the litigation.  Allowing the plaintiffs to amend will not
significantly prejudice the defendants.  Since this action was
filed, the defendants have been on notice that the plaintiffs
seek restitution and disgorgement of proceeds from the ESOP
transaction.  Unlike the plaintiffs, the defendants have long
known that many of those proceeds are kept by the Wetanson
Trusts.  Nor does the SAC significantly complicate this case.
It makes the same core allegations as the FAC, with reasonable
amendments to focus on proceeds being held by the Wetanson
Trusts.

The defendants also share responsibility for the
plaintiffs' motion to amend being filed at this late stage.  The
defendants categorically opposed the asset tracing discovery
that the plaintiffs needed to obtain to file this motion.  Even
after the Court's instruction at the June 13, 2023 conference
that such discovery should move forward, it took several months
of litigation (not counting the stay between June 23, 2023 and
January 28, 2025) before the defendants provided the final,

verified version of the asset tracing stipulation on May 23, 2025.

The defendants argue that allowing amendment will disrupt the discovery schedule.  But the plaintiffs represent that significant additional discovery will not be necessary.

The defendants also express concern about prejudice to new defendants in the SAC.  But the new defendants are closely related to the existing defendants, and the claims against them are logical extensions of the claims in the FAC.

## Conclusion

The plaintiffs' June 2, 2025 motion to amend is granted.

Dated:    New York, New York
          July 10, 2025

_____
DENISE COTE
United States District Judge
