UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jamaal Lloyd and Anastasia Jenkins, on behalf of all others similarly situated, and on behalf of the W BBQ Holdings, Inc. Employee Stock Ownership Plan, | ) ) ) ) Case No.: 1:22-CV-04129-DLC ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| Argent Trust Company, Herbert Wetanson, Gregor Wetanson, Stuart Wetanson, BBQ Trust and its trustees and beneficiaries, Gregor Wetanson 2015 Gift Trust and its trustees and beneficiaries, | ) ) ) ) ) ) |
| Defendants. | ) ) |

**REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................ 1

II.    ARGUMENT ....................................................................................................................... 2
    A.    Many of the Rule 23(a) Criteria and All of the 23(b) Elements Are Unchallenged ............................................................................................................ 2
    B.    Numerosity Is Satisfied by an Order of Magnitude ................................................ 2
    C.    The Adequacy of Counsel Is Not Seriously in Dispute .......................................... 4

III.    CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**                                                                                                    Page(s)

*In re Beacon Assocs. Litig.*,
  282 F.R.D. 315 (S.D.N.Y. 2012) ...........................................................................1, 5, 8, 9, 10

*In re Beacon Assocs. Litig.*,
  No. 1:09-cv-00777, ECF 439 (S.D.N.Y. May 3, 2012).........................................................1, 5

*Coan v. Kaufman*,
  457 F.3d 250 (2d Cir. 2006)...................................................................................................4

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995).....................................................................................................2

*Creative Montessori Learning Centers v. Ashford Gear LLC*,
  662 F.3d 913 (7th Cir. 2011) .............................................................................................9, 10

*Ferguson v. Ruane, Cuniff & Goldfarb, Inc.*,
  1:17-cv-06685, ECF 487 (S.D.N.Y. Oct. 25, 2023) ................................................................8

*Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*,
  2025 WL 295009 (D. Colo. Jan. 24, 2025)........................................................................3, 10

*Ret. Sys. v. Morgan Stanley & Co.*,
  772 F.3d 111 (2d Cir. 2014)...................................................................................................3

*Robidoux v. Celani*,
  987 F.2d 931 (2d. Cir. 1993)...............................................................................................2, 3

*Sondel v. Nw. Airlines, Inc.*,
  56 F.3d 934 (8th Cir. 1995) ..................................................................................................10

*In re Vanguard Chester Funds Litig.*,
  2025 WL 1435627 (E.D. Pa. May 19, 2025).........................................................................9

**Statutes**

29 U.S.C. § 1132(l)......................................................................................................................9

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) ............................................................................1, 4

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) ...............................................................................4

**Other Authorities**

Fed. R. Civ. P.  23(a) ...............................................................................................................1, 2

Fed. R. Civ. P.  23(a)(4)............................................................................................................4, 5

Fed. R. Civ. P. 23(b) ...........................................................................................................1
Fed. R. Civ. P. 23(b)(1) ..................................................................................................2, 3
Fed. R. Civ. P. 23(b)(2) .......................................................................................................2
Fed. R. Civ. P. 23(b)(3) .......................................................................................................5
Fed. R. Civ. P. 23(g) .........................................................................................................10
Fed. R. Civ. P. 23(h) ...........................................................................................................8

## I. INTRODUCTION

Plaintiffs have cited numerous ERISA cases, and ESOP cases specifically, certifying classes of plan participants with claims under ERISA § 502(a)(2). *See* ECF 156 ("Pls.' Memo") at 1 & nn.1-2. Defendants do not distinguish any of this caselaw in their response. Nor do they contest many of the elements of class certification under Rule 23(a), or **any** of the criteria for certification under Rule 23(b). Instead, Defendants oppose class certification almost entirely on the ground that the Department of Labor ("DOL") has instituted a separate action against many of them. Needless to say, this is not an aid to their defense, and certainly not a basis for denying class certification in this case (which this Court declined to consolidate with the DOL's action, *see* ECF 105).

