## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Jamaal Lloyd and Anastasia Jenkins, on behalf of all others similarly situated, and on behalf of the W BBQ Holdings, Inc. Employee Stock Ownership Plan, | ) ) ) ) ) | Case No.: 1:22-CV-04129-DLC |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| Argent Trust Company, Herbert Wetanson, Gregor Wetanson, Stuart Wetanson, BBQ Trust and its trustees and beneficiaries, Gregor Wetanson 2015 Gift Trust and its trustees and beneficiaries, | ) ) ) ) ) ) | **REDACTED** |
| Defendants. | ) ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................. 1

II.   FACTUAL BACKGROUND ................................................................................. 3

    A.    The Wetansons Create the ESOP to Sell Their Interests While Retaining
        Control ........................................................................................................ 3

    B.    Argent Approves the Transaction's Inflated Price While Failing to Adhere
        to its Own Process Requirements ............................................................... 5

    C.    The Proposed Class ................................................................................... 9

III.  ARGUMENT ........................................................................................................ 10

    A.    The Class Is Defined by the Objective Criteria of Plan Participant or
        Beneficiary Status ..................................................................................... 10

    B.    The Class Satisfies the Requirements of Rule 23(a) ................................ 11

        i.    Joinder of All Class Members Is Impracticable, Satisfying
            Numerosity ................................................................................... 11

        ii.   Plaintiffs' Claims Arise from the Common Question of Whether
            Defendants Violated Their Fiduciary Duties by Selling Stock to the
            ESOP at an Inflated Price ............................................................ 11

        iii.  Plaintiffs' Claims Are Typical, As All Participants' Claims Stem
            from the Same Harm Suffered as a Result of the ESOP Transaction ....... 13

        iv.   Plaintiffs and their Counsel Are Adequate Representatives Who
            Are Committed to Vindicating the Interests of the Class ........................ 15

    C.    The Court Should Certify the Class Under Rule 23(b)(1) ....................... 17

        i.    Rule 23(b)(1)(A) Certification Avoids the Risk of Inconsistent or
            Varying Adjudications, Violating Defendants' Fiduciary Duty to
            Treat All Participants Alike ......................................................... 17

        ii.   Rule 23(b)(1)(B) Certification Would Prevent Individual
            Adjudications to Substantially Affect Absent Class Members'
            Interests, as the Requested Relief is Inherently Plan-Based .................... 19

    D.    Alternatively, the Class Is Certifiable under Rule 23(b)(2) .................... 20

    E.    Defendants Did Not and Cannot Identify any Basis that Shows Plaintiffs
        Fail to Satisfy any of Rule 23's Requirements .................................... 22

IV.   CONCLUSION .................................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997).................................................................................................11, 17

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
    568 U.S. 455 (2013).......................................................................................................10

*Babcock v. Computer Assocs. Int'l, Inc.,*
    212 F.R.D. 126 (E.D.N.Y. 2003)....................................................................................17

*Baker v. John Hancock Life Ins. Co.,*
    No. 1:20-cv-10397, ECF 53 (D. Mass. Feb. 12, 2021)...................................................2

*Beach v. JPMorgan Chase Bank, N.A.,*
    2019 WL 2428631 (S.D.N.Y. June 11, 2019) ..........................................................12, 18

*In re Beacon Assocs. Litig.,*
    282 F.R.D. 315 (S.D.N.Y. 2012) ...................................................................................11

*Braden v. Wal-Mart Stores, Inc.,*
    588 F.3d 585 (8th Cir. 2009) ..........................................................................................14

*Cates v. Trs. of Columbia Univ.,*
    No. 1:16-cv-06524, ECF 217 (S.D.N.Y. Nov. 8, 2018) ...................................................2

*Caufield v. Colgate-Palmolive Co.,*
    2017 WL 3206339 (S.D.N.Y. July 27, 2017) ...........................................................17, 19

*Cedeno v. Sasson,*
    100 F.4th 386 (2d Cir. 2024) .......................................................................................2, 13

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed*
    *Care, LLC,*
    504 F.3d 229 (2d Cir. 2007)......................................................................................13, 14

*Chesemore v. All. Holdings, Inc.,*
    276 F.R.D. 506 (W.D. Wis. 2011) ...........................................................................14, 21

*In re Citigroup Pension Plan ERISA Litig.,*
    241 F.R.D. 172 (S.D.N.Y. 2006) ...................................................................................18

*Coan v. Kaufman,*
    457 F.3d 250 (2d Cir. 2006)................................................................................2, 13, 20

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995)...................................................................................11

*Cunningham v. Wawa, Inc.*,
  387 F. Supp. 3d 529 (E.D. Pa. 2019) ...................................................................1

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006).................................................................................15

*Douglin v. GreatBanc Tr. Co.*,
  115 F. Supp. 3d 404 (S.D.N.Y. 2015)............................................................ *passim*

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 (2d Cir. 1992).................................................................................15

*Espinoza v. 953 Assocs. LLC*,
  280 F.R.D. 113 (S.D.N.Y. 2011) ..........................................................................10

*Feinberg v. T. Rowe Price Grp., Inc.*,
  No. 1:17-cv-00427, ECF 77-3 (D. Md. May 1, 2019) ............................................2

*Fernandez v. K-M Indus. Holding Co., Inc.*,
  2008 WL 2625874 (N.D. Cal. June 26, 2008) ........................................................1

*Foster v. Adams & Assocs., Inc.*,
  2019 WL 4305538 (N.D. Cal. Sept. 11, 2019) .......................................................1

*Gamache v. Hogue*,
  338 F.R.D. 275 (M.D. Ga. 2021) .....................................................................1, 14

*Gamino v. KPC Healthcare Holdings, Inc.*,
  2021 WL 7081190 (C.D. Cal. Aug. 6, 2021)...........................................................1

*Gatto v. Sentry Servs., Inc.*,
  2014 WL 7338721 (S.D.N.Y. Dec. 19, 2014) ....................................12, 17, 18, 19

*In re GE ERISA Litig.*,
  No. 1:17-cv-12123, ECF 138 (D. Mass. Dec. 13, 2019) .........................................2

*Godfrey v. GreatBanc Tr. Co.*,
  2021 WL 679068 (N.D. Ill. Feb. 21, 2021) ...............................................1, 14, 15

*Guidry v. Wilmington Tr.*,
  333 F.R.D. 324 (D. Del. 2019) ........................................................................1, 14

*Gulf Oil Co. v. Bernard*,
  452 U.S. 89 (1981)...............................................................................................10

iv

*Haley v. Tchrs. Ins. & Annuity Ass'n of Am.*,
  54 F.4th 115 (2d Cir. 2022) ...............................................................................12, 13

*Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*,
  2025 WL 295009 (D. Colo. Jan. 24, 2025)..............................................1, 13, 18, 20

*Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*,
  59 F.4th 1090 (10th Cir. 2023), *cert. denied sub nom. Argent Tr. Co. v.*
  *Harrison*, 144 S. Ct. 280 (2023) ....................................................................13, 20

*Hawkins v. Cintas Corp.*,
  32 F.4th 625 (6th Cir. 2022) ...................................................................................21

*Henderson v. Emory Univ.*,
  2018 WL 6332343 (N.D. Ga. Sept. 13, 2018) ..........................................................17

*Hurtado v. Rainbow Disposal Co.*,
  2019 WL 1771797 (C.D. Cal. Apr. 22, 2019) .....................................................14, 18

*In re IndyMac Mortg.-Backed Sec. Litig.*,
  286 F.R.D. 226 (S.D.N.Y. 2012) ..............................................................................11

*Kindle v. Dejana*,
  315 F.R.D. 7 (E.D.N.Y. 2016) ........................................................................ *passim*

*Koch v. Dwyer*,
  2001 WL 289972 (S.D.N.Y. Mar. 23, 2001) ...............................................12, 17, 19