In *In re Beacon Assocs. Litig.*, 282 F.R.D. 315 (S.D.N.Y. 2012), the court certified a class of plan participants and appointed Cohen Milstein Sellers & Toll, PLLC ("CMST") as ERISA class counsel, notwithstanding the fact that the DOL was pursuing its own claims and the defendants similarly challenged class certification on this basis. *See In re Beacon Assocs. Litig.*, No. 1:09-cv-00777, ECF 408 at 81-82 (S.D.N.Y. Feb. 1, 2012) (brief opposing class certification). As the Secretary of Labor explained in that case:

> The Secretary's suit is not … meant to displace the ability of private litigants to pursue their case as a class action. To the contrary, the Secretary recognizes in these cases that working in coordinated fashion with class counsel may be the best way to achieve [their] litigation goal, given the very real limits on the government's resources and personnel in any given case.

*Beacon*, ECF 394-1 at 9 (attached to Declaration of Michelle Yau as **Ex. 1**). The court expressly "agree[d] with the Secretary," *Beacon*, ECF 439 at 20, and held that "the existence of the parallel government action does not bar certification of the class," *id.* at 23. This Court should reach the same result, and also reject Defendants' makeweight argument regarding numerosity.

1

## II.     ARGUMENT

A.     **Many of the Rule 23(a) Criteria and All of the 23(b) Elements Are Unchallenged**

As an initial matter, it is important to highlight the arguments Defendants don't make. Defendants ***don't*** contest that the class is properly defined by objective criteria. *See* Pls.' Memo at 10-11. Defendants ***don't*** dispute that commonality and typicality are satisfied. *See id.* at 11-15. Defendants "do ***not*** dispute the adequacy of the named Plaintiffs." ECF 200 ("Opp.") at 12 n.7 (emphasis added). And Defendants ***don't*** contest that Rule 23(b)(1) and (b)(2) are satisfied. *See* Pls.' Memo at 17-23.

Defendants' sole challenges to class certification focus on numerosity and the adequacy of counsel. *See* Opp. at 9. As discussed below, each of these challenges are meritless.

B.     **Numerosity Is Satisfied by an Order of Magnitude**

As Plaintiffs previously discussed, "numerosity is ***presumed*** at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (emphasis added). The class in this case includes more than thirty times that amount (over 1,300 class members). *See* Pls.' Memo at 11.

Defendants argue that other factors may potentially affect whether joinder of all class members is practicable, *see* Opp. at 9-10, but fail to explain how those other factors would warrant a departure from the usual presumption here. While other factors may have some impact at the margins, Defendants cite no authority holding that a class of over 1,300 persons fails to satisfy numerosity. The decisions they cite involved barely more than 100 members. *See* Opp. at 10-11. The class size here is an order of magnitude greater.

Indeed, the caselaw cited by Defendants and the factors they deem so critical (which they curiously fail to analyze themselves) only underscore why class certification is appropriate here. In *Robidoux v. Celani*, 987 F.2d 931 (2d. Cir. 1993), which Defendants describe as the "seminal

2

case," Opp. at 10, the Second Circuit held that "the district court abused its discretion in determining that the class was *not* so numerous that joinder of all members would be impracticable." *Robidoux*, 987 F.2d at 936 (emphasis added). Specifically, the court found that (1) consolidating potentially "over 100 individual suits" into a class action served judicial economy; (2) proceeding on a class basis was especially appropriate because many of the class members were "economically disadvantaged, making individual suits difficult to pursue"; and (3) "[a]n injunction requiring the [Defendant] to comply with the statut[e] . . . would affect all potential class members, and individual suits could lead to potentially inconsistent results." *Id.*

So too here. There are not just 100, but over 1,000 class members. WBBQ employees are servers, cooks, and other rank-and-file employees whose wages fall on the lower end of the scale. Plaintiffs also indisputably seek plan-wide relief that would affect all class members, and individual suits could lead to inconsistent results (which is why Defendants do not separately challenge the Rule 23(b)(1) criteria). Thus, *Robidoux* confirms that joinder is impracticable. *Id*.