*Krueger v. Ameriprise Fin., Inc.*,
  304 F.R.D. 559 (D. Minn. 2014)...............................................................................17

*Lewis Tree Serv. v. Lucent Techs. Inc.*,
  211 F.R.D. 228 (S.D.N.Y. 2002) ..............................................................................12

*Lysengen v. Argent Tr. Co.*,
  686 F. Supp. 3d 755 (C.D. Ill. 2023) .........................................................................1

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997)......................................................................................13

*McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Tr.*,
  268 F.R.D. 670 (W.D. Wash. 2010) ...........................................................................1

*McGinnes v. FirstGroup Am., Inc.*,
  No. 1:18-cv-00326, ECF 92 (S.D. Ohio Sept. 8, 2022).............................................2

*Moitoso v. FMR LLC*,
  No. 1:18-cv-12122, ECF 83 (D. Mass. May 7, 2019) .................................................2

*Neil v. Zell*,
    275 F.R.D. 256 (N.D. Ill. 2011)..................................................................1, 14, 21

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)...........................................................................................17, 19

*In re Petrobras Sec.*,
    862 F.3d 250 (2d Cir. 2017)...................................................................................10

*In re Pfizer Inc. Secs. Litig.*,
    282 F.R.D. 38 (S.D.N.Y. 2012) .............................................................................16

*Pizarro v. Home Depot, Inc.*,
    2020 WL 6939810 (N.D. Ga. Sept. 21, 2020) .......................................................17

*Pledger v. Reliance Tr. Co.*,
    No. 1:15-cv-4444, ECF 101 (N.D. Ga. Nov. 7, 2017)........................................2, 3

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) ..........................................................................1, 20

*Ramirez v. AMPAM Parks Mech., Inc.*,
    2025 WL 1090186 (C.D. Cal. Mar. 18, 2025) ........................................................1

*Ramos v. Banner Health*,
    325 F.R.D. 382 (D. Colo. 2018) ..............................................................................1

*Reetz v. Lowe's Cos., Inc.*,
    2020 WL 6528866 (W.D.N.C. Nov. 5, 2020)....................................................2, 22

*Robinson v. Sheet Metal Workers' Nat. Pension Fund, Plan A*,
    441 F. Supp. 2d 405 (D. Conn. 2006), *aff'd in part, appeal dismissed in part*,
    515 F.3d 93 (2d Cir. 2008)........................................................................................2

*Rozo v. Principal Life Ins. Co.*,
    2017 WL 2292834 (S.D. Iowa May 12, 2017) ..................................................1, 18

*Rush v. GreatBanc Tr. Co.*,
    2021 WL 2453070 (N.D. Ill. June 16, 2021) .........................................................19

*Sacerdote v. NYU*,
    2018 WL 840364 (S.D.N.Y. Feb. 13, 2018)..........................................................17

*In re Schering Plough Corp. ERISA Litig.*,
    589 F.3d 585 (3d Cir. 2009).....................................................................................1

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010)................................................................................................10

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
    659 F.3d 234 (2d Cir. 2011)...........................................................................11

*Smith v. Greatbanc Tr. Co.*,
    No. 1:20-cv-02350, ECF 128 (N.D. Ill. Jan. 17, 2023) .................................2

*Tracey v. MIT*,
    2018 WL 5114167 (D. Mass. Oct. 19, 2018)..................................................2

*Velazquez v. Mass. Fin. Srvs. Co.*,
    No. 1:17-cv-11249, ECF 94 (D. Mass. June 25, 2019) ..................................2

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).................................................................10, 12, 13, 21

*Woznicki v. Raydon Corp.*,
    2020 WL 857050 (M.D. Fla. Feb. 20, 2020) ...............................................19

**Statutes**

29 U.S.C. § 1025(a) ...............................................................................................11

29 U.S.C. § 1104(a)(1)...........................................................................................17

29 U.S.C. §§ 1109(a) .............................................................................................15

29 U.S.C. § 1132(a)(2)................................................................................. *passim*

29 U.S.C. § 1132(a)(3)......................................................................................18, 19

**Other Authorities**

Fed. R. Civ. R. 23 ..........................................................................................2, 3, 10

Fed. R. Civ. P. 23(a) ........................................................................................10, 11

Fed. R. Civ. P. 23(a)(1)..........................................................................................11

Fed. R. Civ. P. 23(a)(2)..........................................................................................11

Fed. R. Civ. P. 23(a)(3)..........................................................................................13

Fed. R. Civ. P. 23(a)(4)..........................................................................................15

Fed. R. Civ. P. 23(b) ..............................................................................................10

Fed. R. Civ. P. 23(b)(1).................................................................................. *passim*

Fed. R. Civ. P. 23(b)(1)(A)..........................................................................17, 18, 20

Fed. R. Civ. P. 23(b)(1)(B) ..............................................................................17, 19, 20

Fed. R. Civ. P. 23(b)(2)...............................................................................3, 20, 21, 22

Fed. R. Civ. P. 23(g)(1)......................................................................................15

# I.    INTRODUCTION

Plaintiffs Jamaal Lloyd and Anastasia Jenkins ("Plaintiffs") seek to represent a class of workers and retirees whose retirement savings are held in the W BBQ Holdings, Inc. Employee Stock Ownership Plan ("ESOP" or "Plan"). Courts in this District, and nationwide, repeatedly certify ERISA claims like the one brought here because they are "paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class." 2 Newberg and Rubenstein on Class Actions § 4:21 (6th ed.); *see also In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 78 (S.D.N.Y. 2006) (collecting decisions certifying ERISA classes); *see also Rozo v. Principal Life Ins. Co.*, 2017 WL 2292834, at *4 (S.D. Iowa May 12, 2017) ("[n]umerous courts have held that . . . breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification[.]" (citation omitted)).[1] Following this nearly uniform precedent, federal courts routinely certify classes of ESOP participants who allege that plan fiduciaries (like Defendants) caused the ESOP to overpay in almost identically-structured ESOP transactions.[2] In many ERISA cases—including cases involving Defendants' Counsel here—the parties have stipulated to

---

[1] *See also Gamache v. Hogue*, 338 F.R.D. 275, 292 (M.D. Ga. 2021) (same); *Godfrey v. GreatBanc Tr. Co.*, 2021 WL 679068, at *7 (N.D. Ill. Feb. 21, 2021) (similar); *Foster v. Adams & Assocs., Inc.*, 2019 WL 4305538, at *7-8 (N.D. Cal. Sept. 11, 2019) (same); *Ramos v. Banner Health*, 325 F.R.D. 382, 397 (D. Colo. 2018) (same); *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) (same); *Neil v. Zell*, 275 F.R.D. 256, 267 (N.D. Ill. 2011) (same).

[2] *See, e.g.*, *Ramirez v. AMPAM Parks Mech., Inc.*, 2025 WL 1090186, at*7-8 (C.D. Cal. Mar. 18, 2025); *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*, 2025 WL 295009, at *10 (D. Colo. Jan. 24, 2025); *Lysengen v. Argent Tr. Co.*, 686 F. Supp. 3d 755 (C.D. Ill. 2023); *Gamino v. KPC Healthcare Holdings, Inc.*, 2021 WL 7081190 (C.D. Cal. Aug. 6, 2021); *Gamache*, 338 F.R.D. at 292-93; *Cunningham v. Wawa, Inc.*, 387 F. Supp. 3d 529 (E.D. Pa. 2019); *Guidry v. Wilmington Tr.*, 333 F.R.D. 324 (D. Del. 2019); *Foster*, 2019 WL 4305538, at *7-8; *Rozo*, 2017 WL 2292834, at *4, *7; *Kindle v. Dejana*, 315 F.R.D. 7, 13 (E.D.N.Y. 2016); *Douglin v. GreatBanc Tr. Co.*, 115 F. Supp. 3d 404 (S.D.N.Y. 2015); *Neil*, 275 F.R.D. at 267-69; *McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Tr.*, 268 F.R.D. 670 (W.D. Wash. 2010); *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 604-05; *Fernandez v. K-M Indus. Holding Co., Inc.*, 2008 WL 2625874 (N.D. Cal. June 26, 2008).