By contrast, in *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111 (2d Cir. 2014), the only other Second Circuit case cited by Defendants, the court found that joinder of approximately 100 class members was not impracticable where the class was "composed of sophisticated [] investors, all of whom had millions of dollars at stake and were able to pursue their own claims." *Id.* at 120. The present case is nothing like that case: there are more than ten times as many class members, there is no evidence that WBBQ's employees are sophisticated investors, the value of their claims on an individual basis is limited, and it is fanciful to assume they could independently prosecute their claims.

Notably, in another pending ESOP case involving the same counsel for both sides, the court granted class certification and held that a similarly-sized class of "nearly 1,000 members" satisfied numerosity. *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*, 2025 WL 295009, at *4 (D.

3

Colo. Jan. 24, 2025). Indeed, the matter was not even in dispute, as Defendants' counsel from Groom Law Group made a "decision to not challenge this prong." *Id.* It is therefore baffling why Defendants persist in challenging numerosity here.

### C. The Adequacy of Counsel Is Not Seriously in Dispute

Defendants' challenge to adequacy of representation under Rule 23(a)(4) is also a head scratcher. Defendants "do not dispute the adequacy of the named Plaintiffs." Opp. at 12 n.7. Defendants also do not dispute that counsel is qualified to litigate this action on behalf of the class. *See id.* at 12 ("Defendants do not dispute that CMST would otherwise be qualified."). Defendants' novel argument is that counsel are acting adversely to the class simply because "they pursue class certification." *Id.* at 13.

Nonsense. The Second Circuit has specifically ***encouraged*** Plaintiffs bringing claims on behalf of a plan under ERISA § 502(a)(2) to seek class certification:

> [I]n our view, although plan participants need not always comply with Rule 23 to act as a representative of other plan participants or beneficiaries, those who do will likely be proceeding in a "representative capacity" properly for purposes of section 502(a)(2).

*Coan v. Kaufman*, 457 F.3d 250, 261 (2d Cir. 2006). Plaintiffs and their counsel did not act adversely to the class by proceeding "properly" as the Second Circuit recommended. Indeed, if they had ***not*** done so, Defendants likely would have made the argument that they could not pursue plan-wide relief because they had failed to take "adequate steps" to protect absent plan participants. *See id.* at 259-61.[1]

Although Defendants argue that "class certification is not necessary in every case" involving § 502(a)(2) claims, Opp. at 1, and that other procedural safeguards could potentially be

---

[1] Defendants also ignore that Plaintiffs assert claims under ERISA § 502(a)(3) in addition to 502(a)(2). *See* ECF 153, ¶ 1.

4

adequate, *id.* at 4, this misses the point. Plaintiffs and their counsel can hardly be criticized for taking the recommended and usual route of seeking class certification under Rule 23. There is simply no "conflict of interest" (*id.* at 14) in doing so that would be relevant to the Rule 23(a)(4) analysis. At best, Defendants raise a "superiority" argument under Rule 23(b)(3) – which is not relevant here because Plaintiffs do not seek (b)(3) certification – and a poor argument at that.

The *Beacon* litigation (*supra* at 1) is instructive. In that case, the defendants raised a challenge to Rule 23(b)(3) – not Rule 23(a)(4) – on the basis that the DOL's action was superior to a class action. *See Beacon*, ECF 408 at 81-82 ("In light of the parallel litigation brought by the Department of Labor …, it cannot be said that a class action is a superior method for fairly and efficiently adjudicating this controversy."). But the court disagreed, and held that "the existence of the parallel government action does not bar certification of the class." *Beacon*, ECF 439 at 23; *see also Beacon*, 282 F.R.D. at 341-42 (finding CMST adequate to represent class and appointing them ERISA class counsel).

The court had good reason for reaching this result. The DOL "strongly disagree[d]" with the defendants' position, *see* Yau Decl. Ex. 1, at 4, and made several pertinent points explaining why:

- "[A]ny denial of class certification based on an existing parallel government action would undermine ERISA's private enforcement mechanisms and impede the Secretary's exercise of her prosecutorial discretion and her ability to enforce ERISA." *Id.*

- "Courts have consistently rejected characterizations of the Secretary as merely a representative of private plaintiffs' interests. … Instead, the Secretary's enforcement authority is to act exclusively in the public interest." *Id.* at 7 (citing *Sec'y of Lab. v. Fitzsimmons*, 805 F.2d 682, 690-91 (7th Cir. 1986) (en banc); *Herman v. S.C. Nat'l Bank*, 140 F.3d 1413, 1423 (11th Cir. 1998)).