1

certification. *See, e.g.*, Ex. A & Ex. B; *see also Cates v. Trs. of Columbia Univ.*, No. 1:16-cv-06524, ECF 217 (S.D.N.Y. Nov. 8, 2018); *Robinson v. Sheet Metal Workers' Nat. Pension Fund, Plan A*, 441 F. Supp. 2d 405, 410 (D. Conn. 2006), *aff'd in part, appeal dismissed in part*, 515 F.3d 93 (2d Cir. 2008).[3]

This case presents no exception. Plaintiffs' claims relate to a single transaction: the purchase of W BBQ stock in 2016 by the ESOP (the "ESOP Transaction"). The ESOP Transaction affected all proposed class members—i.e., ESOP participants who hold vested W BBQ stock in their ESOP accounts—in the exact same manner. And because Plaintiffs' claims entirely turn on Defendants' actions with respect to the ESOP, their liability will be resolved in one fell swoop for the class as a whole. Indeed, ERISA's unique statutory provisions provide that Plaintiffs' claims are brought in "a representative capacity on behalf of the plan as a whole," and ERISA expressly provides them with "remedies that would protect the entire plan." *Cedeno v. Sasson*, 100 F.4th 386, 398, 414 (2d Cir. 2024) (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 & n.9 (1985)), *cert. denied sub nom. Argent Tr. Co. v. Cedeno*, 145 S. Ct. 447 (2024). Plaintiffs, thus, must "take adequate steps under the circumstances" to represent other plan participants. *Coan v. Kaufman*, 457 F.3d 250, 261 (2d Cir. 2006). Compliance with Rule 23 class certification

---

[3] *See also Smith v. Greatbanc Tr. Co.*, No. 1:20-cv-02350, ECF 128 (N.D. Ill. Jan. 17, 2023) (non-opposition to class certification); *Douglin*, 115 F. Supp. 3d at 409 (same); *Baker v. John Hancock Life Ins. Co.*, No. 1:20-cv-10397, ECF 53 at 1 (D. Mass. Feb. 12, 2021) (same); *McGinnes v. FirstGroup Am., Inc.*, No. 1:18-cv-00326, ECF 92 (S.D. Ohio Sept. 8, 2022); *Reetz v. Lowe's Cos., Inc.*, 2020 WL 6528866 (W.D.N.C. Nov. 5, 2020); *Feinberg v. T. Rowe Price Grp., Inc.*, No. 1:17-cv-00427, ECF 77-3 (D. Md. May 1, 2019); *Tracey v. MIT*, 2018 WL 5114167, at *1 (D. Mass. Oct. 19, 2018); *In re GE ERISA Litig.*, No. 1:17-cv-12123, ECF 138 (D. Mass. Dec. 13, 2019); *Moitoso v. FMR LLC*, No. 1:18-cv-12122, ECF 83 (D. Mass. May 7, 2019); *Velazquez v. Mass. Fin. Srvs. Co.*, No. 1:17-cv-11249, ECF 94 (D. Mass. June 25, 2019); *Pledger v. Reliance Tr. Co.*, No. 1:15-cv-4444, ECF 101 (N.D. Ga. Nov. 7, 2017).

requirements, though not necessary, is one method of fulfilling this representative responsibility. *See id.*

While Defendants resist class certification[4], the proposed class easily meets all of Rule 23's requirements: (1) there are over 1,300 class members, easily satisfying numerosity; (2) commonality is met because the key issues in the case—including, whether the ESOP purchased W BBQ stock for more than fair market value—can and must be answered on a class-wide basis; (3) Plaintiffs' claims are typical of (indeed identical to) those of the proposed class; and (4) Plaintiffs and their counsel have, and will, vigorously represent the proposed class. Further, certification under Rule 23(b)(1) is necessary to: (A) avoid creating incompatible standards of conduct for Defendants with respect to the ESOP (which must be administered uniformly under ERISA); and (B) protect the interests of absent class members, since adjudication of Plaintiffs' claims on behalf of the ESOP would be dispositive of the interests of other class members.

This motion does not present a close question. Plaintiffs respectfully request that their motion for class certification be granted under Rule 23(b)(1), or in the alternative, Rule 23(b)(2).

## II.    FACTUAL BACKGROUND

## A.    The Wetansons Create the ESOP to Sell Their Interests While Retaining Control

Defendant Herbert Wetanson founded a chain of affordable barbeque restaurants in New York City over 40 years ago.[5] Prior to the sale, Herbert Wetanson, his son Gregor Wetanson,

---

[4] Plaintiffs asked Defendants to confer on the basis of their opposition, but Defendants refused to confer and provide the basis. *See infra* Section III.E. Defendants have not produced any documents responsive to Plaintiffs' discovery requests that seek documents that challenge Plaintiffs' adequacy as class representation or the typicality of their claims. *See id.*

[5] Ex. C, ARGENT_LLOYD_0059333 at -59354.

grandson Stuart Wetanson, and the company's CFO Joseph Shpigel (the "Sellers") owned W BBQ

Holdings, Inc.—the parent company of nine Dallas BBQ restaurants and a management company.[6]

      While the Wetansons toyed with selling their restaurants to a third party, Gregor Wetanson

discovered that selling to an ESOP would achieve two important goals: (1) ensure that he could

"keep control of the business" ("which might eventually go to Stuart"); and (2) avoid "a personal

tax burden" that would arise if Herbert died and passed his interest in the restaurants to Gregor

subject to estate taxes.[7] So the Sellers created an ESOP and installed a rubber-stamp trustee

(Defendant Argent) who would buy W BBQ at a grossly inflated price (approximately $98 million

in the aggregate) while allowing the Wetansons to keep control of the company.[8] More precisely,

---

[6] *Id.* at -59352.

[7] Ex. D, Deposition Transcript of Gregor Wetanson ("G. Wetanson Tr.") 68:21-72:25; *see also* Ex. E, Deposition Transcript of Stuart Wetanson ("S. Wetanson Tr.") 38:8-23 (ESOPs "allowed founders to stay on board," which was a benefit to the Wetansons), *id.* at 58:10-59:12 (when considering an ESOP, "It was attractive that we could control management of business operations."); Ex. F, Deposition Transcript of Herbert Wetanson ("H. Wetanson Tr.") 57:11-58:9 (affirming that he wanted Gregor and Stuart to maintain control over the BBQ business).

[8] Ex. C, ARGENT_LLOYD_0059333 at -59344; Ex. G, ARGENT_LLOYD_0063442 (███████ ████████████████████████████████████████████████, resulting in an approximately $6 million increase to the purchase price); Ex. H, ARGENT_LLOYD_0000657, Stock Purchase Agreement Sections 2.2 & 2.3 (explaining purchase price and ████████ ███████████████████████).