- "[The Secretary's] pursuit of the public interest … does not always align with the purely private interests of the private plaintiffs, whereas the class vehicle is expressly designed to protect and represent the absent class members." *Id.* at 10.

5

- "Indeed, the Secretary's interests might diverge from those of private plaintiffs, because, for instance, the Secretary is interested in establishing, through its enforcement action, legal precedent in a case raising a significant statutory or regulatory issue, in addition to victim-specific relief." *Id.* at 7-8.

- "As the private plaintiffs' interests are distinct from the Secretary's interests, class certification for a class representative who can champion those distinct private interests on behalf of named and unnamed class members is often critical, or else individual plaintiffs would be forced to sue separately in order to further those interests." *Id.* at 9.

- Also, "in these cases … working in coordinated fashion with class counsel may be the best way to achieve [the Secretary's] litigation goal, given the very real limits on the government's resources and personnel in any given case." *Id.* at 9.

- "[T]he Secretary's exercise of prosecutorial discretion to bring suit should not be used against her to tax the government's limited resources and impede its ability to coordinate with private plaintiffs who can better shoulder the representation of private interests while the Secretary focuses on advocating for the public interest[.]" *Id.* at 11-12.

- "The class action mechanism can provide an important function in ERISA's private-public enforcement scheme, facilitating, as in these cases, the Secretary's interest in working with Private Plaintiffs who 'present a single coherent voice with impact equal to' the co-Defendants opposing the claims in a unified manner." *Id.* at 12.

These same considerations apply here. During the status conference on February 20, 2025, the DOL stated that it was ***not*** seeking relief that was duplicative of the class action, and in particular, was seeking to reform Argent's future business practices in transactions involving different plans. ECF 112 at 11:11-20; *see also id.* at 15:22-16:8. The DOL also indicated that it was "planning on having separate experts" from Plaintiffs, in part for reasons idiosyncratic to the government. *Id.* at 33:21-34:4. And the DOL acknowledged a "bandwidth issue" within the DOL "as a result of staff decreases." *Id.* at 21:8-11, 22:8-11; *see also id.* at 22:15-16 (THE COURT: "I'm sorry for your staffing shortages.").

The disparity in resources between class counsel and the DOL is reflected in the proceedings here. The present *Lloyd* action was filed on May 20, 2022, over 2½ years before the DOL filed its action on December 19, 2024, *see Su v. Argent Tr. Co. et al.*, 1:24-cv-09809 ("DOL Action"), ECF 1. There are over 200 docket entries in the *Lloyd* action, but only 63 in the DOL

6

Action. CMST has paid for the cost of all 16 depositions taken in the coordinated actions, and has taken the lead on 14 of them. Yau Decl. ¶ 3. CMST served 25 interrogatories on Argent and 32 interrogatories on the Wetanson Defendants, while the DOL has served none. *Id.* ¶ 4. CMST served subpoenas on six third-parties and received documents from them, while the DOL received documents from only two third-parties as part of its initial investigation. *Id.* ¶ 5. CMST also has served reports from two experts (including a fiduciary process expert), while the DOL has retained only one expert (and no process expert). *Id*. ¶ 7.[2]