W BBQ's Board[9] appointed Argent to serve as the ESOP's trustee and approve the ESOP Transaction.[10]

**B.    Argent Approves the Transaction's Inflated Price While Failing to Adhere to its Own Process Requirements**

When it applied for the trustee role, Argent represented to W BBQ that it would follow "every detail" in the *Perez v. GreatBanc* settlement agreement, which sets forth the appropriate fiduciary process for ESOP transactions.[11] However, Argent failed to make good on its promise by skipping several important requirements, such as obtaining a solvency opinion or critically evaluating the conflicted management projections that drove the inflated valuation of W BBQ for

---

[9] Curiously, the Wetanson Defendants have been unable to say who was on the Board and when. Specifically, the Wetansons have testified under oath via interrogatory responses and depositions as to different accounts of which Wetansons were Board members at various times. Herbert and Gregor Wetanson were indisputably Board members at the time of Argent's appointment. Ex. I, Defendants' Response to Interrogatory No. 5; Ex. J, Defendants' Amended Response to Interrogatory No. 5. Joseph Shpigel contemporaneously wrote that the Board was the three Wetansons and himself. Ex. K, WBBQ_LLOYD_0028064. Stuart Wetanson testified that he joined the Board in 2020. Ex. E, S. Wetanson Tr. 188:3-8. On the other hand, the Wetanson Defendants have changed their verified interrogatory and request for admission responses from Stuart Wetanson being a Board member since January 2016 to Stuart Wetanson joining the Board in 2025. Ex. I, Defendants' Response to Interrogatory No. 5; Ex. L, Defendants' Response to Request for Admission No. 9; Ex. J, Defendants' Amended Response to Interrogatory No. 5; Ex. M, Defendants' Amended Response to Request for Admission No. 9. At best for the Wetansons, they took a very informal approach to corporate governance, and at worst for them, they violated the company's bylaws by failing to adhere to governance mandates. *See* Ex. N, ARGENT_LLOYD_0000426 at -440-43 (specifying Board requirements).

[10] Ex. O, ARGENT_LLOYD_0010986; Ex. M, Wetanson Defendants' Amended Response to Plaintiffs' Request for Admission No. 12 (admitting that the W BBQ Board of Directors appointed Argent).

[11] Ex. P, ARGENT_LLOYD_0020711 at -20717; *see also* Ex. Q, Perez v. GreatBanc Agreement Concerning Fiduciary Engagements and Process Requirements for Employer Stock Transactions ("GreatBanc Agreement").

the Transaction.[12] These failures were significant, as W BBQ became insolvent (i.e., unable to service its enormous debt load) six months after the ESOP Transaction closed.[13]

Even more concerning, Argent failed to ███████████████████████ which would have accounted for the fact that the Wetansons never transferred control over W BBQ to the ESOP.[14] As planned, the Sellers retained control of W BBQ after the Transaction by installing an ESOP Investment Committee composed of Gregor Wetanson and Joseph Shpigel, who had the authority to direct the trustee's voting.[15] Despite this, Argent never adjusted the valuation to reflect

---

[12] *Compare* Ex. R, ARGENT_LLOYD_0001046 at 10 (████████████████) & Ex. S, ARGENT_LLOYD_0019565 at -19567 ████████████████████████████ ████████████████████"), *with* Ex. Q, GreatBanc Agreement at Section D.9 ("Analyze and document in writing (a) whether the ESOP sponsor will be able to service the debt taken on in connection with the transaction (including the ability to service the debt in the event that the ESOP sponsor fails to meet the projections relied upon in valuing the stock."); *compare* Ex. R, ARGENT_LLOYD_0001046 at 2 (stating that the ███████████ ███████████████████████████████████████████████████ & Ex. C, ARGENT_LLOYD_0059333 at -59381 (stating ███████████████████████████████ ████████████████████████████████████████████████████████ *with* Ex. Q, GreatBanc Agreement at Section D.1 ("Identify in writing the individuals responsible for providing any projections reflected in the valuation report, and as to those individuals, conduct reasonably inquiry as to . . . whether those individuals have or reasonably may be determined to have any conflicts of interest . . . and (c) record in writing how the Trustee and the valuation advisor considered such conflicts in determining the value of employer securities.").

[13] Ex. E, S. Wetanson Tr. 100:16-101:13, 104:8-14.

[14] *See* Ex. C, ARGENT_LLOYD_0059333 at -59452-53 (████████████████████████████ ██████████████████████).

[15] Ex. T, ARGENT_LLOYD_0000001 at -34-35 (describing that if appointed, the Investment Committee directs the trustee on how to vote shares, except for certain limited corporate matters, in which case the trustee votes the allocated shares pursuant to member instructions and the Investment Committee directs the voting of unallocated shares); Ex. U, ARGENT_LLOYD_0075008 & Ex. V, ARGENT_LLOYD_0075010 (email with attachment to David Williams of Argent that an Investment Committee will direct the trustee post-Transaction); Ex. W, ARGENT_LLOYD_0000716 (W BBQ Board adopting Investment Committee Guidelines); Ex. X, WBBQ_LLOYD_0006254 (W BBQ Board appointing Investment Committee and Gregor Wetanson and Joseph Shpigel accepting their appointment to the Investment Committee).

the fact that the ESOP was not acquiring control—a core component of fair market value.[16] Whether the ESOP's trustee had power (or not) to vote the ESOP's shares apparently mattered none to Argent for valuation purposes, because Argent never considered how the ESOP's control (or lack thereof) impacted fair market value, contrary to basic valuation principles and common sense.[17]

Further compounding its fiduciary failures, Argent agreed to the purchase price on December 29, 2015, but allowed the deal to close on July 29, 2016 without revisiting that price.[18] During this seven-month gap, the Company's financial outlook materially deteriorated. In just one example, Argent's valuation report ███████████████████████████████████████ █████████████████████████████████████████████████████████████ ██████████████████████████████.[19] In the days leading up to the delayed closing, it was clear the ██████████████████████████████████████████████," making the 2016 revenue projections that Argent relied upon impossible; this artificially inflated the ESOP's

---

[16] Ex. C, ARGENT_LLOYD_0059333 at -59452-53.

[17] Ex. Y, Rough Deposition Transcript of David Williams ("Williams Tr.") 133:15-135:2 (testifying that the amount of voting power held by a trustee "wouldn't have mattered" to Argent in valuing control for an ESOP transaction and, thus, Argent would not have discussed this topic in connection with the W BBQ ESOP Transaction).

[18] Ex. Z, ARGENT_LLOYD_0013883 (Mark Shorthouse of Argent confirming purchase price of $92 million with post-Transaction working capital adjustment on December 29, 2015); Ex. H, ARGENT_LLOYD_0000657 at Sections 2.2 & 2.3 (ESOP Transaction with purchase price of $92 million with post-Transaction working capital adjustment on July 29, 2016).

[19] Ex. AA, WBBQ_LLOYD_0000485 at -543 (email with attachment of ████████████ ████████████████████████████████ Exs. BB & CC, CSG-WBBQ00020084 & CSG-WBBQ00020087 at -20090 (displaying EBITDA and margin assumptions in management's projections from 2015); Ex. E, S. Wetanson Tr. 168:7-169:18 (████████████████████████████████████████████████████████████ █████████ Ex. C, ARGENT LLOYD 0059333 at -59428 ████████████ █████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████

purchase price.[20] Argent neither revised its valuation nor attempted to renegotiate the purchase price in light of this development.[21]

On the Sellers' side, the Wetansons were subject to acute conflicts of interest. They acted as Sellers who would benefit from an inflated price while also appointing fiduciaries responsible for monitoring the ESOP Trustee.[22] Rather than appoint unbiased, non-conflicted individuals to select the ESOP's trustee, the Board (including all three of the Wetansons) appointed two of the four Sellers—Gregor Wetanson and Joseph Shpigel—to the Trustee Selection Committee, which selected Argent as the Sellers' counter-party in the Transaction.[23] Then, after they appointed Argent as the ESOP Trustee, the Wetanson Defendants took *zero* actions to monitor Argent's performance,[24] despite warnings from their financial advisor that the ESOP could not lawfully pay

---

[20] *Id.*; Ex. DD, ARGENT_LLOYD_0040413 (email from the Sellers' financial advisor to Argent and the trustee team stating that "The Company is in negotiations r/e the Jamaica Queens location, nothing to report at the moment . . .").