Moreover, aside from the disparity in resources and "bandwidth" issues faced by the DOL, there are very real substantive reasons why Defendants wish to litigate against the government and not the class. First, the DOL Action omits Stuart Wetanson as a defendant. *Compare Lloyd*, ECF 153 *with* DOL Action, ECF 2. Second, the DOL Action does not include the Wetanson Trusts that were recently added to the class complaint. *Id.*; *see also* ECF 152 (Order approving amendment of class complaint and explaining "good cause"). Third, the DOL Action does not include Plaintiffs' newly-added claim in Count VII under New York's Voidable Transactions Act. *Compare Lloyd*, ECF 153 *with* DOL Action, ECF 2. Fourth, prior to the DOL's lawsuit, CMST negotiated three important fact discovery stipulations for the *Lloyd* action (on tracing financial proceeds, certain non-compete enforcement issues, and certain post-transaction monitoring issues), none of which the DOL is a party to. *Id.* ¶ 6; *see also* ECFs 122-1 & 122-2. Finally, the DOL Action is potentially subject to unique statute of limitations issues because it was brought later than the *Lloyd* action. *See* DOL Action, ECF 60 at 7 (arguing DOL "knew of its claim before ERISA's three-year limitations cut-off"). Defendants should not be allowed to argue that the DOL Action obviates the need for a class action while simultaneously arguing that the DOL's claims are time-barred.

---

[2] As represented at the status conference, the DOL retained a different expert (Paul Marcus) than either of Plaintiffs' experts (Skip Halpern and Daniel Van Vleet). *Id*. ¶ 8.

7

Defendants are not concerned that representation of the class will be ***in***adequate – rather, their real concern is that the representation will be ***too*** adequate. Following certification of the *Beacon* ERISA class (where the undersigned Michelle Yau served as one of the class counsel), the court approved a class action settlement totaling nearly $220 million, and observed that "the Private Plaintiffs and regulators have collectively achieved a remarkable result." *Beacon*, ECF 480 at 7-8.[3] In its order, the court noted that class counsel and the government were able to achieve a result that was significantly greater than the $140 million offer that was on the table before class counsel became involved, with the increased benefits far exceeding class counsel's fees. *Id.* at 31.

Defendants' arguments about attorneys' fees in the event of a settlement are premature, speculative, and unfounded. As Defendants concede, ERISA contains a fee-shifting provision that allows counsel to tax their fees and costs to Defendants (with court approval) in the event they successfully prosecute the class claims. *See* Opp. at 13 n.8 (citing 29 U.S.C. 1132(g)(1)). Even in the absence of fee shifting, where fees are awarded out of a common settlement fund, the Court can exercise appropriate oversight over any fee award as part of the settlement approval process under Rule 23(h).[4] Indeed, any such fee request in connection with settlement proceeds is also likely to be scrutinized by an independent fiduciary. *See Ferguson*, ECF 484 (report of independent fiduciary approving settlement and requested attorneys' fees). Defendants have no basis for speculating regarding (1) whether the class will pay any attorneys' fees; (2) how much class

---

[3] Similarly, in *Ferguson v. Ruane, Cuniff & Goldfarb, Inc.*, 1:17-cv-06685, ECF 487 (S.D.N.Y. Oct. 25, 2023), the court approved a $115 million settlement, after previously certifying a class in litigation involving both private counsel and the DOL. *Id.*, ECF 311 (Aug. 17, 2021).

[4] Plaintiffs and the DOL are hardly "litigat[ing] in the shadows," Opp. at 5, but even if Defendants had legitimate concerns in that regard, the class action mechanism provides ***greater judicial*** supervision over the litigation, any settlement, and payment of attorneys' fees and their amount. *See also Beacon*, ECF 480 at 9 ("Rarely has there been a more transparent settlement negotiation.").

8

counsel may request; or (3) whether an unspecified request directed to an unspecified payor would be unreasonable. As noted above, the value that class counsel added in *Beacon* objectively exceeded the amount of the fees requested. *See supra* at 8.

Denying class certification on the mere basis that class counsel may, at some point, seek compensation for their contributions to the case would not be beneficial to the class or consistent with applicable law.[5] Notably, Defendants do not cite a single case in which class certification was denied on this basis.

In *In re Vanguard Chester Funds Litig.*, 2025 WL 1435627 (E.D. Pa. May 19, 2025), the court addressed a motion for settlement approval – not a motion for class certification. Because the Securities and Exchange Commission ("SEC") had separately negotiated a larger settlement than class counsel, under which the defendants could offset the entire class settlement amount against the SEC settlement amount, the court found that the proposed settlement did "not provide value to the class" and rejected it. *Id* at *4. The disputed issue was "the adequacy of the settlement," *id.*, not the adequacy of class counsel. Indeed, the court found that arguments regarding the adequacy of counsel were "moot" in light of its rejection of the settlement, and that "[c]lass counsel may continue litigating [the] case," *id.* at *12. Obviously, no such issues exist here, as the DOL has not negotiated a settlement, much less one that provides a 100% setoff against any recovery obtained by Plaintiffs and their counsel.