[21] Ex. Z, ARGENT_LLOYD_0013883; Ex. H, ARGENT_LLOYD_0000657 at Sections 2.2 & 2.3.

[22] Ex. H, ARGENT_LLOYD_0000657 at -691 (listing Sellers); Ex. M, Wetanson Defendants' Amended Response to Plaintiffs' Request for Admission No. 12 (admitting that the W BBQ Board of Directors appointed Argent).

[23] Ex. EE, WBBQ_LLOYD_0020944 (Board appointing Trustee Selection Committee with Gregor Wetanson and Joseph Shpigel as its members).

[24] Ex. F, H. Wetanson Tr. 94:6-95:16 (testifying that he could not recall taking any actions to determine Argent's qualifications, oversee or review Argent's work, ensure that Argent received complete and accurate information, or monitor Argent's work; also testifying that he could not identify any actions Argent took on behalf of the ESOP); Ex. D, G. Wetanson Tr. 140:6-142:4 (testifying that he relied on Joseph Shpigel to provide Argent with complete and accurate information but never verified whether this in fact occurred; also testifying he took no steps to monitor Argent's work in connection with the ESOP Transaction); Ex. E, S. Wetanson Tr. 216:15-218:13 (testifying that he did not know whether Argent determined that the ESOP paid no more than fair market value for W BBQ shares, did not oversee Argent's process, and has never taken any steps to ensure that Argent carried out its responsibilities in representing the ESOP).

above fair market value and that the deal would be scrutinized by the Department of Labor and the IRS.[25]

Both sides—Argent and the Wetanson Defendants—violated their fiduciary duties and engaged in a prohibited transaction under ERISA. Ultimately, the Sellers received far more than fair market value for their W BBQ stock and received their payout in cash, Seller Notes, and warrants.[26] Recently, the Wetanson Defendants transferred their Seller Notes to family trusts and/or entities in their control.[27] For instance, on January 4, 2022, Herbert Wetanson transferred a portion of his Seller Note to the Gregor Wetanson 2015 Gift Trust.[28]

## C.    The Proposed Class

Plaintiffs seek to certify the following class:

> All participants in the W BBQ Holdings, Inc. Employee Stock Ownership Plan on or after July 29, 2016 who vested in whole or in part under the terms of the ESOP, and those participants' beneficiaries, excluding Defendants and their immediate family members; any fiduciary of the ESOP; and any current or former officers or directors of WBBQ.

ECF 153, Second Amended Complaint ("SAC") ¶ 147. There are approximately 1,374 members of the proposed class.[29]

---

[25] Ex. FF, WBBQ_LLOYD_0000137 at -150; Ex. E, S. Wetanson Tr. 59:24-60:14.

[26] Ex. C, ARGENT_LLOYD_0059333 at -59344-49.

[27] Ex. GG, Tracing Stipulation; Ex. D, G. Wetanson Tr. 261:2-264:21 (testifying that HGS Holdings and Liquid Subsidiary are owned by Herbert, Gregor and Stuart Wetanson, that he controls both entities, and that both entities serve as holding companies to distribute money from their interests).

[28] Herbert Wetanson's Seller Note passed through several corporate entities and trusts before a portion of his Seller Note transferred back to Herbert Wetanson. Ex. HH, WBBQ_LLOYD_0054229; Ex. II, WBBQ_LLOYD_0054230; Ex. JJ, WBBQ_LLOYD_0054232; Ex. KK, WBBQ_LLOYD_0054233; Ex. LL, WBBQ_LLOYD_0054231. Herbert Wetanson then transferred that portion, as a gift, to the Gregor Wetanson 2015 Gift Trust. Ex. JJ, WBBQ_LLOYD_0054232.

[29] Ex. MM, 2022 Form 5500.

### III.    ARGUMENT

"Class actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). A court must certify a class when the party seeking certification satisfies the four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action."). "The Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction, and it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 124 (S.D.N.Y. 2011) (quoting *Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 361 (E.D.N.Y. 2009)). A class certification analysis may "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). However, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). The Court should certify the proposed class, as it satisfies all of Rule 23's requirements.

### A.    The Class Is Defined by the Objective Criteria of Plan Participant or Beneficiary Status

This Circuit requires that a class be "defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d 250, 257 (2d Cir. 2017). "This modest threshold requirement will only preclude certification if a proposed class definition is indeterminate in some fundamental way." *Id.* at 269. Here, class membership is defined by the objective criteria of each participant or beneficiary who has vested shares in the ESOP. ERISA requires that all ESOP participants receive annual account statements providing the number of

W BBQ shares in their respective ESOP accounts and the percentage of vested shares. 29 U.S.C. § 1025(a). Defendants' plan records thus identify every ESOP participant and beneficiary by name and whether the shares in their accounts are vested. Declaration of Michelle C. Yau ("Yau Decl.") ¶ 69. Therefore, no fundamental threat of indeterminacy exists, and the proposed class is properly defined by objective criteria.

**B.      The Class Satisfies the Requirements of Rule 23(a)**

Rule 23(a) sets forth four requirements applicable to all class actions: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997); Fed. R. Civ. P. 23(a). Plaintiffs' claims satisfy each requirement.

*i.      Joinder of All Class Members Is Impracticable, Satisfying Numerosity*

Numerosity requires that the class be "so numerous that joinder of all members is impracticable." Fed R. Civ. P. 23(a)(1). In this Circuit, "numerosity is presumed at the level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). According to W BBQ's 2022 Form 5500 governmental filing, the ESOP has 1,374 participants. Ex. MM. The proposed class, therefore, easily meets the numerosity requirement. *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (finding numerosity for class of approximately 275 members); *In re Beacon Assocs. Litig.*, 282 F.R.D. 315, 326-27 (S.D.N.Y. 2012) (certifying class of over 300 class members in ERISA action).

*ii.      Plaintiffs' Claims Arise from the Common Question of Whether Defendants Violated Their Fiduciary Duties by Selling Stock to the ESOP at an Inflated Price*

Commonality requires that "there are questions of law or fact common to the class." Fed R. Civ. P. 23(a)(2). "Commonality is satisfied where a single issue of law or fact is common to the class." *In re IndyMac Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226, 233 (S.D.N.Y. 2012) (citing *Dukes*, 564 U.S. at 359 ("[E]ven a single common question will do.") (internal quotation marks

and brackets omitted)). The commonality requirement is a "minimal burden for a party to shoulder." *Lewis Tree Serv. v. Lucent Techs. Inc.*, 211 F.R.D. 228, 231 (S.D.N.Y. 2002). A party need only show that "the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members." *Haley v. Tchrs. Ins. & Annuity Ass'n of Am.*, 54 F.4th 115, 121 (2d Cir. 2022) (quoting *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014)). Finally, "a common question of law or fact" is a question "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

"In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries." *Beach v. JPMorgan Chase Bank, N.A.*, 2019 WL 2428631, at *6 (S.D.N.Y. June 11, 2019) (citation omitted). For this reason, courts within this Circuit routinely find commonality in ERISA cases, including in cases involving an ESOP's purchase of company stock. *Douglin*, 115 F. Supp. 3d at 410; *see also, e.g.*, *Kindle*, 315 F.R.D. at 11; *Gatto v. Sentry Servs., Inc.*, 2014 WL 7338721, at *3 (S.D.N.Y. Dec. 19, 2014); *Koch v. Dwyer*, 2001 WL 289972, at *3 (S.D.N.Y. Mar. 23, 2001).