The other two cases relied upon by Defendants are even more off point. In *Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913 (7th Cir. 2011), the court found

---

[5] Defendants also are wrong that the DOL litigates for free. By law, part of the monetary relief that it obtains shall take the form of a civil penalty paid to the government, not to the plan or its participants. *See* 29 U.S.C. § 1132(l) ("the Secretary shall assess a civil penalty . . . in an amount equal to 20 percent of the applicable recovery amount").

9

that class counsel were inadequate because they engaged in unethical conduct (not present here) involving misrepresentations and false pretenses. *Id.* at 917. There was no parallel government proceeding. And *Sondel v. Nw. Airlines, Inc.*, 56 F.3d 934 (8th Cir. 1995) was a summary judgment order, not a class certification order, that also did not involve a parallel government proceeding and did not even remotely address the types of issues raised by Defendants here.

In short, Defendants lack any legal support for their adequacy arguments and are "all hat and no cattle." The court should certify the class and appoint CMST as class counsel just it as it did in *Beacon*, and as the District of Colorado did in *Harrison* over similar objections from Defendants' counsel. In both cases, CMST entered into a common interest agreement with the DOL similar to the one here. *See Beacon*, ECF 394-1 at 14 n.4; *Harrison*, 2025 WL 295009, at *7 n.1. There is nothing unusual about this.

Defendants complain that "Plaintiffs gloss over Rule 23(g)," Opp. at 12, but fail to address it themselves. All of the factors under Rule 23(g) support appointment of CMST as class counsel: (i) CMST has performed significant work identifying and investigating the class claims – and prosecuting them (*see supra* at 6-7; ECF 157 ¶¶ 21-23); (ii) CMST has extensive experience handling class actions (ECF 157 ¶ 6); (iii) CMST is specifically experienced in ERISA class actions and knowledgeable of applicable law (*id.* ¶¶ 5, 7-13, 17-19); and (iv) CMST is a nationally-recognized firm with the resources to adequately prosecute the case and represent the class (*id.* ¶¶ 6-7, 11, 13-16, 20, 25). *See* Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). Defendants do not contend otherwise.

### III. CONCLUSION

For the above reasons and those previously stated, the Court should certify the class.

Dated:  September 2, 2025 	Respectfully submitted,

/s/ *Michelle C. Yau*
Michelle C. Yau (admitted *Pro Hac Vice*)
Kai H. Richter (admitted *Pro Hac Vice*)
Daniel R. Sutter (admitted *Pro Hac Vice*)
Caroline E. Bressman (admitted *Pro Hac Vice*)
Ryan A. Wheeler (admitted *Pro Hac Vice*)
Elizabeth McDermott (admitted *Pro Hac Vice*)
**Cohen Milstein Sellers & Toll PLLC**
1100 New York Ave. NW ● Suite 800
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
myau@cohenmilstein.com
krichter@cohenmilstein.com
dsutter@cohenmilstein.com
rwheeler@cohenmilstein.com
emcdermott@coenmilstein.com

Michael Eisenkraft (NY. Bar No. 664737)
**Cohen Milstein Sellers & Toll PLLC**
88 Pine Street
14th Floor
New York, New York 10005
Tel: (212) 838-7797
Fax: (212) 838-7745
meisenkraft@cohenmilstein.com

*Counsel for Plaintiffs and the Proposed Class*

**WORD COUNT COMPLIANCE CERTIFICATION**

      The undersigned certifies that this brief contains 3,475 words, which complies with the word limit of Local Rule 7.1(c) and Rule 4.B of this Court's Individual Practices.

Dated: September 2, 2025
                                            /s/ *Michelle C. Yau*
                                            Michelle C. Yau