Here, as in other ERISA cases, common questions central to this litigation abound: whether each Defendant is a fiduciary; whether the ESOP Transaction was a prohibited transaction under ERISA; whether the ESOP paid fair market value for its purchase of W BBQ shares from the Sellers; whether each Defendant breached their fiduciary duties; and what equitable relief is appropriate, including whether Herbert Wetanson's gift of a portion of his Seller Notes to the Gregor Wetanson 2015 Gift Trust was voidable. *See Kindle*, 315 F.R.D. at 11 (listing whether defendants engaged in a prohibited transaction by causing the sale to the ESOP, whether defendants breached their fiduciaries duties, and the appropriate measure of relief as common

12

questions); *see also Harrison*, 2025 WL 295009, at *5 (similar); *Douglin*, 115 F. Supp. 3d at 410 (similar). These questions all pertain to "the same conduct or practice by the same defendant[s]" *Haley*, 54 F.4th at 121.

Further, ERISA claims brought under 29 U.S.C. § 1132(a)(2) "may not be made for individual relief, but instead are 'brought in a representative capacity on behalf of the plan.'" *Coan*, 457 F.3d at 256-257 (quoting *Russell*, 473 U.S. at 142 n.9). As such, Plaintiffs' claims are common to the class because they are the precise same claims that any plan participant is authorized to bring in a representative capacity for the entire Plan. *See Cedeno v. Sasson*, 100 F.4th 386, 397-98 (2d Cir. 2024); *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*, 59 F.4th 1090, 1103-04 (10th Cir. 2023), *cert. denied sub nom. Argent Tr. Co. v. Harrison*, 144 S. Ct. 280 (2023). Thus, commonality is satisfied.

iii.    *Plaintiffs' Claims Are Typical, As All Participants' Claims Stem from the Same Harm Suffered as a Result of the ESOP Transaction*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "The commonality and typicality requirements tend to merge into one another." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). Yet, the distinction between commonality and typicality is that "the commonality inquiry focuses on what characteristics are shared among the whole class while the typicality inquiry focuses on the desired attributes of the class representative." 1 Newberg and Rubenstein on Class Actions § 3:31; *accord Dukes*, 564 U.S. at 349 n.5. The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 245 (2d Cir. 2007) (quoting *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)).

13

Here, the core issues will be proved or disproved by class-wide evidence that is not unique to Plaintiffs or any individual class member. For example, Plaintiffs have adduced class-wide proof that Argent failed to probe numerous issues, failed to adequately negotiate on the ESOP's behalf, and failed to fulfill its promise to comply with "every detail" of the process requirements set forth in the *Perez v. Great Banc* agreement. *See supra* Section II.B. Further class-wide evidence shows that the Sellers failed to implement an appropriate governance structure and failed to monitor their appointee Argent. *See id.* Finally, class-wide evidence will prove or disprove whether Herbert Wetanson gifted a portion of his Seller Note to the Gregor Wetanson 2015 Gift Trust and with actual or constructive knowledge that his debts would exceed his assets. *See id.* Thus, typicality is met because the claims brought by one ESOP participant "could have formed the basis of identical ERISA claims brought by any Plan participant." *Godfrey*, 2021 WL 679068, at *5; *see also Gamache*, 338 F.R.D. 275 (typicality met); *Guidry*, 333 F.R.D. at 329-30 (same); *Hurtado v. Rainbow Disposal Co.*, 2019 WL 1771797, at *7-8 (C.D. Cal. Apr. 22, 2019) (similar); *Neil*, 275 F.R.D. at 261-62 (similar); *Douglin*, 115 F. Supp. 3d at 410 (same); *Chesemore v. All. Holdings, Inc.*, 276 F.R.D. 506, 510 (W.D. Wis. 2011) (same).

Plaintiffs' § 1132(a)(2) claims are also typical of the proposed class because ERISA allows each ESOP participant to bring the same claim on behalf of the ESOP: whether the ESOP paid more than fair market value for W BBQ stock. *See* ECF 71 p. 61 (Defendants' Sixth Affirmative Defense). It is well established that an ERISA "suit under § 1132(a)(2) is 'brought in a representative capacity on behalf of the plan as a whole.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009) (quoting *Russell*, 473 U.S. at 142). Given the inherently representational nature of ERISA 1132(a)(2) claims, courts in this circuit routinely find typicality satisfied in ERISA cases because the named plaintiff's ERISA claims were identical to the claims

of other plan participants. *See, e.g.*, *Douglin*, 115 F. Supp. 3d at 410 (finding plaintiff's ERISA claims to be "identical" to those of each proposed class member); *Kindle*, 315 F.R.D. at 11 (finding typicality where the same unlawful conduct in an ESOP case affects the named plaintiff and the class).

     iv.    *Plaintiffs and their Counsel Are Adequate Representatives Who Are Committed to Vindicating the Interests of the Class*

"Under Rule 23(a)(4), adequacy of representation is measured by two standards. First, class counsel must be 'qualified, experienced and generally able' to conduct the litigation." *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) (quoting *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968)); *see also* Fed. R. Civ. P. 23(g)(1). Second, "the proposed class representative[s] must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).

First, Plaintiffs "have an interest in vigorously pursuing the claims of the class, and [] have no interests antagonistic to the interests of other class members." *Denney*, 443 F.3d at 268. Plaintiffs' interests in seeking legal recourse for the fiduciary breaches borne out of the ESOP Transaction is entirely aligned with the interests of all other ESOP participants and beneficiaries. Further, the unique character of ERISA claims and the record here demonstrate that Plaintiffs' interests are not antagonistic to the interest of other class members. *See Godfrey*, 2021 WL 679068, at *6. Rather, their interests are entirely aligned, as all ESOP participants share a common interest in Defendants' return of the amount the ESOP overpaid for W BBQ stock. *See* 29 U.S.C. §§ 1109(a) and 1132(a)(2). Plaintiffs are unaware of any conflicts of interest with other class members and will represent the interests of the class members as they would their own. Declaration of Jamaal Lloyd ("Lloyd Decl.") ¶ 7; Declaration of Anastasia Jenkins ("Jenkins Decl.") ¶ 7.

Demonstrating their adequacy, Plaintiffs have acknowledged and accepted their duties as class representatives. Lloyd Decl. ¶ 5; Jenkins Decl. ¶ 5. Plaintiffs have also shown their commitment to vigorously pursuing class-wide relief. Both Plaintiffs have reviewed the pleadings in this case, have responded to interrogatories, have produced documents, and regularly communicate with counsel. Lloyd Decl. ¶ 4; Jenkins Decl. ¶ 4. Plaintiffs are willing to undertake any responsibilities required of them as class representatives and are prepared to testify at trial. Lloyd Decl. ¶ 6; Jenkins Decl. ¶ 6.

Second, Plaintiffs' counsel exceed the adequacy standard. When assessing the adequacy of counsel, courts in this Circuit typically consider factors, including counsel's experience serving as lead counsel in similar class actions, commitment to safeguarding their clients' interests, and dedication of resources to the litigation at hand. *See, e.g.*, *In re Pfizer Inc. Secs. Litig.*, 282 F.R.D. 38, 47 (S.D.N.Y. 2012). Courts exhibit skepticism towards defendants' attacks on class counsel, as "[i]t is in a defendant's best interests to object to class counsel who are, in fact, best suited to protect the class and represent its interests." *Id.* at 48.

Plaintiffs' counsel from Cohen Milstein Sellers & Toll PLLC are widely-recognized and experienced practitioners, who have held numerous appointments as class counsel in ERISA class action cases. Yau Decl. ¶¶ 6-20. To date, Plaintiffs' counsel have, without fail, acted in the interests of the named Plaintiffs and the proposed class members. After commencing the litigation in May 2022, Plaintiffs' counsel defeated Defendants' motion to compel arbitration, which the Second Circuit summarily affirmed. ECF 98; Yau Decl. ¶ 22. After the multi-year appeals process that upheld the Court's decision, Plaintiffs' counsel has dedicated substantial resources to discovery, including but not limited to taking eleven (and counting) depositions, bringing and prevailing on multiple discovery disputes, and obtaining extensive documentary discovery from Defendants and

16

several third-parties. Yau Decl. ¶ 23. Plaintiffs also successfully moved to amend the pleadings and filed the SAC on July 14, 2025. *Id.* ¶ 22. Plaintiffs' counsel will continue to vigorously advocate for Plaintiffs and the proposed class. *Id.* ¶ 25. Plaintiffs and their counsel more than satisfy the adequacy requirement.

## C.    The Court Should Certify the Class Under Rule 23(b)(1)

"Most ERISA class action cases are certified under Rule 23(b)(1)." *Caufield v. Colgate-Palmolive Co.*, 2017 WL 3206339, at *6 (S.D.N.Y. July 27, 2017). As the Supreme Court has recognized, actions for breaches of fiduciary duties are "classic examples" of cases suited for Rule 23(b)(1) certification. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833-34 (1999). Consistent with many decisions across the country, here, the proposed class may be certified under both Rule 23(b)(1)(A) and (B). *See, e.g.*, *Sacerdote v. NYU*, 2018 WL 840364 (S.D.N.Y. Feb. 13, 2018); *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 575-76 (D. Minn. 2014) (certifying class under Rule 23(b)(1)(A) and (B)); *Pizarro v. Home Depot, Inc.*, 2020 WL 6939810, at *12-15 (N.D. Ga. Sept. 21, 2020) (same); (same); *Henderson v. Emory Univ.*, 2018 WL 6332343, at *9-10 (N.D. Ga. Sept. 13, 2018) (same). Accordingly, courts in this Circuit routinely certify ERISA claims brought by individuals on behalf of ESOP participants under Rule 23(b)(1). *See, e.g.*, *Douglin*, 115 F.Supp.3d at 412; *Kindle*, 315 F.R.D. at 13; *Babcock v. Computer Assocs. Int'l, Inc.*, 212 F.R.D. 126, 131 (E.D.N.Y. 2003); *Koch*, 2001 WL 289972 at *6; *Gatto*, 2014 WL 7338721 at *3.

### i.    *Rule 23(b)(1)(A) Certification Avoids the Risk of Inconsistent or Varying Adjudications, Violating Defendants' Fiduciary Duty to Treat All Participants Alike*

Certification under Rule 23(b)(1)(A) is appropriate where a party is either "obliged by law to treat the members of the class alike" or to do so "as a matter of practical necessity." *Amchem Prods.*, 521 U.S. at 614. The fiduciary duties imposed by ERISA are "duties with respect to a plan" that are intended to protect the "interest of the participants and beneficiaries" collectively. *See* 29

U.S.C. § 1104(a)(1). Thus, in ERISA suits, "the defendants have a statutory obligation, as well as a fiduciary responsibility, to treat the members of the [prospective] class alike." *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179 (S.D.N.Y. 2006) (internal quotation marks omitted). Thus, Rule 23(b)(1)(A) is appropriate because "separate lawsuits have the potential for conflicting decisions that would make uniform administration of the ESOP impossible." *Hurtado*, 2019 WL 1771797, at *10 (internal brackets and citation omitted).

ERISA claims are well suited for Rule 23(b)(1) certification because ERISA authorizes plan-wide relief, which makes the risk of inconsistent judgments especially problematic. *Beach*, 2019 WL 2428631, at *9; *see also Gatto*, 2014 WL 7338721, at *3 (certifying breach of fiduciary duty claims arising from conduct related to the ESOP under Rule 23(b)(1)(A) class for settlement purposes). Indeed, "[n]umerous courts have held that" ERISA fiduciary claims brought under § 1132(a)(2) "are paradigmatic examples of claims appropriate for certification." *Rozo*, 2017 WL 2292834, at *4 (citation omitted).

The same logic applies to Plaintiffs' non-fiduciary claims against the Sellers under 29 U.S.C. § 1132(a)(3), which seek an order requiring the Sellers to return the amount the ESOP overpaid to the ESOP trust. This Court's decisions as to whether the Sellers are liable as non-fiduciaries who knowingly participated in a prohibited transaction and any order for disgorgement of ill-gotten profits must be consistent for all ESOP participants. 2 Newberg and Rubenstein on Class Actions § 4:12 (certification appropriate in ERISA cases where "plaintiffs seek broad declaratory and injunctive relief related to defendants' conduct and the terms of the plan. If this relief were granted in some actions but denied in others, the conflicting declaratory and injunctive relief could make compliance impossible for defendants"); *Harrison*, 2025 WL 295009, at *9 (identifying example of inconsistent adjudications as one court ordering the removal of Argent but

another court ordering heightened monitoring over Argent); *see also Woznicki v. Raydon Corp.*, 2020 WL 857050, at *14 (M.D. Fla. Feb. 20, 2020), *report and recommendation adopted*, 2020 WL 1270223 (M.D. Fla. Mar. 16, 2020) ("[Defendant] fails to explain why the rationale for certification under Rule 23(b)(1) for § 1132(a)(2) claims would not apply to § 1132(a)(3) claims."); *Rush v. GreatBanc Tr. Co.*, 2021 WL 2453070, at *9 (N.D. Ill. June 16, 2021) (certifying § 1132(a)(3) knowing participation claims under Rule 23(b)(1)).

Thus, for both the fiduciary § 1132(a)(2) and non-fiduciary § 1132(a)(3) claims, this Court should follow the weight of authority recognizing that "[m]ost ERISA class action cases are certified under Rule 23(b)(1)." *Caufield*, 2017 WL 3206339, at *6 (citation omitted) (certifying non-fiduciary benefits claims under Rule 23(b)(1)).

ii.   *Rule 23(b)(1)(B) Certification Would Prevent Individual Adjudications to Substantially Affect Absent Class Members' Interests, as the Requested Relief is Inherently Plan-Based*

Class certification is also proper under Rule 23(b)(1)(B) because "the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Ortiz*, 527 U.S. at 834. "[T]he structure of ERISA favors the principles enumerated under 23(b)(1)(B), since the statute creates a 'shared' set of rights among the plan participants by imposing duties on the fiduciaries relative to the plan, and it even structures relief in terms of the plan and its accounts, rather than directly for the individual participants." *Douglin*, 115 F. Supp. 3d at 412; *see also Koch*, 2001 WL 289972, at *5 (certifying ERISA class under Rule 23(b)(1)(B) because the plaintiffs' breach of fiduciary duty claims affect all plan participants); *Gatto*, 2014 WL 7338721, at *3 (certifying Rule 23(b)(1)(B) class for settlement purposes because a decision related to plaintiff's fiduciary duty claims would be dispositive of other class members' claims).

19

Here, Plaintiffs allege that Defendants breached their fiduciary duties to the Plan and thereby violated the "'shared' set of rights among the plan participants." *See Douglin*, 115 F. Supp. 3d at 412. Further, as in *In re Marsh ERISA Litig.*, "any one participant's claim would, as a practical matter, be dispositive of the interests of fellow Plan members because § 502(a)(2) claims must be brought in a representative capacity on behalf of the entire plan, and the relief granted by the Court to remedy a breach of fiduciary duty would 'inure[ ] to the benefit of the plan as a whole,' not to the individual plaintiff." 265 F.R.D. 128, 144 (S.D.N.Y. 2010) (quoting *Russell*, 473 U.S. at 140). In short, the Court's adjudication of Plaintiffs' claims affects all ESOP participants alike because "the Supreme Court has made clear that § 1132(a)[2] does not provide a remedy for individual injuries distinct from plan injuries." *Harrison*, 59 F.4th at 1111. Indeed, "'[t]he weight of authority suggests that [such] claims should be thought of as Plan claims, not [the plaintiff's] claims.'" *Id.* at 1106 (quoting *Hawkins v. Cintas Corp.*, 32 F.4th 625, 635 (6th Cir. 2022)). And again, Plaintiffs must "take adequate steps under the circumstances" to represent other ESOP participants when bringing § 1132(a)(2) claims because any recovery would go to the *ESOP*, not just Plaintiffs individually. *Coan*, 457 F.3d at 261. Thus, Rule 23(b)(1)(A) and (B) certification is warranted. *See Harrison*, 2025 WL 295009 (certifying class under Rule 23(b)(1)(A) and (b)(1)(B)); 2 Newberg and Rubenstein on Class Actions § 4:44 ("ERISA cases may also be certified under both (b)(1)(A) and (b)(1)(B) simultaneously.").

**D.    Alternatively, the Class Is Certifiable under Rule 23(b)(2)**

While courts typically certify ERISA actions like this one under Rule 23(b)(1), certification under Rule 23(b)(2) is also appropriate. *Kindle*, 315 F.R.D. at 13 ("As the Court concludes that certification is appropriate under Rule 23(b)(1), a determination regarding the applicability of Rule 23(b)(2) or (3) is not necessary."). Indeed, courts that have reached the (b)(2) question have certified similar classes under both Rule 23(b)(1) and (2). *See, e.g.*, *Douglin*, 115 F. Supp. 3d at

412-14. Certification under both subsections is possible, and even intuitive as "[c]lasses certified under (b)(1) and (b)(2) share the most traditional justifications for class treatment—that individual adjudications would be impossible or unworkable, as in a (b)(1) class, or that the relief sought must perforce affect the entire class at once, as in a (b)(2) class." *Dukes*, 564 U.S. at 361-62.

Rule 23(b)(2) certification is appropriate when "the party opposing the class has acted or refused to act on grounds that apply generally to the class" and "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also Douglin*, 115 F. Supp. 3d at 412-13; *Chesemore*, 276 F.R.D. at 517-18; *Neil*, 275 F.R.D. at 268-69. The proposed class meets this bar.

*First*, Defendants' actions surrounding the ESOP Transaction are generally applicable to all plan participants. *See Douglin*, 115 F. Supp. 3d at 413-14 (reasoning that breach of fiduciary duty claims in ESOP transaction case effected the ESOP and all its participants and beneficiaries). In fact, the Sixth Circuit in *Hawkins* observed that "if, for instance, the named Plaintiffs were to be swapped out with two other employees, nothing material in the complaint would need to be changed." 32 F.4th at 635. The same is true of Plaintiffs' UVTA claim, in which Defendant Herbert Wetanson made a voidable transfer of a portion of his Seller Note—part of his ESOP Transaction proceeds—to the Gregor Wetanson 2015 Gift Trust.

*Second*, the relief Plaintiffs seek includes declaratory and injunctive relief which applies to the proposed class as a whole. Plaintiffs seek: a declaration that Defendants breached their fiduciary duties; removal of Argent as trustee and appointment of a new fiduciary; an injunction preventing Defendants from receiving indemnification payments from W BBQ (owned by the ESOP) for their defense costs; and restitution and disgorgement orders compelling the Sellers to return their ill-gotten proceeds and profits thereon to the ESOP. *See* SAC § VIII, Prayer for Relief.

21

In addition, Plaintiffs seek to void the transfer of a portion of Herbert Wetanson's Seller Note to the Gregor Wetanson 2015 Gift Trust. *See id.* ¶¶ 222-24. Any monetary relief to proposed class members merely flows as a natural consequence of the ESOP's recovery for its injury. *See Douglin*, 115 F. Supp. 3d at 414. Plaintiffs' claims are thus certifiable under Rule 23(b)(2).

### E.    Defendants Did Not and Cannot Identify any Basis that Shows Plaintiffs Fail to Satisfy any of Rule 23's Requirements

Faced with the overwhelming weight of authority certifying ERISA classes under Rule 23(b)(1), many defendants in similar cases have stipulated or consented to class certification to conserve the Court's time and resources. *See* n.2, *supra*. Relevant here, Groom Law Group has twice stipulated that ERISA fiduciary claims meet the requirements of commonality and typicality, and the Rule 23(b)(1) standards. Exs. A & B (class stipulations from *Reetz v. Lowe's Cos*., and *Jones v. DISH Network Corp.*). More precisely, Groom Law Group previously conceded:

> There are **common** issues respecting the Class [all plan participants] Claims related to (among other things): (a) which Defendants served as Plan fiduciaries; (b) whether the Plan's fiduciaries breached their fiduciary duties in violation of 29 U.S.C. § 1104; (c) whether Defendants are subject to co-fiduciary liability under 29 U.S.C. § 1105(a); (d) whether [one defendant] adequately monitored the [other fiduciary defendant]; and (e) the relief, if any, that may be appropriate in this case.

> Plaintiff is **typical** of other class members with respect to the Class Claims, as he participated in the Plan during the class period and was treated consistently with other class members.

> Rule **23(b)(1)(A)** class certification is appropriate … because prosecuting separate actions against Defendants with respect to the common issues identified in Paragraph 6 would create a risk of inconsistent or varying adjudications relating to those issues with respect to individual class members that would establish incompatible standards of conduct for Defendants.

> Rule **23(b)(1)(B)** is also appropriate … because adjudications with respect to the common issues identified in Paragraph 6 as to individual class members, as a practical matter, would be dispositive of the interests of the other persons not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests relating to those issues.

Ex. A ¶¶ 6-7, 9-12 (emphasis) (cleaned up). Furthermore, Plaintiffs served a request for production

on Defendants that asked:

> To the extent You contend that any of Plaintiffs' claims are not typical of other members of the proposed Class or that Plaintiffs would not be adequate Class representatives, all Documents and Communications Related to such contention. The relevant period for this request is unlimited as the temporal scope is based on Your contentions.

Ex. NN & Ex. OO, Defendants' Responses to Request for Production No. 35. In response, Defendants did not identify a single document or piece of evidence that undermines Plaintiffs' typicality or adequacy. Instead, they stated, "At this time, Argent is not in possession of any documents responsive to this Request that would not otherwise be produced in response to other Requests. Should Argent come to possess responsive documents that are not otherwise in Plaintiffs' possession, custody, or control, Argent will produce them." *Id*. Defendants have never amended this response to identify any documents that undermine class certification because no such documents exist.

Finally, Defendants denied Plaintiffs' request to confer about Defendants' opposition to certification or to narrow the issues for motion practice. Yau Decl. ¶ 27. Defendants' inability to identify any basis to oppose this motion underscores that certification is appropriate.

## IV.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for class certification.

Dated:  July 18, 2025                    Respectfully submitted,

                                         /s/ *Michelle C. Yau*
                                         Michelle C. Yau (admitted *Pro Hac Vice*)
                                         Kai H. Richter (admitted *Pro Hac Vice*)
                                         Daniel R. Sutter (admitted *Pro Hac Vice*)
                                         Caroline E. Bressman (admitted *Pro Hac Vice*)
                                         Ryan A. Wheeler (admitted *Pro Hac Vice*)
                                         **Cohen Milstein Sellers & Toll PLLC**
                                         1100 New York Ave. NW ● Suite 800

Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
myau@cohenmilstein.com
krichter@cohenmilstein.com
dsutter@cohenmilstein.com
rwheeler@cohenmilstein.com

Michael Eisenkraft (NY. Bar No. 664737)
**Cohen Milstein Sellers & Toll PLLC**
88 Pine Street
14th Floor
New York, New York 10005
Tel: (212) 838-7797
Fax: (212) 838-7745
meisenkraft@cohenmilstein.com

*Counsel for Plaintiffs and the Proposed Class*

## **WORD COUNT COMPLIANCE CERTIFICATION**

The undersigned certifies that this brief contains 7,896 words, which complies with the word limit of Local Rule 7.1(c) and Rule 4.B of this Court's Individual Practices.


Dated: July 18, 2025                                    /s/ *Michelle C. Yau*
                                                       Michelle C. Yau